IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **CENTRIPETAL NETWORKS, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18cv00094-MSD-LRL |
| ) | |
| **CISCO SYSTEMS, INC.** ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR INDIRECT AND WILLFUL INFRINGEMENT FOR FAILURE TO STATE A CLAIM

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Cisco Systems, Inc. ("Cisco") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Claims for Indirect and Willful Infringement for Failure to State a Claim.

Plaintiff alleges that Cisco has indirectly and willfully infringed eleven patents, but has not met the basic pleading requirements for these claims. Plaintiff does not allege facts showing that Cisco knew of the asserted patents before Plaintiff filed this suit, nor that Cisco specifically intended for its customers to infringe the asserted patents. Plaintiff does not even allege that it notified Cisco of the asserted patents or discussed them with Cisco before filing suit, much less that it ever asserted to Cisco that any of Cisco's products infringe.

Instead, Plaintiff alleges that Cisco has "gained increased exposure to" the alleged "patented technology" through circumstances that occurred before the patents issued, but the facts alleged come nowhere close to meeting the pleading requirements to plausibly support claims for inducement or willful infringement. Indeed, Centripetal's boilerplate willful infringement

allegations are completely devoid of facts that could show the kind of "egregious," "piratical" conduct that is required to state a claim.

For these reasons, Plaintiff's claims for indirect and willful infringement are insufficient, and should be dismissed.[1]

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On February 13, 2018, Plaintiff Centripetal Networks, Inc. ("Centripetal") filed a Complaint alleging that Cisco directly, indirectly and willfully infringes 10 patents. *See* D.I. 1, ¶¶ 11-30; Exs. 2-11.[2]

On March 29, 2018, Centripetal filed an Amended Complaint in which it asserts infringement of an eleventh patent and made immaterial revisions to its original Complaint. *See* D.I. 29. In total, Centripetal now alleges infringement of eleven patents.[3] The earliest of these patents issued on September 1, 2015 (the issuance date of each patent is set forth in Appendix A attached hereto).

---

[1] Cisco notes that its obligation to respond to the remaining claims set forth in Centripetal's Complaint is deferred pending resolution of this Rule 12 motion. *See Godlewski v. Affiliated Computer Servs.*, 210 F.R.D. 571, 572 (E.D. Va. 2002) ("In the interests of efficiency for all parties, including the courts, it is best to stall the proceedings on all counts until after the court rules on the Rule 12(b)(6) motion.")

[2] Cisco notes that the present case is related to another action filed by Centripetal in this district, in which Centripetal alleges infringement of three of the same patents at issue here. *See Centripetal Networks, Inc. v. Keysight Techs., Inc. and iXia*, Case No.: No. 2:17-cv-00383/HCM-LRL (alleging infringement of U.S. Patent Nos. 9,560,077; 9,137,205; and 9,413,722).

[3] Specifically, U.S. Patent Nos. 9,686,193 ("the '193 Patent"), 9,560,176 ("the '176 Patent"), 9,560,077 ("the '077 Patent"), 9,413,722 ("the '722 Patent"), 9,203,806 ("the '806 Patent"), 9,160,713 ("the '713 Patent"), 9,124,552 ("the '552 Patent"), 9,565,213 ("the '213 Patent"), 9,137,205 ("the '205 Patent"); 9,674,148 ("the '148 Patent"); and 9,917,856 ("the '856 patent") (collectively the "Asserted Patents"). *See* D.I. 29, ¶¶ 11-34; Exs. 2-11, 49.

2

Indirect Infringement Allegations. Centripetal's indirect infringement allegations are largely boilerplate recitations of the statutory elements for induced infringement under 35 U.S.C. § 271(b). *See* D.I. 29, ¶ 63 (alleging that Cisco indirectly infringes by "instructing, directing and/or requiring others, including its customers, purchasers, users, and developers, to perform all or some of the steps of the method claims …")[4] Centripetal's indirect infringement claims are its Second, Fourth, Sixth, Eighth, Tenth, Twelfth, Fourteenth, Sixteenth, Eighteenth, Twentieth and Twenty-Second Causes of Action.

Willfulness Allegations. As to willfulness, Centripetal alleges that it "is informed and believes that Cisco had knowledge of the Asserted Patents through various channels and despite its knowledge of Centripetal's patent rights, engaged in egregious behavior warranting enhanced damages." *Id.*, ¶ 65. The alleged "various channels" are as follows:

- Centripetal alleges that "[o]n or around 2014," *i.e.*, at least one year before any of the Asserted Patents issued, "Centripetal partnered with ThreatGRID, a company which included threat intelligence technology which Centripetal integrated with their patented products that used some of the Asserted Patents. Cisco later acquired ThreatGRID in 2016. Centripetal is informed and believes that Cisco gained increased exposure to Centripetal's patented technology as a result of the acquisition of ThreatGRID." *Id.*, ¶ 66.

- Centripetal alleges that it "is further informed and believes that, on or around January 2016, Cisco requested an introduction to Centripetal through a third party, Granite Hill Capital Partners. Later, Centripetal received a point of contact introduction to Cisco from Granite Hill Capital Partners." *Id.*, ¶ 67.

- Centripetal alleges that in 2016, Cisco invited Centripetal to its "partner conference – in which Centripetal was asked to demonstrate its technology in Cisco's 'Security Partner Village' booth," and did so in June 2016. *See id.*, ¶ 68. Centripetal alleges that at the conference it "demonstrated its patented technology, including the RuleGATE Threat Intelligence Gateway product which encompasses at least some of the Asserted Patents." *Id.*

---

[4] Although Centripetal's claims refer to "indirect infringement," (*see* D.I. 29, ¶ 63), the Complaint specifically mentions only induced infringement, and does not contain even boilerplate allegations of contributory infringement under 35 U.S.C. § 271(c).

- Centripetal alleges that it is listed on Cisco's website as part of a "'partner ecosystem' whose '[t]hreat intelligence platforms' use ThreatGrid." *Id.*, ¶ 66.

Of course, none of these allegations include any facts that would have made Cisco knowledgeable about any of Centripetal's patents, and certainly not the specific Asserted Patents.

## II.     ARGUMENT AND CITATIONS TO AUTHORITY

### A.     Legal Standard

In evaluating the sufficiency of a pleading post-*Twombly*,[5] the Fourth Circuit "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint"; however, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).[6]  The Fourth Circuit also will not consider "unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009)). To test the sufficiency of a pleading, the factual allegations underlying the claim for relief are critical: "Ultimately, a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). The Fourth Circuit thus applies a "context-specific" test which, although not requiring "detailed factual allegations,"

---

[5] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  As a court in this District explained, "[i]n *Twombly*, the [Supreme] Court changed significantly how the legal sufficiency of a claim is to be measured when it is attacked under Rule 12(b)(6)." *Macronix Int'l Co., Ltd. v. Spansion Inc.*, 4 Supp. 3d 797, 799 (E.D. Va. 2014).

[6] The law of the Fourth Circuit governs this motion because "an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013) (citations omitted).

does require a complaint to "plead sufficient facts to allow a court, drawing on judicial experience and common sense" to infer "more than the mere possibility of misconduct." *Id.* This framework "requires the plaintiff to do more than simply allege that he or she is entitled to relief because the complaint must 'show' that the plaintiff is entitled to relief."

<u>Inducement</u>.  A claim for indirect infringement "requires knowledge of the existence of the patent that is [allegedly] infringed." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011)). Courts in this district have confirmed that "[t]o survive a motion to dismiss . . . Plaintiff's complaint must contain facts plausibly showing that the defendant specifically intended its customers to infringe the patents-in-suit and knew that the customer's acts constituted infringement." *CarFax, Inc. v. Red Mountain Techs., Inc.*, 119 F.Supp.3d 404, 415 (E.D. Va. 2015) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.,* 681 F.3d 1323, 1339 (Fed. Cir. 2012)). It is well settled that "mere knowledge of acts alleged to constitute infringement is not sufficient; rather the plaintiff must show "specific intent and action to induce infringement." *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1368 (Fed. Cir. 2017) (citations omitted).

<u>Willfulness</u>.  The Federal Circuit has confirmed that, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). In order to recover enhanced damages for willful patent infringement, a plaintiff must satisfy the requirements of 35 U.S.C. § 284 as interpreted by the United States Supreme Court in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). In *Halo*, the Supreme Court held that the "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id*. at 1932. Thus, under

*Halo*, while "courts should continue to take into account the particular circumstances of each case," enhanced damages are limited to "egregious cases of misconduct beyond typical infringement," such as those "typified by willful misconduct." *Id*. at 1933-35.

Courts have applied *Halo* in determining whether a willfulness claim is plausibly alleged and have dismissed those that do not show the requisite egregious conduct. *See, e.g., Varian Med. Sys., Inc. v. Elekta AB*, No. 15–871, 2016 WL 3748772, *8 (D. Del. July 12, 2016) (dismissing willfulness allegation for failing to state facts showing that the defendants' actions "actually amounted to an egregious case of infringement of the patent"); *CG Tech. Dev., LLC v. Zynga, Inc.*, No. 2:16-CV-859-RCJ-VCF, 2017 WL 662489, *4 (D. Nev. Feb. 17, 2017) ("Under *Halo*, Plaintiffs have failed to state a claim for willful infringement because they have failed to allege any facts suggesting that Defendant's conduct is 'egregious . . . beyond typical infringement.'" (quoting *Halo*, 136 S. Ct. at 1935 (alteration in original).

### B. Centripetal's Inducement Claims Fail Because it has not Alleged Facts Showing the Requisite Knowledge or Intent

Centripetal's claims of inducement fail for two reasons.

<u>First</u>, the Complaint is devoid of any facts showing that Cisco knew of any of the Asserted Patents before this lawsuit was filed. Indeed, one of the patents (the '856 Patent) did not issue until after Centripetal filed suit. *See* D.I. 29, ¶ 31. Centripetal never alleges that it notified Cisco of the Asserted Patents at any point in time prior to filing the lawsuit, or that Cisco was ever made aware of them.

Moreover, Centripetal's sparse allegations do not present facts that would make Cisco's pre-suit knowledge of the patents conceivable, let alone plausible. Indeed, many of the alleged events occurred before most or all of the patents even existed. For example, when Centripetal allegedly integrated ThreatGRID into its product in 2014, none of the Asserted Patents had issued

6

and Cisco had not yet acquired ThreatGRID. *See* D.I. 29, ¶¶ 66, 11-34. There are also no factual allegations to show that Cisco had knowledge of the patents when it acquired ThreatGRID two years later, at which point six of the eleven asserted patents still had not issued. *See id*. Centripetal still does not allege that Cisco was ever notified of the Asserted Patents in connection with the ThreatGRID interaction or that there was ever any discussion of the patents or suggestion that Cisco's products infringed them.

Centripetal's various allegations regarding its sporadic interactions with Cisco all suffer the same flaw that Cisco was never put on notice of possible infringement by Centripetal. This flaw pervades each of the following allegations:

- That it "demonstrated its patented technology . . . which encompasses at least some of the Asserted Patents" at a Cisco conference in June 2016. *See id*., ¶ 66. Tellingly, Centripetal does not allege that Cisco knew about any of the patents themselves or that Centripetal provided notice of any of its patents at Cisco's annual customer conference. Indeed, six of the eleven patents had not issued by the time of this alleged demonstration. *See id*., ¶¶ 11-34.
- That Centripetal is part of a Cisco "'partner ecosystem' whose '[t]hreat intelligence platforms' use ThreatGrid," (*see id*.,¶ 68). Again, Centripetal does not allege any facts that would show that Centripetal's alleged use of a non-accused Cisco product establishes that Cisco had knowledge of the patents asserted in this case.
- Centripetal's allegation about a third party introduction to Cisco in January 2016 (which it does not allege even resulted in a meeting, much less a discussion of the patents). *See id*., ¶ 67. Centripetal does not allege that Cisco followed up on the introduction or that there was ever a discussion of the Asserted Patents. Indeed, in January 2016, only four of the Asserted Patents had even issued. *See id*., ¶ 11-34.

In sum, Centripetal's allegations refer only to Cisco's alleged knowledge of "patented technology," which is insufficient for pre-suit notice. *See Zond, Inc. v. SK Hynix Inc*., 2014 WL 346008, * 2 (D. Mass. Jan. 31, 2014). Indeed, in cases in which the plaintiff has alleged that it actually identified patents in connection with a technology demonstration (unlike here), courts have still dismissed claims that did not specify who at the defendant received such patent-identifying material. *See id*. Here, Centripetal has not alleged any facts showing that it identified

7

the patents as part of any demonstration at Cisco's customer conference, nor has it specified any Cisco employee who received such information. Even then, most (if not all) of the patents did not exist at the time of the alleged events. Alleged knowledge of "patented technology" is not tantamount to knowledge of any of the specific Asserted Patents, and cannot plausibly show that Cisco had the necessary intent for induced infringement.

Courts have found allegations of pre-suit knowledge deficient that were more directly tied to the patents than Centripetal's here. For example, a court held that allegations directed to the defendant's awareness of a patent portfolio were insufficient to show pre-suit notice of specific patents within the portfolio. *See Finjan, Inc. v. Juniper Networks, Inc.*, 2018 WL 905909, * 3-4 (N.D. Cal. Feb. 14, 2018) (granting motion to dismiss willfulness claim based in part on lack of pre-suit notice). Centripetal's allegations are a further step removed from the deficient pleading in *Juniper Networks*, as here the alleged awareness is not of patents at all or their claims, but of a "patented technology." *See* D.I. 29, ¶ 66. This is not enough to plausibly establish pre-suit knowledge of the Asserted Patents. *See Rembrandt Social Media, L.P. v. Facebook, Inc.*, 950 F. Supp. 2d 876, 883 (E.D. Va. 2013) (dismissing indirect infringement claims where the plaintiff "failed to plead any facts that make it plausible, rather than merely conceivable" that the defendant had pre-suit knowledge of the patents).

Second, the Complaint does not allege facts showing the requisite intent for inducement. Even if Centripetal's claim is limited to alleged post-suit inducement (and the Complaint does not so limit these claims), Centripetal's allegations still fail because it does not allege any facts to show that Cisco knew that the alleged induced acts constituted infringement and specifically intended that its customers infringe, as required. *See CarFax*, 119 F.Supp.3d at 415. Accordingly, Centripetal's induced infringement claims should be dismissed.

### C. Centripetal has not Alleged Facts Showing Pre-Suit Notice or Egregious Conduct as Required for Willful Infringement

Centripetal's only references to willful infringement amount to a bare recitation of the elements of such a claim (*see* D.I. 29, ¶ 65), which is insufficient. *See Jenkins v. LogicMark, LLC*, 2017 WL 376154, * 5 (E.D. Va. Jan. 25, 2017) (granting motion to dismiss willfulness claim and noting that "[t]he Court finds that this mere recitation of elements fails to meet the mark.") Centripetal's boilerplate allegations do not rise to the level to plausibly show either the knowledge required for willfulness or the egregiousness required for willfulness.

#### 1. Lack of Pre-Suit Knowledge

First, as discussed with regard to the inducement claims, Centripetal does not plead facts to show pre-suit knowledge of any of the Asserted Patents. Centripetal never alleges that it gave notice to Cisco of the Asserted Patents, or that it suggested to Cisco that any of its products infringed any patent. Centripetal does not allege that it told Cisco about the patents or ever discussed them at all before filing this suit. Absent knowledge of the patents, there can be no willful infringement. *See WBIP, LLC*, 829 F.3d at 1341.

Second, the circumstances Centripetal alleges for pre-suit notice refer only to Cisco's potential "exposure to" "patented technology" and largely pre-date the existence of the patents. *See* D.I. 29, ¶¶ 66, 11-34. As discussed above, such allegations do not plausibly show that Cisco knew of the Asserted Patents and cannot form the basis for pre-suit knowledge.

Third, Cisco cannot willfully infringe patents that did not yet exist at the time of these alleged events. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, a patent must exist and one must have knowledge of it."). Here, none of the patents had issued in 2014, when Centripetal allegedly integrated the ThreatGRID product. Most had also not issued at the time of the alleged June 2016 product demonstration

9

either. On the basis of the absence of pre-suit knowledge alone, Centripetal's willfulness claim should therefore be dismissed.

### 2. Lack of Egregiousness

In addition to its failure to establish the required knowledge, Centripetal also does not allege facts to show that Cisco engaged in "egregious" conduct. Centripetal does not allege any pre-suit accusation of infringement relating to any Cisco product or any facts to show any form of copying or "piracy." Centripetal does not allege ever discussing the Asserted Patents with Cisco, nor identify facts to show that Cisco had any way of knowing that Centripetal believed Cisco infringed any Centripetal patent. Nor does Centripetal plead any facts showing affirmative conduct by Cisco of any kind as it relates to the Asserted Patents.

Indeed, Centripetal does not allege any specific facts about Cisco's behavior that would represent conduct that gives rise to the plausible inference that Cisco has engaged in egregious behavior relative to Centripetal's patent portfolio. Thus, beyond its conclusory allegation that Cisco acted "egregiously," Centripetal has not alleged facts showing the subjective intent and misconduct required under *Halo*. *See e.g., Juniper Networks,* 2018 WL 905909, at * 4 (dismissing willfulness claim because the plaintiff "fails to identify any *factual* allegation that Juniper exhibited egregious behavior on par with that described in *Halo*."); *Princeton Digital Image Corp. v. Ubisoft Entm't SA*, No. CV 13-335-LPS-CJB, 2016 WL 6594076, *11 (D. Del. Nov. 4, 2016) ("the TAC does not sufficiently articulate how Ubisoft SA's actions during a short, three-month period of time amount to an 'egregious' case of infringement of the patent."). Accordingly, Centripetal's willful infringement claims should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court grant this Motion, and dismiss Centripetal's indirect and willful infringement claims.

10

                                                  CISCO SYSTEMS, INC.

                                                  By         /s/         
                                                         Of Counsel

Dabney J. Carr, IV, VSB No. 28679
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

Louis N. Jameson (admitted pro hac vice)
Matthew C. Gaudet (pro hac vice pending)
John R. Gibson, VSB No. 72968
Jennifer H. Forte (admitted pro hac vice)
**DUANE MORRIS, LLP**
1075 Peachtree Street, N.E., Suite 2000
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900
Facsimile: (404) 253-6901
wjameson@duanemorris.com
mcgaudet@duanemorris.com
jrgibson@duanemorris.com
jhforte@duanemorris.com

Joseph A. Powers (admitted pro hac vice)
**DUANE MORRIS, LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 689-3797
japowers@duanemorris.com

Daniel T. McCloskey (admitted pro hac vice)
**DUANE MORRIS, LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650-847-4150
Facsimile: 650-523-4780
dtmccloskey@duanemorris.com

Christopher J. Tyson, VSB No. 81553
**DUANE MORRIS, LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
cjtyson@duanemorris.com

*Counsel for Defendant Cisco Systems, Inc.*

# APPENDIX A

According to the Amended Complaint and its exhibits, the Asserted Patents were issued between September 1, 2015 and March 13, 2018, as follows:

| Patent | Date of Issuance |
|---|---|
| U.S. Patent No. 9,124,552 | 9/1/15 |
| U.S. Patent No. 9,137,205 | 9/15/15 |
| U.S. Patent No. 9,160,713 | 10/13/15 |
| U.S. Patent No. 9,203,806 | 12/1/15 |
| U.S. Patent No. 9,413,722 | 8/9/16 |
| U.S. Patent No. 9,674,148 | 6/6/17 |
| U.S. Patent No. 9,686,193 | 6/20/17 |
| U.S. Patent No. 9,560,077 | 1/31/17 |
| U.S. Patent No. 9,560,176 | 1/31/17 |
| U.S. Patent No. 9,565,213 | 2/7/17 |
| U.S. Patent No. 9,917,856 | 3/13/18 |

*See* D.I. 29, ¶¶ 11-34; Exs. 2-11, 49.

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Kevin M. O'Donnell
Jeffery T. Martin, Jr.
HENRY & O'DONNELL, P.C.
300 N. Washington Street – Suite 204
Alexandria, VA 22314
kmo@henrylaw.com
jtm@henrylaw.com

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

/s/  Dabney J. Carr, IV
Dabney J. Carr, IV (VSB No. 28679)
**TROUTMAN SANDERS** LLP
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
dabney.carr@troutmansanders.com
*Counsel for Defendant Cisco Systems, Inc.*

DM2\8685716