IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

| | |
|---|---|
| **CENTRIPETAL NETWORKS, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18cv00094-MSD-LRL |
| ) | |
| **CISCO SYSTEMS, INC.** **)** | |
| **)** | |
| Defendant. **)** | |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR INDIRECT AND WILLFUL INFRINGEMENT FOR FAILURE TO STATE A CLAIM

I.      **INTRODUCTION**

Centripetal's Opposition confirms that it failed to sufficiently plead induced and willful infringement claims.

First, because Centripetal did not allege facts showing that Cisco actually knew of any of the Asserted Patents before it filed this suit or that there were ever communications with Cisco relating to any Centripetal patent, Centripetal instead relies on constructive notice through its alleged patent marking. These allegations are insufficient as a matter of law. The case law is clear that constructive notice under 35 U.S.C. § 187 **cannot** substitute for actual notice of the patents and accused products, which is required for indirect and willful infringement. Centripetal's inability to allege a single discussion, investigation or other context of any kind in which it told Cisco or made Cisco aware of any of the patents before this suit was filed is fatal. Merely alleging that products were marked and that Cisco knew of the products is insufficient to allege knowledge.

Next, Centripetal makes new allegations in its Opposition that are not in the Amended Complaint ("AC"). These new allegations (if they were in an operative complaint) would still fail. Specifically, Centripetal asserts that Cisco requested a demonstration of Centripetal's product, that the product was marked with four patent numbers at the time and that Centripetal continuously marks the product with updated patent numbers. Again, Centripetal does not supply any authority to support its apparent contention that constructive notice by patent marking is sufficient to establish pre-suit knowledge for indirect and willful infringement. Moreover, Centripetal does not allege that any Cisco personnel viewed the alleged product demonstration or were given any material or product that was marked with any of the Asserted Patents. Indeed, Centripetal relies on authorities in which substantially more facts were pleaded to show pre-suit knowledge than it has provided here.

Centripetal's failure to plausibly allege Cisco's knowledge of the patents is fatal to both its inducement and willfulness claims. Each claim fails for an additional reason. Centripetal did not plead sufficient facts to show specific intent to infringe as required for inducement. Centripetal also did not plead facts to plausibly show that Cisco engaged in egregious conduct as required for willfulness. Accordingly, these claims should be dismissed.[1]

## II.   ARGUMENT

### A.   Centripetal's Improper New Material Should not be Considered

It is axiomatic that motions to dismiss under Fed. R. Civ. P 12(b)(6) are directed to and limited to the sufficiency of the pleading at issue. *See Sweryniak v. Sessions*, Civil Action No. 3:17cv237 (MHL), 2018 WL 1220845, *1 n. 1 (E.D. Va. Jan. 31, 2018), *rep't and rec.*, ("The Court's analysis at the motion to dismiss stage is typically informed and constrained by the four corners of the Complaint."); *Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 794 (N.D. Cal. 2011) (the court "generally may not look beyond the four corners of the complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice.") (citations omitted). Thus, a plaintiff cannot add new material in opposition to a dismissal motion to try to fix pleading deficiencies. *See Skipprint, Inc. Rastar, Inc.*, No. 2:13–CV–00039, 2013 WL 4430873, *3 (D. Utah Aug. 16, 2013) (dismissing contributory infringement claims because "none of these facts were alleged in the

---

[1] Centripetal's assertion that Cisco's motion was not signed in violation of Rule 11 is incorrect. *See* D.I. 41, at 1, n.1. The motion was signed with "/s" and filed in the ECF system in accordance with E.D. Va. Electronic Case Filing Policies and Procedures, which satisfies Rule 11. *See* ECF Policies and Procedures, at 28-29 ("The user login and password required to submit documents to the ECF system serve as the filing user's signature on all electronic documents filed with the Court. They serve as a signature for purposes of Fed.R.Civ.P. 11, all other Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Local Rules of this Court, and any other purpose for which a signature is required in connection with proceedings before the Court.")

amended complaint itself. As a result, the amended complaint remains factually deficient, and cannot survive a motion to dismiss . . . despite plaintiff's attempt to rehabilitate it in subsequent briefing.")

Here, although this motion is limited to the sufficiency of the AC, Centripetal makes assertions in its Opposition that are not in its pleading, primarily around the timing and extent of its patent marking and related issues. These revised allegations, while still insufficient to state claims for induced and willful infringement, are improper and should not be considered. *See Skipprint*, 2013 WL 4430873, *3.

Centripetal also offers a new exhibit that was not submitted with the AC, apparently to try to demonstrate its alleged marking. *See* D.I. 41-1, Ex. A. This exhibit – a photograph purporting to show certain patent numbers on an unidentified product – is outside the four corners of the AC and is not appropriate for consideration on a motion to dismiss.[2]

B. **Centripetal did not Plead Sufficient Facts to Show Induced Infringement**

1. **Centripetal's Pre-Suit Knowledge Allegations are Insufficient**

Centripetal argues that it alleged Cisco's pre-suit knowledge of the Asserted Patents (D.I. 41, at 4), but the AC only makes allegations generally about Cisco's alleged "exposure" to Centripetal's product or "patented technology," not the Asserted Patents. *See e.g.,* D.I. 29, ¶ 66 ("Centripetal is informed and believes that Cisco gained increased exposure to Centripetal's patented technology as a result of the acquisition of ThreatGRID"); 68 (Centripetal "demonstrated its patented technology, including the RuleGATE Threat Intelligence Gateway product which encompasses at least some of the Asserted Patents."). Centripetal tries to fill this

---

[2] Further, the attorney declaration provided with Exhibit A does not provide any facts to indicate competency to authenticate the photograph or any facts to establish its relevance, such as what is depicted, when it was taken, and its relation to any of the allegations. *See* D.I. 41-1.

gap by pointing to its allegations about patent marking and its alleged interactions with Cisco. *See* D.I. 41, at 4,5. For several reasons, none of these allegations plausibly show that Cisco actually knew of the patents before this suit was filed.

First, the constructive knowledge associated with patent marking is not the same as – and cannot substitute for – the actual knowledge required for induced and willful infringement. As explained in *Radware, Ltd. v. A10 Networks, Inc.*, "[u]nlike the notice requirement for damages, which may be satisfied through *constructive knowledge* of the patent through marking, *see* 35 U.S.C. § 287(a),; the knowledge requirement for indirect infringement liability requires both *knowledge of the patent* and *knowledge of infringement."* Case No. C–13–02021–RMW, 2013 WL 5373305, *2 (N.D. Cal. Sept. 24, 2013) (citing *Global–Tech Appliances, Inc. v. SEB S.A.,* 131 S.Ct. 2060, 2068 (2011); *Fujitsu Ltd. v. Netgear Inc.,* 620 F.3d 1321, 1330 (Fed. Cir. 2010)). Thus, "[k]nowledge of infringement requires that the accused infringer is aware of both the patents and the accused products." *Radware,* 5373305, *2; *see also, MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F.Supp.2d 225, 232 (D.Del. 2012) ("However, actual (not constructive) knowledge of the patent-in-suit is necessary to state a claim for indirect infringement under the Supreme Court's decision in *Global–Tech,* unless the patentee is claiming willful blindness.") (citation omitted).

In *Radware*, the court dismissed indirect infringement claims despite a "laundry list of allegations" about alleged pre-suit notice, including that the plaintiff had identified the patent in a press release and on its website, that the defendant hired a former employee of plaintiff who knew of the patent and that the plaintiff marked its products with the patent number. *See id.* The court rejected these allegations because the plaintiff had failed to plead "*actual* notice of the patents-in-suit and infringement thereof, including the accused products, prior to the filing of the

4

lawsuit." *Id*., at * 3. Here, Centripetal's attempt to rely on its alleged patent marking to try to show that Cisco had actual pre-suit knowledge of the Asserted Patents is similarly misguided. Indeed, Centripetal does not provide a single case in which pre-suit knowledge for indirect or willful infringement was found based upon alleged patent marking.

Second, the inference urged by Centripetal is implausible. For example, Centripetal does not explain how Centripetal's integration of a Cisco product (ThreatGRID) – which is not even a product accused of infringement – can plausibly show that Cisco actually knew of the Asserted Patents. There is no allegation that anyone at Cisco actually looked at the Centripetal products or was otherwise made aware of the alleged marking, much less looked at the patents corresponding to the marking. That is the fundamental difference between actual and constructive notice; the mere fact that a product is marked is a far cry from an allegation that someone actually read the mark and then actually looked at the patents corresponding to the marked patent numbers (and there is absolutely no basis to believe that would have happened here). Again, the absence of even a single allegation about any specific communication relating to a patent confirms the implausibility of Centripetal's inference.

In another departure from the AC, Centripetal asserts that "Cisco invited Centripetal to give a demonstration of its patented products" at the June 2016 Cisco live conference." *See* D.I. 41, at 2; and 10 (asserting that Centripetal "was specifically invited by Cisco to demonstrate its patented products"). But the AC does not allege that Cisco invited or requested a product demonstration, only that Cisco invited Centripetal to the conference. *See e.g.,* D.I. 29, ¶ 68. And the AC certainly does not allege that Cisco ever referred to any Centripetal product as a "patented product", as there is no allegation (and no possible Rule 11 basis) to suggest the word "patent" was ever used by Cisco in any of these alleged interactions. In sum, the AC does not

state that anyone from Cisco attended the demonstration or was provided with any information about the Asserted Patents, **seven of which had not yet issued**. *See Zond, Inc. v. SK Hynix Inc.*, 2014 WL 346008, * 2 (D. Mass. Jan. 31, 2014).[3]

Centripetal's assertion that Cisco knew of "the applications of three other Asserted Patents (the '193, '077, and '213 Patents)" because they "were published and publicly available on the U.S. Patent and Trademark Office website," is wholly insufficient to plead knowledge. *See* D.I. 41, at 5. Nearly every patent application filed since 2000 is published and publicly available on the U.S. Patent and Trademark Office website, which would (under Centripetal's theory) give every U.S. citizen knowledge of every U.S. patent. Centripetal relies on *Simplivity Corp. v. Springpath, Inc.* for its assertion, but that case bears no relation to this one. *See* No. 4:15-13345-TSH, 2016 WL 5388951, at *9-10 (D. Mass. July 15, 2016). In *Simplivity*, unlike here, the plaintiff alleged copying, *i.e.*, that the founder of a competitor "surreptitiously investigated SimpliVity's technology" and then developed a product that "mimics the technology" of the patent-in-suit. *See id.*, at *9. Centripetal has not alleged any specific facts along those lines. To the contrary, Centripetal alleges that Centripetal integrated Cisco's ThreatGRID product (not the other way around). See D.I. 29, ¶ 66. More importantly, Centripetal does not even suggest that ThreatGRID infringes the Asserted Patents – in other words, the product and engineering team that is the basis for the alleged interactions is not even the same as the product that Centripetal alleges infringe the patents.

---

[3]Centripetal then repeats that "[a]t the time of the partner conference, four of the Asserted Patents (the '806, '713, '552, '205 Patents) had issued and were clearly marked on Centripetal's products" and that "Centripetal's products have been continuously marked with its patents as they issue" (*see* D.I. 41, at 2), but, again, the AC does not allege these facts either. Even if these allegations were included in the AC, it would still not be sufficient to show that Cisco had actual knowledge of the Asserted Patents. *See Radware*, 2013 WL 5373305, at *2-3.

Under the circumstances here, in which Centripetal has not alleged any pre-suit knowledge of the patents, Cisco was under no "affirmative duty to sniff out a potential patent" and monitor Centripetal's published applications. *See Boundaries Solutions, Inc. v. CoreLogic, Inc.* Case No. 5:14–cv–00761–PSG, 2014 WL 7463708, *2 (N.D. Cal. Dec. 30, 2014) (dismissing indirect and willfulness claims and holding that defendant with no knowledge of patents was under no duty to track online applications to see if plaintiff filed for a patent, reasoning that "this kind of affirmative duty to sniff out a potential patent is far beyond any duty recognized by the Federal Circuit, this court or any other court."). Further, even if Centripetal had alleged that Cisco knew of patent applications, this would not be sufficient to establish pre-suit knowledge of the Asserted Patents. *See Vasudevan Software, Inc. v. TIBCO Software Inc.,* No. 11–6638, 2012 WL 1831543, *3, *6 (N.D. Cal. May 18, 2012) (dismissing indirect and willfulness claims and holding that "[t]he requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of *other* patents, even if somewhat similar," or from "alleged awareness of the [ ] patent application.")

### 2. Centripetal Cannot Show Specific Intent to Infringe

Centripetal argues that it adequately pleaded specific intent to induce infringement by providing examples of instructions and other accused product documentation in the AC. *See* D.I. 41, at 6-7. However, simply providing such product documentation, even if detailed, is not enough to infer specific intent to induce infringement without indications that the materials tout the benefits of the accused products in a manner that tracks the patents. *See Memory Integrity, LLC v. Intel Corp.,* 144 F.Supp.3d 1185, 1196 (D. Or. 2015). (dismissing inducement claim where "the examples in the pleadings did not instruct on how to engage in infringing uses," and instead "only establish that [the defendant] described features of the company's own products"— actions that evince "ordinary acts incident to product distribution" rather than "purposeful,

7

culpable expression and conduct."). Further, as the Federal Circuit has stated, "[m]erely describing . . . an infringing mode is not the same as recommend[ing], promot[ing] . . . an infringing use, or suggesting that an infringing use should be performed." *Takeda Pharms, U.S.A., Inc. v. West-Ward Pharm Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

Here, Centripetal has not alleged that the accused product materials it has provided tout and recommend alleged infringing use, rather than merely describe the products or the allegedly infringing use. Accordingly, Centripetal has not provided a basis for inferring specific intent to induce infringement as in *Smart Wearable Techs., Inc. v. Fitbit, Inc.*, upon which Centripetal relies. *See* 274 F.Supp.3d 371 (E.D. Va. 2017).

C.   **Centripetal did not Plead Sufficient Facts to State a Claim for Willful Infringement**

For the reasons explained in detail above, neither Centripetal's allegations in the AC nor the revised versions presented in opposition to this motion indicate that Cisco was ever put on notice of the Asserted Patents before this suit was filed. *See supra*, § II(B)(1). Centripetal's attempt to rely on patent marking to establish pre-suit knowledge is insufficient. *See Radware*, 2013 WL 5373305, at *2-3. Without knowledge of the patents, Centripetal's willful infringement claims must be dismissed. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

Centripetal unsuccessfully attempts to distinguish Cisco's case authorities regarding pre-suit notice. *See* D.I. 41, 10-11. Centripetal asserts that its allegations are "starkly different" than those at issue in *Zond, Inc. v. SK Hynix Inc.*, 2014 WL 346008 (D. Mass. Jan. 31, 2014), but this is not so. If anything, the plaintiff in *Zond* pled more than Centripetal, but it was still not enough. The court dismissed pre-filing indirect and willfulness claims because the plaintiff did not "identify, by 'information or belief,' any employee who observed the unspecified presentation,

8

or who received the unspecified marketing materials, or who spoke with anyone from Zond." *Id.*, at *2.

Here, Centripetal has also alleged no such factual detail. Instead, it again argues that Cisco requested a product demonstration at an annual conference as a basis for pre-suit notice. *See* D.I. 41, at 10. Even if Centripetal had pleaded this allegation, it would still be insufficient as there are no allegations that anyone at Cisco saw the demonstration, spoke to Centripetal about it or otherwise received any information about the Asserted Patents there. *See id.*; *compare with*, *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.,* 2012 WL 2343163, *2–3 (N.D.Cal. June 5, 2012) (unlike here, pre-suit knowledge found where defendant's representatives "discussed with [Plaintiff], saw, read, and observed [Plaintiff's] patented ... devices and promotional materials, packaging and instruction pertaining thereto, all of which ... identified the [patent-in-suit]."); *see also Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors,* 2012 WL 202664, *5 (S.D.Cal. Jan.23, 2012) (unlike here, plaintiff alleged facts showing that defendant witnessed exhibition of patented technology and stated that he was going to "copy that").

In addition, in *Rembrandt Social Media, LP v. Facebook, Inc.*, allegations that the defendant cited the asserted patent during prosecution of another patent were insufficient to show pre-suit notice. *See* 950 F.Supp. 2d 876, 883 (E.D. Va. June 12, 2013). Centripetal's allegations here are even more remote and lack any facts to show that Cisco ever knew of any of the Asserted Patents in any context. Further, as noted, Centripetal cannot rely on alleged patent marking to establish Cisco's pre-suit knowledge. *See Radware*, 2013 WL 5373305, at *2-3.

Centripetal suggests that it does not have to plead facts plausibly showing that Cisco engaged in "egregious," "piratical" behavior to sustain its willfulness claim. *See* D.I. 41, at 9. This assertion is directly contrary to recent authority in this district. *See Jenkins v. LogicMark,*

9

*LLC,* 2017 WL 376154, *5 (E.D. Va. Jan. 25, 2017) ("Therefore, the Court finds that, at a minimum, plaintiffs alleging willful infringement must plead facts sufficient to support an inference "plausible on its face" that the alleged conduct is of the egregious nature described in *Halo Electronics*."). As in *Jenkins*, many district courts that have considered this question have also required plausible allegations of egregiousness. *See e.g., Elec. Scripting Prods., Inc. v. HTC America Inc.*, 2018 WL 1367324, * 7 (N.D. Cal. Mar. 16, 2018) (dismissing willfulness claim that was "woefully short of pleading egregious behavior and willfulness."); *Varian Med. Sys., Inc. v. Elekta AB*, No. 15–871, 2016 WL 3748772, *8 (D. Del. July 12, 2016); *CG Tech. Dev., LLC v. Zynga, Inc.*, No. 2:16-CV-859-RCJ-VCF, 2017 WL 662489, *4 (D. Nev. Feb. 17, 2017). And while Centripetal's allegations can be further developed in discovery, only claims that are plausibly alleged should be allowed to proceed.

Centripetal's conclusory allegation of "deliberate copying" is not factual, and is not supported by any identified acts or conduct by Cisco. *See* D.I. 29, ¶ 93. Centripetal suggests that its alleged "pre-suit relationship" with Cisco is somehow a reason not to dismiss this willfulness claim. *See* D.I. 41, at 9-10. However, Centripetal did not plead any facts about the supposed relationship between the parties to plausibly indicate any copying or other egregious behavior. That Centripetal integrates a Cisco product (ThreatGRID) into its own does not create a basis for inferring any misconduct by Cisco, especially when ThreatGRID is not even an accused product in this case.

Further, the order denying Cisco's motion to dismiss the willfulness claim in *Finjan, Inc. v. Cisco Sys., Inc.*, which Centripetal cites, does not aid its argument here. *See* D.I. 41-1, Ex. B. For one thing, the Court held that factual allegations of egregious behavior are required. *See id.*, at 8 ("The Court is persuaded by those cases and concludes that a complaint must contain some

allegations which make it plausible that the accused infringer's behavior was egregious and that allegations of knowledge of the patents-in-suit alone are insufficient."). For another, the Court's determination that the willfulness claim could proceed was based on allegations of a contractual and financial relationship far beyond what Centripetal is alleging here, in which Cisco was an investor and allegedly attended meetings with Finjan where Finjan's patents were discussed. *See id.* That is exactly what is missing here.

In sum, Centripetal has not pleaded any facts to plausibly support its conclusory assertions that Cisco knew of the Asserted Patents and "decided to turn a blind eye and continue to infringe." D.I. 41, at 10. Accordingly, Centripetal's willfulness claims should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court grant this Motion, and dismiss Centripetal's indirect and willful infringement claims.

CISCO SYSTEMS, INC.

By /s/ Dabney J. Carr, IV
Of Counsel

Dabney J. Carr, IV, VSB No. 28679
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

Louis N. Jameson (admitted pro hac vice)
Matthew C. Gaudet (pro hac vice pending)
John R. Gibson, VSB No. 72968
Jennifer H. Forte (admitted pro hac vice)
**DUANE MORRIS, LLP**
1075 Peachtree Street, N.E., Suite 2000
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900
Facsimile: (404) 253-6901
wjameson@duanemorris.com
jrgibson@duanemorris.com
jhforte@duanemorris.com

Joseph A. Powers (admitted pro hac vice)
**DUANE MORRIS, LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 689-3797
japowers@duanemorris.com

Daniel T. McCloskey (admitted pro hac vice)
**DUANE MORRIS, LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650-847-4150
Facsimile: 650-523-4780
dtmccloskey@duanemorris.com

Christopher J. Tyson, VSB No. 81553
**DUANE MORRIS, LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
cjtyson@duanemorris.com

*Counsel for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

>Kevin M. O'Donnell
>Jeffery T. Martin, Jr.
>HENRY & O'DONNELL, P.C.
>300 N. Washington Street – Suite 204
>Alexandria, VA 22314
>kmo@henrylaw.com
>jtm@henrylaw.com
>
>Paul J. Andre
>Lisa Kobialka
>James Hannah
>KRAMER LEVIN NAFTALIS & FRANKEL LLP
>990 Marsh Road
>Menlo Park, CA 94025
>pandre@kramerlevin.com
>lkobialka@kramerlevin.com
>jhannah@kramerlevin.com

>/s/ Dabney J. Carr, IV
>Dabney J. Carr, IV (VSB No. 28679)
>**TROUTMAN SANDERS** LLP
>1001 Haxall Point
>Richmond, VA 23219
>Telephone: (804) 697-1200
>Facsimile: (804) 697-1339
>dabney.carr@troutmansanders.com
>*Counsel for Defendant Cisco Systems, Inc.*