**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| **CENTRIPETAL NETWORKS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-00094-MSD-LRL |
| | ) | |
| **CISCO SYSTEMS, INC.** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CISCO SYSTEMS, INC.'S MOTION TO STAY PENDING RESOLUTION OF *INTER PARTES* REVIEW PROCEEDINGS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III.  ARGUMENT AND CITATIONS TO AUTHORITY ......................................................6

    A.    Legal Standard .................................................................... 6

    B.    The Early Stage of this Litigation Favors a Stay .................................. 7

    C.    A Stay Will Greatly Simplify the Issues for Trial ................................ 10

    D.    Granting a Stay Would not Unduly Prejudice Centripetal................... 12

IV.   CONCLUSION......................................................................................................14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*Audio MPEG, Inc. v. Hewlett-Packard Comp.*, Civil Action No. 2:15cv73, 2015
    WL 5567085 (E.D. Va. Sept. 15, 2015)........................................................................8

*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017) ...........................12

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2017 U.S. Dist. LEXIS 96909 (E.D.
    Va. Jun. 9, 2017).............................................................................................................12

*Ethicon v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ..........................................................6

*Evolutionary Intelligence, LLC v. Livingsocial, Inc.*, No. 13-CV-04205-WHO,
    2014 WL 2735185 (N.D. Cal. Jun. 16, 2014)...........................................................11

*Evolutionary Intelligence, LLC v. Millenial Media, Inc.*, No. 5:13-CV-04206-
    EJD, 2014 WL 2738501 (N.D. Cal. June 11, 2014) ...............................................11

*NTP, Inc. v. T-Mobile USA, Inc.*, No. 3:07-CV-548, 2007 WL 3254796 (E.D. Va.
    Nov. 2, 2007) .................................................................................................................13

*PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 WL
    116340 (N.D. Cal. Jan. 13, 2014) .......................................................................8, 12

*SAS Inst, Inc. v. Iancu*, 138 S. Ct. 1348 (2018) .............................................................11

*Sharpe Innovations, Inc. v. T-Mobile, USA, Inc.*, Civil Action No. 2:17-cv-35I ........8-9, 13-14

*In re: TLI Commc'ns Inc. Patent Litig.*, No. 1:14-cv- 02534, 2014 WL 12615711
    (E.D. Va. Aug. 11, 2014)......................................................................... 7, 9-10, 12

*Uniloc United States of America v. Apple*, Case No. 18-cv-00361-PJH, 2018 WL
    2387855 (N.D. Cal. May 25, 2018) ..................................................................... 8-9

*Univ. of Va. Patent Found. v. Hamilton Co.*, Civil Action No. 3:13–cv–00033,
    2014 WL 4792941 (E.D. Va. 2014)...........................................................................11

*Va. Innovation Sci., Inc. v. Samsung Elecs. Co. Ltd., et. al.,* Case No.: 2:14cv217,
    ECF No. 59 (E.D. Va. Nov. 18, 2014)................................................................. 7-9

*Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368 (Fed. Cir. 2014) .......................8

*VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014) ..................... 7, 13-14

*Wi-LAN, Inc. v. LG, Elecs.*, Case No.: 3:17-cv-00358-BEN-MDD, 2018 WL
    2392161 (S.D. Cal. May 21, 2018)..........................................................................9, 12

**Statutes**

35 U.S.C. § 314(b) ...........................................................................................................6

35 U.S.C. § 316(a)(11) ....................................................................................................6

35 U.S.C. § 315(e)(2) ..................................................................................................1,12

**Other Authorities**

37 C.F.R. § 42.107(b) ...................................................................................................3, 5

Federal Rule 26 ...............................................................................................................6

## I.    __INTRODUCTION__

Cisco has to date petitioned the Patent Trial and Appeal Board ("PTAB") to institute *Inter Partes* Review ("IPR") proceedings on nine of the eleven patents Centripetal Networks has asserted in this case.[1] These IPRs have the potential to significantly simplify and even transform this case, if not nearly end it altogether. Continuing to litigate a case of this magnitude while the IPRs are pending will consume massive resources of the parties and potentially the Court, much of which may be rendered moot by the IPRs. The relevant factors all weigh strongly in favor of staying this case pending resolution of the IPRs.

First, the early stage of this case favors a stay. The Court has not yet conducted a scheduling conference, and no *Markman*, trial or case deadlines have been set, let alone completed. The parties have not conducted any discovery or served initial disclosures. Further, given the pace of discovery in this district, courts have regularly granted stays before institution of the IPRs – as the Court should do here –so that needless litigation activity and associated expense can be avoided while the PTAB considers the petitions.

Second, the prospect of simplifying an eleven patent case in which Centripetal is asserting over 300 claims cannot be overstated. The pending IPRs challenge all of the asserted claims in nine patents, which is equivalent to 272 or 85% of the total (321) asserted claims in this case. There is a high likelihood of institution and cancellation of a significant number of the challenged claims. Even in the event that that certain of the claims survive the IPRs, this case will be  simplified and streamlined because Cisco will be statutorily estopped under 35 USC § 315 from litigating invalidity issues resolved by the IPRs that proceed to a final decision.

---

[1] Cisco is continuing to evaluate the remaining two asserted patents (U.S. Patent Nos. 9,917,856 and 9,203,806) and may seek IPR of one or more of these patents.

Lastly, Centripetal will not be unduly prejudiced by a stay. To the extent Centripetal has viable claims remaining after the IPRs are completed, its ability to recover damages is undiminished by a stay. Further, Centripetal's own delay in filing this suit and the fact that it is not seeking an injunction undermine any claim that it will be unduly harmed by a limited stay. By contrast, Cisco has acted diligently and expeditiously in filing fourteen IPR petitions challenging nine patents within months after Centripetal filed suit, and immediately seeking a stay early in the case. This factor, like the others, strongly favors a stay.

For these reasons, in line with ample supporting authorities, the Court should grant a stay pending resolution of the IPRs.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On February 13, 2018, Plaintiff Centripetal Networks, Inc. ("Centripetal") filed a Complaint alleging that Cisco directly, indirectly and willfully infringes 10 patents. *See* D.I. 1, ¶¶ 11-30; Exs. 2-11.

On March 29, 2018, prior to any response by Cisco, Centripetal filed an Amended Complaint alleging infringement of an eleventh patent. *See* D.I. 29.[2] According to its Amended Complaint, Centripetal asserts infringement of 321 claims of the Asserted Patents. *See* D.I. 29, ¶¶ 73, 97, 103, 127, 133, 154, 160, 181, 187, 208, 214, 235, 241, 265, 271, 296, 302, 322, 328, 350, 356, 388. Centripetal accuses Cisco products and services of infringement that "utilize Cisco's IOS XE 16.6 Networking Software, including but not limited to Cisco's Catalyst Switches (the "Accused Catalyst Products") and Cisco's ASR and ISR Series Routers (the "Accused Router

---

[2] Specifically, U.S. Patent Nos. 9,686,193 ("the '193 Patent"), 9,560,176 ("the '176 Patent"), 9,560,077 ("the '077 Patent"), 9,413,722 ("the '722 Patent"), 9,203,806 ("the '806 Patent"), 9,160,713 ("the '713 Patent"), 9,124,552 ("the '552 Patent"), 9,565,213 ("the '213 Patent"), 9,137,205 ("the '205 Patent"); 9,674,148 ("the '148 Patent"); and 9,917,856 ("the '856 patent") (collectively the "Asserted Patents"). *See* D.I. 29, ¶¶ 11-34; Exs. 2-11, 49.

Products").ʺ *See* D.I. 20, ¶ 36. Centripetal also accuses Cisco's ASA with FirePOWER Services Products and its Stealthwatch products. *See id.*, ¶¶ 37-38.

On April 13, 2018, Cisco filed a motion to dismiss Centripetal's induced and willful infringement claims on the grounds that they fail to state claims for relief. *See* D.I. 38, 39. The motion to dismiss is fully briefed. Cisco has not yet answered the Amended Complaint because its motion to dismiss suspends the time to respond until the motion is resolved. *See* D.I. 39, at 2 n. 1.

On July 12, 2018, Cisco filed the first of its IPR petitions with the PTAB and to date has filed fourteen petitions challenging the asserted claims in nine of the eleven Asserted Patents. *See* Decl. of Daniel T. McCloskey ISO Motion to Stay ("McCloskey Decl."), ¶¶ 2-10. Cisco notes that the high number of patent claims in certain patents necessitate multiple IPRs filings in order to comply with PTAB rules on word count limits in IPR petitions. In its pending IPR petitions, Cisco presents prior art challenging the validity of 272, or 85% of, the 321 claims that Centripetal asserts in this case. *See id.*; D.I. 29, ¶¶ 73, 97, 103, 127, 133, 154, 160, 181, 187, 208, 214, 235, 241, 265, 271, 296, 302, 322, 328, 350, 356, 388; McCloskey Decl., ¶¶ 2-10. The chart below outlines the filing dates and challenged claims of each IPR petition Cisco has filed concerning the Asserted Patents, and the preliminary response and institution decision deadlines currently known.[3]

| Asserted Patent | IPR No./Filing Date | Asserted Claims in District Court litigation per Amended Complaint | Challenged Claims in IPR | Preliminary Response Deadline | PTAB Institution Decision Deadline |
|---|---|---|---|---|---|
| 9,565,213 | IPR2018-01386 (July 12, 2018) | 1-16 (direct) 1-16 (indirect) | 1-16 | Oct. 26, 2018 | Jan. 28, 2019 |
| | IPR2018-01512 (Aug. 21, 2018) | | 1-16 | Pending PTAB Notice | Pending PTAB Notice |

---

[3] The response and institution deadlines are based on the statutory periods triggered by the date of the PTAB's notice confirming the filing date of the petitions. *See* 37 C.F.R. § 42.107(b).

| Asserted Patent | IPR No./Filing Date | Asserted Claims in District Court litigation per Amended Complaint | Challenged Claims in IPR | Preliminary Response Deadline | PTAB Institution Decision Deadline |
|---|---|---|---|---|---|
| 9,124,552 | IPR2018-1436 (July 20, 2018) | 1-21 (direct) 1-7 (indirect) | 1-21 | Oct. 26, 2018 | Jan. 28, 2019 |
| 9,160,713 | IPR2018-01437 (July 20, 2018) | 1-20 (direct) 1-7 (indirect) | 1-20 | Oct. 26, 2018 | Jan. 28, 2019 |
| 9,137,205 | IPR2018-01443 (July 27, 2018) | 1-96 (direct) 1-16, 49-62, 91-96 (indirect) | 1-96 | | |
| | | | IPR2018-01443: 1, 4, 12-17, 20, 28-33, 36, 44-48 and 91-96 | Nov. 14, 2018 | Feb. 14, 2019 |
| | IPR2018-01444 (July 27, 2018) | | | | |
| | IPR2018-01505 (Aug. 3, 2018) | | IPR2018-01444: 1-3, 5-11, 17-19, 21-27, 33-35, and 37-43 | Nov. 14, 2018 | Feb. 14, 2019 |
| | IPR2018-1506 (Aug. 10, 2018) | | | | |
| | | | IPR2018-01505: 49, 52-53, 55, 58-60, 63, 66-67, 69, 72-74, 77, 80-81, 83, and 86-88 | Dec. 11, 2018 | Mar. 11, 2019 |
| | | | IPR2018-1506: 49-51, 54, 56-57, 61-65, 68, 70-71, 75-79, 82, 84-85 and 89-90 | Dec. 11, 2018 | Mar. 11, 2019 |

| Asserted Patent | IPR No./Filing Date | Asserted Claims in District Court litigation per Amended Complaint | Challenged Claims in IPR | Preliminary Response Deadline | PTAB Institution Decision Deadline |
|---|---|---|---|---|---|
| 9,674,148 | IPR2018-01454 (Aug. 10, 2018) | 1-24[4] (direct) 1-8 (indirect) | 1-20 | Dec. 11, 2018 | Mar. 11, 2019 |
| 9,560,077 | IPR2018-01513 (Aug. 10, 2018) | 1-20 (direct) 1-6 and 19-20 (indirect) | 1-20 | Pending PTAB Notice | Pending PTAB Notice |
| 9,686,193 | IPR2018-01559 (Aug. 21, 2018) | 1-20 (direct) 1-17 and 20 (indirect) | 1-20 | Pending PTAB Notice | Pending PTAB Notice |
| 9,560,176 | IPR2018-01654 (Sept. 17, 2018)  IPR2018-01655 (Sept. 17, 2018) | 1-30 (direct) 1-10 (indirect) | 1-30  IPR2018-01654: 1, 4-7, 9-11, 14-17, 19-21, 24-27, and 29-30  IPR2018-01655: 1-3, 6, 8, 11-13, 16, 18, 21-23, 26, and 28) | Pending PTAB Notice  Pending PTAB Notice | Pending PTAB Notice  Pending PTAB Notice |
| 9,413,722 | IPR2018-01760 (Sept. 18, 2018) | 1-20 (direct) 1-25 (indirect) | 1-25 | Pending PTAB Notice | Pending PTAB Notice |

*See* McCloskey Decl., ¶¶ 2-10.

By statute, Centripetal has three months from the date the PTAB provides notice of a petition's filing date to file any preliminary response. *See* 37 C.F.R. § 42.107(b). The PTAB must

---

[4] Although the Amended Complaint alleges that "claims 1-24" of the '148 Patent are infringed (*see* D.I. 29, ¶ 328), in fact this patent has only 20 claims – all of which Cisco challenges in its IPR petition. *See* D.I. 29, Ex. 11; McCloskey Decl., ¶ 6.

decide whether to institute IPRs within three months after receiving any preliminary response or the last date for a preliminary response, if none is provided. *See* 35 U.S.C. § 314(b).

Here, Cisco filed its first IPR petition (regarding the '213 patent) on July 12, 2018, which the PTAB confirmed in a notice dated July 26, 2018. *See* McCloskey Decl., ¶ 2. Accordingly, Centripetal's preliminary response is due by October 26, 2018 and the PTAB must make its institution decision no later than January 28, 2019. *See id*. The preliminary responses and institution decisions as to the remaining petitions will be due on a rolling basis based on the date of PTAB notices confirming their filing dates, as identified in the above chart. *See id.,* ¶¶ 2-10. Based on the PTAB notices received to date, the pending IPR petitions will likely have institution decisions no later than March 2019. The PTAB is required to render final written decisions as to all challenged claims within 1 year of the date of institution. *See* 35 U.S.C. § 316(a)(11).

With respect to this litigation, the Court has not issued a scheduling order and the parties have not yet met and conferred on a discovery plan under Federal Rule 26. The parties have not conducted any discovery and the Court has not set a trial date or any other case deadlines.

## III.    ARGUMENT AND CITATIONS TO AUTHORITY

### A.    Legal Standard

Congress established the *Inter Partes* Review procedures in order to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." *Changes to Implement Inter Partes Review Proceedings*, 77 Fed. Reg. 157 (Aug. 14, 2012). To achieve this end, courts can employ their inherent power to stay district court litigations pending the resolution of IPR proceedings. *See Ethicon v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to enter a stay pending conclusion of a PTO reexamination.") (citations omitted).

In deciding whether to grant a stay, courts in this district weigh three main factors: "(i) the stage of the litigation, including whether discovery is complete and a trial date is scheduled, (ii) whether a stay would simplify the matters at issue, and (iii) whether a stay would unduly prejudice or clearly disadvantage the non-moving party." *See In re: TLI Commc'ns Inc. Patent Litig.*, No. 1:14-cv- 02534, 2014 WL 12615711, *1 (E.D. Va. Aug. 11, 2014) (granting stay of district court proceedings after filing of IPR petitions).

In the present case, all three factors weigh decisively in favor of a stay.

### B.    The Early Stage of this Litigation Favors a Stay

As this Court and others have recognized, stays early in the case are favored because of their potential effectiveness in conserving the parties' and the court's resources. *See Va. Innovation Sci., Inc. v. Samsung Elecs. Co. Ltd., et. al.,* Case No.: 2:14cv217, ECF No. 59, *4 (E.D. Va. Nov. 18, 2014) ("A stay pending IPR at the early stages of a lawsuit has the potential to save 'a significant amount of time and effort by all parties involved through a simplification of the issues presented.'") (citing *TLI Commc'ns,* 2014 WL 12615711, at *1); *VirtualAgility Inc. v. Salesforce.com, Inc*., 759 F.3d 1307, 1317 (Fed. Cir. 2014) (holding that early stage of litigation "heavily favors" a stay where joint claim construction statements had not been filed and eight months remained in the discovery period and thus case was "still at its infancy"). Generally, the time for assessing the stage of the litigation is when the stay motion is filed. *See VirtualAgility*, 759 F.3d at 1317.

Here, the early stage of this case strongly favors a stay. The Court has not held a scheduling conference or set a trial date and the parties have not exchanged any discovery of any kind. Indeed, the only activity in this case to date has been Centripetal's filing of its

Complaint and Amended Complaint, and Cisco's responsive 12(b)(6) motion testing the sufficiency of the Amended Complaint. Simply put, this case is in its infancy.

Courts in this district and elsewhere have granted stays in favor of post-grant review proceedings when cases were at similar early stages. For example, where discovery had not begun, and trial and a *Markman* hearing had not been set, another court in this district held the case to be "in its infancy," strongly favoring stay. *See Audio MPEG, Inc. v. Hewlett-Packard Comp.*, Civil Action No. 2:15cv73, 2015 WL 5567085, *4 (E.D. Va. Sept. 15, 2015). Notably, in *Audio MPEG*, like here, the moving party also sought a stay within days of filing its IPR petition, which the Court then granted, staying the litigation before the PTAB decided whether to institute the IPR. *See id.*, at *1, *6. Additionally, in *Virginia Innovation Sciences,* this Court granted a stay when the "case is at an early stage: discovery has barely begun—discovery is far from 'complete'—and no trial date has been set." Case No.: 2:14cv217, ECF No. 59, at *4. Recently, a court in this district granted a stay although trial and Markman hearings were scheduled and discovery had begun but remained "far from complete." *Sharpe Innovations, Inc. v. T-Mobile, USA, Inc.*, Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, *4 (E.D. Va. Jan. 10, 2018). Here, with discovery not begun and no case deadlines set, this case is clearly at a very early stage, which favors a stay.[5]

---

[5] There is ample authority for granting a stay even if this case were further along than it is now, as other courts have held. *See Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1374 (Fed. Cir. 2014) ("[a]lthough many documents and discovery requests had been exchanged," the "timing factor strongly favors a stay" where no witnesses had been deposed and expert discovery was seven months from closing); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 WL 116340, *3 (N.D. Cal. Jan. 13, 2014) (granting stay despite *Markman* order and with discovery nearly closed because "a substantial portion of the work— expert discovery, summary judgment, pre-trial preparation, and trial itself—lies ahead."); *Wi-LAN, Inc. v. LG, Elecs.*, Case No.: 3:17-cv-00358-BEN-MDD, 2018 WL 2392161, *1 (S.D. Cal. May 21, 2018) (finding that case was in its early stages where *Markman* briefs had been filed, and hearing was scheduled, but deadlines had not been set for close of discovery or trial); *Uniloc*

Further, in order to maximize potential simplification and to avoid wasting resources, courts regularly grant stays before the PTAB has decided whether to institute IPRs. *See e.g.*, *Sharpe Innovations, Inc.*, Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, at *6 ("this district does not disfavor stays before IPR is instituted, and this Court has granted a stay in many such instances"); *Va. Innovation Sci., Inc. v. Samsung Elecs. Co. Ltd., et. al.,* Case No.: 2:14cv217, ECF No. 59, at *5, n. 1 ("even though the PTO has not yet decided whether to grant the IPR petition, the Court concludes that a stay pending such decision is the better practice than allowing the parties to expend significant resources, potentially unnecessarily, pending the PTO's decision whether to grant the petition."); *In re: TLI Commc'ns Inc. Patent Litig.*, No. 1:14-cv- 02534, 2014 WL 12615711, at *1 (granting stay before institution in part because "an IPR, if initiated by the PTO, may eventually simplify, or indeed eliminate, some of the significant legal issues involved in this MDL proceeding"); *Wi-LAN, Inc.*, 2018 WL 2392161, at *1 (granting stay pending institution of IPRs); *Uniloc*, 2018 WL 2387855, at *4 ("the court finds that a stay is appropriate at least until the PTAB has determined whether to institute the IPRs"). Indeed, in granting pre-institution stays, courts here have stressed that "given the comparatively fast pace of litigation in this district, courts are generally mindful that, in the months leading up to PTAB's decision whether to grant IPR, the parties and the court would expend many resources in litigation that could be rendered unnecessary by the outcome of IPR." *Sharpe Innovations,* Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, at *6. Thus, a pre-institution stay is especially appropriate here given the potential to moot or limit issues in an otherwise expansive and unwieldy case.

---

*United States of America v. Apple*, Case No. 18-cv-00361-PJH, 2018 WL 2387855, *2 (N.D. Cal. May 25, 2018) ("Although the parties have incurred some costs, significant early litigation costs still remain that could be avoided by a stay, depending on the PTAB's decisions.").

This is particularly true, here, given the expansive scope of this case -- eleven patents and 321 asserted claims spanning multiple Cisco product families and services.  Discovery will entail substantial effort and burdens that, at this early stage, can still be avoided if a stay is granted. *See TLI Commc'ns,* 2014 WL 12615711, at *1 (holding that the "pace of discovery and other events in this Court would require a great deal of activity between now and [the PTO's decision regarding whether to institute an IPR proceeding], some of which may be rendered unnecessary if IPR is granted by the PTO and the issues are later simplified.") Indeed, Centripetal accuses a wide swath of Cisco products and services that "utilize Cisco's IOS XE 16.6 Networking Software, including but not limited to" its Catalyst Switches, ASR and ISR Series Routers, ASA with FirePOWER Services Products and its Stealthwatch products. *See* D.I. 29, ¶¶ 36-38. Discovery into the relevant functionalities and operation of each of these numerous products will be burdensome and expensive. Accordingly, under the circumstances and in view of the ample case authorities, the early stage of this litigation strongly favors a stay until the pending IPR petitions are resolved.

### C.     A Stay Will Greatly Simplify the Issues for Trial

Cisco has asked the PTAB to institute IPRs with respect to all asserted claims in nine of the eleven Asserted Patents in this case. *See* McCloskey Decl., ¶¶ 2-10; D.I. 29. Cisco has thus challenged 272 or 85% of the 321 asserted claims in the pending IPRs. *See* McCloskey Decl., ¶¶ 2-10; D.I. 29. While institution is not guaranteed, the historical data nonetheless reflects a high likelihood that the PTAB will institute IPRs and that at least a significant number of the 272 challenged claims will be cancelled. *See* McCloskey Decl., Ex. A [PTAB trial stats]. Even with institution rates statistically trending down in recent years, the overall institution rates over the past five years are 62% and even higher (68%) for patents in the computer and electrical category (such as the patents here). *See id.*, at 7, 8. For the petitions

that reach written decision, 81% have resulted in all or some claims being cancelled. *See id.*, at 11. Thus, there is a strong statistical probability that nearly all or at least a substantial number of the asserted claims and associated issues will be resolved by the IPRs, which will simplify this case, narrow its immense scope and reduce the burden on the Court and the parties without the need for any litigation here. *See Univ. of Va. Patent Found. v. Hamilton Co.,* Civil Action No. 3:13–cv–00033, 2014 WL 4792941, *2 (E.D. Va. 2014) ("granting a stay pending IPR may simplify, or even eliminate, many issues before the court, whereas denying the stay may result in duplicative efforts in two venues.").

Further, while the vast majority of the asserted claims are now subject to IPRs (85%), "it is of no moment that not all of the asserted claims" are under review or may not be cancelled. *See Evolutionary Intelligence, LLC v. Livingsocial, Inc.*, No. 13-CV-04205-WHO, 2014 WL 2735185, *2 (N.D. Cal. Jun. 16, 2014). Because such a substantial number of the asserted claims are now at issue in Cisco's IPR petitions, the IPR proceedings are highly likely to streamline this case once the PTAB has issued any final written decisions. The claims may also be "amended or clarified" through the IPR proceeding, which would also have a significant impact on the issues to be litigated in this case. *See id.*; *see also Evolutionary Intelligence, LLC v. Millenial Media, Inc.*, No. 5:13-CV-04206-EJD, 2014 WL 2738501, *4 (N.D. Cal. June 11, 2014) (holding that "a stay is not contingent upon IPR resolving every issue in this action.")

Moreover, the Supreme Court has now held that the PTAB must address all challenged claims, regardless of whether it determines there is a reasonable likelihood that the petitions will prevail in establishing their invalidity. *See SAS Inst, Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018). This ruling amplifies the benefits of a stay and means that, "if IPR is instituted, the PTO will either (1) invalidate the asserted claims and reduce the number of issues before this Court, or (2)

find the claims valid, in which case [the challenging party] will be estopped from asserting those invalidity contentions" in district court. *Wi-LAN, Inc.*, 2018 WL 2392161, at *1 (granting stay pending institution of IPRs). Indeed, even before *SAS Inst.*, courts here recognized the potential simplification that will occur through operation of statutory estoppel if the PTAB declines to cancel instituted claims. *See* 35 U.S.C. § 315(e)(2); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2017 U.S. Dist. LEXIS 96909, *8 (E.D. Va. Jun. 9, 2017) (granting stay, noting that invalidity issues resolved by the PTAB will not be re-litigated in court). Thus, the completion of the IPRs can have the intended streamlining effect on this litigation, regardless of their outcomes.

In addition, beyond narrowing claims and issues, the IPRs can have further salutary effects on judicial economy in this litigation as well. For example, the PTAB's claim construction determinations and other statements will form part of the prosecution history for these patents that can help to "assist" this Court's claim construction analysis. *See In re: TLI Commc'ns Inc. Patent Litig.*, No. 1:14-cv- 02534, 2014 WL 12615711, at *2; *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) (holding that "statements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer.")

### D. Granting a Stay Would not Unduly Prejudice Centripetal

Centripetal will not be unduly prejudiced by a stay for several reasons.

First, the delay associated with the IPRs is statutorily limited and cannot itself constitute a basis for undue prejudice. *See Personal Web*, 2014 WL 116340, at *5 ("a delay inherent to a stay does not constitute, by itself, undue prejudice.") (citations omitted.)  As courts here have explained, "the statutory time constraints on IPR proceedings limit the extent of prejudice to the non-movant, particularly where a stay would not diminish the amount of monetary damages

recoverable by the plaintiff." *Sharpe Innovations*, Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, at *7. If Centripetal has claims to pursue after the IPRs are resolved, a stay will not limit its ability to recover damages, provided it can show infringement. *See NTP, Inc. v. T-Mobile USA, Inc.*, No. 3:07-CV-548, 2007 WL 3254796, at *3 (E.D. Va. Nov. 2, 2007) ("By filing these suits, [plaintiff] is eligible to recover damages for any infringement of the patents-at-issue that occurs while reexamination is proceeding.")

Second, Centripetal's own actions undermine any claim that it would suffer undue prejudice from a stay. To begin with, except for the recently added '856 patent, Centripetal did not file suit until between 1 and 3 years from the date the Asserted Patents issued. *See* D.I. 29, ¶¶ 11-34; Exs. 2-11, 49; D.I. 38, Appendix A (showing date of issuance of the Asserted Patents). Centripetal's delay in filing suit shows any claim of undue prejudice resulting from staying this litigation is unfounded. *See VirtualAgility*, 759 F.3d at 1319 (noting that plaintiff's delay of "nearly a year" in filing suit after patent issued weighed against a finding of undue prejudice); *Sharpe Innovations*, Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, at *7 (5 year delay in bringing lawsuit indicated lack of undue prejudice). In addition, Centripetal has not sought a preliminary injunction, a factor that the Federal Circuit has held can indicate a lack of undue prejudice. *See VirtualAgility*, 759 F.3d at 1319.

Third, Cisco has not unreasonably delayed filing its IPRs or otherwise sought an improper tactical advantage in seeking a stay. Quite the opposite. Cisco began filing its fourteen IPR petitions covering nine patents approximately four months after Centripetal filed this suit, and less than three months from when Centripetal amended its complaint to add an eleventh patent. *See* McCloskey Decl., ¶ 2; D.I. 1, 29. Courts have found such a period reasonable even when far fewer IPR petitions were at issue. In *Sharpe Innovations*, the Court found that the

movant "showed reasonable diligence in preparing its IPR petitions" when it filed two petitions within four months after the lawsuit was filed. *See* Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, at *8; *see also VirtualAgility*, 759 F.3d at 1319 (finding no dilatory motive where movant filed single IPR petition four months after lawsuit filed and moved to stay "almost immediately after"). Considering the scope and complexity of Cisco's numerous IPR petitions, including the large number of asserted patents and claims, Cisco has moved as expeditiously as possible to file them and seek a stay.

In sum, Cisco has acted reasonably and diligently to file IPRs and seek a stay. Centripetal will not suffer undue prejudice from a stay. Thus, this factor weighs strongly in favor of staying this case pending the resolution of IPRs concerning the Asserted Patents.

## IV.    **CONCLUSION**

For the foregoing reasons, Cisco respectfully requests that the Court grant this Motion, and to stay this case pending resolution of Cisco's IPR proceedings.

CISCO SYSTEMS, INC.

By */s/ Dabney J. Carr, IV*
Of Counsel

Dabney J. Carr, IV, VSB No. 28679
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

Louis N. Jameson (admitted pro hac vice)
Matthew C. Gaudet (pro hac vice pending)
John R. Gibson, VSB No. 72968
Jennifer H. Forte (admitted pro hac vice)
**DUANE MORRIS, LLP**
1075 Peachtree Street, N.E., Suite 2000
Atlanta, Georgia 30309-3929

Telephone: (404) 253-6900
Facsimile: (404) 253-6901
wjameson@duanemorris.com
jrgibson@duanemorris.com
jhforte@duanemorris.com


Joseph A. Powers (admitted pro hac vice)
**DUANE MORRIS, LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 689-3797
japowers@duanemorris.com

Daniel T. McCloskey (admitted pro hac vice)
**DUANE MORRIS, LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650-847-4150
Facsimile: 650-523-4780
dtmccloskey@duanemorris.com

Christopher J. Tyson, VSB No. 81553
**DUANE MORRIS, LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
cjtyson@duanemorris.com

*Counsel for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2018, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to the following:

> Kevin M. O'Donnell
> Jeffery T. Martin, Jr.
> HENRY & O'DONNELL, P.C.
> 300 N. Washington Street – Suite 204
> Alexandria, VA 22314
> kmo@henrylaw.com
> jtm@henrylaw.com
>
> Paul J. Andre
> Lisa Kobialka
> James Hannah
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 990 Marsh Road
> Menlo Park, CA 94025
> pandre@kramerlevin.com
> lkobialka@kramerlevin.com
> jhannah@kramerlevin.com

> _/s/  Dabney J. Carr, IV_
> Dabney J. Carr, IV (VSB No. 28679)
> **TROUTMAN SANDERS** LLP
> 1001 Haxall Point
> Richmond, VA 23219
> Telephone:  (804) 697-1200
> Facsimile:  (804) 697-1339
> dabney.carr@troutmansanders.com
>
> _Counsel for Defendant Cisco Systems, Inc._