# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC., | ) |
| Plaintiff, | ) No. 2:18-cv-00094-MSD-LRL |
| vs. | ) |
| CISCO SYSTEMS, INC., | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF CENTRIPETAL NETWORKS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO STAY**

# TABLE OF CONTENTS

                                                                                                                **Page**

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS ....................................................................................................2

III. ARGUMENT .........................................................................................................................4

        A. The IPR Petitions Are Unlikely to Materially Simplify the Issues for Trial ...........4

        B. Granting a Stay Would Be Highly Prejudicial to Centripetal .................................9

        C. The Early Stage of the IPR Petitions Weighs Against a Stay ................................12

        D. At Most, the Court Should Defer Resolution of This Motion Until the PTAB Decides if it Will Institute Review ...............................................................13

IV. CONCLUSION ....................................................................................................................13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*,
   No. 15-156-LPS-CJB, 2016 WL 558615 (D. Del. Feb. 11, 2016) ...........................................7

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*,
   C.A. No. 6:12-cv-1727, 2013 WL 1969247 (M.D. Fla. May 13, 2013)...................................9

*Aventis Pharma Deutschland GMBH v. Lupin Ltd.*,
   403 F. Supp. 2d 484 (E.D. Va. 2005) .....................................................................................9

*Card-Monroe Corp. v. Tuftco Corp.*,
   No. 1:14-CV-292, slip op. ECF No. 46 (E.D. Tenn. Feb. 19, 2015) ......................................10

*Chrimar Sys., Inc. v. Adtran, Inc.*,
   No. 6:15-cv-618-JRG-JDL, 2016 WL 4080802 (E.D. Tex. Aug. 1, 2016) ..............................8

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
   CA No. 2:15-cv-21, 2015 WL 2454296 (E.D. Va. May 21, 2015) .............................11, 12, 13

*Continental Automotive Sys. Inc. v. Hamaton Automotive Tech. Co.*,
   2:16-cv-226, Dkt. No. 63 (E.D. Va. Feb. 7 2017) ...................................................................5

*Credit Card Fraud Control Corp. v. Maxmind, Inc.*,
   3:14-cv-03262-M, 2015 WL 1879747 (N.D. Tex. April 24, 2015)..........................................6

*Davol, Inc. v. Atrium Medical Corp.*,
   C.A. No. 12-cv-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013).............................3, 10

*Drink Tanks Corp. v. GrowlerWerks, Inc.*,
   No. 3:16-cv-410-SI, 2016 WL 3844209 (D. Ore. Jul. 15, 2016)........................................8, 11

*EHS Lens Philippines, Inc. v. Essilor Int'l*,
   3:16-cv-00563-JAG, Dkt. No. 33 (Sept. 22, 2016).................................................................12

*ePlus, Inc. v. Lawson Software, Inc.*,
   No. 3:09-cv-620, 2010 WL 1279092 (E.D. Va. Mar. 31, 2010)..............................................11

*Hewlett-Packard Co. v. Servicenow, Inc.*,
   No. 14-cv-00570 (BLF), 2015 WL 1737920 (N.D. Cal. April 9, 2015).................................10

*Landis v. North American Co.*,
   299 U.S. 248 (1936)................................................................................................................4

*Magna Elecs., Inc. v. Valeo, Inc.*,
   No. 14-10540, 2015 WL 10911274 (E.D. Mich. Sept. 30, 2015) ............................................8

*Procter & Gamble Co. v. Team Techs., Inc.*,
   No. 1:12-cv-552, 2013 WL 4830950 (S.D. Ohio Sept. 10, 2013) .....................................9, 10

*Rennsselaer Polytechnic Institute v. Apple, Inc.*,
   No. 1:13-CV-0633 (DEP), 2014 WL 201965 (N.D.N.Y. Jan. 15, 2014) .........................4, 6, 8

*RR Donnelley & Sons Co. v. Xerox Corp.*,
   No. 12-cv-6198, 2013 WL 6645472 (N.D. Ill. Dec. 16, 2013)..................................................8

*SAGE Electrochromics, Inc. v. View, Inc.*,
   No. 12-cv-06441-JST, 2015 WL 66415 (N.D. Cal. Jan. 5, 2015) ............................................8

*SAS Institute, Inc. v. Iancu*,
   138 S.Ct. 1348 (2018) ..............................................................................................................6

*Segin Sys., Inc. v. Stewart Title Guaranty Co.*,
   30 F. Supp. 3d 476 (E.D. Va. 2014) ...............................................................................4, 8, 10

*SenoRx, Inc. v. Hologic, Inc.*,
   No. 12-173-LPS-CJB, 2013 WL 144255 (D. Del. Jan. 11, 2013)..........................................11

*Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*,
   No. 3:09-c-v791, 2010 WL 1946262, at *2 (E. D. Va. May 10, 2010) ...................................9

*TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*,
   No. 13-CV-02218-JST, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013)...................................4

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
   No. 13-cv-00346 (BBC), 2013 WL 6044407 (W.D. Wis. Nov. 14, 2013).............................10

*United Pet Group, Inc. v MiracleCorp Prods.*,
   No. 4:12CV00440, 2012 WL 2458539 (E.D. Mo. Jun. 27, 2012)..........................................11

*Universal Elecs. v. Universal Remote Control, Inc.*,
   Case No. SACV 12–00329 AG(JPRx),  2013 WL 1876459
   (C.D. Ca. May 2, 2013)..........................................................................................................10

*Unwired Planet, LLC v. Square, Inc.*,
   No. 3:13-cv-00579-RCJ-WGC, 2014 WL 4966033 (D. Nev. Oct. 3, 2014)............................8

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
   983 F. Supp. 2d 713 (E.D. Va. 2014) .......................................................................................3

*Virtual Agility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307, 1315 (Fed. Cir. 2014) ...................................................................................13

*Willford v. Armstrong World Industries, Inc.*,
  715 F.2d 124 (4th Cir. 1983) ....................................................................................4

**Statutes**

35 U.S.C. § 101 ..............................................................................................................6

35 U.S.C. § 141(c) .........................................................................................................3

35 U.S.C. §§ 311(b), 315(e)(2) .....................................................................................5

35 U.S.C. § 314(a) .........................................................................................................5

35 U.S.C. § 325(d) .........................................................................................................5

**Other Authorities**

37 C.F.R. §§ 42.100(c), 42.200(c) and 42.300(c) .........................................................3

I.     INTRODUCTION

The Court should deny Defendant Cisco Systems, Inc.'s Motion to Stay.  Cisco seeks a stay based on speculation that the PTAB *might* institute a trial on its petitions for *inter partes* review ("IPR") and speculation that such institution *might* result in simplification of the issues in this case.  While there is a wide range of possible outcomes from Cisco's IPRs, none will remove invalidity from the case.  Several of Plaintiff Centripetal Networks, Inc.'s asserted patents are not even the subject of IPRs, and there is no guarantee that the PTAB will institute any of the IPRs, let alone invalidate any claims.  Cisco is asking the Court to join in its speculation and stay this case based on an end result Cisco hopes to obtain years down the road.  The absence of any concrete benefit from a stay is alone good reason for the Court to deny Cisco's Motion.

Staying the case, particularly now when it is unclear if the PTAB will institute review on any, let alone a significant number, of the petitions, would be highly prejudicial to Centripetal.  Centripetal filed this case in February 2018, and eight months in, it has yet to proceed to a scheduling conference.  Centripetal is seeking to stop its competitor Cisco from infringing and requests a permanent injunction.

Granting a stay now will introduce, at a minimum, another half year of delay — this is the scenario where the PTAB does not institute any IPRs, in which case no simplification at all will be achieved.  If some of the IPRs are granted, staying the case until they and the inevitable appeals to the Federal Circuit are concluded, could delay the progression of this case three years (assuming there is no remand from the Federal Circuit that prolongs the proceedings before the PTAB).  Yet even in the very unlikely event that Cisco prevails on every single one of its IPRs (a near zero chance based on the very statistics that Cisco relies upon), the case would still proceed to resolve infringement and validity of Centripetal's other asserted patents.  Thus, the prejudice from delay is not offset by any countervailing potential for meaningful simplification.

1

To the extent the Court does not deny Cisco's Motion outright, at a minimum, it should set a scheduling conference so that the parties begin to make progress in resolving this dispute, and defer resolution of the motion until the PTAB determines if it will grant Cisco's petitions. The PTAB will begin issuing institution decisions in three months and will conclude that process in six. At such time, the Court can revisit Cisco's request with a much clearer picture as to the potential impact of Cisco's IPRs.

Accordingly, and as discussed below, Centripetal respectfully requests that the Court deny or, at least, defer Cisco's Motion and allow Centripetal to "secure the just, speedy, and inexpensive determination" of its patent infringement claims. Fed. R. Civ. Proc. 1.

## II.     STATEMENT OF FACTS

Centripetal is an innovative leader in the field of network security. Dkt. No. 1 at ¶ 1. Centripetal has invented core networking technologies that meet the scale of the cyber threat intelligence challenge. *Id.* The USPTO awarded Centripetal numerous patents, including the asserted patents, enabling its key technological advances in the network security area. *Id.* Among Centripetal's products is its Centripetal's Threat Intelligence Gateway Solution, which can be deployed to protect computer networks by filtering network traffic without affecting network performance. Ex. 1 (Centripetal Networks Threat Intelligence Gateway White Paper) at 7-8. Cisco competes with Centripetal by selling next-generation firewalls that "offer traffic filtering based upon threat intelligence." *Id.* at 5.

On February 13, 2018, Centripetal filed its Complaint in this action alleging Cisco's infringement of ten of its patents (U.S. Patent Nos. 9,686,193, 9,560,176, 9,560,077, 9,413,722, 9,203,806, 9,160,713, 9,124,552, and 9,565,213, 9,137,205, and 9,674,148) based on Cisco's deliberate copying of Centripetal's patented technologies. Dkt. No. 1. One month later, after the

USPTO issued U.S. Patent No. 9,917,856, Centripetal filed an Amended Complaint adding claims of infringement of the '856 Patent. Dkt. No. 29.

Cisco knew about Centripetal's patented technology at least as early as 2016. Dkt. No. 1 at e.g., ¶¶ 90-92, 120-122. Despite this, Cisco waited five months before filing IPRs against four of the eleven asserted patents. Dkt. No. 46 (Cisco's Brief, "Br.") at 3-4. Cisco filed additional IPRs one month later (six months after the commencement of this action), and the balance of its IPRs last month (seven months after Centripetal filed suit).

Centripetal's preliminary responses to Cisco's earliest filed IPRs are due this month, and it will respond to all of Cisco's IPRs by the end of the year. Br. at 3-4. The PTAB will begin issuing institution decisions in January 2019, and will finish doing so in March 2019. *Id.* Should trial be instituted, the proceedings will not reach a final written decision from the PTAB until March 2020, with extensions available to the PTAB until September 2020. 37 C.F.R. §§ 42.100(c), 42.200(c) and 42.300(c). After that, the parties may appeal the PTAB's decisions to the Federal Circuit, which can take more than an additional year to conclude, extending into 2021. 35 U.S.C. § 141(c); *see, e.g.*, *Davol, Inc. v. Atrium Medical Corp.*, C.A. No. 12-cv-958-GMS, 2013 WL 3013343 at *6 (D. Del. June 17, 2013) (recognizing that an appeal beyond the initial 18-month period set forth for IPR review can drag the process out into multiple years); *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 713, 753 (E.D. Va. 2014) ("IPR can take [up to] two years before the PTO, and an appeal to the Federal Circuit can extend that timeline further.") (quotation omitted).

In contrast to the drawn out timetable for the resolution of Cisco's IPRs, patent cases in this District are swiftly and efficiently administered. According to current statistics, the median time-to-trial for patent cases in this District is 14.7 months. Ex. 2 (Docket Navigator statistics).

Thus, a stay pending the conclusion of all IPRs and associated appeals could extend to twice the expected length of this action, and delay the final resolution of this action into 2022.

### III.     ARGUMENT

Cisco's Motion should be denied because it has not carried its burden to justify a stay by "clear and convincing circumstances," *Willford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 127 (4th Cir. 1983), nor made a showing of a "clear case of hardship or inequity in being required to go forward" at this time. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Segin Sys., Inc. v. Stewart Title Guaranty Co.*, 30 F. Supp. 3d 476, 479 (E.D. Va. 2014) (movant bears the burden of establishing that a stay is warranted). "There is no per se rule that patent cases should be stayed pending reexaminations, because such a rule would invite parties to unilaterally derail litigation." *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, No. 13-CV-02218-JST, 2013 WL 6021324, at *2 (N.D. Cal. Nov. 13, 2013) (citations omitted).

The following factors when applied to the facts of this case dictate that a stay is not warranted: (1) the minimal potential for the stay to simplify the issues of the case; (2) that the stay would unduly prejudice Centripetal, the non-moving party, in its efforts to stop its competitor Cisco from infringing; and (3) the early stage of the IPR proceedings. *Rennsselaer Polytechnic Institute v. Apple, Inc.*, No. 1:13-CV-0633 (DEP), 2014 WL 201965, at *3 (N.D.N.Y. Jan. 15, 2014).

#### A.     The IPR Petitions Are Unlikely to Materially Simplify the Issues for Trial

The Court should deny the Motion because a stay is unlikely to simplify the issues for trial. *Segin*, 30 F. Supp. 3d at 481 ("The critical question, however, is not whether PTAB review would simplify the issues in question, but whether a stay of this action would do so."). As the Court explained in declining to stay under similar circumstances, "[a]t this stage, the Court cannot

4

predict the impact of a stay because it is unknown whether PTAB will institute post grant review." Ex. 3 (*Continental Automotive Sys. Inc. v. Hamaton Automotive Tech. Co.*, 2:16-cv-226, Dkt. No. 63 at * 5 (E.D. Va. Feb. 7 2017)). Cisco's argument regarding simplification of the issues is speculative at best, and not a compelling reason to put the progression of this already long-pending case on hold.

*First*, there is no guarantee that the PTAB will grant any of Cisco's IPR petitions (let alone all of them). Before the PTAB will institute an IPR, Cisco must show a "reasonable likelihood that [it] will prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). Some of Cisco's IPRs rely heavily on prior art that was already before the PTO during prosecution of the patents, making it even more unlikely that the petitions will be successful because the "same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d). As just one example, IPR2018-01386, filed against U.S. Patent No. 9,565,213 recycles the Narayanaswamy and Kapoor references that the USPTO already considered extensively during original prosecution in allowing the claims to issue. Ex. 4 (IPR2018-01386) at 18-19.

*Second,* under no circumstances can Cisco's IPRs resolve all of its invalidity defenses. Cisco has not filed IPR petitions against two of Centripetal's asserted patents, and would be free to challenge the validity of those patents once a stay was lifted no matter the outcome. Moreover, even as to the other patents, statutory estoppel applies only to grounds for invalidity that Cisco raised or "could have raised," and IPRs address invalidity "only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. §§ 311(b), 315(e)(2). The scope of any estoppel therefore would not prevent Cisco from presenting a second wave of invalidity challenges in this action based on arguments that Centripetal's patents are unenforceable or

invalid for (1) not being directed to patentable subject matter under 35 U.S.C. § 101; (2) indefiniteness; (3) lack of written description; (4) non-enablement; or (5) in view of public use or on sale prior art outside of the scope permitted in IPRs. Cisco thus asks the Court to permit it to stall these proceedings for upwards of three years to challenge validity, and then extensively litigate validity again once the case resumes.

This impossibility of resolution of validity issues weighs heavily against a stay. *Rensselaer Polytechnic Inst.*, 2014 WL 201965 at *7 (noting that, in view of the limits of estoppel, "it is not at all clear whether the process will, in fact, simplify any of the issues in this action."); *Credit Card Fraud Control Corp. v. Maxmind, Inc.*, 3:14-cv-03262-M, 2015 WL 1879747 at *3 (N.D. Tex. April 24, 2015) (holding that the "prospects of simplification are speculative" and "hypothetical" because not all of the invalidity defenses raised in the litigation will be reviewed by the PTAB even if IPR trials are instituted).

*Third,* Cisco relies heavily on statistics from the PTAB to support its Motion, but those statistics, to the extent they even apply to the particular patents and petitions at issue here, only confirm the unlikelihood that the IPRs will meaningfully impact the case. As Cisco itself acknowledges, the PTAB's IPR institution rate is in decline, and this is expected to continue with the Supreme Court's recent ruling that the PTAB must institute review on all challenged claims or none at all. Br. at 10 (noting "institution rates [are] statistically trending down in recent years"); *SAS Institute, Inc. v. Iancu,* 138 S.Ct. 1348 (2018); Ex. 5 (PTAB Institution Decisions in the Wake of *SAS*) (reporting the PTAB's institution rate has fallen to 56% since *SAS,* "This suggests that the PTO may be applying a more exacting standard for institution and/or more frequently exercising its discretion not to institute").

6

Even under Cisco's statistics, which go back to 2012 when the institution rates were much higher than today (87% as compared to 62% for 2018 and 56% post-*SAS*), less than 25% of petitions filed result in a final written decision, and in 35% of those cases some or all claims survive review. Dkt. No. 46-2 at 6 (PTAB status of petitions), 4 (showing decline in institution rates). Thus, only about 16% of petitions result in cancellation of all claims, with the more recent rate even lower. With Centripetal having asserted 11 patents in this action, only 9 of which are the target of IPR petitions, it is very unlikely that Cisco's IPRs will result in a significant reduction of the number of patents at issue in this case. If the PTAB does not first institute trial in a significant number of the IPRs and then invalidate a significant number of claims, then the issues may not be simplified *at all*. Instead, this case will have been needlessly delayed without any meaningful simplification.

One Court explained how the downward trend in IPR institution rates has made it less inclined to grant stays:

> as time has passed since the new IPR process was instituted, the Court has become less and less sure about the merit of granting a stay in favor of an IPR proceeding, when the PTAB has not even weighed in on whether to institute review. As compared to the results from IPR institute decisions in 2013 (when the PTAB was granting review to 'nearly all' of the IPR petitions on which it had then issued decisions), . . . more recent data suggests that review is being instituted in far fewer cases. . . . . ***The more that the statistical likelihood of the PTAB instituting review on any petition seems less like 'near certainty' and more like 'fair probability,' the less reasonable it seems to stop a district court proceeding after it has started***—only to perhaps be required to start it up again later if the PTAB issues an unfavorable decision to the petitioner. A court's interest in efficiently managing its docket—and in making one good decision at one point when the key data is at hand—can be undermined by that type of "start and stop" process.

*Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*, No. 15-156-LPS-CJB, 2016 WL 558615, at *2 (D. Del. Feb. 11, 2016) (emphasis added).

Accordingly, guessing whether the PTAB will institute IPR on Cisco's petitions and the potential impact of this action is speculative. Many courts, including this one, have relied on this fact to deny a motion for a stay before the PTAB issues institution decisions, as is the case here. *See, e.g.*, *Segin Sys.*, 30 F. Supp. 3d at 481 ("At this stage, it is difficult to predict the impact of a stay because it is completely unknown whether or not that review will occur."); *Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-cv-618-JRG-JDL, 2016 WL 4080802, *3 (E.D. Tex. Aug. 1, 2016) ("Because the PTAB has not granted any of the petitions, Defendants' assertion that the PTAB will invalidate the claims of the patent . . . is purely speculative."); *Unwired Planet, LLC v. Square, Inc.*, No. 3:13-cv-00579-RCJ-WGC, 2014 WL 4966033, at *4 (D. Nev. Oct. 3, 2014) ("Before the PTAB has decided whether to grant a petition for review, however, it is very difficult to assess whether a stay would simplify the issues or reduce the burden of litigation."); *Drink Tanks Corp. v. GrowlerWerks, Inc.*, No. 3:16-cv-410-SI, 2016 WL 3844209, at *4 (D. Ore. Jul. 15, 2016) ("Other courts deny a motion to stay as premature if the PTO has not yet granted a petition for review . . ."; this "approach . . . [is] the one chosen by the majority of courts that have considered the issue."); *SAGE Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST, 2015 WL 66415, at *3 (N.D. Cal. Jan. 5, 2015) ("[T]he uncertainty surrounding whether the PTO will elect to institute IPR proceedings weighs against a finding of likelihood of simplification of the issues."); *Magna Elecs., Inc. v. Valeo, Inc.*, No. 14-10540, 2015 WL 10911274, at *1 (E.D. Mich. Sept. 30, 2015) ("A motion to stay for the duration of IPR proceedings is premature since review by the PTO is speculative."); *Rensselaer Polytechnic Inst.*, 2014 WL 201965, at *7 ("I find that whether any issues attendant to this litigation may be simplified through the IPR process is speculative primarily in light of the fact that the PTO has yet to accept or deny Apple's petitions for further review."); *RR Donnelley & Sons Co. v. Xerox*

*Corp.*, No. 12-cv-6198, 2013 WL 6645472, at *3 (N.D. Ill. Dec. 16, 2013) ("[T]he Court finds Xerox's assumption that the PTO will grant its petitions based solely on statistics too speculative."); *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, C.A. No. 6:12-cv-1727, 2013 WL 1969247, *3 (M.D. Fla. May 13, 2013) ("[A] stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed in the USPTO.").

Accordingly, the low likelihood that the IPRs will meaningfully impact the scope of this case and impossibility that the IPRs will ever fully resolve the validity issues weighs heavily against a stay.

    **B.    Granting a Stay Would Be Highly Prejudicial to Centripetal**

Staying this action would be highly prejudicial to Centripetal. Centripetal filed this case in February 2018, and is prepared to expeditiously litigate it through to conclusion. Centripetal seeks an injunction to restrain competitor Cisco from further infringement. Dkt. No. 1 at 134 (Prayer For Relief). A delay of up to three years that cannot under any circumstances resolve the parties' dispute will be highly prejudicial to Centripetal's efforts to timely put an end to Cisco's infringement. Indeed, this Court has stated that it "is of the firm belief that justice delayed is justice denied." *Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 491 (E.D. Va. 2005). Therefore, a district court "must tread carefully in granting a stay of proceedings, since [Centripetal] has a right to a determination of its rights and liabilities without undue delay." *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2013 WL 4830950, at *1 (S.D. Ohio Sept. 10, 2013) (internal quotations and citations omitted).

Congress created IPR procedures to be a cheaper and faster alternative to traditional litigation; not a more expensive delay to a patentee's ability to secure a speedy determination of its rights, which would be the case here if the Court were to stay this case. *Sunbeam Prods., Inc.*

9

*v. Hamilton Beach Brands, Inc.*, No. 3:09-c-v791, 2010 WL 1946262, at *2 (E. D. Va. May 10, 2010) ("'Judicial efficiency,' a central concern when considering a motion to stay, has a temporal component and mandates that the matter be decided at the earliest possible time.") (internal citation and quotation marks omitted); *Segin Sys. Inc.*, 30 F. Supp. 3d at 482 (noting that if a Court in this District granted a stay prior to the PTAB's decision, "the established trial date would undoubtedly be significantly delayed, even if the PTAB ultimately declined to review the case and the Court lifted the stay at that point.").

A heavy majority of the cases considering whether to stay litigation between direct competitors pending the *possible* institution of an IPR, as is the case here, have declined to do so. *See, e.g., Procter & Gamble Co.*, 2013 WL 4830950, at *2 (denying motion to stay pending IPR where the parties were direct competitors); *Hewlett-Packard Co. v. Servicenow, Inc.*, No. 14-cv-00570 (BLF), 2015 WL 1737920, at *2-3 (N.D. Cal. April 9, 2015) ("The Court is reluctant to derail an infringement action by a patentee against a direct competitor when, as here, the Court can only speculate as to whether the PTAB will institute IPR or CBM review."); *accord Card-Monroe Corp. v. Tuftco Corp.*, No. 1:14-CV-292, slip op. ECF No. 46 (E.D. Tenn. Feb. 19, 2015); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-00346 (BBC), 2013 WL 6044407, at * 3-4 (W.D. Wis. Nov. 14, 2013) (denying stay requested by competitor); *Davol, Inc.*, 2013 WL 3013343, at *3-5 (same); *Segin Sys., Inc.*, 30 F.Supp. 3d at 481 (same).

Cisco's argument that there is no prejudice because Centripetal did not seek a preliminary injunction is without merit. *Universal Elecs. v. Universal Remote Control, Inc.*, Case No. SACV 12–00329 AG(JPRx), 2013 WL 1876459 at *6 (C.D. Ca. May 2, 2013) ("[t]he fact that Plaintiff did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in a case."). Recognizing that a

motion to stay is a tactical decision, "most courts . . . will not hold against [the patentee] its decision to spare the parties more litigation [in the form of a motion for preliminary injunction]." *Drink Tanks Corp.*, 2016 WL 3844209, at*6 (internal quotations omitted, modifications in original). "[I]n some cases, the failure to seek a preliminary injunction could well be related to other factors (such as the high burden on must face to obtain a preliminary injunction and the difficulty in doing so without first having access to substantial discovery) and thus might not shed much light on the amount of prejudice the non-moving party will face from a stay." *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *8 (D. Del. Jan. 11, 2013). To hold that the absence of a motion for preliminary injunction shows an absence of "undue prejudice" confuses that standard related to consideration of staying a litigation with the "irreparable harm" standard for a preliminary injunction. *See, e.g.*, *United Pet Group, Inc. v MiracleCorp Prods.*, No. 4:12CV00440, 2012 WL 2458539, at *3 (E.D. Mo. Jun. 27, 2012) ("Irreparable harm, however, is not the standard in the present context . . . .").

Finally, Cisco fails to demonstrate the requisite "clear case of hardship or inequity in being required to go forward" with the litigation. *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2010 WL 1279092, at *2 (E.D. Va. Mar. 31, 2010). Cisco does not identify any prejudice to it if the case proceeds without a stay. As discussed above, there is no possibility that the IPRs will fully resolve the parties' dispute, or even Cisco's defense of invalidity. Thus, no matter the outcome of its IPRs, Cisco must answer to Centripetal's infringement claims, either now, or when the stay is lifted after the conclusion of the IPRs. This Court has found that a defendant's delay of even three months to seek IPR is evidence that there is not a compelling need for a stay — and, here, Cisco waited five months to start filing IPRs and did not complete its IPR filings and move for a stay for seven months. *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,

11

CA No. 2:15-cv-21, 2015 WL 2454296 at *3 (E.D. Va. May 21, 2015) ("Considering the timing of Defendants' Motion, in so far as … Defendants' decision to wait nearly three months from the commencement of this litigation before seeking IPR. it is difficult to accept Defendants' argument that efficiency and costs would be served by staying this action pending a decision by the PTAB.")

Accordingly, the prejudice to Centripetal from a stay and the absence of prejudice to Cisco from continuing without a stay weigh heavily against staying this case.

### C. The Early Stage of the IPR Petitions Weighs Against a Stay

The stage of the proceedings at issue weighs against a stay. While the Court has not yet held a scheduling conference or set a date for trial, the case has been pending for eight months, and Cisco already responded to Centripetal's Complaint six months ago, leaving the case ripe to quickly proceed into discovery and trial in 2019, given this District's average time to trial of under a year and a half. Dkt. No. 37 (Cisco's April 13, 2017 Motion to Dismiss). In contrast, the PTAB has yet to even decide if it will initiate the IPRs upon which Cisco hangs its Motion and, as discussed above, appeals in any instituted IPRs will likely not be concluded until 2020. Staying this action until that time, would triple the likely length of resolution of this action. Under similar circumstances, this Court declined to stay a case while the PTAB decided if it would institute review. Ex. 6 at 2 (*EHS Lens Philippines, Inc. v. Essilor Int'l,* 3:16-cv-00563-JAG, Dkt. No. 33 (Sept. 22, 2016)) ("while this case is in its infancy, so too is the IPR petition. Determining the extent to which an IPR would simplify the issues in question proves difficult without knowing whether the PTAB will institute an IPR at all, let alone on what claims.").

12

### D. At Most, the Court Should Defer Resolution of This Motion Until the PTAB Decides if it Will Institute Review

For the reasons set forth above, the Court should deny Cisco's Motion outright. To the extent the Court is not inclined to do so, at most, it should defer resolution of Cisco's Motion until the PTAB decides if it will institute review on Cisco's petitions. "The Federal Circuit has made clear … that it is 'not error for the district court to wait until the PTAB' makes its decision to institute review before ruling on a motion to stay." *Cobalt Boats,* 2015 WL 2454296 at *2, quoting *Virtual Agility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315 (Fed. Cir. 2014).

Here, such an approach make far more sense than granting a stay. As early as January 2019, the PTAB will decide if it will institute review on three of Cisco's IPRs, with two more decisions expected by February 2019 and three more in March 2019. At such time the Court can better assess if there is any likelihood that these IPRs will impact the scope of this case. This Court has adopted this approach and deferred motions to stay when the litigation and IPR petition are both in their early stages. Ex. 6, at *2 ("the Court HOLDS the motion to stay IN ABEYANCE pending the PTAB's decision on the defendant's petition for IPR. The parties shall notify the Court immediately after the PT AB decides whether to grant the petition. In the meantime, this case shall continue as usual pursuant to the Federal Rules of Civil Procedure."); *Cobalt Boats*, 2015 WL 2454296 at *2, citing *Virtual Agility*, 759 F.3d at 1315 (same).

### IV. CONCLUSION

For the reasons discussed above, the Court should deny Cisco's Motion to Stay.

Dated: October 3, 2018                                Respectfully submitted,

*/s/ Kevin M. O'Donnell*
Kevin M. O'Donnell (VSB #30086)
Jeffery T. Martin, Jr. (VSB #71860)
HENRY & O'DONNELL, P.C.
300 N. Washington Street – Suite 204
Alexandria, VA 22314
Telephone: (703) 548-2100
Facsimile: (703) 548-2105
kmo@henrylaw.com
jtm@henrylaw.com

Paul J. Andre
Lisa Kobialka
James Hannah
Hannah Lee
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
hlee@kramerlevin.com

*Attorneys for Plaintiff,*
CENTRIPETAL NETWORKS, INC.

14

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing (NEF) to the following:

    Christopher Joseph Tyson
    Email: cjtyson@duanemorris.com

    Daniel T. McCloskey
    Email: DTMcCloskey@duanemorris.com

    Jennifer H. Forte
    Email: jhforte@duanemorris.com

    John Robert Gibson
    Email: jrgibson@duanemorris.com

    Joseph A. Powers
    Email: japowers@duanemorris.com

    Louis Norwood Jameson
    Email: wjameson@duanemorris.com

    Dabney J. Carr, IV
    Email: dabney.carr@troutmansanders.com

    Matthew C. Gaudet
    Email:  mcgaudet@duanemorris.com

 

*/s/ Kevin M. O'Donnell*
Kevin M. O'Donnell (VSB #30086)
Jeffery T. Martin, Jr. (VSB #71860)
HENRY & O'DONNELL, P.C.
300 N. Washington Street – Suite 204
Alexandria, VA 22314
Telephone:  (703) 548-2100
Facsimile:   (703) 548-2105
kmo@henrylaw.com
jtm@henrylaw.com