# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

| | |
|---|---|
| **CENTRIPETAL NETWORKS, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18cv00094-MSD-LRL |
| ) | |
| **CISCO SYSTEMS, INC.** **)** | |
| **)** | |
| Defendant. **)** | |

## CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF MOTION TO STAY PENDING RESOLUTION OF INTER PARTES REVIEW PROCEEDINGS

I.      **INTRODUCTION**

This case, as currently positioned, is going to be a massive drain on the resources of the Court and the parties because Centripetal has asserted eleven patents and 321 claims against Cisco. In an effort to reduce the scope of this case, Cisco has filed fourteen IPR petitions challenging nine of the eleven asserted patents and has sought a stay at the earliest possible time. Despite Centripetal's protestations, Cisco diligently and expeditiously filed IPRs upon being sued by Centripetal, and now seeks a stay before a scheduling order is in place or a trial date set. With institution decisions just months away, at a bare minimum this Court should stay this case until the PTAB gives guidance on institution. Simply put, each of the relevant factors decisively favors a stay, and Centripetal's litany of arguments that this case should barrel ahead all fail.

Centripetal's core argument is that the Court should not grant a stay before knowing to what extent the PTAB will institute the IPRs, and even then should not do so because the IPRs may not resolve all validity issues in the case. Courts in this District and elsewhere have rejected this reasoning and regularly grant stays before and after institution of IPRs. Courts have also recognized that, once underway, the fast pace of litigation in this District justifies staying litigation before institution in order to avoid unnecessary costs while the PTAB considers the petitions, particularly in a case of this magnitude based on Centripetal's assertion of 321 patent claims.

Centripetal also asserts that it is "speculative" that Cisco's IPRs will simplify this case, but the PTAB's official statistics indicate otherwise. Even considering Centripetal's differing data from a third-party article, institution on a majority of the petitions is significantly more likely than not. It is undisputed that nearly all of the claims in this case (85%) are challenged in the IPRs and are subject to potential invalidation or estoppel. Given the sprawling nature of this

case, it makes no sense to have the parties litigate the same validity issues in parallel in this Court despite the potential waste and duplication.

Centripetal claims undue prejudice if a stay is granted based on (i) its exaggerated timeline to resolve IPRs and (ii) its claim that it is a competitor to Cisco. As to the potential for delay, the downside of a delay is far outweighed by the potential to streamline the case. Further, Centripetal cannot seriously argue that Cisco did not act expeditiously in analyzing the eleven patents being asserted, preparing fourteen IPR petitions, getting them on file, and then immediately moving for a stay. As to the claim of prejudice because Centripetal now alleges that Cisco is a competitor, Centripetal does not provide any information or competent evidence to show that it directly competes with Cisco, nor could it. Further, Centripetal's cry of prejudice cannot be squared against its general delay in suing Cisco, its failure to seek a preliminary injunction, and Cisco's ability to satisfy any monetary judgment ever entered in this case. To now try to turn this case into competitor litigation to create prejudice from any delays from a stay related to IPRs is nothing more than attorney argument.

In sum, the relevant factors all strongly favor a stay. There is ample authority and factual basis for granting the stay now, even before the PTAB makes its institution decisions.

## II.   ARGUMENT

As a threshold matter, Centripetal tries to set the bar for granting a stay so high that it can never be met. Centripetal urges a "clear and convincing" standard – a standard it adopts from ***non***-IPR stay cases – that does not apply. *See* D.I. 47, at 4. Having created an artificially high standard, Centripetal then makes a series of arguments that exaggerates the length of a potential stay, disputes official PTAB institution statistics, repeatedly suggests that there is no "meaningful simplification" unless all validity issues are entirely eliminated from the case, and that a stay

should never be granted in so-called "competitor" litigation. Centripetal's cascading arguments are contrary to the weight of controlling case law and the actual, relevant facts that strongly support granting a stay under the controlling three factor test, as addressed below.

### A. This Large Case is in its Earliest Stages, Which Favors a Stay

Centripetal does not contest that this case is in its early stages. The pleadings are not settled, there is no case schedule, the parties have not engaged in any discovery, and no trial has been set. The early status of this case heavily favors a stay. *See Va. Innovation Sci., Inc. v. Samsung Elecs. Co. Ltd., et. al.,* Case No.: 2:14cv217, ECF No. 59, *4 (E.D. Va. Nov. 18, 2014) ("A stay pending IPR at the early stages of a lawsuit has the potential to save 'a significant amount of time and effort by all parties involved through a simplification of the issues presented.'") (citation omitted.) Indeed, here, virtually all of the substantive litigation activity lies ahead, thus maximizing the potential resource savings if the Court grants a stay now.

### B. A Stay is Likely to Simplify this Case, as this Court has Held in Similar Cases

Centripetal argues three reasons that a stay will not simplify this case. None of them are persuasive.

First, Centripetal argues that there is "no guarantee" that the PTAB will institute review of any of Cisco's IPRs and therefore any benefits of a stay are "speculative." *See* D.I. 47, at 5. Courts here and elsewhere have rejected this argument, finding a stay warranted even though there is no guarantee of institution. *See e.g., Va. Innovation Sci., Inc.,* Case No.: 2:14-cv-217, ECF No. 59, at *5 n.1 ("[E]ven though the PTO has not yet decided whether to grant the IPR petition, the Court concludes that a stay pending such decision is the better practice than allowing the parties to expend significant resources, potentially unnecessarily, pending the PTO's decision whether to grant the petition."); *Sharpe Innovations, Inc. v. T-Mobile, USA, Inc.*, Civil No. 2:17-cv-35I RGD-

DEM, ECF. No. 41, *6 (E.D. Va. Jan. 10. 2018) ("[T]his district does not disfavor stays before IPR is instituted, and this Court has granted a stay in many such instances."); *Wi-LAN, Inc. v. LG Elecs., Inc.*, No. 3:17-cv-00358-BEN-MDD, 2018 WL 2392161, *2 (S.D. Cal. May 22, 2018) ("While review is not guaranteed and, therefore, the benefits of review are only speculative at this juncture, in light of the Supreme Court's mandate to review all contested claims upon a grant of IPR and the complexity of this case the Court finds this factor weighs in favor of a limited stay.").

Instead of addressing the numerous authorities on which Cisco relies that support granting a stay, Centripetal cites inapposite cases in which pre-institution stays were denied. For example, Centripetal relies on the Delaware case of *Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*, No. 15-156-LPS-CJB, 2016 WL558615, (D. Del. Feb. 11, 2016) in which the Court declined to grant a pre-institution stay primarily because the litigation activity before institution was expected to be minimal. *See id.*, at *2. Here the calculus is not the same. As courts have noted, "given the comparatively fast pace of litigation in this district, courts are generally mindful that, in the months leading up to PTAB's decision whether to grant IPR, the parties and the court would expend many resources in litigation that could be rendered unnecessary by the outcome of IPR." *Sharpe Innovations,* Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, at *6. This is particularly true here in light of the eleven patents and 321 patent claims Centripetal has asserted.

The one case from this District upon which Centripetal relies for this point included a contract claim as well as patent claims and yet the Court still found, prior to institution, that a stay would likely simplify the case. *See Segin Sys., Inc. v. Stewart Title Guaranty Co.*, 30 F. Supp. 3d 476, 482 (E.D. Va. 2014). Centripetal does not argue that any of the cases it cites are factually similar to the present case beyond the bare fact that a stay was sought pre-institution. Centripetal

4

also does not explain why this Court should not follow the numerous decisions from this District that endorse granting stay prior to institution. *See* D.I. 47, at 8.

Further, Centripetal argues that Cisco's petitions could be denied institution because "some of Cisco's IPRs rely heavily on prior art that was already before the PTO during prosecution." *See* D.I. 47, at 5. This argument is both inaccurate and inappropriate. First, it is well-settled that the Court cannot consider the merits of an IPR petition when determining whether to grant a stay. *See Audio MPEG. Inc. v. Hewlett-Packard Co.,* No. 2:15cv73, 2015 WL 5567085, *3 (E.D. Va. Sept. 21, 2015) (citation omitted). Second, Centripetal's argument is grossly overstated, as it cites only one example from Cisco's fourteen petitions that involves prior art that had been before the PTO. *See* D.I. 47, at 5. Even this lone example is misleading because the grounds presented in the IPR petition use prior art combinations that involve additional prior art that the PTO did not consider. Cisco also filed a second IPR petition (IPR2018-01512) challenging this patent in which all grounds use art that was not before the PTO during prosecution. *See* D.I. 46-1, ¶ 2.

Second, Centripetal argues that a stay will not simplify this case because the IPRs will not "resolve all of [Cisco's] invalidity defenses." D.I. 47, at 5. Courts in this District have not found this argument persuasive. *See Sharpe Innovations,* Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, at *6-7 (noting scope of estoppel and that a stay can still be warranted when an IPR proceeding does not address each and every claim or defense.") Indeed, by Centripetal's strained reasoning, a stay would never be warranted, before or after institution. Such a posture is contrary to the America Invents Act, which expressly provides the basis for seeking stay of litigation pending resolution of IPRs. *See Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, CA No. 2:15-cv-21, 2015 WL 2454296, *2 (E.D. Va. May 21, 2015) (discussing AIA and stay factors).

5

While IPRs are not designed to resolve all possible validity issues, if -- as is more likely than not -- some or all of the asserted claims are invalidated or if prior art raised or that could have been raised in the IPRs is excluded, this case will be materially simplified. *See* 35 U.S.C. § 311(b), 315(e)(2); *SAS Inst, Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018) (holding that the PTAB must "issue a final written decision with respect to the patentability of *any* patent claim challenged by the petitioner"). At a minimum, a stay will either spare the parties and the Court from expending resources on any claims that are invalidated in the IPRs, or will prevent duplicative litigation of the invalidity issues raised in the IPR petitions.

Third, Centripetal argues that the Court should disregard the PTAB's official statistics and rely instead on an article it found that speculates about the impact of the Supreme Court's decision in *SAS* on PTAB institution rates. *See* D.I. 47, at 6. That article analyzed a mere two months of PTAB institution decisions during that period. *See* D.I. 47-1, Ex. 5, at 3. This sample is hardly a comprehensive analysis in contrast to the official data Cisco has provided that shows a 62% institution rate. *See* D.I. 46-1, Ex. A. Even the institution rate that Centripetal presents shows that institution of Cisco's IPR petitions is more likely than not. Further, even the most conservative potential institution and cancellation rates would result in invalidation as to scores of claims (even patents in their entirety) or estoppel as to prior art references, streamlining and potentially transforming this unwieldly eleven-patent case.

In sum, in this action in which 321 asserted claims are at issue, 85% of which are challenged in pending IPRs, there is no basis for Centripetal's assertion that there is a "low likelihood" that a stay will simplify this case. *See* D.I. 47, at 9. The weight of the authorities and the data show just the opposite, and warrant granting a stay now.

### C.   A Stay will not Cause Unfair Prejudice to Centripetal

Centripetal argues it will be unduly harmed because a stay will delay resolution of its case and because it is a "direct competitor" of Cisco. *See id*., at 9-10. Neither argument has merit.

First, the delay inherent in a stay is not a basis for undue prejudice. *See PersonalWeb Techs., LLC v. Facebook, Inc.,* No. 5:13-CV-01356-EJD, 2014 WL 116340, *5 (N.D. Cal. Jan. 13, 2014) ("[A] delay inherent to a stay does not constitute, by itself, undue prejudice.") (citations omitted.) Further, "the statutory time constraints on IPR proceedings limit the extent of prejudice to the non-movant, particularly where a stay would not diminish the amount of monetary damages recoverable by the plaintiff." *Sharpe Innovations*, Civil No. 2:17-cv-35I RGD-DEM, ECF. No. 41, at *7. Thus, Centripetal's "justice delayed is justice denied" argument is outside the context of the relevant stay authorities and is unavailing as a basis for denying this motion.

Second, Centripetal argues that it is a "direct competitor" of Cisco and will be unduly prejudiced by a stay. *See* D.I. 47, at 10. Centripetal provides no basis for asserting that Centripetal is a direct competitor of Cisco's and did not plead that it is a competitor. Indeed, Centripetal offers no information about the relevant market nor any evidence of how specifically it would be competitively harmed by a stay. Instead, Centripetal's sole apparent basis for asserting it is a competitor is a marketing document it commissioned. *See* D.I. 47-1, Ex. 1. The document barely mentions Cisco and does not show a direct competitive relationship. To be sure, Centripetal's own self-serving marketing materials are not sufficient to establish that it directly competes with Cisco or that a stay will work any specific, undue competitive harm.

Further, even if Centripetal could show that it directly competes with Cisco in a way relevant to this motion, such status is not dispositive. Courts have granted stays notwithstanding claims that the plaintiff is a competitor. *See Sharpe Innovations,* Civil No. 2:17-cv-35I RGD-DEM,

7

ECF. No. 41, at *7 (granting stay and finding that damages were adequate remedy despite parties' status as "direct competitors"); *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs. Inc.*, 193 F.Supp.3d 345, 352 (D.Del. 2016) ("while the parties compete for business against each other in the optical disc drive market, they are but two of many competitors in a very crowded field" and thus money damages were adequate to compensate for any delay from a stay); *454 Life Sciences Corporation v. Ion Torrent Systems, Inc.*, No. 15–595–LPS, 2016 WL 6594083, *5 (D.Del. Nov. 7, 2016) (finding "at least some competitive relationship" between the parties but that the competitive harm was not overwhelming and granting stay). If Centripetal retains any valid, allegedly infringed claims after the IPRs, money damages are sufficient and a stay will not limit them.

Moreover, Centripetal has not shown any urgency or particular need for expeditious resolution of this case that would preclude granting a stay. Indeed, Centripetal did not file suit until between 1 and 3 years from the date the then Asserted Patents had issued. *See* D.I. 29, ¶¶ 11-34; Exs. 2-11, 49; D.I. 38, Appendix A. While Centripetal argues that its failure to seek a preliminary injunction should not matter, courts have considered this issue in assessing claims of undue prejudice. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) (noting that patentee failed to move for a preliminary injunction in connection with undue prejudice inquiry while acknowledging factor was not dispositive). Centripetal apparently determined that a preliminary injunction was not necessary, worthwhile or winnable, which casts doubt on its claim that a stay will cause undue harm. There simply is nothing in the record to substantiate that Centripetal will suffer any undue harm from a stay.

Unable to show undue prejudice, Centripetal questions Cisco's diligence in filing its IPRs, but there is no basis for doing so. *See* D.I. 47, at 11. As noted, Centripetal filed this case in February

8

based on ten patents, and then added an eleventh patent in March, asserting a total of 321 claims. *See* D.I. 1, 22. Cisco filed its first IPR petition on July 12, less than four months later, and filed another thirteen petitions over the next two months. *See* D.I. 46-1, ¶¶ 2-10. Cisco filed its stay motion one day after submitting the last of the pending petitions to the PTAB. *See* D.I. 46. Given the large number of patents and claims at issue and the time and effort required to prepare numerous IPR petitions, Cisco acted diligently and expeditiously.

Further, Cisco's timing is in line with – and proportionally much more rapid than – other cases where stays were granted based on IPR petitions. *See e.g., Va. Innovation Sci., Inc.,* Case No.: 2:14cv217, ECF No. 59, at *1-2 (stay granted in which one IPR petition was filed five months after lawsuit filed). In *Cobalt*, on which Centripetal relies, the defendant filed a single IPR petition in the midst of a failed transfer motion, three months after the lawsuit was filed. *See* CA No. 2:15-cv-21, 2015 WL 2454296, at *3. Here, by contrast Cisco filed fourteen times as many petitions in just a few additional months.

### E. The Court Should Deny Centripetal's Request to Defer Ruling on a Stay

Centripetal's request that the Court defer ruling on this motion until the IPRs are instituted has it backwards. *See* D.I. 47, at 10. Deferring resolution of this motion would mean five months of litigation and the attendant expense of a giant patent case. Granting a stay now will allow the parties and the Court to avoid incurring potentially unnecessary expenditures before the PTAB renders its institution decisions. *See Va. Innovation Sci., Inc.,* Case No.: 2:14cv217, ECF No. 59, at *5 n.1. If the Court believes that Centripetal should have the right to revisit the stay once institution decisions have been rendered, the Court can fashion such an approach as part of a stay order.

### III.   CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court grant this motion to stay this litigation pending resolution of the IPR proceedings.

CISCO SYSTEMS, INC.

By          /s/          
         Of Counsel

Dabney J. Carr, IV, VSB No. 28679  
**TROUTMAN SANDERS LLP**  
P. O. Box 1122  
Richmond, Virginia 23218-1122  
Telephone: (804) 697-1200  
Facsimile: (804) 697-1339  
dabney.carr@troutmansanders.com

Louis N. Jameson (admitted pro hac vice)  
Matthew C. Gaudet (pro hac vice pending)  
John R. Gibson, VSB No. 72968  
Jennifer H. Forte (admitted pro hac vice)  
**DUANE MORRIS, LLP**  
1075 Peachtree Street, N.E., Suite 2000  
Atlanta, Georgia 30309-3929  
Telephone: (404) 253-6900  
Facsimile: (404) 253-6901  
wjameson@duanemorris.com  
jrgibson@duanemorris.com  
jhforte@duanemorris.com


Joseph A. Powers (admitted pro hac vice)  
**DUANE MORRIS, LLP**  
30 South 17th Street  
Philadelphia, PA 19103-4196  
Telephone: (215) 979-1000  
Facsimile: (215) 689-3797  
japowers@duanemorris.com

Daniel T. McCloskey (admitted pro hac vice)
**DUANE MORRIS, LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650-847-4150
Facsimile: 650-523-4780
dtmccloskey@duanemorris.com

Christopher J. Tyson, VSB No. 81553
**DUANE MORRIS, LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
cjtyson@duanemorris.com

*Counsel for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Kevin M. O'Donnell
Jeffery T. Martin, Jr.
HENRY & O'DONNELL, P.C.
300 N. Washington Street – Suite 204
Alexandria, VA 22314
kmo@henrylaw.com
jtm@henrylaw.com

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

/s/  Dabney J. Carr, IV
Dabney J. Carr, IV (VSB No. 28679)
**TROUTMAN SANDERS** LLP
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
dabney.carr@troutmansanders.com
*Counsel for Defendant Cisco Systems, Inc.*

DM2\9261797