IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18cv00094-MSD-LRL |
| ) | |
| CISCO SYSTEMS, INC. ) | |
| ) | |
| Defendant. ) | |

### CISCO SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL A COMPLETE RESPONSE TO CISCO'S INTERROGATORY NO. 1 (INFRINGEMENT CONTENTIONS)

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 37(A), defendant Cisco Systems, Inc. ("Cisco"), by and through their undersigned counsel, respectfully submits this memorandum of law in support of its motion to compel legitimate infringement contentions from plaintiff Centripetal Networks, Inc. ("Centripetal"). Just as this Court had to order Centripetal to clearly articulate its theories of infringement in the *Centripetal v. Keysight* case, Cisco seeks an Order compelling Centripetal to answer the most basic interrogatory in a patent case: identify each specific product or each specific combination of products that allegedly infringes each asserted claim of the patents.

I.  INTRODUCTION

At Centripetal's request, the Court lifted the stay of this five-patent case on October 2, 2019, and this case is now set for trial beginning April 7, 2020. The parties are on an aggressive discovery schedule (closing on December 20), and Cisco has every intention of being ready to defend itself on the merits at trial. For this to happen, however, Centripetal cannot hide its

infringement theories from Cisco, with the goal of trial by ambush. Unfortunately, that appears to be Centripetal's endgame.

On the first day of discovery, Cisco served Interrogatory No. 1, which asked Centripetal to set forth its infringement contentions on a product-by-product, claim-by-claim basis. This is a standard request in patent cases, and the response should frame the issues for discovery, *Markman*, and the ensuing trial. In this case, however, Centripetal's response confuses, not clarifies, the issues in dispute. Despite identifying a broad swath of Cisco products across at least six different categories of products, Centripetal only provided a single chart for each asserted patent, and each chart lumps together all of its accusations for a given patent. Centripetal refuses to explain whether it is accusing each of the laundry list of Cisco products alone (i.e., alleging that a single Cisco product satisfies all elements of a given claim by itself) or in a specific combination with other Cisco products, nor will Centripetal specifically identify each such combination. Centripetal chose this course of action, despite the fact that it and its counsel know the rules in this Court, having been ordered to provide even more detail in the *Keysight* litigation.

More specifically, Centripetal identifies four different categories of Cisco products as "Accused Instrumentalities," and also generally identifies functionality in two other Cisco products, and then jumbles all six of these products together as somehow allegedly satisfying a given claim limitation. Compounding the confusion, Centripetal then sprinkles in *ad hoc* references to still dozens of other Cisco products or technologies as "examples" of still further infringing functionality. The end result is, in effect, a generic allegation that almost all Cisco products infringe the asserted claims in unspecified combinations and in an unspecified manner.

The four categories of products identified as "Accused Instrumentalities" include:

- Stealthwatch, which provides visibility into network traffic security analytics; it comes in numerous forms, including Enterprise and Cloud, each of which provide different functionality.

- Cisco Catalyst 9300, 9400, and 9500 series switches and Catalyst 9800 wireless controller.  These are appliances that connect devices on a computer network by using packet switching.

- Cisco ASR 1000 series, ISR 1000 and 4000 series routers, Integrated Virtual Router (ISRv) including the 5000 Enterprise Network Compute System, and Cloud Services Router (CSR) 1000V series.  These routers are networking devices that forward packets between computer networks.

- ASA 5500-X series firewalls.  These are next-generation firewalls that monitor traffic to or from a network and allow users to block traffic.

The charts further include references to two other products for various claim limitations:

- Encrypted Traffic Analytics (ETA).  ETA can be added to Stealthwatch, and facilitates the ability to detect malicious activity in encrypted traffic without decryption.

- Cognitive Threat Analytics (CTA).  CTA is a cloud-based product that analyzes user and device behavior, and web traffic, to discovery command-and-control communications, data exfiltration, and potentially unwanted applications operating in a customer's network.

Some of these six products—such as Catalyst switches and ASR / ISR routers—are basic networking products that Cisco has been selling for decades (long before the patents issued). Others (such as ETA and CTA) are very discreet options that can be added to other products (such as Stealthwatch).

Centripetal then compounds the problem in two ways.  First, each of Centripetal's charts is replete with references to still *other* Cisco offerings.[1]  Second, Centripetal uses a coined

---

[1] This list of other Cisco technologies, products, and offerings includes, *e.g.*, Cisco's Digital Network Architecture ("DNA"), Software-Defined Access ("SD-Access"), Identity Services Engine (ISE), Talos, ThreatGrid, SD-Access and Policy-Based Automation, Application Visibility and Control, Next-Generation Network-Based Application Recognition ("NBAR2"), Hitless ACL updates, ACL Label-Sharing, DNA and SNI correlation, Adaptive Security Device Manager ("ASDM"), Transactional Commit Modeling, Multi-Layer Machine Learning, Threat Response, Access Control Lists ("ACL"), Insight Reporter, NetFlow, and Anyconnect, among others.

phrase for each patent—such as "Cisco's Threat Intelligence Technology" and "Cisco's Exfiltration Prevention Technology"— and repeatedly states that it is actually this "Technology" that infringes. These phrases were made up by Centripetal and do not refer to a specific Cisco product, and thus the use of such made up phrases obfuscates even further what Centripetal is accusing of infringement. As a result, in many instances Centripetal is not even using real names of Cisco products to identify what it is accusing.

In an effort to avoid burdening the Court, Cisco sent e-mail correspondence to Centripetal requesting that Centripetal supplement its response to Interrogatory No. 1 to confirm whether Centripetal alleges that each specific product within the group of four "Accused Instrumentalities" infringes the patent by itself, or only in combination with other products; and if in a combination, the precise combinations for each claim. Centripetal avoided providing a substantive response to the e-mail. During the subsequent meet-and-confer, Cisco again asked specific questions as to the identity of the Cisco products that Centripetal is accusing of infringement. Centripetal repeatedly took the position that the charts "speak for themselves," and Centripetal would not provide any further clarity or supplement. These non-answers necessitate the current motion.

## II.     FACTUAL AND PROCEDURAL HISTORY

Centripetal filed this lawsuit on February 13, 2018. Dkt. 1. The case was stayed pending the results of various *Inter Partes Review* ("IPR") proceedings on February 25, 2019. Dkt. 58. On October 2, 2019, at Centripetal's request, the stay was lifted with respect to the patents and claims no longer subject to IPR. Dkt. 68. Fact discovery closes in six weeks, on December 20, 2019. *Id.* The *Markman* hearing is scheduled for February 6, 2020. Dkt. 74. Trial commences on April 7, 2020. *Id.*

On October 3, 2019, one day after the case was re-opened, Cisco served its first set of interrogatories and requests for production. Tracking mandatory disclosures from venues that have Patent Local Rules, Cisco served Interrogatory No. 1, which states in full:

> For each Asserted Claim of the Patents-in-Suit, Describe in Detail how the claim is infringed by each Accused Product or Service, and for each claim, Your answer should Identify (i) each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality of Cisco's of which You are aware, (ii) where each element of each asserted claim is found within each Accused Product or Service, including for each element that You contend is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Product or Service that performs the claimed function; and (iii) whether each element of each asserted claim is claimed to be literally present and/or present under the doctrine of equivalents in the Accused Product or Service.

Ex. 1 (Def. Cisco Systems, Inc.'s First Set of Interrogs. To Pl. (Nos. 1-23), at 6.

Centripetal responded on October 23, 2019 with five charts – one for each asserted patent. Ex. 2 (App. A-E of Pl. Centripetal Networks, Inc.'s Objections and Resp. to Def.'s First Set of Interrogs. (Nos. 1-23)). Cisco's counsel immediately reviewed them, and it was obvious that Centripetal's disclosures were lacking in the required specificity. Thus, on October 29, 2019, Cisco detailed the specific and numerous deficiencies, including asking for clarification on what specific Cisco product (or combination of specific Cisco products) Centripetal alleges infringe, and posed specific questions in an attempt to have Centripetal crystallize the infringement theories at issue in this case. Ex. 3 (Oct. 29, 2019 Email from John Baird). Despite Centripetal's counsel agreeing to provide a written response prior to the meet and confer call, it never did. Ex. 4 (Nov. 1, 2019 Email from Hannah Lee). During the ensuing telephonic meet and confer (which just occurred on November 5), Plaintiff's counsel refused to provide even basic answers to questions that go to the foundation of its case. Plaintiff would not answer questions as to whether Centripetal was accusing a specific product alone of infringing a particular patent, and if not, whether Centripetal was accusing a specific combination of products

5

of infringing a claim. Counsel would not even identify any specific Cisco product by name, instead repeatedly stating that the infringement contentions somehow "speak for themselves." This motion followed.

### III. ARGUMENT AND CITATIONS TO AUTHORITY

When a party fails to respond to discovery requests, "a party may move forward for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1); *see also* Local Rule 37(A). If a party fails to answer an interrogatory, the party seeking discovery may move the Court to compel answers to interrogatories. Fed. R. Civ. P. 37(a)(3)(B)(iii). An incomplete answer to an interrogatory is treated the same as a non-answer for purposes of a motion to compel. Fed. R. Civ. P. 37(a)(4). The burden falls on the party objecting to the requested discovery or production "to show that discovery should not be allowed." *Castle v. Jallah,* 142 F.R.D. 618, 620 (E.D. Va. 1992).

Here, Centripetal should be compelled to provide a complete and coherent answer to Interrogatory No. 1. Due to Centripetal's failure to provide answers to the above questions regarding which of Cisco's products are accused of infringement, Cisco is left to speculate as to Centripetal's infringement claims and theories, prejudicing Cisco's ability to prepare its defenses. This is inappropriate, as the purpose of requiring a plaintiff to provide specific contentions in advance of the other significant case deadlines is to "crystallize [plaintiff's] theory of the case and the patent claims." *In re Pabst Licensing GmbH & Co. KG Litig.,* 273 F.RD. 339, 343 (D.D.C. 2001).

For example, in the claim chart for the '205 Patent (*see* Ex. 2, at App. C), Centripetal alleges that "Cisco's Threat Intelligence Technology infringes" certain claims of the '205 Patent because "the Threat Intelligence Technology is present in" each product contained within the four broad categories of "Accused Instrumentalities," *i.e.*, "Cisco's Catalyst Products and

Services, Router Products and Services, ASA Products and Services, and Stealthwatch Products and Services." *Id.* There are several problems with this circular definition, which problems permeate each of Centripetal's charts.

First, there is only one chart for the '205 Patent for all of these various products, with no identification of whether any product is accused by itself and no identification of what (if any) specific combinations of products Centripetal is accusing (leaving open the possibility of a nearly infinite game of mix-and-match at trial by Centripetal).

Second, the phrase "Threat Intelligence Technology" is not a term used by Cisco to a specific product or set of products. Nor was this term defined by Centripetal in its chart. Simply put, real notice cannot be provided with a made-up name that does not correspond to a real product. To the extent Centripetal is alleging that each product within the four categories of "Accused Instrumentalities" somehow includes some undefined "Threat Intelligence Technology," Cisco does not know what Centripetal means by the phrase "Threat Intelligence Technology", including whether such functionality is alleged to be in these devices "out of the box" or whether Centripetal contends that additional products, licenses, or features need to be purchased and enabled. Stated differently, Centripetal's identification of the "Accused Instrumentalities" is effectively no different than stating that "one or more of the products that somewhere contain functionality found within our made up and undefined term 'Threat Intelligence Technology' infringes the '205 Patent." This does not advance this case toward resolution.

Third, the '205 chart (like every other chart) throws in seemingly random references to other Cisco products without ever tying them to a cohesive infringement theory that can be traced through a given claim. For example, the '205 chart makes reference to, *inter alia*, Talos,

Threat Grid, policy-based automation, SD-Access, "Cisco's DNA center appliance", ISE, and Intelligence Manager in the context of claim 63(b)'s requirement of a "security policy management server." *Id.* at 2-4.  These are all separate, independent products, technologies, or organizations within Cisco.  But Centripetal does not explain which of the four Accused Instrumentalities (or the other 2 products – ETA and CTA) or any of these other products are allegedly found in, or how each of them fits into any overarching infringement read.  For example, Cisco does not know if each of these is necessary for there to be infringement, if they are alternatives for a given element, or whether they are supposed to independently infringe a claim.

      The other charts are replete with the same issues and fare no better in providing Cisco clarity as to Centripetal's allegations.  For example, for the '193 Patent (*see* Ex. 2, at App. D), Centripetal states that "Cisco's Exfiltration Prevention Technology infringes" and is allegedly "present in" each of the products within the four categories of "Accused Instrumentalities." *Id.* at 1.  But, again, Cisco sells no product by this name and does not otherwise use such a marketing descriptor; instead, Centripetal coined this umbrella phrase to apparently encompass any number of products that it—and it alone—deems to place under this descriptor.  Cisco invites the Court to review the contentions for any of the five charts to determine whether it can discern which Cisco products are alleged to infringe a patent and how.

      At this point, almost two years after filing this case, Centripetal at the very least should be able to identify with specificity the products or combinations of products that it is accusing Cisco of infringing on a claim by claim basis.  Indeed, this Court has required much more of Centripetal in a past case, including requiring Centripetal to "give Defendants infringement contentions with code-level, line-by-line citations ('pinpoint citations') to the specific source

code in Defendants' instrumentalities that Plaintiff accuses Defendants' instrumentalities of infringing for all patents." *Centripetal Networks, Inc. v. Keysight Technologies, Inc. & Ixia*, Civil Action No. 2:17cv383, Dkt. 203 (E.D. Va. June 25, 2018). And while Cisco will certainly seek such further specificity after Centripetal has had an opportunity to review Cisco's source code (it was made available on November 8), at this juncture, Cisco is simply requesting the most basic disclosures from Centripetal, *i.e.*, an identification of what specific Cisco product infringes and, if not a single product, what specific combination of Cisco products infringes each patent-in-suit, and what functionality within such product(s) for a given combination allegedly meets each claim limitation. With fact discovery closing December 20, Centripetal's refusal to articulate what is really at issue in this case is causing Cisco unfair prejudice in discovering and developing its defenses.

## IV.   CONCLUSION

Centripetal's strategy of obfuscation may be because many of the identified products pre-exist the patents, while others have relatively low sales revenue, and so Centripetal may be trying to hedge its bets so as to not be pinned down until trial, but that is not how discovery—or contention interrogatories—is supposed to work. Cisco thus seeks an order requiring Centripetal to supplement its response to Interrogatory No. 1 to provide, for each asserted claim: (1) a clear identification of each specific Cisco product that Centripetal is accusing of infringing that claim by itself; (2) a list of each different combination of products Centripetal accuses of infringement that claim; and (3) a chart for each such product or combination identifying what functionality within that product is alleged to meet each element of each asserted claim. Cisco further requests its attorneys' fees and costs associated with this Motion.

Pursuant to E.D.Va. Local Rule 37(E), counsel states that a good faith effort has been made between counsel to resolve the discovery matters at issue.

                CISCO SYSTEMS, INC.

                By      /s/
                      Of Cousnel

Dabney J. Carr, IV, VSB No. 28679
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

**DUANE MORRIS LLP**
Louis N. Jameson (admitted pro hac vice)
Matthew C. Gaudet (pro hac vice pending)
John R. Gibson, VSB No. 72968
Jennifer H. Forte (admitted pro hac vice)
1075 Peachtree Street, N.E., Suite 2000
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900
Facsimile: (404) 253-6901
wjameson@duanemorris.com
jrgibson@duanemorris.com
jhforte@duanemorris.com

Joseph A. Powers (admitted pro hac vice)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 689-3797
japowers@duanemorris.com

John M. Baird, VSB No. 77827
Christopher J. Tyson, VSB No. 81553
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
jmbaird@duanemorrris.com
cjtyson@duanemorris.com

Nicole E. Grigg (formerly Johnson) (admitted *pro hac vice*)
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: (650) 847-4176
Facsimile: (650) 618-2713
NEGrigg@duanemorris.com

*Counsel for Defendant Cisco Systems, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of November, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Kevin M. O'Donnell
Jeffery T. Martin, Jr.
HENRY & O'DONNELL, P.C.
300 N. Washington Street – Suite 204
Alexandria, VA 22314
kmo@henrylaw.com
jtm@henrylaw.com

Stephen Edward Noona
VSB No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main St., Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com

Paul J. Andre
Lisa Kobialka
James Hannah
Hannah Lee
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
hlee@kramerlevin.com

/s/ Dabney J. Carr, IV
Dabney J. Carr, IV (VSB No. 28679)
**TROUTMAN SANDERS** LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

*Counsel for Defendant Cisco Systems, Inc.*