**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cv-00094-HCM-LRL |
| | ) | |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF CENTRIPETAL NETWORKS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL A COMPLETE RESPONSE TO CISCO'S INTERROGATORY NO. 1**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........1

II. STATEMENT OF FACTS ..........2

III. ARGUMENT ..........7

A. The Court Should Deny Defendant's Motion Because Centripetal Provided a Detailed Response to Interrogatory No. 1 Concerning Its Infringement Contentions Based on Available Information. ..........7

B. The Court Should Deny Cisco's Motion Because Cisco Has Not Yet Provided Relevant Technical Information ..........9

IV. CONCLUSION ..........11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Centripetal Networks, Inc. v. Keysight Techs., Inc. & Ixia*,
Civil Action No. 2:17-cv-383, Dkt. No. 203 (E.D. Va. June 25, 2018) ..................................10

*Genuine Enabling Tech. LLC. v. Nintendo Co.*,
No. C19-00351-RSM, 2019 WL 3779867 (W.D. Wash. Aug. 12, 2019) .................................7

*Invensas Corp. v. Renesas Elecs. Corp.*,
287 F.R.D. 273 (D. Del. 2012) ..........................................................................................7

# I. INTRODUCTION

The Court should deny Defendant Cisco Systems, Inc. ("Cisco") motion to compel a further response to Defendant's Interrogatory No. 1 (Dkt. No. 83, "Motion") because Centripetal Networks, Inc. ("Centripetal") already provided a detailed response based on publicly available information. Specifically, Centripetal provided Cisco with element-by-element charts describing how Cisco's accused products and services ("Accused Products and Services") include technologies that operate in a manner that meet each claim element of the asserted claims with specific citations to Cisco's public documents. As such, Centripetal's infringement contentions sufficiently put Cisco on notice of Centripetal's infringement allegations.

Cisco's purported cries of prejudice should be disregarded because it demands uber-specificity at this early stage of discovery while simultaneously withholding relevant, substantive information about the Accused Products and Services and the technologies they use until the end of the discovery period. Cisco unfairly wants to put Centripetal into a straightjacket while withholding the discovery necessary to provide more detailed infringement contentions. Importantly, Cisco has yet to produce key technical documents, including a complete set of the relevant source code. After Cisco meets its obligations to produce relevant discovery, Centripetal will supplement, if necessary, its response to Interrogatory No. 1. Cisco ignores Centripetal's offer and instead proceeded to burden the Court with the instant Motion that, for the reasons provided herein, should be denied. Furthermore, Cisco's argument that it does not understand what technologies are at issue rings hollow, as Centripetal used the same language to describe these technologies that Cisco itself uses in its public facing documents, all that were available when Centripetal served its contentions.

## II. STATEMENT OF FACTS

Centripetal filed the instant action on February 13, 2018, asserting infringement of ten patents, and adding an additional asserted patent in its amended complaint one month later. Dkt. Nos. 1, 29. Nearly a year later, the case was stayed pending *inter partes* review ("IPR") proceedings against nine of the eleven asserted patents. Dkt. No. 58. Prior to the stay, over a year and a half ago, on April 9, 2018, Centripetal requested a Rule 26 conference with Cisco to commence discovery, but Cisco refused to engage in any discussion regarding discovery on the basis that it had filed a motion to dismiss the Complaint and the Court had not set a Rule 26 conference. Declaration of Hannah Lee ("Lee Decl.") filed herewith, Ex. A. When the Patent Trial and Appeal Board denied institution of several of the IPRs on May 20, 2019, Centripetal requested that the Court lift the stay on the basis that the case could reasonably proceed with respect to at least some of the asserted patents that were not the subject of the IPRs. Dkt. No. 68 at 4-5. Effective October 2, 2019, the Court lifted the stay with respect to the following claims of patents not currently subject to IPR—specifically, U.S. Patent Nos. 9,137,205 (the "'205 Patent"), 9,203,806 (the "'806 Patent"), 9,560,176 (the "'176 Patent"), 9,686,193 (the "'193 Patent") and (the "'856 Patent") (collectively, the "Asserted Patents"). Dkt. No. 68. Each of the patented inventions relate to the collection of threat intelligence data and processing of that data to monitor and detect threats to computer networks.

On October 2, 2019, Centripetal served 166 requests for production and 11 interrogatories seeking technical information about the Accused Products and Services, including development information and information relating to specific relevant technologies used by the Accused Products and Services, and requested that Cisco identify the source code directories pertaining to each of the Accused Products and Services. On October 3, 2019, Cisco issued a first set of

interrogatories on Centripetal, one of which – Interrogatory No. 1 – sought Centripetal's infringement contentions. Dkt. No. 83, Ex. 1. On October 23, 2019, Centripetal responded to Cisco's first set of interrogatories and provided detailed claim charts that showed element-by-element explanations, with citations to numerous public documents, of how the Accused Products and Services infringe the claims. Ex. B; *see also* Dkt. No. 83, Ex. 2 (Appendices A–E to Oct. 23 Resp.). In its response, Centripetal specifically noted that its infringement theories were "based on the information currently known to Centripetal, which is publicly available, as Cisco has not yet produced any documents or discovery in this case." Lee Decl., Ex. B at 9; *id*. Lee Decl. ¶ 4. Centripetal "reserve[d] the right to supplement its response upon review of Cisco's production of documents, source code, and discovery responses." *Id.,* Ex. B at 9.

Notwithstanding the limited information available to it, in its infringement contentions served on October 23, 2019, Centripetal identified the Accused Products and Services and technologies that these use to infringe on patent-by-patent basis, as shown in the table below:

| **Asserted Patent** | **Accused Products and Services** |
|---|---|
| '856 Patent | Cisco's Encrypted Traffic Analytics Technology which is "present in at least the following accused products . . . including Cisco's Catalyst Products and Services, Router Products and Services, and Stealthwatch Products and Services." Dkt. No. 83, Ex. 2 (Appx. A) at 1. |
| '176 Patent | Stealthwatch and Cognitive Intelligence which "are used in at least the following accused products . . . including Cisco's Catalyst Products and Services, Router Products and Services, and Stealthwatch Products and Services." Dkt. No. 83, Ex. 2 (Appx. B) at 1. |
| '205 Patent | Cisco's Threat Intelligence Technology which "is present in at least the following accused products . . . including Cisco's Catalyst Products and Services, Router Products and Services, ASA Products and Services, and Stealthwatch Products and Services." Dkt. No. 83, Ex. 2 (Appx. C) at 1. |
| '193 Patent | Cisco's Exfiltration Prevention Technology which "is present in at least the following accused products . . . including Cisco's Catalyst Products and |

| | |
|---|---|
| | Services, Router Products and Services, ASA Products and Services, and Stealthwatch Products and Services." Dkt. No. 83, Ex. 2 (Appx. D) at 1. |
| '806 Patent | Cisco's Threat Intelligence Technology which "is present in at least the following accused products . . . including Cisco's Catalyst Products and Services, Router Products and Services, ASA Products and Services, and Stealthwatch Products and Services." Dkt. No. 83, Ex. 2 (Appx. E) at 1. |

In addition, Centripetal included charts that provided a narrative description on how the Accused Products and Services use these technologies to meet each element of the asserted claims. Dkt. No. 83, Ex. 2 at Appx. A-E. Centripetal described, in the charts which technologies infringe the asserted patents and are Encrypted Traffic Analytics ("ETA"), Cognitive Threat Analytics ("CTA"), and Threat Intelligence Technology provided through Talos and ThreatGRID. *Id.* Centripetal organized its charts by these technologies because they are used across many of Cisco's Accused Products and Services, and are found in at least in Cisco's Catalyst Switch Products, Router Products, ASA Products, and Stealthwatch Products. *Id.*

Cisco unreasonably demands more specific technical details in its infringement contentions before it was willing to provide relevant discovery of the Accused Products and Services. To date, Cisco has still not produced relevant technical documents for the Accused Products and Services, including highly relevant technical specifications and documents regarding the functionality and operation of the Accused Products and Services to demonstrate how they obtain and process threat intelligence data including related to Stealthwatch which it stated it produced by November 15, 2019[1], even though it had over a year to collect this information when the case was stayed. *See* Lee Decl., Ex. C at 3 (Nov. 14 email). Cisco's interrogatory responses are also deficient as they pertain specifically to the Accused Products and Services as, Cisco has failed to identify the dates

[1] Cisco made a production of nearly 40,000 pages of documents on November 15th, three business day before this brief was due. Cisco sent the production via Federal Express and Centripetal did not receive it until one day before this Opposition.

when each source code directory was implemented in each of the Accused Products and Services and the authors of the code. Lee Decl., Ex. D at 3 (Nov. 12 email). Cisco refuses to produce documents that identify the addition of new files or directories of the source code or provide information about the authors of the source code—information that is relevant to Centripetal's infringement contentions and efforts to obtain relevant discovery. *Id.* at 1-3.

When the parties met and conferred on this issue on November 5, 2019, Centripetal reiterated that the claim charts provided the requisite notice of its infringement contentions before any discovery had been provided by Cisco describing the specific implementation detail for how these relevant technologies operate, and what other product combinations these technologies were used in. Lee Decl., ¶¶ 5-6. Centripetal further represented that because Defendant had not produced confidential technical documents (such as specifications and requirements documents), made source code for inspection, or provided technical witnesses for deposition at the time Centripetal served its response to Interrogatory No. 1, that any motion, such as the instant Motion, would be premature. *Id.* Centripetal will also agree, to supplement its infringement contentions, to the extent necessary, to reflect Cisco's internal technical information *after* Defendant provides the necessary confidential information describing the underlying operation of these technologies. Incredibly, despite vehemently arguing in the meet and confer just days earlier that it had no idea what products were accused, Cisco informed Centripetal that it understood that certain combinations of the Accused Products and Services were accused of infringement, namely the ASA, Router, and Catalyst (switch) Products and Services, and Stealthwatch in combination with at least CTA and/or ETA. Lee Decl., Ex. E at 2. In response, on November 7, 2019, Centripetal corrected Cisco's intentional omission of ThreatGRID and Talos as relevant technologies:

> [W]e accuse the technologies that are discussed in our infringement contentions, including the technologies in the combinations [Cisco]

> set forth [in its email]. Your combinations are examples of infringement but omit certain technologies such as ThreatGRID and Talos as discussed in our infringement contentions. Additional discovery from Cisco including source code and technical documents are required to provide further detail about infringement contentions.

Lee Decl., Ex. E at 1. As Centripetal explained to Cisco, which it admittedly understood from Centripetal's infringement contentions, ThreatGrid provides for threat detection for the various Accused Products and Services and Talos' Global Threat Intelligence Feed identifies network threats for the various Accused Products and Services. *See id.* at 4-5 (citing infringement contentions).

Cisco only made its source code available until November 8, 2019, and only a few days before this brief was due, identified 30(b)(6) witnesses for deposition, despite identifying 24 individuals on its initial disclosures that purportedly have relevant information related to the Accused Products and Services. Lee Decl., Ex. F (Nov. 16 email) at 1-2; *id.* Ex. G (Topics 1 and 2); *id.* Ex. H (Initial Disclosures). To date, Cisco has yet to offer dates of deposition for all these individuals, and just a few days ago, on November 15, 2019, served its ***Fourth*** Supplemental Initial disclosures identifying four new people who it represented has knowledge about certain Accused Products and Services. Centripetal will notice these individuals for deposition, which were identified just one business day before this brief was filed. In effect, Cisco has identified 24 individuals who purportedly have information regarding the functionality and operation of the Accused Products and Services, none of which Cisco offered up for deposition before Centripetal's October 23rd infringement contentions were served.

## III. ARGUMENT

### A. The Court Should Deny Defendant's Motion Because Centripetal Provided a Detailed Response to Interrogatory No. 1 Concerning Its Infringement Contentions Based on Available Information.

Centripetal's preliminary October 23, 2019 infringement contentions, in response to Cisco's Interrogatory No. 1, fairly put Cisco on notice of how the Accused Products and Services meet the claim elements. In support of this, Centripetal cites in its infringement contentions Defendant's public documents—the only technical information Centripetal had as of the date of its response to Interrogatory No. 1 to show how certain claim elements are met. As such, Centripetal provided "a mechanism to facilitate discovery" and notice of its infringement theories. *Genuine Enabling Tech. LLC. v. Nintendo Co.*, No. C19-00351-RSM, 2019 WL 3779867, at *5 (W.D. Wash. Aug. 12, 2019) (denying motion to strike preliminary infringement contentions, noting that plaintiff should be "allow[ed] [] the opportunity to glean more information [pertaining to the accused products] through discovery"); *see also Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 283 (D. Del. 2012) (preliminary claim charts are "a mechanism to facilitate discovery during the initial stages of the litigation").

Centripetal's infringement contentions include what detail was available at the early stage of discovery where Cisco has not yet produced relevant technical documents and witnesses for deposition. Specifically, as demonstrated in the table above, for each Asserted Patent, Centripetal identified the technologies at issue for each of the asserted patents which are: ETA CTA, and Threat Intelligence Technology (provided through Talos and ThreatGRID), which are found in Accused Products and Services. *See supra* at 3-4. After defining the Accused Products and Services for each Asserted Patent, Centripetal then provided explanations, for each claim element, as to why the technology in these Accused Products and Services operates in a manner that meets the particular element. *See* Dkt. No. 83, Ex. 2 at Appx. A-E. For each claim element, Centripetal

cited Cisco's publicly available technical documents, which included data sheets, product guides, and whitepapers, to demonstrate how the accused products utilize the technology in an infringing manner. *Id.*

At Cisco's request, Centripetal also agreed to reiterate how the ThreatGrid and Talos technologies were relevant consistent with Centripetal's infringement contentions. Lee Decl., Ex. E at 1-2 (Nov. 7 email from Lee); *id.* at 4-5 (Nov. 6 email from Lee); *see also id.* Ex. I at 2 (Nov. 14 email). Incredibly, while Defendant states in its Motion that "Talos, Threat Grid, policy-based automation, SD-Access, 'Cisco's DNA center appliance,' ISE, and Intelligence Manager" are "separate, independent products, technologies, or organizations within Cisco" (Motion at 7-8), Defendant acknowledged just a day later the relevance of these technologies to Centripetal's infringement contentions because they (1) "relate[] to the global intelligence/threat intelligence/security intelligence feeds provided by Talos" to certain of the accused products and (2) identify Threat Grid's integration with CTA as part of the infringement theories. Lee Decl., Ex. I at 3 (Nov. 12 email from Gibson).

Cisco's citations to examples from the '205 Patent and '193 Patent charts do not establish that supplementation is required. In particular, Cisco's allegations that "'Threat Intelligence Technology' is not a term used by Cisco" or that "Cisco sells no product by th[e] name [Exfiltration Prevention Technology]" are contradicted by Cisco's own documentation and evidence. Cisco's public documents, cited throughout Centripetal's infringement contentions, specifically discuss its threat intelligence technologies. For example, Centripetal cites to Cisco's public documents to support how "Threat Intelligence Technology receives threat intelligence from Cisco's cloud servers, which are associated with a dynamic security policies," including one document which describes how "Threat Intelligence and Interdiction handle[] correlating and tracking threats so

that Talos can turn threat data and simple indicators into actionable, context-rich threat intelligence." Dkt. No. 83, Ex. 2 (Appx. C) at 5-6 (citing Talos_WhitePaper.pdf at 6-7). Similarly, Cisco's complaint that it does not sell a product named "Exfiltration Prevention Technology" is a red herring, because Centripetal identifies it as a technology used by the Accused Products and Services. In fact, Cisco itself uses this terminology and its public documents explain that "Stealthwatch [is] able to perform 'threat detection' including 'data exfiltration'" and how the accused products "eliminate the exfiltration of sensitive data." *Id.*, Ex. 2 (Appx. D) at 1, n.1. As shown, Cisco uses the exact language in its documentation to describe this technology, leaving no ambiguity on what is accused. Thus, to the extent any "uncertainty" remains, it is as a result of Cisco's failure to adequately review Centripetal's infringement contentions in their entirety and Cisco's Motion should be denied.

**B. The Court Should Deny Cisco's Motion Because Cisco Has Not Yet Provided Relevant Technical Information**

For each asserted claim element of each Asserted Patent, Centripetal's infringement contentions explain how the Accused Products and Services infringe based on what information Centripetal had available as of the date of its response to Interrogatory No. 1. For each claim element in its infringement contentions, Centripetal cited to all of the relevant information available to it to date—that is, Defendant's public documents relating to the Accused Products and Services. *See* Dkt. No. 83, Ex. 2 at Appx. A-E. These documents include Defendant's data sheets, white papers, user and administration manuals, and configuration guides.

It is undisputed that Defendant has not yet produced all relevant, confidential technical documents or key witnesses for deposition regarding the Accused Products and Services and the relevant technologies they use, but Cisco nonetheless insists that Centripetal provide uber-specificity as to its infringement theories. Cisco's request is even more incredulous in light of its

ongoing failure to provide relevant technical documents, including confidential requirements documents and specifications, and its failure to provide a fulsome response to Centripetal's interrogatory seeking key information regarding the source code in order for Centripetal to be able to perform any adequate inspection of the code. Lee Decl., Ex. D; *id*. Ex. E. Furthermore, Cisco has only just started to make technical witnesses available for deposition (the first deposition was November 19th) and only three of the 24 witnesses identified on its initial disclosures as having information about the Accused Products and Services have been offered for deposition prior to December. *Compare* Lee Decl., Ex. H *with* Lee Decl., Ex. J. These witnesses, that Centripetal has not been afforded the opportunity to depose to date, include several Principal Engineers, Distinguished Engineers and Product Managers for the various Accused Products and Services. *See generally* Lee Decl., Ex. H (Fourth Supp. Initial Disclosures). Furthermore, just four days before this brief was filed, Cisco identified certain witnesses as 30(b)(6) witnesses pursuant to Centripetal's 30(b)(6) Topics 1 and 2 (regarding the source code, functionality and operation of the Accused Products and Services) but has not yet provided dates for the depositions of six of these eleven individuals. *Id.,* Ex. F. Cisco's demands should be denied.

Significantly, the *only* purported precedent that Cisco cites to is a prior case, *Centripetal v. Keysight*. Motion at 9. However, Defendant's reliance on *Centripetal v. Keysight* is misplaced as Defendant itself admits in the Motion and in correspondence with Centripetal since filing the Motion. In particular, Defendant acknowledges in the Motion that while in the Order from *Keysight* Centripetal was ordered to provide contentions with "code-level, line-by-line citations . . . to the specific source code in Defendants' instrumentalities," here, source code was not made available until November 8—almost two weeks ***after*** Centripetal served its infringement contentions. *Id.* at 8-9 (citing *Centripetal Networks, Inc. v. Keysight Techs., Inc. & Ixia*, Civil

Action No. 2:17-cv-383, Dkt. No. 203 (E.D. Va. June 25, 2018)). Then just three days after filing the instant Motion, Defendant admitted that it had not produced all source code, and would need to reschedule the deposition of a corporate designee on Stealthwatch, one of the Accused Products and Services. Lee Decl., Ex. C (Nov. 14 email from Gibson).

Notwithstanding the foregoing, Centripetal has and continues to represent that, to the extent necessary in light of any discovery to come, Centripetal will diligently supplement its contentions upon Defendant's production of all relevant technical documents, many of which Centripetal anticipates to contain highly confidential information that only Defendant has, including all relevant source code.

## IV. CONCLUSION

Therefore, for the reasons described above, Centripetal respectfully requests that the Court should deny Defendant's motion to compel.

Dated: November 20, 2019

Respectfully submitted,

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com

Paul J. Andre (*pro hac vice*)
Lisa Kobialka (*pro hac vice*)
James R. Hannah (*pro hac vice*)
Hannah Y. Lee (*pro hac vice*)
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700

Facsimile: (650) 752-1800
pandre@kramerlevin.com
hlee@kramerlevin.com
jhannah@kramerlevin.com
lkobialka@kramerlevin.com

*Attorneys for Plaintiff,*
*Centripetal Networks, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com