IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **CENTRIPETAL NETWORKS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:18cv00094-MSD-LRL |
| ) | |
| **CISCO SYSTEMS, INC.** ) | |
| ) | |
| **Defendant.** ) | |

**CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL A COMPLETE RESPONSE TO CISCO'S INTERROGATORY NO. 1 (INFRINGEMENT CONTENTIONS)**

Centripetal's Opposition Brief reads as if Centripetal is answering a different motion than the motion Cisco filed. As summarized on page 9 of Cisco's Motion to Compel:

> And while Cisco will certainly seek such further specificity after Centripetal has had an opportunity to review Cisco's source code (it was made available on November 8), at this juncture, Cisco is simply requesting the most basic disclosures from Centripetal, i.e., an identification of what specific Cisco product infringes and, if not a single product, what specific combination of Cisco products infringes each patent-in-suit, and what functionality within such product(s) for a given combination allegedly meets each claim limitation.

Dkt. No. 83 at 9. Centripetal never addresses this basic deficiency, but instead tries to further delay the disclosure of its infringement theories – including the most basic identification of the specific products and product combinations it is accusing – until the last possible moment. In doing so, Centripetal has turned the patent litigation process on its head.

Cisco presumes that Centripetal conducted a pre-filing investigation in good faith, as required by the Federal Rules, and formed a good faith belief that Cisco was selling specific products, or specific combinations of products, that Centripetal believes infringe each of the

asserted claims of each asserted patent. Cisco served Interrogatory No. 1 to obtain this basic information. Cisco expected a straightforward answer to this Interrogatory, which would then frame document production, depositions, invalidity issues, the *Markman* process, and, eventually, trial.

Centripetal's Opposition gives the impression that no such investigation occurred. In essence, Centripetal asserts that it was required to do no more than make a generic identification of dozens of products that might infringe (without specifying whether they infringe alone or in some unspecified combinations), and then asserts entitlement to full discovery on all aspects of these and other products before making specific allegations of infringement. And, according to Centripetal, only after all of that discovery occurs will it amend the response to Interrogatory No. 1 to reveal what specific product (if any) it accuses of infringing any claim by itself, and what specific combinations of products it accuses of infringing any given claim.

Simply put, Centripetal's allegations about the ongoing discovery process – which are fully addressed below – are irrelevant to the relief Cisco is seeking through this motion. Centripetal's pre-filing investigation – not full-blown discovery – should be all that is necessary for Centripetal to identify the specific products or combinations of products that it alleges to infringe each asserted claim of each asserted patent. Indeed, Cisco puts extensive documentation about all of its products in the public domain, including data sheets, configuration guides, administrator's guides, end-user guides, reference guides, specification sheets, use cases, release notes, and technical white papers, which can be found on Cisco's website alone. For this reason, Centripetal's various document productions contain hundreds of documents from Cisco's website, which Centripetal presumably used in its pre-suit investigation.

Then, in September of this year, Centripetal asked this Court to lift the stay by arguing that Cisco's activities in the marketplace were harming Centripetal's ability to compete with Cisco. Centripetal even represented to this Court that "Cisco's competitors, their bigger competitors, the other big global behemoths are seeing Cisco do **this**, and they're trying to copy Cisco because they have to compete against them." (9/11/2019 Transcript of Proceedings, at Tr. 10:2-6) (emphasis added). At that hearing, Centripetal did not say what the "this" was, but must have had something specific in mind. Yet as soon as discovery opened – and the time came for Centripetal to disclose what specifically it was talking about – Centripetal essentially threw up its hands and claimed that almost everything Cisco does might somehow infringe (including routers and switches that Cisco has been selling for decades before the patents were filed). Meanwhile, Centripetal refuses to be pinned down about its infringement contentions, arguing that Cisco must first complete all discovery so that Centripetal can then attempt to cobble together an infringement case that does not land right on top of what Cisco was already doing before Centripetal even filed its patents.

Cisco thus files this reply to make three basic points: (1) Centripetal has not addressed the basic point of Cisco's motion, i.e., that Centripetal must identify by actual name (using the public name under which each product is sold) exactly what product (if any) Centripetal alleges to infringe each claim by itself, and/or exactly what combinations of products Centripetal alleges to infringe each claim; (2) although not relevant to Centripetal's obligation to provide a complete response to Cisco's Interrogatory No. 1, Cisco's discovery effort has been extraordinary; and (3) the prospect of Centripetal later supplementing the contentions, "if necessary" (Opp'n, at 1), does not relieve Centripetal of serving fulsome infringement contentions at the outset of the case.

3

### 1.     Centripetal Ignored the Fundamental Basis of Cisco's Motion

Centripetal must have had a specific basis for filing this lawsuit. Centripetal therefore should be able to specify exactly what product infringes each claim, or exactly what combination of products infringes each claim. Lack of discovery is not a valid excuse. In districts with patent local rules, infringement contentions are served at outset of the case before *any* discovery is taken from the defendant. *See, e.g.*, Northern District of California Patent Local Rules 3-1 and 3-4; Eastern District of Texas Patent Rules 3-1 and 3-3 (each requiring plaintiff to serve infringement contentions 45 days *before* defendant is required to produce source code and technical documentation describing the operation of the products identified in the infringement contentions). In other words, the infringement contentions define the scope of the case for all purposes. Cisco served its Interrogatory No. 1 for exactly that same purpose.

The prejudice here is substantial. Discovery closes in a month. Cisco has substantive invalidity positions based on the fact that Centripetal is accusing products that Cisco sold long before Centripetal filed the patents (in either the identical or substantially identical form). Centripetal, however, is being evasive about what it is accusing, thus keeping all options on the table until the last possible moment to navigate the inevitable tension between infringement and invalidity. Centripetal's actions also makes the *Markman* process unmanageable; if Centripetal will not be transparent about its infringement theory, then it is difficult to frame issues for claim construction. That is not permissible in any forum, but it is particularly troublesome in this Court, where issues must be crystallized at the outset of a case in order to proceed to trial in seven months.

Nonetheless, Centripetal's response to Interrogatory No. 1 and its Opposition to this motion both proceed as if there is no requirement to clearly state infringement contentions at the outset of the case. Centripetal now argues that its response to Interrogatory No. 1 is sufficient

because, for purposes of discovery, Cisco attempted to articulate its understanding of a specific combination of accused products for one of the asserted claims. Opp'n at 5. Centripetal's block-quoted example on pages 5-6 – in which Centripetal "corrected" Cisco's effort to understand the scope of discovery – proves Cisco's point. Centripetal made clear in that block quote that the one combination identified by Cisco was just an "example," *and* that Centripetal was also accusing services provided by a group called "Talos" and a product called ThreatGrid. Critically, in its infringement contentions, Centripetal did not accuse either Talos or ThreatGrid of meeting a particular claim element of any asserted claim, nor of infringing a particular claim on their own. Nonetheless, Centripetal objected to Cisco's suggested scope of relevant information, simply stating that Threat Grid and Talos are "relevant technologies," and insisted that – after further discovery – Centripetal will actually reveal what it is accusing. In other words, Cisco attempted to glean one set of product combinations that might be at issue, and Centripetal's response was that Cisco left many things out, and that Centripetal is entitled to discovery on those other things without articulating how they would be tied to a specific patent claim or claim element. And, even then, Centripetal insisted that these are all just "examples."

The cases cited by Centripetal on page 7 of its Opposition do not support Centripetal's position. As an initial matter, Centripetal's argument – that, ordinarily, the main purpose of infringement contentions is to frame discovery – actually explains the reason for the arguments that follow, i.e., that discovery in this case has been disjointed and chaotic. On this point, Cisco agrees. But, when Centripetal uses its amorphous contentions to seek endless documents and all the source code for each of the products identified in its list of Accused Instrumentalities, discovery has not been properly framed and disputes will occur, as discussed below. Moreover, the cases Centripetal cites do not undercut the important role of infringement contentions in this

Court and this case. To the contrary, in *Genuine Enabling Technology LLC v. Nintendo Co. Ltd.*, the Court required far more specificity in the infringement contentions, including the disclosure of a complete list of accused products and identification of infringing components by model number and manufacturer for each asserted claim. *Genuine*, Case No. C19-00351-RSM, 2019 WL 3779867, at *2-3, *4-5 (W.D. Wash. Aug. 12, 2019). The Court found that this level of specificity is required to provide reasonable notice to the defendant of the reasons the plaintiff believes the products infringe. *Id*. at 5.

The other case Centripetal cites relates to a motion to compel discovery from defendant, which is not the subject of this motion or any other pending motion. *See Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273 (D. Del. 2012). In any event, the *Invensas* Court found that in order to obtain discovery related to unaccused products, the plaintiff must first "identify with specificity the component, characteristic, or element of the product that the [plaintiff] believes will render the product or system infringing." *Id* at. 279. Again, this is the type of information Cisco is seeking from Centripetal. This Court has likewise required specificity in infringement contentions. As cited in Cisco's Opening Brief, in *Centripetal v. Keysight Technologies, et al.*, this Court ordered Centripetal to provide defendants with "infringement contentions with code-level, line-by-line citations … to the specific code in Defendants' Instrumentalities that Plaintiff accuses Defendants' Instrumentalities of infringing for all patents." Case No. 2:17-cv-383, Dkt. No. 203 (June 25, 2018). The Court also struck "Plaintiff's boilerplate language that 'it reserves the right to supplement its chart.'" *Id*. This level of specificity should be required in this case by a date certain, but at this point, Cisco wants a legitimate answer to Interrogatory No. 1.

Finally, the example on page 8 of Centripetal's Opposition confirms Cisco's point. Centripetal identifies a document allegedly establishing that Cisco uses the term "Threat Intelligence Technology." Centripetal thus argues that Cisco must know what Centripetal is accusing. But that reference is to a white paper ("Talos_WhitePaper.pdf") regarding "Talos Intelligence," which is Cisco's "Threat Intelligence Organization" and describes how Talos is "an elite group of security experts" that provides support and intelligence feeds (i.e., intelligence about files known to be malicious or not malicious on the Internet). *See* Talos Intelligence White Paper, attached as Ex. 1. That document does not identify a specific product or set of products, or even a specific functionality. If Centripetal intends to accuse a specific product based on that product's alleged use of information from Talos, then Centripetal should have said so, and then shown exactly how that product satisfies every element of an asserted claim. But it did not do so. Indeed, if Centripetal's use of the term "Threat Intelligence Technology" is meant to simply refer to the intelligence feed from Talos (*i.e.*, the use in the document it now cites), then Centripetal's contentions regarding the '205 and '806 Patents (which Centripetal says are infringed only by "Threat Intelligence Technology") are non-sensical, because they indiscriminately refer to many other things. Perhaps Centripetal's answer will be that the threat intelligence feed provided by Talos is just an "example," and that "Threat Intelligence Technology" – as used by Centripetal – includes many other things and implicates many different products. But that argument proves Cisco's point that Centripetal's contentions are a moving target that obfuscate its actual claims. As soon as Cisco figures out one "example" and spends resources investigating and defeating it, Centripetal will reveal another example.

2. **Cisco's Discovery Effort Has Been Extraordinary.**

Centripetal has served a total of 196 Request for Production and has defined the Accused Instrumentalities to include "Accused Catalyst Products and Services," "Accused Router

Products and Services," "Accused ASA Products and Services," and "Accused Stealthwatch Products and Services" as well as various catchalls such as "all subsequent or comparable versions of these products, and any other product and service incorporating the Accused Instrumentalities, as identified by Plaintiff in the Complaint, Infringement Contentions, or any subsequent amendments thereof during This Case." *See, e.g.,* Centripetal's First Set of Requests for Production (Nos. 1-166), at pp. 3-5, attached as Ex. 2.  In other words, Centripetal's discovery requests encompass Cisco's switching, routing, firewall and security businesses, each of which is comprised of thousands of employees spread across the globe and includes technology developed in-house or acquired from various companies, including Sourcefire, Lancope, Observable Networks, Cognitive Security, and Threat Grid.  Cisco began producing documents in response to Centripetal's document requests within 20 days of receipt.  To date, Cisco has produced over 80,000 documents over the course of 13 separate productions.  In addition, Cisco produced source code for inspection across seven different product lines.  Centripetal takes issue with Cisco's production of source code on November 8 but fails to mention that November 8 was the *first time* Centripetal requested to review Cisco's source code.  *See* Email from H. Lien to Counsel for Cisco dated Nov. 5, 2019, attached as Ex. 3.  Had Centripetal requested to review it sooner, Cisco would have made it available sooner.  Cisco has also produced source code for eight prior art products, but Centripetal has not sought to review the prior art code at all.

      Despite the above discovery efforts, Centripetal continues to demand the production of documents related to products and technology that appear nowhere in the infringement contentions set forth in response to Interrogatory No. 1.  This has led to time-consuming discovery disputes over alleged deficiencies in Cisco's document production.   Indeed, the

8

parties are meeting-and-conferring by e-mail on almost a daily basis. When Cisco objects to what appears to be unreasonable discovery demands relating to Cisco's core products (such as routers and switches) that have long pre-existed the patents, Centripetal asserts that the products are somehow identified in the contentions, and thus are subject to unbounded discovery. But, using Cisco's multi-functional routers as an example, Cisco has no idea what functionality in the routers Centripetal accuses of infringement because Centripetal's contentions do not tie specific functionality in a Cisco router to any given claim element. Cisco has sold routers for decades, and routers are a core product in Cisco's product offering; thus, there are thousands of employees dedicated to router technology – and it is impossible to conduct focused discovery on Cisco router technology when Cisco has no idea how that technology could even be implicated in the case. And, this is just one "example."

### 3. The Prospect of Later Amendments Does Not Relieve Centripetal From Its Basic Disclosure Obligations.

Cisco deserves legitimate infringement contentions immediately. If Centripetal learns something that gives them good cause to amend, then they have the right to demonstrate such good cause later. But the basic identification of how each asserted claim is alleged to infringe and by what specific products cannot be put on hold until Centripetal decides to disclose its infringement theories.

### Conclusion

That Cisco has had to resort to motion practice to seek an Order compelling legitimate infringement contentions has already severely prejudiced its defense of this case. Cisco was entitled to discover Centripetal's infringement contentions on October 23rd when Centripetal served its original response to Interrogatory No. 1. Cisco deserves a full and complete answer to

this Interrogatory immediately, as discovery closes on December 20, 2019. Cisco further requests any other relief the Court deems appropriate in light of the need to bring this motion.

Dated: November 22, 2019              Respectfully submitted,

                            CISCO SYSTEMS, INC.

                            By /s/ *Dabney J. Carr, IV*

Dabney J. Carr, IV, VSB No. 28679
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

**DUANE MORRIS LLP**
Louis N. Jameson (admitted pro hac vice)
Matthew C. Gaudet (pro hac vice pending)
John R. Gibson, VSB No. 72968
Jennifer H. Forte (admitted pro hac vice)
1075 Peachtree Street, N.E., Suite 2000
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900
Facsimile: (404) 253-6901
wjameson@duanemorris.com
jrgibson@duanemorris.com
jhforte@duanemorris.com

Joseph A. Powers (admitted pro hac vice)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 689-3797
japowers@duanemorris.com

John M. Baird, VSB No. 77827
Christopher J. Tyson, VSB No. 81553
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
jmbaird@duanemorrris.com

cjtyson@duanemorris.com

Nicole E. Grigg (formerly Johnson)
(admitted *pro hac vice*)
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: (650) 847-4176
Facsimile: (650) 618-2713
NEGrigg@duanemorris.com

*Counsel for Defendant Cisco Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of November, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Kevin M. O'Donnell
> Jeffery T. Martin, Jr.
> HENRY & O'DONNELL, P.C.
> 300 N. Washington Street – Suite 204
> Alexandria, VA 22314
> kmo@henrylaw.com
> jtm@henrylaw.com
>
> Stephen Edward Noona
> VSB No. 25367
> KAUFMAN & CANOLES, P.C.
> 150 W. Main St., Suite 2100
> Norfolk, VA 23510
> senoona@kaufcan.com
>
> Paul J. Andre
> Lisa Kobialka
> James Hannah
> Hannah Lee
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 990 Marsh Road
> Menlo Park, CA 94025
> pandre@kramerlevin.com
> lkobialka@kramerlevin.com
> jhannah@kramerlevin.com
> hlee@kramerlevin.com

>                 /s/ Dabney J. Carr, IV
>                 Dabney J. Carr, IV (VSB No. 28679)
>                 **TROUTMAN SANDERS** LLP
>                 1001 Haxall Point
>                 Richmond, VA 23219
>                 Telephone: (804) 697-1200
>                 Facsimile: (804) 697-1339
>                 dabney.carr@troutmansanders.com
>
>                 *Counsel for Defendant Cisco Systems, Inc.*