# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, INC., | ) | |
| | ) | No.  2:18-CV-00094-MSD-LRL |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**PLAINTIFF CENTRIPETAL NETWORKS, INC.'S FIRST SET OF REQUESTS
FOR PRODUCTION TO DEFENDANT CISCO SYSTEMS, INC. (NOS. 1-166)**

Plaintiff Centripetal Networks, Inc. ("Centripetal"), by counsel, and pursuant to

Federal Rules of Civil Procedure 26 and 34, and pursuant to agreement by the parties,

hereby requests that Defendant Cisco Systems, Inc. ("Cisco" or "Defendant") produce the

following documents for inspection and copying within twenty (20) days of the date of

service of these requests at the offices of Kramer Levin Naftalis & Frankel LLP, 990

Marsh Road in Menlo Park, California 94025, in accordance with the following

Definitions and Instructions.  These requests impose a continuing duty upon Cisco to

supplement promptly in accordance with Federal Rule of Civil Procedure 26(e) and the

Local Rules of the Eastern District of Virginia as Cisco becomes aware of, generates, or

acquires additional knowledge or information responsive to these requests.

**DEFINITIONS**

1.      The terms "You," "Your," and "Defendant" shall mean Cisco Systems, Inc., your

present and former directors, officers, employees, parent organization/\), subsidiary

organization(s), predecessors in interest, successors in interest, divisions, servants, agents,

attorneys, consultants, partners, associates, investigators, representatives, accountants, financial advisors, distributors and any other person acting on Your behalf, pursuant to Your authority or subject to Your control, including any and all joint ventures or other legal entities of any type whatsoever in which You own or owned any interest, receive or received any payments, and/or participated or now participate in any manner.

2.      The term "Centripetal Networks," "Centripetal," or "Plaintiff' shall mean Centripetal Networks, Inc.

3.      The term "Third Party" shall mean any person or entity other than Centripetal or Defendant, including employees of the Third Party or attorneys, law firms, or counsel representing the Third Party.

4.      "This Case" means the above-captioned proceeding at the United States District Court for the Eastern District of Virginia, *Centripetal Networks, Inc. v. Cisco Systems, Inc.*, Civil Action No. 2:18-CV-00094-MSD-LRL.

5.      The term "Complaint" includes the complaint filed in This Case on February 13, 2018 (Dkt. 1), the amended complaint filed on March 29, 2018 (Dkt. 29), and any subsequent amendments thereto.

6.      The term "Action" refers to the above-captioned lawsuit filed in the United States District Court Eastern District of Virginia, Norfolk Division by Plaintiff.

7.      The term "Prior or Pending Actions" shall include any prior or pending lawsuit, judicial proceeding, administrative proceeding, arbitration, and/or appeal proceeding including before the U.S.P.T.O., relating to any of the Accused Instrumentalities.

8.      The term "Infringement Contentions" shall mean any infringement contention and any supplements thereto.

9.      "Patents-In-Suit" or "Asserted Patent(s)" means the Patents asserted in the

Amended Complaint, including but not limited to, U.S. Patent Nos. U.S. Patent Nos. 9,137,205

("the '205 patent"), 9,203,806 ("the '806 patent"), 9,560,176 ("the '176 patent"), 9,686,193 ("the

'193 patent"), and 9,917,856 ("the '856 patent"). The terms "Patents-In-Suit" or "Asserted

Patent(s)" includes each patent individually and all combinations and sub-combinations of the

patents collectively so as to give each Request the broadest possible scope.

10.      "Asserted Claim(s)" means any or all the claims of the Asserted Patents that

Plaintiff alleges to be infringed by Defendant.

11.      "Accused Instrumentalities" means the technologies accused of infringement in

Plaintiffs Complaint that are found in the following Cisco product and service offerings:

  a.   the "Accused Catalyst Products and Services" which are each version of Cisco's

       Catalyst Catalyst 9300 series (including without limitation models C9300-24T,

       C9300-24P, C9300-24U, C9300-24UX, C9300-48T, C9300-48P, C9300-48U,

       C9300-48UXM, C9300-48UN, C9300-24S, C9300-48S, C9300L-24T-4G,

       C9300L-24T-4X, C9300L-48T-4G, C9300L-48T-4X, C9300L-24P-4G, C9300L-

       24P-4X, C9300L-48P-4G, C9300L-48P-4X, C9300-NM-4G, C9300-NM-8X,

       C9300-NM-2Q), Catalyst 9400 series (including without limitation models

       C9404R, C9407R, C9410R, C9400-SUP-1, C9400-SUP-1XL,  C9400-SUP-1XL-

       Y, C9400-LC-48U, C9400-LC-48T, C9400-LC-48UX, C9400-LC-24XS, C9400-

       LC-48P, C9400-LC-24S, C9400-LC-48S, C9400-LC-48H), Catalyst 9500 series

       (including without limitation models C9500-32C, C9500-32QC, C9500-48Y4C,

       C9500-24Y4C, C9500-24Q, C9500-12Q, C9500-40X, C9500-16X, C9500-NM-

       8X, C9500-NM-2Q), Catalyst 9800 wireless controller (including without

3

limitation 9800-L, 9800-40, 9800-80, 9800-CL, Embedded Wireless), all subsequent or comparable versions of these products, and any other product and service incorporating the Accused Instrumentalities, as identified by Plaintiff in the Complaint, Infringement Contentions, or any subsequent amendments thereof during This Case.

b.  the "Accused Router Products and Services" which are each version of Cisco's ASR 1000 series routers (including without limitation models ASR 1001-X, ASR 1002-X, ASR 1001-HX, ASR 1002-HX, ASR 1004, ASR 1006, ASR 1006-X, ASR 1009-X, ASR 1013, ASR1000 RP2, ASR1000 RP3, ASR 1000ESP-40), ISR 1000 series routers (including without limitation models C1100, C1101, C1109, C1110, C1111, C1112, C1113, C1116, C1117, C1118, C1120, C1121, C1126, C1127, C1160, C1161), ISR 4000 series routers (including without limitation models 4461, 4451, 4431, 4351, 4331, 4321, and 4221), Integrated Virtual Router (ISRv) including the 5000 Enterprise Network Compute System, and Cloud Services Router (CSR) 1000V series, all subsequent or comparable versions of these products, and any other product and service incorporating the Accused Instrumentalities, as identified by Plaintiff in the Complaint, Infringement Contentions, or any subsequent amendments thereof during This Case.

c.  the "Accused ASA Products and Services" which are each version of Cisco's ASA 5506-X, Cisco ASA 5506W-X, Cisco ASA 5506H-X, Cisco ASA 5508-X, Cisco ASA 5516-X, Cisco ASA 5512-X, Cisco ASA 5515-X, Cisco ASA 5525-X, Cisco ASA 5545-X, Cisco ASA 5555-X, Cisco ASA 5585-X SSP-10, Cisco ASA 5585-X SSP-20, Cisco ASA 5585-X SSP-40, Cisco ASA 5585-X SSP-60,

Cisco ASA 5585-X SSP EP 10/40, and Cisco ASA 5585-X SSP EP 20/60, all subsequent or comparable versions of these products, and any other product and service incorporating the Accused Instrumentalities, as identified by Plaintiff in the Complaint, Infringement Contentions, or any subsequent amendments thereof during This Case.

    d.   the "Accused Stealthwatch Products and Services" which are each version of Cisco's Stealthwatch Endpoint License and Stealthwatch Cloud and any other product and service incorporating the Accused Instrumentalities, as identified by Plaintiff in the Complaint, Infringement Contentions, or any subsequent amendments thereof during This Case.

12.    The term "person" or "entity" shall refer to any individual, corporation, proprietorship, association, joint venture, company, partnership, or other business or legal entity, including governmental bodies and agencies. The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

13.    The term "document(s)" shall have the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001, and shall include within its meaning any and all papers, videotapes or video recordings, photographs, films, recordings, memoranda, books, records, accounts, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writing or by means of any mechanical or electrical recording device, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions

of the foregoing whether denominated formal, informal, or otherwise, as well as copies of the foregoing which differ in any way, including handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes the information stored in any form, including electronic form, on a computer or in a computer database or otherwise, including electronic mail. Moreover, the term "document" shall also include all "technical documents," such as source code, specifications, schematics, flow charts, artwork, drawings, pictures, pictorial representations, formulas, troubleshooting guides, release notes, service bulletins, technical bulletins, production specification sheets, white papers, operator manuals, operation manuals, and instruction manuals.

14.     "Source Code" means human-readable programming language text that defines software, firmware, or electronic hardware descriptions. Source Code files include without limitation files containing code in "C," "C++," "C/C++ Header," "Ruby," "Go," "SQL," "Python," "Java," "JavaScript," "ERB," "Objective C," "Objective C++," "Clojure," "Perl," and assembler, VHDL, and Verilog programming languages. Source Code files further include without limitation "include files," "make" files, link files, and other human-readable text files used in the generation and/or building of software and/or hardware.

15.     The term "communication" shall mean, including its usual and customary meaning, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand, or question by any medium, whether by written, oral, or other means, including, but not limited to, electronic communications and electronic mail.

16.     The term "thing" shall mean any tangible object, other than a document.

17.     The terms "relate to," "reflecting," "relating to," "concerning," or any variations thereof, shall mean relating to, referring to, concerning, mentioning, reflecting, regarding, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), or are between (as in the context of communications), as the context makes appropriate.

18.     The term "including" shall mean including but not by way of limitation.

19.     The words "and" and "or" shall be construed conjunctively or disjunctively in a manner making the request inclusive rather than exclusive.

20.     The term "any" shall mean "any and all" and the term "all" shall mean "any and all."

21.     The singular of any word or phrase shall include the plural of such word or phrase, and the plural of any word or phrase shall include the singular of such word or phrase.

22.     The definition of each term defined above is to be used regardless of whether the term is capitalized

## **INSTRUCTIONS**

1.      In answering the following requests, please furnish all available information including information in the possession, custody, or control of any of Defendant's attorneys, directors, officers, agents, employees, representatives, associates, investigators, divisions, affiliates, partnerships, parents, subsidiaries, and persons under Defendant's control who have the best knowledge, not merely information known to Defendant based on Defendant's own personal knowledge. If You cannot fully respond to the following requests after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each request that cannot be responded to fully and completely. In the latter event, state what efforts

were made to obtain the requested information and the facts relied upon that support the contention that the request cannot be answered fully and completely, and state what knowledge, information, or belief Defendant has concerning the unanswered portion of any such request.

2.      All documents must be produced in accordance with the requirements of Federal Rule of Civil Procedure 34(b) and per the following instructions:

a.    Electronic records and computerized information shall be produced in an intelligible format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible;

b.    Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document can be determined;

c.    File folders with tabs or labels or directories of files identifying documents shall be produced intact with such documents;

d.    Documents attached to each other shall not be separated. All documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all addenda, appendices, attachments and enclosures.

3.      If any information requested is claimed to be privileged or otherwise, provide all information falling within the scope of the request that is not privileged, and for each item of\ information contained in a document to which a claim of privilege is made, identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

a.      the basis on which the privilege is claimed;

b.    the names and positions of the author of the document and all other persons participating in the preparation of the document;

c.    the name and position of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed;

d.    the date of the document;

e.    a description of any accompanying material transmitted with or attached to such document;

f.    the number of pages in such document;

g.    the particular request to which such document is responsive; and

h.    whether any business or non-legal matter is contained or discussed in such document.

**4**.    If Defendant's response to a particular request is a statement that Defendant lacks the ability to comply with that request, Defendant shall specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer in the possession, custody, or control of Defendant, in which case Defendant shall identify the name and address of any person or entity known or believed by Defendant to have possession, custody, or control of that information or category of information.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All documents, communications, and things relating to Centripetal, its patents, or its products, including any documents communications, or things exchanged with third parties.

**REQUEST FOR PRODUCTION NO. 2:**

All documents, communications, and things relating to the Asserted Patents, including

documents or communications with third parties.

**REQUEST FOR PRODUCTION NO. 3:**

All documents, communications, and things relating to the timing and circumstances of Your first awareness of each of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 4:**

All documents, communications, and things relating to the timing and circumstances of Your first awareness of any products that were sold or offered for sale by Centripetal, including without limitation Centripetal's RuleGATE 2000 Gateway Series as identified in the Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All documents, communications, and things relating to notice of each of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 6:**

All documents, communications, and things relating to any investigation or analysis You performed of any of the Asserted Patents or Centripetal's products.

**REQUEST FOR PRODUCTION NO. 7:**

All documents, communications, and things concerning any attempt by You or any past or present Cisco employee to research Centripetal, Centripetal's patents, or Centripetal's products and technology by visiting Centripetal's website, including any documents from Centripetal's website that were downloaded.

**REQUEST FOR PRODUCTION NO. 8:**

All documents, communications, and things concerning any attempt by You or any past or present Cisco employee to look at or download information from Centripetal's website from May of 2014 to the present.

**REQUEST FOR PRODUCTION NO. 9:**

All documents, communications, and things concerning any attempt by You or any past or present Cisco employee to look at or download information from Centripetal's website between May 2017 through September 2017.

**REQUEST FOR PRODUCTION NO. 10:**

All documents, communications, and things sufficient to show the infringement or non-infringement of the Asserted Patents by You or any other person or entity, including but not limited to, all documents, communications, and things relating to Your efforts to assess the validity, infringement, or enforceability of the Asserted Patents or to design around or avoid infringement of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 11:**

All documents, communications, and things sufficient to show any alleged non-infringing alternatives to the inventions of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 12:**

All documents, communications, and things sufficient to show any alleged prior art to, or prior art searches related to the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 13:**

All documents, communications, and things sufficient to show the scope, patentability, novelty, validity, invalidity, enforceability, or unenforceability of any claim of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 14:**

All documents, communications, and things related to any secondary consideration or other objective evidence of non-obviousness of the Asserted Patents, including but not limited to

any long-felt need, failure of others, commercial success, copying of the claimed invention by others, unexpected or superior results from the claimed invention, licensing or praise by others, criticism by others, or any other objective indicia of non-obviousness.

**REQUEST FOR PRODUCTION NO. 15:**

All documents, communications, and things relating to the design, development, structure, architecture, testing, research, updating or operation for each of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 16:**

All technical and marketing documents, communications, and things discussing or regarding the components, features, or technologies of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 17:**

All documents, communications, and things relating to any presentations, overviews, technical overviews, PowerPoint slides, or briefing related to any of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 18:**

All documents, communications, and things relating to any API (Application Program Interface) specifications, functional specifications, flow charts, architecture diagrams, or design documents related to any of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 19:**

All documents, communications, and things regarding the Accused Instrumentalities, including the integration or operation of third party technologies, any open source technologies, or any other licensed or unlicensed technologies, including but not limited to, user manuals, installation guides, API guides, specifications, flow charts, architecture diagrams, design

documents, test plans, market requirement documents (MRD), and product requirement documents (PRD).

**REQUEST FOR PRODUCTION NO. 20:**

Copies of the source code for each of the Accused Instrumentalities, including but not limited to, all past and present releases, versions, updates, or upgrades.

**REQUEST FOR PRODUCTION NO. 21:**

All documents, communications, and things describing the structure and organization of the source code of the Accused Instrumentalities, including but not limited to, training materials, guides, manuals, design documents, or specifications provided to employees.

**REQUEST FOR PRODUCTION NO. 22:**

All source code repositories, development environments, bug tracking systems for any of the Accused Instrumentalities and all information stored in such source code repositories, development environments, and bug tracking systems including but not limited to comments, notes, log information, check-in and check-out information, commit history, documentation, programming guides or manuals, chat or forum discussions, and metadata.

**REQUEST FOR PRODUCTION NO. 23:**

All documents, communications, and things related to the Accused Instrumentalities that have been stored in GitHub, Jive, TechZone, and/or any other repository that contains technical, sales, or marketing information about any of the Accused Instrumentalities, Centripetal, or Centripetal's patents, including without limitation, technical documents, wikis, sales, and marketing documents.

**REQUEST FOR PRODUCTION NO. 24:**

All documents, communications, and things from project management or collaboration

platforms (e.g. Slack, Trello, Confluence, Telegram, Hightail, Azendoo, Bitrix24, eXo Platform),
or any other similar proprietary project management or collaboration tools that concern the
operation, functionality, design, development, testing, manufacturing, distribution, sale, updating
or importation into the United States of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 25:**

All documents, communications, and things sufficient to show the in-licensing or out-
licensing of patents or technology related to the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 26:**

All documents, communications, and things sufficient to identify payments, revenues, or
royalties obtained by You from licensing the Accused Instrumentalities, including any
components, parts, and/or features of such Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 27:**

All licensing agreements between Cisco and any third party regarding patents, proprietary
technology, or know-how related to the technology disclosed in the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 28:**

All documents, communications, and things sufficient to show the first offer for sale and
sale of each of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 29:**

All documents, communications, and things sufficient to show the sales or revenue
forecasts for each of the Accused Instrumentalities generated in the past six (6) years, that
forecast sales or revenue for 2013 or after, separated by U.S. versus Rest of World (by country)
to the extent the information exists.

**REQUEST FOR PRODUCTION NO. 30:**

All documents, communications, and things sufficient to show the market share of each of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 31:**

All documents, communications, and things sufficient to show the pricing of each of the Accused Instrumentalities from the year 2013 to the present.

**REQUEST FOR PRODUCTION NO. 32:**

All documents, communications, and things sufficient to show the costs associated with each of the Accused Instrumentalities from the year 2013 to the present, including but not limited to, manufacturing costs, marketing costs, server hosting costs, distribution costs, research and development costs, advertising costs, operation costs, employee salary costs for Cisco's developers working on the Accused Instrumentalities, and costs to update, separated by U.S. versus ROW (by country).

**REQUEST FOR PRODUCTION NO. 33:**

Summaries of the research and development costs related to the Accused Instrumentalities from the year 2013 to the present, separated by U.S. versus ROW (by country).

**REQUEST FOR PRODUCTION NO. 34:**

All documents, communications, and things related to any agreements between You and any third party related to the development, testing, manufacture, distribution, sale, updating, or importation into the United States of each of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 35:**

All documents, communications, and things sufficient to show any marketing, advertising, or promotion of each of the Accused Instrumentalities.

15

**REQUEST FOR PRODUCTION NO. 36:**

All documents, communications, and things sufficient to show any market reports,
industry reports, competitive analyses, surveys, or studies in the past six (6) years, related to the
Accused Instrumentalities, any of Your competitors, or any competing products of the Accused
Instrumentalities, including but not limited to any analyses relating to customer purchasing
habits, desires, needs, or preferences.

**REQUEST FOR PRODUCTION NO. 37:**

All documents, communications, and things that You have exchanged with or
communicated to IDC, Gartner, and/or Forrester regarding the Accused Instrumentalities since
2013, including but not limited to identification of revenues, forecasts, trends, evolution of the
products, benefits, growth rates, features, competition, responses to questionnaires, surveys or
interviews regarding the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 38:**

All documents, communications, and things sufficient to show any products or services
sold, offered for sale, marketed, or bundled with each of the Accused Instrumentalities from the
year 2015 to the present.

**REQUEST FOR PRODUCTION NO. 39:**

Summaries of the revenues associated with the bundling of any of the Accused
Instrumentalities with another Cisco product, including any bundles offered or sold to any Cisco
partners or any Cisco customers from 2015 to present.

**REQUEST FOR PRODUCTION NO. 40:**

All documents, communications, and things sufficient to identify each of the Accused
Instrumentalities by type and model number, including any internal names used within Cisco for

each of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 41:**

All documents, communications, and things sufficient to show the process by which the Accused Instrumentalities analyze network packets or network security threats or receive software updates.

**REQUEST FOR PRODUCTION NO. 42:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, offer for sale, updating and importation into the United States of Cisco's Accused Catalyst Products and Services.

**REQUEST FOR PRODUCTION NO. 43:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Accused Router Products and Services.

**REQUEST FOR PRODUCTION NO. 44:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Accused ASA Products and Services.

**REQUEST FOR PRODUCTION NO. 45:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Accused Stealthwatch Products and Services.

**REQUEST FOR PRODUCTION NO. 46:**

All documents, communications, and things concerning the operation, functionality,

design, development, testing, manufacturing, distribution, sale, updating and importation into the

United States of Cisco's IOS XE operating system, including IOS XE 16, as described in the

Complaint.

**REQUEST FOR PRODUCTION NO. 47:**

All documents, communications, and things concerning the operation, functionality,

design, development, testing, manufacturing, distribution, sale, updating and importation into the

United States of Cisco's Encrypted Traffic Analytics ("ETA") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 48:**

All documents, communications, and things concerning the operation, functionality,

design, development, testing, manufacturing, distribution, sale, updating and importation into the

United States of Cisco's Digital Network Architecture ("DNA") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 49:**

All documents, communications, and things concerning the operation, functionality,

design, development, testing, manufacturing, distribution, sale, updating and importation into the

United States of Cisco's Software-Defined Access ("SD-Access") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 50:**

All documents, communications, and things concerning the operation, functionality,

design, development, testing, manufacturing, distribution, sale, updating and importation into the

United States of Cisco's Threat Grid as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 51:**

All documents, communications, and things concerning the operation, functionality,

design, development, testing, manufacturing, distribution, sale, updating and importation into the

United States of Cisco's policy-based automation as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 52:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Application Visibility and Control ("AVC") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 53:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Next-Generation Network-Based Application Recognition ("NBAR2") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 54:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Hitless ACL updates as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 55:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's ACL Label-Sharing as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 56:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's DNA and SNI correlation as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 57:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Adaptive Security Device Manager ("ASDM") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 58:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Transactional Commit Modeling as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 59:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's ASA with FirePOWER Services (also known as Next Generation Firewall, or "NGFW") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 60:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's DNA and SNI correlation as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 61:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Multi-layer Machine Learning as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 62:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Access Control Lists ("ACL") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 63:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Insight Reporter as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 64:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's NetFlow as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 65:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Stealthwatch as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 66:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Cognitive Threat Analytics ("CTA") as described in the Complaint.

**REQUEST FOR PRODUCTION NO. 67:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the

United States of Cisco's Cognitive Intelligence as described at

https://community.cisco.com/t5/security-documents/cognitive-intelligence-formerly-cognitive-threat-analytics-or/ta-p/3651030.

**REQUEST FOR PRODUCTION NO. 68:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco Threat Response as described at

https://www.cisco.eom/c/en/us/products/security/threat-response.html.

**REQUEST FOR PRODUCTION NO. 69:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cognitive Security Acquisition as described at

https://www.cisco.com/c/en/us/about/corporate-strategy-office/acquisitions/cognitivesecurity.html.

**REQUEST FOR PRODUCTION NO. 70:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Stealthwatch including but not limited to Stealthwatch Flow Collector products, Stealthwatch Management Console, Stealthwatch Enterprise, Stealthwatch Endpoint, Stealthwatch Cloud, and Proxywatch, as described at

https://www.cisco.com/c/en/us/products/collateral/security/stealthwatch/datasheet-c78-739398.html.

**REQUEST FOR PRODUCTION NO. 71:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco Anyconnect endpoint products, as described at

https://www.cisco.com/c/en/us/products/security/anyconnect-secure-mobility-client/index.html.

**REQUEST FOR PRODUCTION NO. 72:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Products with Cisco's Test Access Port ("TAP") and Switched Port Analyzer ("SPAN") products described at

https://www.cisco.com/c/en/us/products/collateral/cloud-systems-management/nexus-data-broker/data_sheet_c78-729452.html.

**REQUEST FOR PRODUCTION NO. 73:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Talos.

**REQUEST FOR PRODUCTION NO. 74:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Threat Grid.

**REQUEST FOR PRODUCTION NO. 75:**

All documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the

United States of each of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 76:**

     All documents, communications, and things concerning Your organizational structure with respect to research, development, engineering, manufacture, assembly, testing, marketing, distribution, sale, licensing, updating and importation into the United States of each of the Accused Instrumentalities, including organizational charts.

**REQUEST FOR PRODUCTION NO. 77:**

     All documents, communications, and things on which You intend to rely on in support of any claim or defense in this litigation.

**REQUEST FOR PRODUCTION NO. 78:**

     All documents, communications, and things concerning Your policies or practices regarding the retention or destruction of documents and source code.

**REQUEST FOR PRODUCTION NO. 79:**

     All documents, communications, and things concerning any valuations performed by You or any third party of the Accused Instrumentalities, including any components, parts, and/or features of such Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 80:**

     All documents, communications, and things concerning the number and type of security events or threats analyzed by each of the Accused Instrumentalities, including identification of the technology or component thereof that is involved in the analysis, and the geographic locations where the Accused Instrumentalities perform these analyses (e.g., United States vs. rest of the world) on an hourly, daily, or monthly basis since the date of first sale.

**REQUEST FOR PRODUCTION NO. 81:**

All documents, communications, and things relating to how You track of the amount of use of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 82:**

All documents, communications, and things relating to any surveys of Your customers regarding You, Your products, and Your competitors' products.

**REQUEST FOR PRODUCTION NO. 83:**

All documents, communications, and things relating to any surveys or analyses by You or by a third party on Your behalf concerning any preferences of users of the technology of the Accused Instrumentalities or similar technologies (including any users of the technology within Your competitors' products and services).

**REQUEST FOR PRODUCTION NO. 84:**

All documents, communications, and things relating to any surveys or analyses by You or by a third party on Your behalf to determine the importance of any features of the Accused Instrumentalities or product and service offerings with similar technologies to any users of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 85:**

All documents, communications, and things relating to any surveys or analyses to determine the extent to which any users of the Accused Instrumentalities actually use any specific components or features of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 86:**

All documents, communications, and things relating to any surveys or analyses in Your possession concerning any preferences of users of the technology of the Accused

Instrumentalities or similar technologies (including any users of the technology within Your competitors' products and services).

**REQUEST FOR PRODUCTION NO. 87:**

All documents, communications, and things relating to any surveys or analyses in Your possession concerning the importance of any features of the Accused Instrumentalities or products and service offerings with similar technologies to any users of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 88:**

All documents, communications, and things concerning any of Your business plans related to the Accused Instrumentalities within the past six (6) years.

**REQUEST FOR PRODUCTION NO. 89:**

All documents, communications, and things sufficient to identify the total volume of network traffic submitted to or from each of the Accused Instrumentalities from 2013 to the present.

**REQUEST FOR PRODUCTION NO. 90:**

All documents, communications, and things sufficient to identify the total number of security events processed or inspected by each of the Accused Instrumentalities from 2013 to the present.

**REQUEST FOR PRODUCTION NO. 91:**

Summaries of the total number of security events processed or inspected by each of the Accused Instrumentalities from 2013 to the present.

**REQUEST FOR PRODUCTION NO. 92:**

Summaries of the total number of network threats blocked or dropped by each of the

Accused Instrumentalities from 2013 to the present.

**REQUEST FOR PRODUCTION NO. 93:**

All materials Cisco relied on in determining the number of security events or threats

analyzed by the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 94:**

All software (e.g., computer scripts and/or source code), documents, communications,

and things related to determining the percentage of network traffic that is analyzed by the

Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 95:**

The software (e.g., computer script(s) and/or source code) that Cisco used to determine

the volume of network traffic analyzed by the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 96:**

All documents, communications, and things sufficient to identify the number of network

connections that are dropped or blocked by the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 97:**

All documents, communications, and things identifying the volume of network traffic

that can be or is submitted for analysis by the Accused Instrumentalities where such traffic

originates from a server in the United States or is analyzed in the United States.

**REQUEST FOR PRODUCTION NO. 98:**

All documents, communications, and things sufficient to identify the location of all

servers or other computers hosting any portion of the Accused Instrumentalities that provides

updates to the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 99:**

Summaries of the number of times servers in the United States for the Accused

Instrumentalities communicate with, ping, update or otherwise talk to other servers or users of

the Accused Instrumentalities outside of the United States from 2013 to the present.

**REQUEST FOR PRODUCTION NO. 100:**

Summaries of the number of times servers in the United States send updates to customers

of the Accused Instrumentalities outside the United States from 2013 to present.

**REQUEST FOR PRODUCTION NO. 101:**

All documents, communications, and things sufficient to identify the entity controlling or

operating any server or computer that hosts any portion of the Accused Instrumentalities or

provides updates to the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 102:**

All invoices relating to servers and other services which host the security event or threat

analysis engine(s) of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 103:**

All information generated, reported, or provided to Cisco regarding servers, and any

other services which host the security event or threat analysis engine(s) of the Accused

Instrumentalities, including, but not limited to, any data showing the usage of these servers or

systems.

**REQUEST FOR PRODUCTION NO. 104:**

All documents, communications, and things sufficient to identify the geographical

location where the Accused Instrumentalities are developed, tested, manufactured, distributed,

sold, updated or imported into the United States from since the date development began.

**REQUEST FOR PRODUCTION NO. 105:**

All documents, communications, and things sufficient to identify where the software of the Accused Instrumentalities is compiled or maintained.

**REQUEST FOR PRODUCTION NO. 106:**

All documents, communications, and things identified or containing information responsive to any interrogatory served in this action.

**REQUEST FOR PRODUCTION NO. 107:**

All non-privileged or non-attorney work product documents, communications, and things concerning information that was reviewed or prepared for in connection with This Case.

**REQUEST FOR PRODUCTION NO. 108:**

All documents, communications, and things describing the effectiveness of the Accused Instrumentalities at identifying or preventing security breaches, or otherwise identifying threats or malware, including any studies, analyses, reports, or data compilations.

**REQUEST FOR PRODUCTION NO. 109:**

All declarations, affidavits, deposition, trial, or hearing transcripts regarding the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 110:**

All declarations, affidavits, deposition, trial, or hearing transcripts of any Cisco employee identified on Cisco's Initial Disclosures in this Action.

**REQUEST FOR PRODUCTION NO. III:**

All pleadings, affidavits, declarations, expert reports, discovery responses, deposition transcripts and exhibits, initial disclosures, initial patent disclosures, infringement contentions, hearing transcripts, technology tutorial transcripts, trial transcripts, exhibits, and demonstratives

from Prior or Pending Actions that concern the functionality or technologies of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 112:**

All documents, communications, and things related to any joint defense group, or any other business or litigation group, effort, or endeavor, to oppose or challenge Centripetal's patents or business.

**REQUEST FOR PRODUCTION NO. 113:**

All documents, communications, and things, including e-mails, that You have exchanged with or communicated to any Third Party regarding this Action, including any Third Parties that You have served with a subpoena.

**REQUEST FOR PRODUCTION NO. 114:**

A copy of all service contracts with any third party that provides server or other computer hosting services for any portion of the Accused Instrumentalities to provide updates to the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 115:**

All documents, communications, and things identifying the number of U.S., foreign, and worldwide users of each of the Accused Instrumentalities and services or products used in conjunction with the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 116:**

All documents, communications, and things sufficient to identify the number of U.S., foreign, and worldwide users of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 117:**

All documents, communications, and things related to the use or sale of the Accused

Instrumentalities in promoting sales of other products or services.

**REQUEST FOR PRODUCTION NO. 118:**

Since 2015, summaries of the gross and net revenue, billings, bookings, costs, expenses, pricing, number of units/licenses, and gross and net profits generated by manufacture, development, offer for sale, or importation into the United States of the Accused Instrumentalities (or any component thereof), broken down on a quarterly basis by product, component, model and version number, identifying the customer, the type of cost or expense, and the geographic locations of: customers, the place of development or manufacture, pricing, costs, expenses, and offers for sale.

**REQUEST FOR PRODUCTION NO. 119:**

All documents, communications, and things, regarding any savings or reductions in costs that You have obtained or generated as a result of the manufacture, use, or sale of the Accused Instrumentalities since 2015.

**REQUEST FOR PRODUCTION NO. 120:**

All documents, communications, and things regarding the purpose, motivation, desire or need to acquire Lancope, Inc.

**REQUEST FOR PRODUCTION NO. 121:**

All documents, communications, and things regarding the purpose, motivation, desire or need to acquire ThreatGrid.

**REQUEST FOR PRODUCTION NO. 122:**

All documents, communications, and things regarding any funding that Cisco obtained to acquire Lancope, Inc.

**REQUEST FOR PRODUCTION NO. 123:**

All documents, communications, and things regarding any funding that Cisco obtained to acquire ThreatGrid.

**REQUEST FOR PRODUCTION NO. 124:**

Documents and things sufficient to show the amount paid for any acquisition of a company, group, technology or product that relates to or is used in the Accused Instrumentalities and/or technology disclosed in the Patents-in-Suit from 2013 to present.

**REQUEST FOR PRODUCTION NO. 125:**

All documents, communications, and things regarding the acquisition price, monetary and non-monetary value or benefit associated with the acquisition of Lancope, Inc., including the analysis or calculation of the value or benefit from Lancope, Inc.'s tangible and intangible assets including developed technology, patents, customer relationships, products (including the Accused Instrumentalities), IPR&D (in-process research and development), and how any of the foregoing were determined.

**REQUEST FOR PRODUCTION NO. 126:**

All documents, communications, and things regarding the acquisition price, monetary and non-monetary value or benefit associated with the acquisition of ThreatGrid, including the analysis or calculation of the value or benefit from ThreatGrid's tangible and intangible assets including developed technology, patents, customer relationships, products (including the Accused Instrumentalities), IPR&D (in-process research and development), and how any of the foregoing were determined.

**REQUEST FOR PRODUCTION NO. 127:**

All documents, communications, and things regarding the acquisition price, monetary

and non-monetary value or benefit associated with the acquisition of any feature, technology or component of the Accused Instrumentalities, including the analysis or calculation of the value or benefit from those third parties' tangible and intangible assets including developed technology, patents, customer relationships, products (including the Accused Instrumentalities), IPR&D (in-process research and development), and how any of the foregoing were determined.

**REQUEST FOR PRODUCTION NO. 128:**

All documents, communications, and things concerning how You determine pricing for each of the Accused Instrumentalities, including what factors are considered to determine the pricing.

**REQUEST FOR PRODUCTION NO. 129:**

Two product samples or licenses for each of the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 130:**

All documents, communications, and things concerning the decision to develop and market the Accused Instrumentalities, including market studies, competitive analysis, and risk assessments.

**REQUEST FOR PRODUCTION NO. 131:**

All documents, communications, and things sufficient to show the costs associated with sales and/or maintenance of the Accused Instrumentalities, including sales commissions, installation costs, delivery costs, training costs and/or overhead.

**REQUEST FOR PRODUCTION NO. 132:**

All documents, communications, and things related to the costs of developing the Accused Instrumentalities, including (i) Initial budgets estimating the cost to develop the Accused Instrumentalities and any related budget-to-actual reports comparing the actual cost of

development to budgeted cost; (ii) Job cost reports detailing the cost to develop and test

prototypes, samples and finished products prior to bringing the Accused Instrumentalities to

market, including the cost of installation for beta testing; (iii) Job cost reports detailing the cost

to develop, test and deliver updates to the Accused Instrumentalities; (iv) Quantification, by

employee, of time (in hours) dedicated to the development of the Accused Instrumentalities; (v)

Salary, benefits and other costs attributable to personnel who dedicated time to the development

of the Accused Instrumentalities; (vi) Quantification of overhead costs associated with direct

labor costs of personnel who dedicated time to the development of the Accused

Instrumentalities; (vii) Cost of independent contractors or third parties utilized in the

development of the Accused Instrumentalities; and (vii) Other out of pocket costs associated

with development of the Accused Instrumentalities, including hardware suppliers.

**REQUEST FOR PRODUCTION NO. 133:**

All documents, communications, and things that Defendant intends to rely on regarding

the applicable reasonable royalty in this action, including any documents relating to the royalty

rate, royalty base, and the smallest salable patent-practicing unit for each of the Accused

Instrumentalities.

**REQUEST FOR PRODUCTION NO. 134:**

All documents, communications, and things related to the release date of the Accused

Instrumentalities and the date that specific features of the Accused Instrumentalities were

incorporated or added.

**REQUEST FOR PRODUCTION NO. 135:**

All settlement agreements from each of the Prior Actions that involved the Accused

Instrumentalities, including communications related to the negotiation of the settlement

agreements and any other documents discussing the terms of the settlement agreements.

**REQUEST FOR PRODUCTION NO. 136:**

All documents, communications, and things sufficient to show to the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States of Cisco's Talos' Global Threat Intelligence Feed as described in https://www.cisco.com/c/dam/en/us/products/collateral/security/stealthwatch/white-paper-c11-740605.pdf.

**REQUEST FOR PRODUCTION NO. 137:**

Documents sufficient to identify the number of updates, results, dispositions, verdict scores, or other information obtained as a result of scanning, processing or analyzing network traffic with the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 138:**

Documents sufficient to identify all products that receive and/or are sent updates, results, dispositions, verdict scores, or other information obtained as a result of scanning, processing or analyzing network traffic with the Accused Instrumentalities.

**REQUEST FOR PRODUCTION NO. 139:**

All documents, communications, and things, including emails, letters, communications, and presentations that Cisco sent to or received from ThreatGRID relating to Centripetal, Centripetal's partnership with ThreatGRID, Centripetal's products, or Centripetal's patents and technology, as described in paragraph 66 of the amended complaint served in this Action on March 29, 2019.

**REQUEST FOR PRODUCTION NO. 140:**

All documents, communications, and things, including emails, letters, communications,

and presentations that Cisco sent to or received from Centripetal following the parties'
introduction through third party Granite Hill Capital Partners as described in paragraph 67 of the
amended complaint served in this Action on March 29, 2019.

**REQUEST FOR PRODUCTION NO. 141:**

All documents, communications, and things, including emails, communications, letters,
and presentations that Cisco sent to or received from Centripetal relating to Centripetal's
participation in the June 2016 Cisco Live partner conference, including any demonstration or
presentation of Centripetal's products and technologies, as described in paragraph 68 of the
amended complaint served in this Action on March 29, 2019.

**REQUEST FOR PRODUCTION NO. 142:**

All documents, communications, and things, including emails, communications, letters,
demonstrations, and presentations that Cisco's Joseph Muniz sent to or received from any current
or former Cisco employee in 2016 concerning Centripetal, Centripetal's patents, or Centripetal's
technology and products.

**REQUEST FOR PRODUCTION NO. 143:**

All documents, communications, and things, including emails, communications, letters,
and presentations that Cisco sent to or received from Great Wall Systems, Inc. concerning
Centripetal, Centripetal's patents, or Centripetal's technology and products.

**REQUEST FOR PRODUCTION NO. 144:**

All documents, communications, and things, including emails, communications, letters,
and presentations that Cisco's Pavan Reddy sent to or received from any former or current
Centripetal employee in 2015 concerning Centripetal, Centripetal's patents, or Centripetal's
technology and products.

**REQUEST FOR PRODUCTION NO. 145:**

All documents, communications, and things, including emails, communications, letters, and presentations that Cisco's Pavan Reddy sent to or received from any former or current Cisco employee in 2015 concerning Centripetal, Centripetal's patents, or Centripetal's technology and products.

**REQUEST FOR PRODUCTION NO. 146:**

All documents, communications, and things, including emails, communications, letters, and presentations that Cisco's Rob Salvaigno sent to or received from any former or current Centripetal employee in 2016 concerning Centripetal, Centripetal's patents, or Centripetal's technology and products.

**REQUEST FOR PRODUCTION NO. 147:**

All documents, communications, and things, including emails, communications, letters, and presentations that Cisco's Rob Salvaigno sent to or received from any former or current Cisco employee in 2016 concerning Centripetal, Centripetal's patents, or Centripetal's technology and products.

**REQUEST FOR PRODUCTION NO. 148:**

All documents, communications, and things, including emails, communications, letters, and presentations that Cisco's Karthik Subramanian sent to or received from any former or current Centripetal employee between 2016-2017 concerning Centripetal, Centripetal's patents, or Centripetal's technology and products.

**REQUEST FOR PRODUCTION NO. 149:**

All documents, communications, and things, including emails, communications, letters, and presentations that Cisco's Karthik Subramanian sent to or received from any former or

current Cisco employee between 2016-2017 concerning Centripetal, Centripetal's patents, or

Centripetal's technology and products.

**REQUEST FOR PRODUCTION NO. 150:**

All documents, communications, and things, including emails, communications, letters,

and presentations that Cisco's Peter Shih sent to or received from any former or current Cisco

employee in 2016 concerning Centripetal, Centripetal's patents, or Centripetal's technology and

products.

**REQUEST FOR PRODUCTION NO. 151:**

All documents, communications, and things, including emails, communications, letters,

and presentations concerning any meeting between Cisco and Centripetal held in February 2016.

**REQUEST FOR PRODUCTION NO. 152:**

All electronic recordings or transcripts of electronic recordings of any communications

and presentations of any meeting between Cisco and Centripetal held in February 2016.

**REQUEST FOR PRODUCTION NO. 153:**

All documents, communications, and things, including emails, communications, letters,

presentations, or feedback that was exchanged internally amongst Cisco employees concerning

any topic that was discussed during any meetings between Cisco and Centripetal that took place

in February 2016.

**REQUEST FOR PRODUCTION NO. 154:**

All documents, communications, and things, including emails, communications, letters,

and presentations that Cisco's Greg Akers sent to or received from any current or former

Centripetal employee in 2016 concerning Centripetal, Centripetal's patents, or Centripetal's

technology and products.

**REQUEST FOR PRODUCTION NO. 155:**

All documents, communications, and things, including emails, communications, letters, and presentations that Cisco's Greg Akers sent to or received from any current or former Cisco employee in 2016 concerning Centripetal, Centripetal's patents, or Centripetal's technology and products.

**REQUEST FOR PRODUCTION NO. 156:**

All documents, communications, and things, including emails, communications, letters, and presentations that Cisco sent to or received from Oppenheimer & Co., Inc. relating to Centripetal, Centripetal's patents, or Centripetal's products and technology.

**REQUEST FOR PRODUCTION NO. 157:**

All documents, communications, and things, including emails, communications, letters, and presentations that Cisco sent to or received from Oppenheimer & Co., Inc. relating to Project Cedar.

**REQUEST FOR PRODUCTION NO. 158:**

All documents, communications, and things concerning the information presented by Cisco at the 2018 Underground Economy Conference in Strasbourg, France, including any documents, communications and things concerning the Accused ASA Products and Services.

**REQUEST FOR PRODUCTION NO. 159:**

All price lists created by Cisco for its products or services, starting from 2014 to the present.

**REQUEST FOR PRODUCTION NO. 160:**

Documents sufficient to show a list of all SKU's used by Cisco for its products or services, and including what products, components, or services are included in that SKU, starting

from 2014 to the present.

**REQUEST FOR PRODUCTION NO. 161:**

Documents sufficient to show the monetary value the Cisco attributes to any portion of any SKU sold by Cisco, including a description of any value attributed to which products, components, or services are included in that SKU, starting from 2014 to the present.

**REQUEST FOR PRODUCTION NO. 162:**

All documents describing how Cisco assigns a monetary value for any portion of any SKU sold by Cisco, including a description of what value Cisco attributes to which products, components, or services included in a SKU, starting from 2014 to the present.

**REQUEST FOR PRODUCTION NO. 163:**

All documents, communications, and things concerning Cisco's acquisition of Sourcefire, Inc., including the technologies acquired and any valuation of intellectual property.

**REQUEST FOR PRODUCTION NO. 164:**

All documents, communications, and things sufficient to identify all actual customers of the Accused Instrumentalities, including the name of each customer, the contact information for each customer, and information identifying precisely what each customer purchased from Cisco.

**REQUEST FOR PRODUCTION NO. 165:**

All documents, communications, and things relating to any analyses by You or by a third party on Your behalf to concerning any products and services offered by any of Your competitors described at https://www.marketing91.com/cisco-competitors/.

**REQUEST FOR PRODUCTION NO. 166:**

All documents, communications, and things relating to any analyses in your possession concerning any products and services offered by any of Your competitors described at

https://www.marketing91.com/cisco-competitors/.

Dated: October 2, 2019                    By:    /s/ Hannah Lee
                                          Paul J. Andre
                                          Lisa Kobialka
                                          James Hannah
                                          Hannah Lee
                                          KRAMER LEVIN NAFTALIS
                                          & FRANKEL LLP
                                          990 Marsh Road
                                          Menlo Park, CA 94025
                                          Telephone: (650) 752-1700
                                          Facsimile: (650) 752-1800
                                          pandre@kramerlevin.com
                                          lkobialka@kramerlevin.com
                                          jhannah@kramerlevin.com
                                          hlee@kramerlevin.com

                                          Stephen E. Noona
                                          Virginia State Bar No. 25367
                                          KAUFMAN & CANOLES, P.C.
                                          150 West Main Street, Suite 2100
                                          Norfolk, VA 23510
                                          Telephone: (757) 624-3000
                                          Facsimile: (888) 360-9092
                                          senoona@kaufcan.com

                                          *Attorneys for Plaintiff*
                                          CENTRIPETAL NETWORKS, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2019, a complete copy of the foregoing PLAINTIFF

CENTRIPETAL NETWORKS, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO

DEFENDANT CISCO SYSTEMS, INC. (NOS. 1-166) was served via electronic mail upon the

following counsel of record for Defendant Cisco Systems, Inc.:

Jennifer H. Forte
Matthew Christopher Gaudet
John Robert Gibson
Louis Norwood Jameson
Duane Morris LLP (GA-NA)
1075 Peachtree St NE
Suite 2000
Atlanta, GA 30309
jhforte@duanemorris.com
mcgaudet@duanemorris.com
irgibson@duanemorris.com
wjameson@duanemorris.com

Joseph A. Powers
Duane Morris LLP (PA-NA)
30 S 17th St
Philadelphia, PA 19103-4196
japowers@duanemorris.com

Christopher Joseph Tyson
John Matthew Baird
Duane Morris LLP (DC)
505 9th Street, NW
Suite 1000
Washington, DC 20004-2166
cjtyson@duanemorris.com
jmbaird@duanemorris.com

Dabney Jefferson Carr, IV
Troutman Sanders LLP (Richmond)
1001 Haxall Point
Suite 1500
Richmond, VA 23219
dabney.carr@troutmansanders.com

*Attorneys for Defendant*
Cisco Systems, Inc.

By:      */s/ Hannah Lee*
Hannah Lee
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
hlee@kramerlevin.com