**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC., | ) |
| | ) |
| Plaintiff, | ) No. 2:18-cv-00094-HCM-LRL |
| | ) |
| vs. | ) **PUBLIC - REDACTED** |
| | ) |
| CISCO SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF CENTRIPETAL NETWORKS, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
<u>COMPEL CERTAIN DOCUMENTS AND DISCOVERY RESPONSES</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    I.    The Court Should Order Cisco To Produce Relevant Documents and
        Discovery Responses ........................................................................................ 3

        A.    Cisco Has No Reasonable Basis for Denying Centripetal Highly
            Relevant Technical Documents Relating to the Accused Products
            and Services .......................................................................................... 3

        B.    Cisco's Response to Interrogatory No. 5 Is Improper and Should
            be Immediately Supplemented ............................................................. 8

        C.    Cisco Should Be Compelled to Produce Relevant Financial
            Documents Pertaining to Convoyed and Derivative Sales ................ 10

        D.    Cisco Should Produce All Service Contracts with Host Servers and
            Update Providers of the Accused Products and Services .................. 12

CONCLUSION ................................................................................................................... 13


# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Delphix Corp. v. Actifio, Inc.*,
   No. 13cv04613BLF(HRL), 2015 WL 5693722 (N.D. Cal. Sept. 29, 2015)..............................6

*DirectPacket Research, Inc., v. Polycom, Inc.*,
   No. 2:18-cv-00331-AWA-LRL, Dkt. 101 (E.D. Va. June 3, 2019) ........................................10

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*,
   224 F.R.D. 644 (N.D. Cal. 2004).............................................................................................4

*Georgetown Rail Equip. Co. v. Holland L.P.*,
   867 F.3d 1229 (Fed. Cir. 2017)..............................................................................................13

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) *mod. and aff'd*, 446 F.2d 295 (2d Cir.
   1971), *cert. denied*, 404 U.S. 870 (1971)..................................................................10, 11, 12, 13

*Graves v. Indus. Power Generating Corp.*,
   No. 3:09cv717, 2010 WL 2943079 (E.D. Va. Jul. 20, 2010) ....................................................3

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001)...............................................................................................10

*LifeNet Health v. LifeCell Corp.*,
   No. 2:13cv486, 2014 WL 4162113 (E.D. Va. Aug. 19, 2014) .................................................9

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
   43 F.3d 922 (4th Cir. 1995) ......................................................................................................3

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)...............................................................................................13

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017)...............................................................................................13

*Versata Software, Inc. v. SAP Am., Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013)................................................................................................6

*Wu v. Tseng*,
   No. 2:06cv346, 2007 WL 4143077 (E.D. Va. Nov. 19, 2007) .................................................3

**Rules**

Fed. R. Civ. P. 37 ............................................................................................................1, 3, 9

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 37 and the Local Rules of this Court, Plaintiff Centripetal Networks, Inc. ("Centripetal") submits the following Motion to Compel Defendant Cisco Systems, Inc. ("Cisco" or "Defendant") to response to Centripetal's discovery requests pertaining to Centripetal's patent infringement claims in this action.  Specifically, Centripetal moves to compel: (1) key technical documents, including specifications and requirements documents, relating to the Accused Products and Services; (2) a proper and fulsome response to Interrogatory No. 5 in order for Centripetal to identify internal codenames that refer to each version of the Accused Products and Services; (3) service agreements with third parties that host servers and provide updates to the Accused Products and Services; and (4) information pertaining to convoyed and derivative sales to which Centripetal is entitled.  Notably, Cisco does not refute the existence of the foregoing information and documents but refuses to provide highly relevant discovery directly relating to the claims at issue in this case.  Cisco's ongoing gamesmanship is significantly inhibiting Centripetal's ability to obtain relevant discovery concerning its patent infringement claims when fact discovery is set to close in approximately two weeks on December 20th.  Despite the parties' meet and confer efforts, they were unable to resolve these issues, forcing Centripetal to bring this Motion.

## STATEMENT OF FACTS

Centripetal filed the instant action on February 13, 2018, asserting infringement of ten patents, and adding an additional asserted patent in its amended complaint one month later.  Dkt. Nos. 1, 29.  Nearly a year later, the case was stayed pending *inter partes* review ("IPR") proceedings against nine of the eleven asserted patents.  Dkt. No. 58.  When the Patent Trial and Appeal Board denied institution of several of the IPRs on May 20, 2019, Centripetal requested

that the Court lift the stay on the basis that the case could reasonably proceed with respect to at least some of the asserted patents that were not the subject of the IPRs.  Dkt. No. 68 at 4-5. Effective October 2, 2019, the Court lifted the stay with respect to the following claims of patents not currently subject to IPR—specifically, U.S. Patent Nos. 9,137,205 (the "'205 Patent"), 9,203,806 (the "'806 Patent"), 9,560,176 (the "'176 Patent"), 9,686,193 (the "'193 Patent") and 9,917,856 (the "'856 Patent") (collectively, the "Asserted Patents").  *Id*.  Each of the patented inventions relate to the collection of threat intelligence data and processing of that data to monitor and detect threats to computer networks.  Fact discovery is set to conclude on December 20, 2019 with expert discovery commencing shortly thereafter in January.

On October 2, 2019, Centripetal served requests for production and interrogatories seeking technical and financial information about the Accused Products and Services,[1] including development information and information relating to specific relevant technologies used by the Accused Products and Services.  Over the last several weeks, Centripetal requested that Cisco remedy the several deficiencies in its discovery responses and document productions including its failure to provide key confidential technical documents regarding the operation and functionality of the Accused Products and Services and financial information pertaining to the costs and sales associated with those products and services.  *See e.g.*, Declaration of Hannah Lee ("Lee Decl."), Ex. 1 at 1-2, Ex. 2 at 1-2, Ex. 3 at 3-4.  Centripetal's efforts, however, have been to no avail.  Cisco has not only refused to provide relevant technical and financial information,

---

[1] The "Accused Products and Services" are Cisco's Catalyst Switch Products, Router Products, ASA Products, and Stealthwatch Products and include their use of at least the following Cisco technologies Encrypted Traffic Analytics ("ETA"), Cognitive Threat Analytics ("CTA"), and Threat Intelligence Technology provided through Talos and ThreatGRID. Pursuant to the Court's November 26, 2019 Order (Dkt. No. 108), Centripetal will serve supplemental infringement contentions indicating the combinations of technologies which are accused for each asserted patent claim.

but its gamesmanship has significantly prohibited Centripetal from adequately preparing for the 20 depositions that are scheduled to take place before the close of fact discovery on December 20th.

## ARGUMENT

**I.     The Court Should Order Cisco To Produce Relevant Documents and Discovery Responses**

Rule 37(a)(1) of the Federal Rules of Civil Procedure provides that "a party may move for an order compelling disclosure or discovery." The trial court has broad discretion in deciding whether to grant a motion to compel. *Graves v. Indus. Power Generating Corp.*, No. 3:09cv717, 2010 WL 2943079, at *4 (E.D. Va. Jul. 20, 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). This Court has compelled discovery where a party failed to provide discovery responses (*Graves,* 2010 WL 2943079, at *4), and where a party provided deficient discovery responses. *Wu v. Tseng*, No. 2:06cv346, 2007 WL 4143077, at *6 (E.D. Va. Nov. 19, 2007).

Over the last several weeks, Centripetal has attempted, in good faith to work out the issues raised in this Motion in a fair and reasonable manner but to no avail. Cisco has no basis to refuse to provide the information sought as it is not only critical and relevant to the claims in this action, but will assist is ensuring efficiency in the last few weeks of fact discovery comprising of several key depositions. Cisco's ongoing refusal has already impacted Centripetal's discovery efforts forcing it to seek the Court's intervention to avoid any further prejudice and to obtain the relevant discovery before the remaining depositions and the service of expert reports.

**A.     Cisco Has No Reasonable Basis for Denying Centripetal Highly Relevant Technical Documents Relating to the Accused Products and Services**

By way of discovery requests served on October 2, 2019, Centripetal sought Cisco's production of relevant technical documents for the Accused Products and Services. Lee Decl.,

3

Ex. 4. Cisco has refused to produce the documents despite them being within its possession and control. These documents include, as identified in greater detail below, technical documents related to the design, operation, and functionality such as confidential requirements documents and specifications of the Accused Products and Services—all of which are directly relevant to Centripetal's infringement claims in this litigation and necessary for the upcoming factual depositions before the impending completion of discovery. *See generally* Lee Decl., Ex. 1 at 1-2.

First, Cisco has failed to provide key technical specifications and requirements documents relating to the operation and functionality of the Accused Products and Services. Cisco contends that it has already produced the "most relevant" documents, functional specifications may have changed over time, and that source code is the best evidence of the functionality of the products. Ex. 5 at 7. Notwithstanding the fact that Cisco has failed to produce a complete version of the source code for the Accused Products and Services, Cisco's cherry-picking of documents is improper and violates the tenets of fair discovery. *See, e.g.*, *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004) (granting plaintiff's motion to compel and "disapprov[ing]" defendant's attempt to unilaterally limit the scope of interrogatory to what defendant considered relevant). Simply because Cisco does not want to produce relevant documents is not a valid basis to withhold them. If functionality has changed over time in the Accused Products and Services, Centripetal is entitled to obtain discovery into those issues and ask Cisco's witnesses about such changes. Cisco's stonewalling of discovery has prejudiced Centripetal's ability to conduct discovery and depositions into these issues, as nine depositions have already taken place and at least 20 are scheduled to take place before the close of fact discovery on December 20th.

Examples of documents that Cisco has failed to produce which are responsive to Centripetal's requests are:

- requirements documents, specifications and test plan requirements relating to the accused Stealthwatch and ETA technologies, responsive to at least Centripetal's RFP Nos. 47, 65, 70, and 75, including: (1) product requirements documents or functional specifications for ETA; (2) recent versions of functional specifications for ███████████████ (*see, e.g.*, Cisco-Centripetal_00000114 and Cisco-Centripetal_00004113); (3) functional specifications for the accused Stealthwatch; and (4) Stealthwatch product requirements documents after 2017 (*see, e.g.*, Cisco-Centripetal_00012977).  Tellingly, Cisco has produced *templates* of specifications (*see, e.g.*, Cisco-Centripetal_00001216, Cisco-Centripetal_00001214, Cisco-Centripetal_00000135) but has yet to produce the *actual* specifications resulting from these templates.  These documents are highly relevant to Centripetal's infringement claims as both ETA sand Stealthwatch are part of the Accused Products and Services and for at least this reason, Cisco should be compelled to produce all relevant technical documents.  Rather than provide these key documents, Cisco instead has stated that it has "produced the source code for these products/features, which define how they operate" (Lee Decl., Ex. 5 at 7) but source code alone is not sufficient[2] – the documents are needed to understand the overall functionality of the products and features and how the code operates.

---

[2] Incredibly, Cisco has repeatedly relied on its production of source code to avoid its obligation to produce all relevant technical documents yet even the source code it has made available for inspection is incomplete.  *See* Lee Decl., Ex. 3.

> *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (noting the significance of "[t]he jury also [seeing] [] documents explaining [how] the accused hierarchical access feature [of the source code] was designed … ."); *Delphix Corp. v. Actifio, Inc.*, No. 13cv04613BLF(HRL), 2015 WL 5693722, at *5 (N.D. Cal. Sept. 29, 2015) (noting "difficulty [in] understanding the product source code without the technical documents that provided context").

- key technical documents relating to the functionality of the Firepower Management Center ("FMC") and Threat Intelligence Director ("TID"), which, as Centripetal has explained to Cisco, and Cisco's website reveals, are key components of Cisco's accused Threat Intelligence Technology and are responsive to several of Centripetal's Requests for Production. *See e.g.*, Lee Decl., Ex 1. In particular, these documents are responsive to at least RFP Nos. 75 and 205 which seek, in relevant part, documents concerning the "operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States" of all of the Accused Products and Services in addition to RFP No. 59 which directly relates to such documents for Cisco's ASA with FirePOWER Services, RFP No. 192 which directly relates to such documents for the Firepower Management Center, and RFP No. 193 which directly relates to such documents for the Threat Intelligence Director. *See* Lee Decl., Ex. 4 at 20, 23-24 (RFP Nos. 59, 75), Ex. 6 at 11-12 (RFP Nos. 192, 193) and Ex. 7 at 11 (RFP No. 205).

- Cisco's own witness testified as to the existence of several key technical documents that Cisco has yet to produce. Specifically, Sumin Amin, Cisco's

Strategy and Evangelism for Stealthwatch, testified that (1) Cisco has a team

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

███████████████████████████████

████████████████████████. *See* Lee Decl., Ex. 8 (Amin Rough Tr.) at 30:1-31:4, 32:8-18, 54:5-55:2.  Cisco has not produced these key technical documents and lists which are responsive to at least Centripetal RFP Nos. 66, 70, and 75.

- "Documents, communications, and things concerning the operation, functionality, design, development, testing, manufacturing, distribution, sale, updating and importation into the United States" of "Defendant's Hitless ACL updates as described in the Complaint" (RFP No. 54), "Cisco's ACL Label-Sharing as described in the Complaint" (RFP No. 55) and "Cisco's Transactional Commit Modeling as described in the Complaint" (RFP No. 58).  *See* Lee Decl., Ex. 4 at 19-20.  To date, Cisco has refused to produce relevant and recent technical documents pertaining to the accused functionalities of Hitless ACL updates, ACL Label-Sharing, and Cisco's Transactional Commit Modeling, all of which were identified in Centripetal's Complaint and relate to the accused ASA products, relying instead on its contention that source code is sufficient but, as explained, *supra*, Cisco's position falls flat as the technical documents are as relevant and pivotal to understanding the Accused Products and Services including how the source code operates. Moreover, recent versions of these documents (not only the

7

handful of older versions that Cisco produced) are relevant as they show what changes were made over time to these technologies.

Without the foregoing highly relevant documentation regarding several Accused Products and Services, Centripetal has been significantly prejudiced in its ability to prepare for factual depositions and will be further prejudiced from presenting relevant information in its expert reports and at trial regarding the operation of the infringing technologies. Thus, Cisco's improperly selective and unilateral limitation on which responsive and relevant technical documents to produce should be disregarded and Cisco should be compelled to produce all such documents.

### B. Cisco's Response to Interrogatory No. 5 Is Improper and Should be Immediately Supplemented

Centripetal's Interrogatory No. 5 requests that Cisco "[i]dentify all names, internal codenames, nomenclatures, SKUs, and/or designations for each actual or planned release or version of the Accused Instrumentalities, and any technologies, components, or features of the Accused Instrumentalities." Ex. 9 at 21. After first providing a list of codenames without any identification as to which products, technologies, components or features the codenames refer to, Cisco supplemented its response to simply list codenames under each group of Accused Products and Services. *Id*. at 22-23. Cisco's response failed to address which codenames applied to which version of the Accused Products and Services. *Id.* at 21 (requesting information for "actual or planned release or version" of any of the accused products or services). This information is relevant and important as the Accused Products and Services have changed over time, and Centripetal is entitled to obtain, through discovery, an understanding of what changes were made.

Without this information, Centripetal is prohibited from fairly seeking discovery into and understanding any confidential documents or information that Cisco has provided. As a result, this incomplete and evasive response "must be treated as" no response, and Cisco thus should be compelled to provide an adequate response. Fed. R. Civ. P. 37(a)(4); *LifeNet Health v. LifeCell Corp.*, No. 2:13cv486, 2014 WL 4162113, at *3 (E.D. Va. Aug. 19, 2014) ("An incomplete answer to an interrogatory is treated the same as a non-answer for purposes of a motion to compel.").

Cisco alleges that it is "impossible" to know what Centripetal has accused of infringement, and so it should not be required to distinguish which codenames relate to which versions of the Accused Products and Services. Ex. 5 at 6. Notwithstanding the fact that Cisco has identified the Accused Products and Services in correspondence to Centripetal throughout discovery, the use of specific names of the products and services in Cisco's present interrogatory response shows that Cisco *does* understand those products and services are accused, and should, at the very least, supplement with information in its possession about which codenames apply to *which versions* of the products and services. Such information is important to Centripetal being able to more precisely identify and supplement its infringement contentions. Cisco cannot withhold relevant information for Centripetal's infringement contentions while simultaneously demanding more specificity. Furthermore, Cisco's gamesmanship has prohibited Centripetal from asking Cisco's engineers about the Accused Products and Services, as Centripetal has been forced to do so without information that it has sought from Cisco since the outset of discovery. For such reasons, Centripetal respectfully requests the Court grant Centripetal's motion and require Cisco to immediately produce the information within five days of the Court's order, and grant leave for Centripetal to move the Court to request further depositions if needed.

### C. Cisco Should Be Compelled to Produce Relevant Financial Documents Pertaining to Convoyed and Derivative Sales

Centripetal has requested (*see e.g.*, Centripetal RFP Nos. 29, 39, 118, 131), and Cisco has continued to refuse, to respond to discovery seeking sales and revenue information relating to products and services that are sold with the Accused Products and Services. Lee Decl., Ex. 4 at 14, 16, 31, 33. Specifically, Cisco improperly refuses to produce information pertaining to all instances where a customer has purchased an Accused Product or Service with another product or service. These types of sales, known as "convoyed sales" or "derivative sales" (collectively, "convoyed/derivative sales") are relevant to damages in this action as they directly relate to the reasonable royalty analysis and in particular factor 6 of the *Georgia-Pacific* factors which pertains to when products covered by the patented invention are used to promote the sales of other non-patented items. *See, e.g. Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971); *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384-86 (Fed. Cir. 2001) (permitting collateral sales as part of the royalty base). This Court has recognized that convoyed/derivative sales information should be produced and has even noted that a plaintiff may access a defendant's financial database to retrieve information regarding sales data, including convoyed/derivative sales. *See, e.g., DirectPacket Research, Inc., v. Polycom, Inc.*, No. 2:18-cv-00331-AWA-LRL, Dkt. 101 at 2 (E.D. Va. June 3, 2019).

Centripetal's discovery requests regarding convoyed/derivative sales are directly relevant to the determination of the reasonable royalty owed to Centripetal for Cisco's patent infringement. Cisco cannot deny the relevance of this information particularly in light of Centripetal's response to Cisco's Interrogatory No. 9 in which it provided information regarding its damages allegations and identified, among other things, that it will seek a determination of a

reasonable royalty through an analysis of the *Georgia-Pacific* factors. Lee Decl., Ex. 10 at 30-33. Furthermore, convoyed/derivative sales are relevant to a determination of the portion of sales for infringing versus non-infringing features of the Accused Products and Services and the amount by which those Accused Products and Services increased and benefited Cisco through the sale and use of other products and services sold with them. These are all considered under *Georgia-Pacific* Factors 6, 10-13 in the analysis of a reasonable royalty.[3] 318 F. Supp. at 1120.

Cisco's contention that the request for convoyed/derivative sales is burdensome rings hollow. *See* Lee Decl., Ex. 2. Specifically, the requested discovery is proportional to the needs of the case given Cisco's own documentation and marketing materials emphasizing the combination of products and services that can be purchased together. *See e.g.*, Lee Decl., Exs. 11-14. Cisco insists that Centripetal must identify the specific combinations of products and services for which it seeks convoyed/derivative sales information but as Centripetal has repeatedly explained, *Cisco* is in the best position to identify what products and services are sold and used with the Accused Products and Services. *See* Lee Decl., Ex. 2. Centripetal even identified examples for Cisco including how the Cisco website identifies that the accused Cognitive Threat Analytics ("CTA") is available with the following solutions: AMP for Endpoints and AMP for Web Security. *Id.* at 2. In contrast to Centripetal's good faith efforts to provide examples based on the limited information it had available to it, Cisco unjustly

---

[3] Factor 6 regarding the effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales; Factor 10 regarding the benefits for use of the invention; Factor 11: extent of use of the invention; and any evidence probative of the value of that use; Factor 12: portion of the profit or of the selling price customary in the particular or comparable business[es] to allow for the use of the invention and Factor 13: portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements.

11

capitalized on those efforts and insisted that it would limit convoyed/derivative sales information to solely the examples provided. *See* Lee Decl., Ex. 5 at 4, 6. Cisco's gamesmanship should not be tolerated. It has no valid basis, and has provided none, for its refusal to provide this relevant discovery especially when this revenue information is easily accessible to Cisco within its accounting systems maintained in the ordinary course of business.

Centripetal seeks only those revenues generated from sales of other products and services sold to the same customers that also purchased the Accused Products and Services which directly relates to its damages case and for these reasons, Cisco should be compelled to provide the information.

> **D.   Cisco Should Produce All Service Contracts with Host Servers and Update Providers of the Accused Products and Services**

Centripetal's RFP No. 114 requests that Cisco provide a "copy of all service contracts with any third party that provides server or other computer hosting services for any portion of the Accused Instrumentalities to provide updates to the Accused Instrumentalities." Lee Decl., Ex. 4 at 30. These documents, and in particular service agreements with entities that host servers and/or provide updates to the Accused Products and Services are relevant to at least damages in this litigation as they relate to the costs that Cisco incurs and spends on the servers for the Accused Products and Services which are largely software and cloud based, and operate their technology on the back-end on servers. The service agreements will show how much Cisco pays to operate the servers for the Accused Products and Services and provide information on where those agreements were negotiated and signed, which is relevant to damages and the location of where services originate from. In addition, the amount that Cisco pays and any potential savings that Cisco receives is relevant to a cost-savings damages analysis and consideration under the *Georgia-Pacific* factors, namely factors 11-13 regarding the extent of use and probative evidence

of value of that use, portion of profit or selling price customary in comparable business, for determination of a reasonable royalty. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (noting that the *Georgia-Pacific* factors are commonly used for determining a reasonable royalty in patent infringement actions); *see also Georgia-Pacific Corp.*, 318 F. Supp. at 1120; *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376–77 (Fed. Cir. 2017) (approving $30 million reasonable royalty damages award based on Defendant's cost savings from infringement). Such information is also relevant to how much Centripetal would have to spend in order to accommodate the same level of sales as Cisco's Accused Products and Services, an analysis relevant to lost profits. *See Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1242-43 (Fed. Cir. 2017).

Cisco does not deny the relevance of this information and documents and continues to refuse to produce the agreements, instead providing Centripetal with a publicly available link that solely references one of the Accused Products and Services (Stealthwatch Cloud) and its purported server provider. Ex. 15 at 1-3. Cisco's ongoing failure to provide these agreements, which it does not refute to be relevant, should be stopped and Cisco should be compelled to immediately produce all such documents.

## CONCLUSION

For these reasons, Centripetal respectfully requests that the Court grant its Motion to Compel and order Cisco to produce documents and adequate responses to Centripetal discovery requests within five days of the Court's order on this Motion.

| | |
|---|---|
| Dated:  December 4, 2019 | Respectfully submitted,<br><br>*/s/ Stephen E. Noona*<br>Stephen Edward Noona<br>Virginia State Bar No. 25367<br>KAUFMAN & CANOLES, P.C.<br>150 W Main St., Suite 2100<br>Norfolk, VA 23510<br>Telephone: (757) 624-3239<br>Facsimile: (888) 360-9092<br>senoona@kaufcan.com<br><br>Paul J. Andre<br>Lisa Kobialka<br>James Hannah<br>Hannah Lee<br>KRAMER LEVIN NAFTALIS<br>& FRANKEL LLP<br>990 Marsh Road<br>Menlo Park, CA 94025<br>Telephone: (650) 752-1700<br>Facsimile: (650) 752-1800<br>pandre@kramerlevin.com<br>lkobialka@kramerlevin.com<br>jhannah@kramerlevin.com<br>hlee@kramerlevin.com<br><br>**ATTORNEYS FOR PLAINTIFF**<br>**CENTRIPETAL NETWORKS, INC.** |

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

        */s/ Stephen E. Noona*
        Stephen E. Noona
        Virginia State Bar No. 25367
        **KAUFMAN & CANOLES, P.C.**
        150 West Main Street, Suite 2100
        Norfolk, VA 23510
        Telephone: (757) 624-3239
        Facsimile: (888) 360-9092
        senoona@kaufcan.com