**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

CENTRIPETAL NETWORKS, INC.,                )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )
                                           )   Case No.: No. 2:18-cv-00094-HCM-LRL
CISCO SYSTEMS, INC.,                       )
                                           )
                    Defendant.             )
                                           )
_____    )

**PLAINTIFF CENTRIPETAL NETWORKS, INC.'S
MEMORANDUM IN SUPPORT OF MOTIONS *IN LIMINE* NOS. 1-6**

Plaintiff, Centripetal Networks, Inc. ("Centripetal") respectfully moves the Court *in limine* to preclude the proffer at trial of certain evidence, opinion and argument by Defendant Cisco Systems, Inc. ("Defendant") as set forth below:

**I.      Motion *in Limine* No. 1: Preclude Defendant Cisco From Presenting Evidence or Argument that It Does Not Infringe the Asserted Patents Because They Are Purportedly Invalid.**

The Court should preclude Cisco, including its experts, from offering evidence or argument that Cisco does not infringe the asserted patents because they are purportedly invalid. Such evidence or argument violates fundamental patent law and will create confusion for the jury.  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1928 (2015) ("When infringement is the issue, the validity of the patent is not the question to be confronted…These explanations are in accord with the long-accepted truth—perhaps the axiom—that infringement and invalidity are separate matters under patent law") (citations omitted).  As the Supreme Court held, a defendant cannot use invalidity as a defense to patent infringement because they are "distinct issues, bearing different burdens, different presumptions, and different evidence." *Id.* at 1929 (citation

1

omitted) (finding that Congress chose to have the burden of proving invalidity be by the "clear and convincing" standard rather than infringement which is "preponderance of evidence").

Each of Cisco's five technical experts offer opinions that the asserted patents are not infringed because the patents are purportedly invalid based on the prior art.  *See* Ex. 1,[1] Schmidt Report Regarding Non-Infringement, ¶¶ 87-176, 310, 317-321, 326 (incorporating by reference invalidity report and using invalidity opinions as non-infringement opinions); *see also* Ex. 2, Almeroth Report Regarding Non-Infringement, ¶¶ 4, 147-259, 273, 359-361, 371, 385, 410, 466 (same); Ex. 3, Jeffay Report Regarding Non-Infringement, ¶¶ 54, 263-340 (same); Ex. 4, Reddy Report Regarding Non-Infringement, ¶¶ 56-71 (same); Ex. 5, Crovella Report Regarding Non-Infringement, ¶¶ 60-108, 238-249 (same).  Such opinions are inadmissible as they are legally improper.  Invalidity is not an appropriate legal defense to infringement.  *Commil*, 135 S.Ct. at 1929.  Cisco attempts to mislead and confuse the jury into thinking that a patent cannot be infringed because it is allegedly invalid.  That conclusion is legally erroneous.  The law requires that the inquiry of infringement be separate and apart from invalidity because the burdens of proof are different.

By way of example, a jury could find a valid patent infringed, or, alternatively, an invalid patent infringed.  In the event of the latter, while it is true that an invalid patent cannot be enforced against an infringer, upon a jury finding of invalidity and infringement, a patentee could appeal the verdict of invalidity to the Federal Circuit, and if the appellate court reversed, the lower court's finding of infringement would then result in an enforceable judgment against the infringer.  Accordingly, courts require the jury to decide these issues separately as they have

---

[1] Unless otherwise noted, all Exhibits ("Ex. __") cited herein are to the Declaration of Lisa Kobialka ("Kobialka Decl.') filed herewith.

different burdens of proof.  *See, e.g.*, *Pandrol USA, LP v. Airboss Railway Prods., Inc.*, 320 F.3d 1354, 1364-65 (Fed. Cir. 2003) ("Supreme Court precedent and our cases make clear that patent infringement and patent validity are treated as separate issues…[t]hough an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity) (citations and internal quotations omitted).

To avoid jury confusion, Centripetal requests that the Court preclude Cisco from presenting evidence or arguing at trial, through expert testimony or otherwise, that it does not infringe because Centripetal's patents are invalid.

II.   **Motion *in Limine* No. 2: Preclude reference to other judicial and administrative proceedings, including (i) co-pending patent infringement actions against Cisco, (ii) *inter partes* review petitions submitted by Cisco; and (iii) a prior breach of contract action between Centripetal and non-parties Hudson Bay Master Fund Ltd. and Hudson Bay Capital Management LP.**

Defendant should be precluded from offering at trial evidence or argument regarding judicial and administrative proceedings that are not relevant to the claims or defenses in this case and would only serve to confuse the jury and prejudice Centripetal.  These proceedings include: (i) the parties' pending patent infringement actions that do not involve the same subject matter of the patents-in-suit, (ii) *inter partes* review ("IPR") petitions that Cisco submitted before the Patent Trial and Appeal Board ("PTAB") concerning different patent claims, and (iii) a prior breach of contract action between Centripetal and non-parties Hudson Bay Master Fund Ltd. and Hudson Bay Capital Management LP (together, "Hudson Bay").

<u>**The Parties' Pending Litigations that Do Not Involve the Subject Matter of the Asserted Patents**</u>.  Pursuant to Federal Rules of Evidence 401, 402 and 403, the parties should be precluded from mentioning or introducing evidence or argument regarding other unrelated litigations that involves the parties, but not the subject matter of the Asserted Patents.  For

example, Cisco should be precluded from referencing any patent infringement actions against

Cisco that involve patents unrelated to the subject matter of the Asserted Patents and in which

Centripetal's counsel represents another party, or otherwise pejoratively referring to

Centripetal's litigation activity.  These other actions involve different patents with unrelated

subject matter and different accused products.  Thus, there is no reason to be refer to such cases

that have no bearing to the claims or defenses asserted in this case.

There is a real risk of prejudice to Centripetal in permitting such evidence and argument,

as Defendant would only use the fact of other litigations to paint Centripetal in a negative light,

suggesting that it is not a real business or does not have a real business, and thus only litigates to

make money.  Fed. R. Evid. 403.  Courts recognize the significant risk of prejudice attendant to

such improper tactics and routinely preclude reference to other litigations.  *See, e.g., In re*

*Homestore.com, Inc. Securities Litig.*, No. 01-cv-11115 RSWL (CWx), 2011 WL 291176, at *1

(C.D. Cal. Jan. 25, 2011) (finding "evidence of Plaintiff's involvement in other litigation . . . is

also irrelevant and carries with it a high risk of prejudice"); *Outley v. City of New York,* 837 F.2d

587, 595 (2d Cir. 1988) (finding that opening up the area of other litigation "invites detailed

inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of

issues."); *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 408-09 (5th Cir. 2004)

(probative value of evidence of past lawsuits against computer manufacturer was outweighed by

prejudicial nature of evidence and its tendency to paint manufacturer as "a 'bad' company").

**IPR Petitions:**  Similarly, Cisco should be precluded from offering evidence or argument

regarding *inter partes* review proceedings before the U.S. Patent & Trademark Office ("PTO")

involving patent claims that are not asserted at trial.  In 2018, Cisco filed nine petitions for IPR

before the PTO concerning different Centripetal patent claims that are not at issue for the upcoming trial.[2]

Claims 1, 4, 12-17, 20, 28-33, 36, 44-48, 91-96 of the '205 Patent, which are not asserted for the upcoming trial, are the subject of one of Cisco's IPR proceedings. *Cisco Systems, Inc. v. Centripetal Networks, Inc.*, IPR2018-01443 (P.T.A.B). Another set of claims, Claims 1-3, 5-11, 17-19, 21-27, 33-35, 37-43 of the '205 Patent, which are not asserted either, are the subject of another Cisco's IPR proceedings. *Cisco Systems, Inc. v. Centripetal Networks, Inc.*, IPR2018-01444 (P.T.A.B). In the two pending IPRs, the PTAB recently issued decisions that those different claims of the '205 Patent are invalid. Centripetal is appealing those decisions. However, Cisco's experts intend to introduce opinions regarding the '205 IPR decisions that concern different claims not asserted for the upcoming trial. Ex. 6, Jeffay Supp. Report; Ex. 7, Becker Supp. Report. Cisco's introduction of evidence regarding the IPR decisions of different claims could unfairly mislead the jury to believe that the claims of the '205 Patent asserted at trial are subject to the same PTAB decision, when they are not. In fact, the PTAB chose not to institute review of the '205 Patent claims asserted in the upcoming trial because Cisco had not met its burden of showing invalidity.[3] Ex. 8, *Cisco Systems Inc., v. Centripetal Networks Inc.*, IPR2018-01505, Paper 7 (Decision Denying Institution) (P.T.A.B. Mar. 6, 2019); Ex. 9, *Cisco Systems Inc., v. Centripetal Networks Inc.*, IPR2018-01506, Paper 7 (Decision Denying Institution) (P.T.A.B. Mar. 6, 2019). Cisco intends to unfairly suggest otherwise to the jury by

---

[2] All the patent claims that are currently the subject of the pending IPR proceedings were part of Centripetal's Complaint, but those patent claims are currently stayed pursuant to the Court's Order granting Cisco's motion to stay. Dkt. No. 58; Dkt. No. 68 (Order lifting the stay with respect to only those claims ***that are not the subject*** of pending IPRs).

[3] Such decisions regarding the asserted claims of the patents at issue for this trial are relevant.

bringing in evidence of IPR decisions that are unrelated to the asserted claims for the upcoming trial.

Moreover, Cisco's informing the jury of the mere fact that IPR petitions have been filed challenging the validity of multiple different patents and different patent claims, will only be confusing and misleading.  In four of the pending IPR proceedings, the PTAB has not rendered any final decision, making any relevance of those IPR proceedings minimal and potentially confused with the claims that are asserted.  *Callaway Golf Co. v. Acushnet Co.,* 576 F.3d 1331, 1343 (Fed. Cir. 2009) (noting that "non-final [reexam] determinations were of little relevance" but the "risk of jury confusion" if this evidence were introduced "was high"); *Amphenol T&M Antennas, Inc. v. Centruion Int'l, Inc.*, No. 00 C 4298, 2002 WL 32373639, at *2 (N.D. Ill. Jan. 17, 2002) (noting the "significant[ ] prejudice" of "telling the jury that the patent has been called into question by the [PTO]," which "far outweighs any probative value it may have."); *Wis. Alumni Research Found. v. Apple Inc.*, 135 F. Supp. 3d 865, 874-85 (W.D. Wis. 2015) (granting motion *in limine* excluding testimony regarding IPR proceedings because "any probative value of this evidence is substantially outweighed by the risk of unfair prejudice, as well as the risk of jury confusion.").  The risk of confusion and prejudice is further compounded by the fact that each of the unrelated IPR petitions address different issues and prior art—all of which would only serve to unnecessarily confuse and mislead the jury about the art and issues that are raised in this upcoming trial.  For these reasons, there should not be any reference, evidence or argument regarding IPR proceedings related to patent claims not asserted at the upcoming trial.

**Hudson Bay's Prior Breach of Contract Action against Centripetal:**  Defendant should be precluded under Federal Rules of Evidence 401-403 from offering at trial evidence and

argument concerning a prior breach of contract litigation between Centripetal and Hudson Bay (the "Breach of Contract Action").

By way of background, the Breach of Contract Action involved a dispute arising out of a loan Hudson Bay made to Centripetal. Hudson Bay elected to have its loaned repaid (as opposed to converting the loan to equity), and a dispute ensued regarding the repayment terms of the loan. A judgment was entered against Centripetal, which Centripetal satisfied. Notwithstanding that the Breach of Contract Action has no relevance to Centripetal's patent infringement claims against Defendant, Defendant sought discovery relating to the Breach of Contract Action. Ex. 10, Def.'s 1st Set of Requests for Production, Nos. 123-128; Ex. 11, Def.'s 2nd Set of Requests for Production, No. 151.

Because the Breach of Contract Action has no bearing on Centripetal's patent infringement allegations against Defendant, any reference to the Breach of Contract Action at trial would be highly prejudicial to Centripetal, as Defendant will use that past history to paint Centripetal in a bad light. There is nothing regarding the Breach of Contract Action that is relevant, as the Breach of Contract Action was a straightforward action for repayment of a loan obligation. Defendant should not be permitted to disparage Centripetal and its technology by referencing the Breach of Contract Action.

Further, such a sideshow would be a waste of the Court's time and resources and is one that courts routinely exclude because it would unfairly bias the jury. *See Henderson v. Peterson*, No. C 07-2838 SBA (PR), 2011 WL 2838169, at *5 (N.D. Cal. July 15, 2011) ("As a general matter, unless the prior lawsuits have been shown to be fraudulent, the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias") (*citing Seals v. Mitchell*, No. CV 04-3764 NJV, 2011 WL 1399245, at *5 (N.D. Cal.

7

Apr. 13, 2011); *In re Homestore.com*, 2011 WL 291176, at *1 ("reference to or evidence of

Plaintiff's involvement in other litigation prior to this Action is also irrelevant and carries with it

a high risk of prejudice") (*citing Ritten v. Lapeer Reg'l Med. Ctr.*, No. 07-10265, 2010 WL

374163, at *8 (E.D. Mich. Jan. 25, 2010)) (excluding two prior lawsuits commenced by the

plaintiff as irrelevant and prejudicial).

III.     **Motion *in Limine* No. 3: Preclusion of any reference to any of litigation funding.**

Defendant should be precluded pursuant to Federal Rules of Evidence 401-403 and 801

from offering at trial evidence or argument related to inquiries or otherwise that involve litigation

funding and loans from its former and current investors.  This evidence is not relevant to the

claims or defenses at issue in this case and would only serve to confuse the jury and prejudice

Centripetal.

**Litigation funding efforts and agreements:**  Any argument or evidence concerning any

efforts to obtain litigation funding should be excluded under Federal Rules of Evidence 401-403

because it is not relevant and is only likely to be used to paint Centripetal in a negative light.

Defendant repeatedly sought discovery regarding Centripetal's communications with potential

litigation funders, which are subject to various confidentiality requirements.  *See, e.g.*, Ex. 10,

Def.'s 1st Set of Requests for Production, Nos. 54, 106, 129, 130; Ex. 11, Def.'s 2nd Set of

Requests for Production, No. 152.

Litigation funding simply has no relevance to the claims or defenses in this case.  Indeed,

courts routinely exclude evidence of litigation funding and other collateral issues at trial because

it is irrelevant, highly prejudicial, and confusing to the jury.  *AVM Techs., LLC v. Intel Corp.*,

No. 15-33-RGA, 2017 U.S. Dist. LEXIS 65698, at *8-9 (D. Del. April 29, 2017) (precluding

evidence of litigation funding agreement: "I further note that if they were determined to have

some marginal relevance, that I would exclude them under Rule 403 as their probative value is

more than substantially outweighed by the danger of unfair prejudice to AVM and of confusing the issues"); *see also MLC Intellectual Prop., LLC v. Micron Tech., Inc.,* No. 14-cv-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (litigation funding agreement not relevant and not discoverable); *Miller UK Ltd. v. Caterpillar, Inc.,* 17 F. Supp. 3d 711, 723-24 (N.D. Ill. 2014) (same); *In re National Prescription Opiate Litig.* , No. 1:17-MD-2804, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018) (noting that discovery into third-party funding arrangements would not be permitted "[a]bsent extraordinary circumstances."); *Kaplan v. S.A.C. Capital Advisors L.P.,* No. 12-cv-9350, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (rejecting discovery of funding agreement and related documents).  Here, any alleged relevance of any arguments or evidence concerning litigation funding is highly prejudicial, warranting exclusion to avoid jury confusion.

Such prejudicial and irrelevant information has nothing to do with Defendant's infringement, the validity of Centripetal's Asserted Patents, or the appropriate measure of damages and relief that Centripetal is entitled to for Defendant's infringement.  Any reference to litigation funding efforts and/or agreements should be precluded under Federal Rules of Evidence 401-403.

**Loan Agreement with Hudson Bay**:  Centripetal seeks to exclude under Federal Rules of Evidence 403 and 801 any evidence or argument concerning agreements and/or communications between Centripetal and its former investor, Hudson Bay.  As explained above, Hudson Bay previously loaned Centripetal funds pursuant to a loan agreement.  This loan, and communications between Centripetal and Hudson Bay to secure the loan, are not relevant to any of the claims or defenses asserted in this action.  Evidence that improperly diverts the jury's attention from the central issues in the case is properly excluded from trial.  *See,*

*e.g. Zippertubing Co. v. Teleflex, Inc.*, 757 F.2d 1401, 1415 (3d Cir. 1985) (holding that the trial court properly exercised its discretion under Rule 403 when it excluded evidence that would have required the jury to "engage in speculation about a matter too far afield from the elements of the plaintiffs' case.").

Contrary to any claim Defendant could make, the Hudson Bay loan agreements are not relevant to the hypothetical negotiation and secondary considerations of non-obviousness because Hudson Bay elected to exercise its redemption rights on its loan. Ex. 12, *In the Matter of Non-Party Subpoenas Served in Centripetal Networks, Inc. v. Keysight Techs., Inc.*, Misc. No. 18-mc-390-DLC, Dkt. No. 10, Defendants' Brief in Opposition to Hudson Bay's Motion to Quash Subpoena to Hudson Bay at 2 (S.D.N.Y. Aug. 29, 2018). A non-party's analysis of Centripetal for purposes of deciding how to proceed with its investment, where there are not any valuations of Centripetal's Asserted Patents, has very little probative value and could be used to mislead the jury.

In fact, courts have rejected this argument and found that a non-party's analysis for purposes of investment is of little probative value and carries a substantial risk of prejudice. *Visto Corp. v. Smartner Info. Sys., Ltd.*, No. 06-80339 MISC RMW (RS), 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007). In *Visto,* the court rejected that a non-party investor's evaluation of the patentee's assets goes to the "commercial success" factor of the secondary consideration and reasonable royalty analysis. *Id.* In so doing the *Visto* court distinguished the "actual" commercial success and "actual" reasonably royalty data from mere "perceptions" of commercial success and reasonable royalty data:

> What might be relevant is the *actual* "commercial success" that [patentee] has enjoyed (or not enjoyed), as well as the *actual* data on other factors that may be considered when calculating a "reasonable royalty." The documents [accused infringer] is seeking conceivably reflect a venture capital firm's *opinions* about

and *analysis* of such information, but there is no reason to believe that [a third party investor] possesses any such information not publicly available or available in the documents produced by [patentee], or that [investor's] opinions and analysis are independently relevant.

*Id.* (emphasis in original).  Thus, the minimal probative value of this evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" and, therefore, is properly excluded under Federal Rules of Evidence 403.  Moreover, Hudson Bay's perception of Centripetal's business and products is properly excluded as hearsay under Federal Rules of Evidence 801 since it is being offered for the truth of the matter asserted.

For these reasons, evidence and argument relating to the Hudson Bay loan should be precluded as posing a significant danger of irreversible prejudice, confusion of the issues, and misleading the jury

**Loan agreement with Mr. Smith:**  Defendant should also be precluded from offering evidence or referencing loan agreements and/or communications between Centripetal and an investor, Mr. Douglas A. Smith.  Defendant sought such information during discovery.  Ex. 10, Def.'s 1st Set of Requests for Production, No. 129.  Such evidence and arguments or evidence are irrelevant to the issues the jury will be asked to decide.  Again, any use of such information which has nothing to do with patent infringement is just an attempt to paint Centripetal in a bad light by suggesting Centripetal needed financial assistance.  Any limited probative value of such evidence is greatly outweighed by prejudice to Centripetal and therefore properly excluded under Federal Rules of Evidence 403.

## IV.   Motion *in Limine* No. 4: Preclusion of testimony, evidence and expert opinions Defendant did not timely disclose or make available during discovery.

Defendant should be precluded from offering at trial any evidence or testimony that Defendant did not timely disclosure or make available during discovery, and be precluded from offering at trial any expert opinion based on such improperly disclosed information.  These

untimely disclosures should be precluded under Federal Rules of Civil Procedure 26 and 37(c) and Federal Rules of Evidence 702-703.

### 1. Government Sales

Defendant's expert should be precluded from offering an opinion that certain of Defendant's revenues relate to sales to the government because Defendant failed to provide during discovery any information regarding government sales.  The financial spreadsheets Defendant provided did not identify which, if any, revenues and/or sales were associated with sales to the government.  And during Centripetal's deposition of Defendant's 30(b)(6) deposition regarding Defendant's financial statements showing sales and revenues (i.e., Mr. Steven Boyles), Defendant's counsel objected as outside the scope of the deposition topics to any questions regarding which revenues were to the government.  Ex. 13, 12/19/19 Boyles Tr. at 79:5-18; *see also id.*at 78:3-79:4.  And Mr. Boyles testified that such sales would not be separately tracked. *Id.*  Because Defendant failed to provide during discovery any evidence of government sales, it should be precluded from offering it at trial under Federal Rules of Civil Procedure 26 and 37.

However, Defendant's damages expert, Dr. Becker, provides an opinion that certain revenues for Defendant's products should be excluded for damages purposes because they purportedly relate to sales to the government. Ex. 14, Dr. Becker Rpt., ¶¶ 421-422, Exs. SLB 18A and SLB 18B.  Mr. Becker's opinion, however, lacks foundation under Federal Rules of Evidence 702-703 because Defendant failed to provide any information regarding purported sales to the government during fact discovery.  Further Cisco sandbagged Centripetal by seeking to present such alleged information with its expert report, after refusing to make such information available to Centripetal.  It would be highly prejudicial to Centripetal to permit Cisco to present such information.  As such, Mr. Becker's opinion that relies on information that Defendant failed to disclose during fact discovery should be precluded.

2.      **Expert Opinions Based on Fact Witnesses and Information (*i.e.*, Matt Donnan, Derek Huckaby and Saravanan Radhakrishnan) Not Timely Disclosed**

Defendant's experts should be precluded from offering opinions or testimony regarding information received from Defendant's employees who were not timely disclosed during fact discovery on Defendant's initial disclosures and/or information that was not provided during fact discovery.

*First*, Defendant's experts on infringement, Drs. Jeffay and Reddy, rely on discussions with and/or a purported "demonstration" of an accused product by Defendant's employee who was not timely disclosed during fact discovery – Matthew Donnan. *See, e.g.* Ex. 3, Dr. Jeffay Rebuttal Rpt., ¶¶ 41, 138, 148, 168, 170-171, 201; Ex. 4, Dr. Reddy Rebuttal Rpt., ¶ 217. Defendant, however, never disclosed Mr. Donnan as having information relevant to this case until its fifth supplemental initial disclosures that Defendant served on December 17, 2019 – a mere **three days** before fact discovery closed on December 20, 2019. *Compare* Ex. 15, Def.'s 4th Supp. Initial Disclosures *with* Ex. 16, Def.'s 5th Supp. Initial Disclosures. By delaying identification of Mr. Donnan until the eleventh-hour, particularly as Centripetal was completing numerous of Defendant's witnesses on an expedited fact discovery schedule, Defendant precluded Centripetal from being able to depose Mr. Donnan during fact discovery and investigate the basis of his knowledge and his purported demonstration of the accused product. Defendant's experts should not be permitted to rely on fact witnesses who Defendant did not timely disclosure and make available during fact discovery. Fed. R. Civ. P. 37(c).

*Second*, Dr. Jeffay also purports to rely on discussions with another employee, Derek Huckaby. Ex. 3, Dr. Jeffay Rpt., ¶ 41. Defendant, however, never disclosed Mr. Huckaby on any of its initial disclosures or otherwise identified Mr. Huckaby during fact discovery. Defendant's experts should not be permitted to offer opinions based on information from

witnesses Defendant failed to disclose during fact discovery pursuant to Federal Rules of Civil Procedure 37(c).

*Third*, Defendant's damages expert, Dr. Becker, relies on a conversation with another Defendant employee, Michael Scheck, regarding the purported scope of use of the infringing technologies.  Ex. 14, Dr. Becker Rebuttal Rpt., ¶¶ 7, 224.  Defendant failed to provide this information during fact discovery notwithstanding Centripetal's discovery requests for such information.  Ex. 17, Def. Corrected Supp. Response to Third Set of Interrogatories, No. 18 (seeking information regarding extent of use, including the number of security events, etc.); Ex. 18, Def. Objections to 1st Set of Requests for Production, Nos. 80, 81 (same).  Defendant's experts cannot rely on information that Defendant failed to produce during discovery.  Fed. R. Civ. P. 26, 37(c); Fed. R. Evid. 702-703.

*Fourth*, Defendant's invalidity experts, Drs. Crovella, and Schmidt, rely on discussions with Defendant's employees who were not disclosed on Defendant's initial disclosures for information outside the scope of their 30(b)(6) designations.  For example, Defendant disclosed in its initial disclosures an engineer, Saravanan Radhakrishnan, as knowledgeable regarding "the development and operation of Encrypted Traffic Analytics ("ETA") as it relates to one or more of the accused products . . . ."  Ex. 16, Def. 5th Supp. Initial Disclosures at 4.  However, Drs. Crovella and Schmidt rely on Mr. Radhakrishnan for information regarding a different product, Catalyst, for which Defendant did not disclose him as a person with knowledge.  *Id.*; Ex. 5, Crovella Rebuttal Rpt., ¶¶ 219, 237, 240.  Centripetal did not have fair notice of the subject matter of Mr. Radhakrishnan's knowledge and Defendant's experts cannot rely on him as the source of information for which he was not disclosed.  Fed. R. Civ. P. 26, 37(c); Fed. R. Evid. 702-703.

### 3.     Stealthwatch Source Code Not Made Available During Discovery

Defendant should not be permitted to introduce at trial source code that Defendant failed to produce during discovery, or any expert testimony regarding such source code.  After fact discovery closed and a mere two days before Centripetal's opening expert reports regarding infringement were due, Defendant produced for the first time source code relating to its Stealthwatch product – in particular, Stealthwatch enterprise 6.2 and 6.3.  This production was after Centripetal's experts had already spent resources reviewing the source code computer Defendant made available and preparing expert reports.  Defendant's invalidity experts, Dr. Schmidt, Almeroth and Crovella, rely on this late-produced source code as opposed to the source code Defendant made available to Centripetal during discovery.  Ex. 19, Dr. Schmidt Opening Invalidity Rpt., ¶¶ 195, 382, 384, 386, 389, 409, 419; Ex. 1, Dr. Schmidt Rebuttal Rpt., ¶ 131, Ex. 20, Dr. Almeroth Opening Invalidity Rpt., ¶¶ 272, 296, 306; Ex. 2, Dr. Almeroth Rebuttal Rpt., ¶¶ 516, 557, 603; Ex. 21, Dr. Crovella Opening Rpt., ¶ 190; Ex. 5, Dr. Crovella Rebuttal Rpt., ¶ 107.  Defendant should be precluded from introducing at trial source code and related opinions based on source code it failed to make available during fact discovery pursuant to Federal Rules of Civil Procedure 26, 37(c), and Federal Rules of Evidence 702-703.

### 4.     Non-Infringing Alternatives

Defendant did not disclose during discovery any non-infringing alternative or design arounds in compliance with Federal Rules of Civil Procedure 26.  In response to Centripetal's interrogatory that specifically sought such information, Defendant refused to provide a substantive response throughout fact discovery.  Ex. 22, Def.'s Supp. Response to Interrogatory No. 16.  After fact discovery closed and on the day Cisco served its ***rebuttal*** expert reports, Defendant supplemented its interrogatory response to merely incorporate by reference the

opinions of Defendant's experts on non-infringing alternatives, specifically Dr. Almeroth, Dr. Reddy, Dr. Jeffay, Dr. Crovella, and Dr. Schmidt.  *Id.*

It is entirely improper for Defendant to refuse to provide during discovery ***any*** factual information regarding purported non-infringing alternatives, only to sandbag Centripetal by asserting the existence of non-infringing alternatives for the first time in ***rebuttal*** expert reports. And because Defendant's experts cannot rely on factual information regarding purported non-infringing alternatives that Defendant failed to provide during fact discovery, their opinions on such alternatives lacks foundation.  Fed. R. Civ. P. 37(c); Fed. R. Evid. 702-703.  Thus, Defendant should be precluded from offering any evidence, testimony or expert opinion regarding non-infringing alternatives.

## V.    Motion *in Limine* No. 5: Preclusion of testimony or evidence regarding Cisco's patents.

Cisco should be precluded from offering at trial any evidence of its own patents for any purpose under Federal Rules of Evidence 401 and 403.  Cisco's patents are not relevant to any of the issues being tried to the jury regarding Centripetal's asserted patents—i.e., Cisco's infringement of Centripetal's patents, the validity of Centripetal's patents, and what damages will be assessed for infringement of Centripetal's patents.  Cisco's experts, Dr. Schmidt and Dr. Almeroth, list hundreds of Cisco patents in their expert reports and state generically, without any explanation, that, as a whole, that they purportedly invalidate Centripetal's asserted patents.  Ex. 2, Almeroth Report, ¶¶ 611-615, Exs. D-I (opining that "Cisco developed and owns significant intellectual property" and listing over 1000 Cisco patents without any specific analysis or comparison to asserted patent claims); Ex. 1, Schmidt Report, ¶¶ 318, 389 (discussing "several early Cisco patents" and citing to sections VII.B.1, B.3 and B.4 of report that do not discuss any specific Cisco patents; "Cisco has identified approximately 1,000 patents as relating to the

products accused in this case" and opining that they "relates to the products" in certain unspecified "combinations").

These types of generic, broad and conclusory opinions are not helpful to the jury and prejudicial under Federal Rules of Evidence 403 as they are unsupported by sufficient facts and evidence under Federal Rules of Evidence 702.  Cisco tries to unfairly mislead the jury to believe that having patents of its own precludes a finding that it infringed another's patents.  That is legally incorrect.  *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991) ("[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use or sell.").  If Cisco was to introduce argument and evidence at trial regarding its own patents (without any substantive analysis), this will only unnecessarily and improperly confuse the jury regarding which patents are at issue in the case, since Cisco's patents are neither asserted for infringement or the basis for any substantive prior art allegation.  For these reasons, Centripetal respectfully requests the Court preclude Cisco from presenting evidence or arguments regarding its own patents.

**VI.     Motion *in Limine* No. 6: Preclude testimony or evidence regarding invalidity allegations or combination of prior art that Defendant did not disclose in its invalidity interrogatory responses.**

Defendant should be precluded from offering at trial any evidence or testimony that Defendant failed to timely disclose or make available during discovery.  On October 16, 2019, Centripetal served Interrogatory No. 14 seeking the basis for Cisco's affirmative defenses, including its affirmative defense for invalidity.  Cisco's response included "invalidity charts"  of the asserted claims, which mapped on an element by element basis the specific references that Cisco was asserting pursuant to 35 U.S.C. § 102 (anticipation) or 35 U.S.C. § 103 (obviousness).  Centripetal was surprised when Cisco served expert reports that identified new invalidity theories

that were not in Cisco's interrogatory response and notably not mapped on an element by element basis in Cisco's "invalidity charts."  These untimely disclosures should be precluded under Federal Rules of Civil Procedure 26 and 37(c) and Federal Rule of Evidence 702-703.

Specifically, Cisco identified in its expert reports for the first time the following invalidity theories:

- The Andreasen reference as an anticipatory reference pursuant to 35 U.S.C. § 102;

- The Andreasen reference as an obviousness reference by itself pursuant to 35 U.S.C. § 103

- The obviousness combination of the Sourcefire product and associated manuals (collectively "Sourcefire") with the ASA 5500 product and associated manuals (collectively "ASA 5500").

While Cisco did identify in its response to Interrogatory No. 14 the Andreasen, Sourcefire and ASA 5500 as purported prior art, Cisco failed to disclose these three specific invalidity theories.

**<u>Andreasen Reference (U.S. Pat. No. 8,041,022):</u>**  Cisco identified the Andreasen reference, a patent assigned to Cisco, in its Response to Interrogatory No. 14 as an obviousness reference to be combined with the Harp reference for claim element 63(b) and 77(b) for the '205 Patent.  Ex. 23; Ex. 24, Def.'s Response to Interrogatory 14, A-1 at 4 (identifying Andreasen for a single claim element).  Similarly, Cisco identified the combination of the Andreasen reference with the Jungck reference or with the Li reference.  Ex. 25, Def.'s Response to Rog. 14, A-2 at 32 (identifying Andreasen for a single claim element); Ex. 26, Def.'s Response to Rog. 14, A-3 at 5 (same).  However, Cisco's expert, Dr. Jeffay, identifies **_for the first time_** the Andreasen reference as: (i) an anticipatory reference, (ii) an obviousness reference by itself and (iii) an obviousness reference in combination with references that were not disclosed in Cisco's

Response to Interrogatory No. 14.  Ex. 27, 1/10/20 Jeffay Report at ¶¶ 206, 412-444.  Indeed, Cisco never mapped the Andreasen reference to each element of the asserted claims of the '205 Patent in its discovery responses, which is what would have been required if Cisco was asserting the Andreasen reference as an anticipatory reference or an obviousness reference by itself.

Cisco has no excuse for its untimely disclosure of these new invalidity theories for the first time in Dr. Jeffay's Report.  Centripetal understands that the inventors listed on the Andreasen reference are Cisco employees, such that Cisco had access to and knew or should have known about the parameters of the Andreasen reference when it served its response to Interrogatory No. 14 and well before service of its invalidity expert report months later.  Indeed, sandbagging Centripetal with these new invalidity theories is highly prejudicial to Centripetal, who would have taken the depositions of the listed inventors, if it had known that Cisco was going to use the Andreasen reference in such a prominent manner, i.e., as a reference by itself for both anticipation and obviousness.  Preclusion of these invalidity theories of the Andreasen reference is appropriate because Cisco failed to disclose these theories during fact discovery and only disclosed them with its expert report.  This is particularly egregious as this reference is assigned to Cisco and under Cisco's control.  Because Cisco's untimely disclosure of the Andreasen invalidity theories is unjustified and prejudicial to Centripetal, the Court should preclude Cisco from introducing at trial any evidence, argument, or opinion regarding the Andreasen reference as an anticipatory reference or obviousness reference by itself.  Fed. R. Civ. P. 37(c); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595–97 (4th Cir. 2003).

**Sourcefire in Combination with ASA 5500:**  Cisco identified the obviousness combination of Sourcefire and ASA 5500 for Claims 63 and 77 of the '205 Patent for the first

time in its expert report.  Ex. 27, 1/10/20 Jeffay Report at ¶¶ 206, 445-567.  In response to Interrogatory No. 14, however, Cisco only identified Sourcefire and ASA 5500 as anticipatory references or obviousness references by themselves.  Exs. 28-29, Cisco Response to Rog. 14, A-5 and A-6.  Thus, Centripetal seeks to exclude this new theory of obviousness based on combining Sourcefire and ASA 5500.  Ex. 27, 1/10/20 Jeffay Report at ¶¶ 206, 445-567.

Like Cisco's undisclosed theories regarding the Andreasen reference, Cisco's untimely disclosure of these new invalidity theories for the first time in Dr. Jeffay's Report is inexcusable. Sourcefire and ASA 5500 are both Cisco products, such that the relevant information was in Cisco's custody and under Cisco's control.  Cisco's delay in identifying this specific obviousness theory with its expert report, which was well after fact discovery is prejudicial, as Centripetal should not be addressing a moving target of different invalidity theories.  Because Cisco's untimely disclosure of invalidity theories based on Sourcefire and ASA 5500 is unjustified and prejudicial to Centripetal, Centripetal respectfully requests the Court to preclude Cisco from introducing at trial any evidence, argument, or opinion regarding the obviousness combination of Sourcefire and ASA 5500.  Fed. R. Civ. P. 37(c); *S. States Rack & Fixture*, 318 F.3d at 595–97.

Dated:  February 27, 2020

Respectfully submitted,

By:  */s/ Stephen E. Noona*
Stephen Edward Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W Main St., Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com

Paul J. Andre
Lisa Kobialka

James Hannah
Hannah Lee
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
hlee@kramerlevin.com

Cristina L. Martinez (pro hac vice)
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 715-9000
Facsimile:  (212) 715-8000
cmartinez@kramerlevin.com

**ATTORNEYS FOR PLAINTIFF
CENTRIPETAL NETWORKS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2020, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will automatically send notification of

electronic filing to:

Jennifer H. Forte
Matthew Christopher Gaudet
John Robert Gibson
Louis Norwood Jameson
Duane Morris LLP (GA-NA)
1075 Peachtree St NE
Suite 2000
Atlanta, GA 30309
jhforte@duanemorris.com
mcgaudet@duanemorris.com
jrgibson@duanemorris.com
wjameson@duanemorris.com

Joseph A. Powers
Duane Morris LLP (PA-NA)
30 S 17th St
Philadelphia, PA 19103-4196
japowers@duanemorris.com

Heath Brooks
Wilmer Hale LLP (DC-NA)
1875 Pennsylvania Avenue NW
Washington, DC 2006
Heath.brooks@wilmerhale.com

*Attorneys for Defendant*
*Cisco Systems, Inc.*

Kevin Paul Anderson
Christopher Joseph Tyson
John Matthew Baird
Duane Morris LLP (DC)
505 9th Street, NW
Suite 1000
Washington, DC 20004-2166
kpanderson@duanemorris.com
cjtyson@duanemorris.com
jmbaird@duanemorris.com

Dabney Jefferson Carr, IV
Troutman Sanders LLP (Richmond)
1001 Haxall Point
Suite 1500
Richmond, VA 23219
dabney.carr@troutmansanders.com

Nicole E. Grigg
Duane Morris LLP
2475 Hanover Street
Palo Alto, CA 94304-1194
negrigg@duanemorris.com

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com