**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

CENTRIPETAL NETWORKS, INC.,

                Plaintiff,

vs.

CISCO SYSTEMS, INC.,

                Defendant.

Case No. 2:18-cv-00094-HCM-LRL

**<u>PUBLIC VERSION</u>**

**CISCO SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE THE APPORTIONMENT-RELATED OPINIONS OF
DR. AARON STRIEGEL AND THE RELATED ROYALTY BASE OPINIONS OF
MR. LANCE GUNDERSON**

## <u>TABLE OF CONTENTS</u>

I.      Introduction.................................................................................................................1

II.     Factual and Procedural Background .........................................................................3

III.    Argument and Citations to Authority ......................................................................8

        A.      Dr. Striegel Admitted That He Did Not Identify the Incremental Patented
                Improvements of the Patents-in-Suit, a Necessary Prerequisite for
                Apportionment ...................................................................................................... 9

        B.      Dr. Striegel Failed to Analyze the Allegedly Infringing Combinations ............... 11

                1.      Example: the '205 and '806 Patents and the ASA + FMC
                        Combination.............................................................................................. 11

                2.      The Other Combinations Accused of Infringing the '806 and '205
                        Patents ....................................................................................................... 14

                3.      The '856 Patent and Accused Combinations ........................................... 15

                4.      The '176 Patent and Accused Combinations ........................................... 15

                5.      The '193 Patent and Accused Products ................................................... 16

IV.     Conclusion ...............................................................................................................17

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.,* 809 F.3d
    1295 (Fed. Cir. 2015) .................................................................................................*Passim*

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) ............................... 1, 9-10, 13

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332
    (Fed. Cir. 2018) ...............................................................................................................2

*Finjan Inc. v. Blue Coat Sys.*, 879 F.3d 1299 (Fed. Cir. 2018) ........................................................8

*Garretson v. Clark*, 111 U.S. 120 (1884) ..................................................................................1

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) ................................13

*Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283 (Fed. Cir. 2015) ...............................11, 13

*VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014) ............................................ 8-10

## I.      Introduction

Pursuant to Federal Rule of Evidence 702 and *Daubert*, Defendant Cisco Systems, Inc. ("Cisco") moves to exclude the opinions of Centripetal's technical expert, Dr. Aaron Striegel, which are the sole opinions relied upon by Centripetal's main damages expert (Mr. Lance Gunderson) to "apportion" the royalty base.   Apportionment is a legally required aspect of a damages analysis, and Mr. Gunderson relied entirely on Dr. Striegel to conduct the required technical analysis.  But Dr. Striegel admits he did not do what the law requires for apportionment: he did not "identify the incremental value that the patented invention adds to the end product." Ex. 2 at ¶¶ 25, 42.   Thus, Dr. Striegel's apportionment opinions—and the portions of Mr. Gunderson's opinions that are predicated on those opinions—must be excluded.[1]

The "Supreme Court made clear that 'when a *patent is for an improvement*, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has *added to the usefulness* of the machine or contrivance.  He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated.'  In other words, the patent holder should only be compensated for the approximate incremental benefit derived from his invention." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).  Dr. Striegel's analysis fails this requirement.  He is upfront about this failure, as he admitted in his reply report that "I have not been asked by counsel to identify the incremental value that the patented invention adds to the end product."  Ex. 2 at ¶¶ 25, 42.  The Court need read no further than that admission

---

[1] Specifically, Cisco seeks to exclude Dr. Striegel's opinions found under the "Patent Summaries" and "Product Analysis" headings of his Report dated January 9, 2020, and paragraphs 22-105 of his Reply Report dated February 25, 2020.  Cisco further seeks to exclude Dr. Gunderson's apportioned royalty base, which apportionment relies exclusively on the opinions of Dr. Striegel.

to grant this motion.   Nor can there be any dispute that this admission is fatal; Mr. Gunderson (Centripetal's primary damages expert, who relied on Dr. Striegel for apportionment) himself explained that the law requires the very analysis Dr. Striegel failed to provide, *i.e.*, an analysis "based on the incremental value that the patented invention adds to the end product."  Ex. 3 at 90 (quoting *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332 (Fed. Cir. 2018)); *see also* Ex. 1 at 121:9-18, 122:10-20.  Centripetal's two experts are literally using the same words:  Mr. Gunderson uses them to explain what the law requires, and Dr. Striegel uses them to confirm what he did *not* do.

Dr. Striegel's admission was well justified.  He makes no attempt to identify the *patented improvement* (*i.e.*, the specific improvement over what was known in the prior art) reflected in any asserted claim, nor did he determine what features of any accused product or product combination would correspond to such a patented *improvement*, as opposed to non-accused features or conventional features.  Indeed, while Dr. Striegel makes a cursory reference to the asserted claims in a single paragraph of his report (Ex. 4 at 17), he makes no attempt to perform a technical apportionment analysis of any asserted claim.  Instead, he provides a high-level summary of what he considers each patent to disclose without any analysis of the elements of any asserted claims (*id.* at 8-16).  Then, using that high-level summary as his background, he maps infringement of the "top level functions" (his words) of each accused product to the patents (*id.* at 18-34), and in so doing never considers: (1) what aspects of the functionality were "conventional" and, therefore, not included within the patented improvement to the technology, nor (2) what aspects of the functionality are even accused of satisfying an element of an asserted claim.  Because a defendant can be found to infringe only a specifically asserted claim—and not a patent as a whole—the absence of any such claim-specific analysis is fatal to Dr. Striegel's opinions.

Dr. Striegel's opinions are even further removed from the facts of this case, because he does not compare the asserted claims to the specifically-accused combination of devices. Instead, he opines that an individual product itself (such as an ASA) infringes the patent as a whole, even though Centripetal's specific allegations require a specific **combination** of products (*e.g.*, an ASA+FMC) to infringe a specific claim. Dr. Striegel's opinions are thus unhelpful, unreliable, and must be excluded for this reason as well. *See Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.,* 809 F.3d 1295, 1302 (Fed. Cir. 2015) ("*CSIRO*") ("[A]s damages models are fact-dependent, a distinct but integral part of the admissibility inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case.") (internal citations omitted).

Centripetal ignores the legal requirements of apportionment and instead appears to suggest that, so long as Dr. Striegel does *something* that Mr. Gunderson can point to as an "apportionment," then Centripetal should be allowed to proceed to the jury with a theory that Cisco owes ███████ ███████████ for just two and a half years of alleged infringement. But the Federal Circuit's requirements are not nearly so lax. The Court should exercise its gatekeeping function and exclude Dr. Striegel's apportionment-related opinions, and those opinions of Mr. Gunderson that are based upon such opinions.

## II.      Factual and Procedural Background

By way of background, Mr. Gunderson (Centripetal's main damages expert) used a Royalty Rate x Royalty Base construct to arrive at the reasonable royalty that he opines the parties would have agreed to at the hypothetical negotiation from June 2017 through December 2019: ████████████████████. To determine his royalty base, Mr. Gunderson first summed up the worldwide gross revenues of each product that is identified as part of an accused system. However, Mr. Gunderson recognized that these products contain non-infringing features, and thus opined

that "apportionment is required." Ex. 3 at 89.  This, of course, is what is required by the case law.

Mr. Gunderson also acknowledged the requirement that the ultimate reasonable royalty "must be based on the incremental value that the patented invention adds to the end product."  *Id.* at 90.

This is also required by the case law.  Then, he appropriately framed the question of "how the accused end products revenues should be apportioned to appropriately reflect the incremental selling value, or footprint of the patented technologies covered by the patents at issue, so that the reasonable royalty is tied to the infringed patents."  *Id.*

The problem is that Mr. Gunderson's answer to that question—which was to simply adopt Dr. Striegel's "apportionment" opinions (*see*, *e.g.*, Ex. 1 at 122:14-124:12)—fails to meet the requirements of the governing rule of apportionment.  Indeed, Dr. Striegel's opinions do not actually isolate the incremental value added by the alleged invention of the asserted claims to the accused systems and, thus, must be excluded.  For purposes of this Motion, Dr. Striegel's apportionment-related opinions can be broken down into two categories, as set forth below.

First, Dr. Striegel provided generic "Patent Summaries" that included a "brief technical summary (short summary) for each patent followed by a summary written for general accessibility (accessible summary)." Ex. 4 at 8-16.  These "Patent Summaries" do not contain any citations, do not reference any of the asserted claims, and are merely summary views of the patents.  Further, they do not attempt to isolate the incremental *improvement* added by the asserted claims over the prior art.  Nor do they even identify the numerous specific claim limitations that must be met for infringement to occur, and which necessarily narrow the functionalities that could be encompassed within the claim scope.

Second, Dr. Striegel undertook a single "Product Analysis" for each product group within the various accused combinations, *i.e.*, Catalyst switches, ISR routers, ASR routers, ASA firewalls,

DNA Center appliance, Stealthwatch, and ISE.[2]  *Id.* at 17-34.  Dr. Striegel conducted this product analysis despite the fact that for four out of the five patents (*i.e.*, all but the '193 Patent), a single product alone is not itself accused of infringing any asserted claim.  As to the '806 and '205 Patents, for example, Centripetal alleges that the accused systems include four different combinations of products:

1.  ASA firewall + Firepower Management Center ("FMC");

2.  Catalyst switch + DNA Center;

3.  ASR router + DNA Center; and

4.  ISR router + DNA Center.

Despite Centripetal's infringement allegations requiring multiple products, Dr. Striegel looked only to the individual product groups within these combinations, *e.g.*, an ASA, a Catalyst switch, DNA Center, etc.  Indeed, Dr. Striegel never once acknowledged the combinations that Centripetal actually accuses of infringement.  Instead, he looked to the individual product groups.  Within each product group, Dr. Striegel purported to identify the "top level functions … that are of equal value from a technical perspective."  Ex. 4 at 17.  For example, Dr. Striegel identified the ASA's top level functions as follows:

---

[2] There is no "Product Analysis" for the FMC management appliance, despite that appliance being a necessary component of the ASA+FMC combination accused of infringing the asserted claims of the '205 and '806 Patents.  Instead, Mr. Gunderson simply "applied apportionment of ASA." Ex. 3 at Schedule 5 n. 3; *see also* Ex. 1 at 66:15-68:4.  For the Firepower Services subscriptions and the Firepower appliance, despite Mr. Striegel not conducting any independent analysis of those products, he apparently informed Mr. Gunderson that the ASA percentage was a "reasonable estimate" that could be used for both.  Ex. 3 at Schedule 5 n. 4 ("I understand that apportionment for Firepower Appliance is the same as ASA."); Ex. 6 at Schedule 5 n. 4 ("Based upon my discussions with Dr. Striegel, the apportionment for ASA is a reasonable estimate of the apportionment for Firepower Appliance."); *see also* Ex. 1 at 66:4-67:5, 68:22-69:22.

1. Commodities
2. Performance
3. TLS
4. Management
5. AVC
6. Security Intelligence
7. Firepower NGIPS
8. AMP
9. URL Filtering
10. Automated Threat Feed and IPR signature updates
11. Third-party and open-source ecosystem
12. High availability and clustering
13. Cisco Trust Anchor Technologies

Ex. 4 at 25.  Then—apparently based on his understanding of the patents as a whole, as set forth in his generic "Patent Summaries"—Dr. Striegel "identified" which of these "top-level functions that infringe each of the patents."  Again using the ASA as an example, despite Centripetal's assertion that the ASA only infringes when combined into a system with a very specific version of the FMC, Dr. Striegel nevertheless opined that certain of its "top level functions" alone infringe the '205 and '806 patents:

In conjunction with Dr. Cole and Dr. Mitzenmacher, I have identified the following top level functions that infringe each of the patents as follows:

| Patent | Top Level Functions |
|---|---|
| '205 Patent | 4, 6, 7, 8, 9, 10 |
| '806 Patent | 2, 4, 6, 7, 8, 9, 10 |

Ex. 4 at 28.  Dr. Striegel justified his identification of these "top level functions" of the ASA as infringing the '205 Patent and '806 Patents in a single sentence:

6

> For the '205 Patent, I selected functions 4, 6, 7, 8, 9, and 10 because the '205 patent specifically describes the notion of centralized security management (4) and being used for network security (6, 7, 8, 9, 10).
>
> For the '806 Patent, I selected functions 2, 4, 6, 7, 8, 9, and 10 because the '806 patent describes the describes using a processor with forwarding capability (2 – critical for high performance), the incorporation of centralized management by reference from the '205 for rules (4) and providing network security (6, 7, 8, 9, 10).

*Id.*

Dr. Striegel's mapping of "top level functions" for broad product groups to one of the patents-in-suit as a whole fails to satisfy the requirement to identify the incremental value added by the technology of the asserted claims to the accused systems. Dr. Striegel did not look to the specifically asserted claims, nor to the specific combinations of products that are actually accused of infringement to identify the allegedly infringing features. Dr. Striegel made no attempt to identify the patented improvement as reflected in any asserted claim, or determine in what regard the patented improvement has added to the usefulness of the products or combination of products that are accused of infringement. In other words, he did not separate out (i) the specific, incremental benefits of the asserted claims, versus (ii) benefits flowing from the non-accused features or from the conventional features. This is the fundamental requirement of the Federal Circuit's case law on apportionment. There is no dispute about this, as Dr. Striegel disclaimed doing any such thing: "I have not been asked by counsel to identify the incremental value that the patented invention adds to the end product." Ex. 2 at ¶¶ 25, 42.

Nonetheless, Mr. Gunderson adopted in whole Dr. Striegel's opinions. Ex. 1 at 122:21-124:12. Specifically, Mr. Gunderson used Dr. Striegel's percentages (*e.g.*, ███████████) and multiplied them by the relevant worldwide invoice revenue for that product group. Ex. 3 at 94; Ex. 1 at 65:1-8 (Dr. Striegel did the "technical piece of the apportionment analysis" while Mr. Gunderson "did the math").

Mr. Gunderson then added the results of each product group into a single royalty base of █████ ████████████████████████████████████ after including the additional revenues associated with Cisco's Firepower appliance.   The result is a royalty base that dramatically overstates the incremental improvement of the asserted claims to the systems that Centripetal has actually accused.

## III.    Argument and Citations to Authority

Dr. Striegel's opinions are fundamentally flawed and do not meet the Federal Circuit's standard for analytical rigor for a proper apportionment analysis.  Because Dr. Striegel's opinions form the ***only*** basis upon which Mr. Gunderson apportions his royalty base, Mr. Gunderson's opinions must also be excluded.

The Federal Circuit has made clear that "[w]hen the accused technology does not make up the whole of the accused product, apportionment is required." *Finjan Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("No matter what the form of royalty, a patentee must take care to seek only those damages attributable to the infringing features.").   "This principle—apportionment—is the governing rule where multi-component products are involved.  Consequently, to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *CSIRO*, 809 F.3d at 1301 (internal citations omitted).

The Court must be vigorous in exercising its role as a gatekeeper to ensure that the damages analysis ties "proof of damages to the claimed invention's footprint in the market place." *VirnetX*, 767 F.3d at 1327; *see also id.* at 1328 (while "which facts are most relevant for calculating a reasonable royalty are properly left to the jury, a critical prerequisite is that the underlying methodology be sound").  Indeed, "given the great financial incentive parties have to exploit the inherent imprecision in patent valuation, courts must be proactive to ensure that the testimony

presented—using whatever methodology—is sufficiently reliable to support a damages award." *CSIRO*, 809 F.3d at 1301 (citing, *inter alia*, *VirnetX*, 767 F.3d at 1328, for proposition that a district court must exercise "its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury"). This means that before it can be presented to a jury, the proffered damages testimony—including any technical underpinnings— must meet "'the essential requirement' for reliability under *Daubert*": "'the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.' In short, apportionment." *Id.* (quoting *Ericsson*, 773 F.3d at 1226).

Dr. Striegel's opinions do not satisfy the essential requirement for reliability under *Daubert* for two reasons. First, when mapping his "top level functions" to each patent, Dr. Striegel points to generic descriptions of the patent, but does not look to the specific asserted claims and tie them to the accused combinations to determine the incremental value added to the accused products. Again, he admits that he was not even asked to "identify the incremental value that the patented invention adds to the end product." Ex. 2 at ¶ 42. And again, this is a disqualifying admission. Second, Dr. Striegel failed to identify the specific accused combinations and then, within those combinations, separate out the features covered by the patented improvement from features that are conventional or otherwise not covered by the asserted claims. Each issue is addressed below.

### A.    Dr. Striegel Admitted That He Did Not Identify the Incremental Patented Improvements of the Patents-in-Suit, a Necessary Prerequisite for Apportionment

"[I]n order to arrive at royalty damages that reflect the incremental value provided by the technology covered by the patents at issue" (Ex. 3 at 91), Mr. Gunderson relied on the technical opinions of Dr. Striegel. Dr. Striegel, however, twice disclaimed any effort to determine the incremental value that the patented invention adds to the accused combinations. Ex. 2 at ¶ 42 ("I have not been asked by counsel to identify the incremental value that the patented invention adds

to the end product."); *see also id.* ¶ 25 (same).  Dr. Striegel's admission renders his opinions irrelevant to a reasonable royalty analysis and unreliable under *Daubert*.  *See Ericsson*, 773 F.3d at 1226 ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.").

Indeed, for each of the various accused combinations, the clear law from the Federal Circuit demanded that Dr. Striegel isolate within the accused combinations the value added by the patented improvement as defined by each asserted claim.  This simply did not happen.  In fact, while Dr. Striegel makes a cursory reference to the asserted claims, he never undertakes any effort to analyze any asserted claim and apply the claims to the accused systems. Instead, he broadly summarizes each patent-in-suit at the highest and most generic level, and then maps each product within an accused combination to the patents as a whole.  *See, e.g.*, Ex. 4 at 28 (selecting certain "top-level functions" "because the '205 patent specifically describes the notion of centralized security management … and being used for network security").  But the asserted claims define the inventions, and a summary of the patent specification that makes vague references to, *e.g.*, "the notion of centralized security management" and the application of the patent to "network security" cannot provide the foundation for an apportionment that must be based on the incremental patented improvement as defined by the asserted claims.  *Ericsson*, 773 F.3d at 1226.  Thus, Dr. Striegel's opinions should be excluded because he failed to perform the proper analysis under the law.  *CSIRO*, 809 F.3d at 1301.  His opinion should be struck for this reason alone.  *See, e.g.*, *VirnetX*, 767 F.3d at 1329 (damages expert's testimony that did not apportion the royalty base between the patented features "and the vast number of non-patented features" "did not 'carefully tie proof of damages to the claimed invention's footprint in the market place,'" and thus was inadmissible and should have been excluded).

**B.      Dr. Striegel Failed to Analyze the Allegedly Infringing Combinations**

Dr. Striegel's opinions are also unreliable (and will serve to only confuse the jury) because he did not even identify the accused combinations, but rather presumed that the individual products that make up the accused systems infringe the patents-in-suit, as opposed to what is actually accused, *i.e.*, a specific combinations of multiple different products.  This same flaw is repeated in Mr. Gunderson's opinions, too.   Specifically, while Mr. Gunderson recognized that certain combinations of products were the accused systems, Mr. Gunderson nevertheless conducted his reasonable royalty analysis (and relied upon Dr. Striegel's apportionment percentages) with the (mistaken) understanding that individual products within an accused combination could themselves infringe the asserted claims.  *Compare* Ex. 3 at Schedule 14, Ex. 1 at 70:1-71:7 (identifying the accused combinations), *with* Ex. 1 at 71:8-74:6 (explaining his understanding that the individual products within each accused combination themselves infringe).  The Court should exclude these opinions because they do not meet the "distinct but integral part of the admissibility inquiry": the inputs utilized in Dr. Striegel's apportionment methodologies are not tied to the facts of the case and what Centripetal has actually accused of infringement.  *CSIRO*, 809 F.3d at 1302 (citing *Summit 6, LLC v. Samsung Elecs. Co.,*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)).

**1.      Example: the '205 and '806 Patents and the ASA + FMC
Combination**

To provide the Court with a concrete example of Dr. Striegel's failures, this section will focus on the accused combination of an ASA + FMC, which is accused of infringing two claims of each of the '806 and '205 Patents.  However, as set forth in the next sections, these same failings are repeated for all accused combinations and all products.

Cisco has been selling ASA firewalls for decades, but Centripetal only accuses ASAs that run ASA software version 9.4, which was released in March 2015.[3]  Similarly, FMC (the other half of the ASA + FMC combination) is specifically defined to include only versions with the Threat Intelligence Director feature[4], which is the feature that triggers the date of first alleged infringement.[5]

Rather than meet the reality of Centripetal's actual infringement case head-on—*i.e.,* analyze the specific combinations of an ASA running version 9.4 or later and an FMC with the "Threat Intelligence Director" feature—Dr. Striegel assumes that each individual product in each accused combination infringes each patent as a whole (as opposed to a specific asserted claim). For example, Dr. Striegel looks only to the ASA firewall itself—and not to the combination of an

---

[3] Centripetal thus defined "ASA" to mean "Cisco's Adaptive Security Appliance 5500 series with Firepower services, all of which run ASA software version 9.4 and subsequent releases, and Cisco's Firepower appliance series 1000, 2100, 4100 and 9300, all of which run Firepower Threat Defense or 'FTD' software version 6.0 and subsequent releases."  Ex. 5 at ¶ 17.

[4] Centripetal thus defined "FMC" to mean "Cisco's Firepower Management Center that supports Firepower Services software and FMC software version 6.0 and subsequent releases, and hosts Cisco Threat Intelligence Director." Ex. 5 at ¶ 17. This reference to 6.0.0 appears to be a mistake, given that it is undisputed that the Threat Intelligence Director feature was not added until nearly a year later, with the release of version 6.2.2.  Thus, Cisco will reference throughout version 6.2.2 as the FMC version that triggers alleged infringement.

[5] According to Centripetal's infringement expert, "the first date of infringement of the '205 Patent is October 23, 2017 for the ASA with FMC ***based on the release date of the relevant FMC software***."  Ex. 5 at ¶ 20; *see also id.*¶ 23 (same for '806 Patent).  Thus, only the specific combination of an ASA running version 9.4 or later when managed by an FMC running version 6.2.2 or later is alleged to infringe.  Given that infringement is tied to the release of the Threat Intelligence Director feature on the FMC, the incremental patented improvement of the '205 and '806 Patents would necessarily be, at best, in some portion of the technology found in the Threat Intelligence Director feature added to the FMC management appliance in version 6.2.2.  Moreover, keying infringement off the release date of a feature found within the FMC means that three things should be undisputed and would need to be accounted for by Dr. Striegel (but were not):  (1) an ASA firewall by itself does not infringe; (2) a FMC by itself does not infringe; and (3) the combination of an ASA firewall running version 9.4 or later, but managed by a FMC running a pre-6.2.2 version does not infringe.

ASA+FMC—and purports to identify "top-level functions that infringe each of the patents." Ex. 4 at 28.  Indeed, he does not once mention the FMC anywhere in either his opening report or his reply report, let alone the specific Threat Intelligence Director that is the trigger for Centripetal's infringement allegations.  His analysis thus is limited to opinions as to what "top-level functions" of the ASA allegedly infringe the '205 and '806 Patents, even though the ASA by itself is not accused of infringement, and even though the ASA has many functions that existed for decades before software version 9.4, and are thus necessarily "conventional" (*i.e.*, ***not*** part of the incremental improvement of Centripetal's patents).  Because none of Centripetal's infringement experts have opined that the ASA itself infringes either the '205 or '806 Patents, it cannot be that 6 out of the 13 "top level functions" of the ASA "infringe" the '205 Patent (and 7 out of 13 of the functions infringe the '806 Patent), as Dr. Striegel opines.

"'Where the data used is not sufficiently tied to the facts of the case,' a damages model cannot meet the 'substantive statutory requirement of apportionment of royalty damages to the invention's value.'" *CSIRO*, 809 F.3d 1295, 1302 (quoting *Summit 6*, 802 F.3d at 1296; *Ericsson*, 773 F.3d at 1226).  Here, Dr. Striegel's opinion that certain "top-level functions" of the ASA firewall "infringe each of" the '205 and '806 Patents cannot be presented to the jury because this opinion is not tied to the facts of this case, *i.e.*, he has not analyzed the system Centripetal actually accuses of infringing (ASA + FMC running a version of software with the Threat Intelligence Director feature) a specific claim.  Dr. Striegel's flawed analysis thus results in a dramatic overstatement of the value of the patented invention, and improperly captures technology as Centripetal's own that which has been present in Cisco's ASA firewalls for well over a decade. This is improper and warrants exclusion of Dr. Striegel's opinions. *See*, *e.g.*, *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("Any evidence unrelated to the claimed

invention does not support compensation for infringement but punishes beyond the reach of the statute.").

This specific example is representative of Dr. Striegel's approach to all patents and product combinations. Given his sweeping admission about what he did not do, it necessarily follows that the other patents and combinations have the same failures. For purposes of completeness, the next sections analyze the failures in those others combinations and patents (but again, the motion can be decided based solely on Dr. Striegel's categorical admissions).

### 2. The Other Combinations Accused of Infringing the '806 and '205 Patents

The other combinations alleged to infringe the asserted claims of the '806 and '205 Patents are made up of:

1.     one of (a) Catalyst switch, (b) ASR router, or (c) ASR router; *AND*

2.     the DNA appliance.

Centripetal alleges that these combinations of products first infringed the asserted claim of '205 and '806 Patents "based on the release date of the relevant DNA appliance/service," *i.e.*, version 1.1.2 of the DNA appliance. Ex. 5 at ¶¶ 20 ('205 Patent), 23 ('806 Patent). This means that it is undisputed that (1) none of the Catalyst switches, or ASR and ISR routers themselves infringe the '205 or '806 Patents; (2) a DNA appliance by itself does not infringe; and (3) a Catalyst switch, ASR router, or ISR router when managed by a DNA appliance using a pre-1.1.2 release does not infringe. Once again, Dr. Striegel does not account for these foundational facts of what Centripetal is actually accusing in this case. Instead, he looks simply to each of the Catalyst switch, ASR router, ISR router, and DNA appliances independently to determine what "top-level functions" of each of these products "infringe each of the patents-in-suit." Ex. 4 at 17-34. But those opinions would only mislead the jury because it is undisputed that Centripetal does not allege that any of

14

these products, by themselves, infringe these two patents.  To the extent his opinions were going to be used by Mr. Gunderson as the sole means to apportion Mr. Gunderson's inflated royalty base, Dr. Striegel had an obligation to determine the incremental improvement that the asserted claims of the '205 and '806 Patents add to the system that is actually accused of infringement.  On this, the only relevant issue, Dr. Striegel has no opinion.  Thus, the opinions that he does have are unreliable and the Court should exclude them.

### 3.    The '856 Patent and Accused Combinations

For the '856 Patent, Centripetal alleges that the system that infringes claims the '856 Patent is made up of:

1.    one of (a) Catalyst switch, (b) ASR router, or (c) ASR router; *AND*

2.    Stealthwatch, *AND*

3.    ISE.

Again, Dr. Striegel never looks at this combination of products, but instead analyzes each of the products that are included within the combination individually.  Given that Centripetal does not allege that any of these individual products themselves infringe the '856 Patent, it follows that the '856 Patent does not add any incremental value to these products individually.  And, as to the specific combinations of products that are alleged to comprise the infringing systems, Dr. Striegel has no opinions.

### 4.    The '176 Patent and Accused Combinations

Centripetal alleges that the system that infringes the asserted claims of the '176 Patent is made up of:

1.    one of (a) Catalyst switch, (b) ASR router, or (c) ASR router; *AND*

2.    Stealthwatch.

Again, it is only when these products are sold by Cisco and combined into a very specific system by one of Cisco's customers that infringement could occur. Dr. Striegel's opinions ignore this by analyzing only these products individually and not the specific accused combinations. Therefore, his opinions are unreliable and would not help the jury understand the alleged value added by these patents to the systems that are actually accused of infringement.

### 5.   The '193 Patent and Accused Products

Finally, Centripetal is sure to point to its allegation that each of a Catalyst switch, an ISR router, and an ASR router individually infringes the asserted claims of the '193 Patent. However, this does not save Dr. Striegel's opinions, as he never analyzed any asserted claim to identify the incremental value that the patented invention adds to these end products. For example, Centripetal only alleges that these products infringe when they are running a very specific version of operating system software, *i.e.*, IOS-XE 16.5 or later (or in the case of a Catalyst 9800 wireless controller, IOS-XE 16.10). Ex. 5 at ¶ 17. It is undisputed, however, that many of the accused ASR and ISR routers were introduced with prior versions of operating systems years before version 16.5 was released. For example, Cisco's public website currently identifies release notes for the ASR 1000 Series going back to IOS-XE Release 3S (released in February 2013)[6]; the ISR 4000 similarly goes back to IOS-XE Release 3S (released in March 2016).[7] Thus, Centripetal's infringement experts seemingly should have identified a feature or function that was added in 16.5 that triggered infringement, and Dr. Striegel should have looked to this feature or function to isolate the value added by the '193 Patent to these 16.5 and later products. None of this happened. Instead, Dr.

---

[6] https://www.cisco.com/c/en/us/support/routers/asr-1000-series-aggregation-services-routers/products-release-notes-list.html

[7] https://www.cisco.com/c/en/us/support/routers/4000-series-integrated-services-routers-isr/products-release-notes-list.html

Striegel simply identified the "Operating System" as one of 13 "top level functions" found on a Catalyst switch, and held that it, and at least three other "top-level functions" "infringe each of the patents." Ex. 4 at 18-22. He then gives Centripetal credit for the entire value of the "top level function" of "Operating System," rather than isolating exactly what functionality within the operating system triggers infringement. *Id.* at 21-22. For the ASR and ISR routers, Dr. Striegel completely ignores that Centripetal's claims can only be satisfied by certain software functionality and makes no mention of the various features available in the operating system. *Id.* at 23-24 (ISR), 25-26 (ASR).

Put simply, by failing to analyze the specific combinations of products that are alleged to infringe, Dr. Striegel's opinions are not tied to the specific facts of this case, and, therefore, the Court should exclude them.

**IV.     Conclusion**

The Court should exclude Dr. Striegel's apportionment-related opinions. The Court should similarly exclude those portions of Mr. Gunderson's damages opinions that rely on Dr. Striegel's apportionment analysis. Put simply, these opinions are unreliable and not tied to the facts of this case.

Dated: March 6, 2020                          CISCO SYSTEMS, INC.


                                              By /s/ *Dabney J. Carr, IV*
                                                    Of Counsel

Dabney J. Carr, IV, VSB No. 28679
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

**DAVIS POLK & WARDWELL LLP**
Neil H. MacBride, VSB No. 79883
neil.macbride@davispolk.com
901 15th Street, NW
Washington, DC 20005
Tel:     (202) 962-7000
Fax:     (202) 962-7111


**DUANE MORRIS LLP**
Louis N. Jameson (admitted pro hac vice)
Matthew C. Gaudet (pro hac vice pending)
John R. Gibson, VSB No. 72968
Jennifer H. Forte (admitted pro hac vice)
1075 Peachtree Street, N.E., Suite 2000
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900
Facsimile: (404) 253-6901
wjameson@duanemorris.com
jrgibson@duanemorris.com
jhforte@duanemorris.com


Joseph A. Powers (admitted pro hac vice)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 689-3797
japowers@duanemorris.com


John M. Baird, VSB No. 77827
Christopher J. Tyson, VSB No. 81553
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
jmbaird@duanemorrris.com
cjtyson@duanemorris.com


Nicole E. Grigg (formerly Johnson) (admitted *pro hac vice*)
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: (650) 847-4176
Facsimile: (650) 618-2713
NEGrigg@duanemorris.com


*Counsel for Defendant Cisco Systems, Inc.*