**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC., | ) |
| | ) |
| Plaintiff, | ) Case No.: No. 2:18-cv-00094-HCM-LRL |
| | ) |
| v. | ) |
| | )**PUBLIC VERSION - REDACTED** |
| CISCO SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

**CENTRIPETAL NETWORKS, INC.'S MEMORANDUM IN OPPOSITION**
**TO CISCO SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I.       INTRODUCTION

Plaintiff Centripetal Networks, Inc. ("Centripetal") opposes Cisco Systems, Inc.'s Motion

for Summary Judgment ("Motion") because Cisco infringes U.S. Patent Nos. 9,203,806 (the

"'806 Patent") and 9,137,205 (the "'205 Patent") for the reasons set forth in Centripetal's Motion

for Summary Judgment ("Centripetal's Motion" at Dkt. No. 290) and, at the very least, infringes

the five Asserted patents in this case under the Doctrine of Equivalents ("DOE").  To the extent

that Cisco disputes its infringement and how its Accused Products work, there are material issues

of fact that preclude summary judgment.

Centripetal and its experts have identified overwhelming evidence of Cisco's

infringement of the asserted claims of the '205 and '806 Patents based upon: (i) specific citations

to the source code for Cisco's Accused Products, (ii) the testimony of Cisco's engineers, and (iii)

Cisco's confidential and public technical documentation on the functionality of its products.  As

result, the only way Cisco can muster any argument is to shoehorn new and unsupported

limitations into the claims of the '806 and '205 Patent and attempt to suggest its Accused

Products work differently, which raise triable issues of fact.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986); *see also Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1375

(Fed. Cir. 2004) (when there is a factual dispute as to whether the allegedly infringing device

includes a claim limitation, summary judgment is not appropriate).  Indeed, this is particularly

true where Centripetal's "evidence . . . is to be believed, and all justifiable inferences are to be

drawn in [Centripetal's] favor." *Anderson*, 477 U.S. at 255.  Finally, contrary to Cisco's claim,

DOE applies, at the very least, as Centripetal did not surrender equivalents in any amendments in

the Asserted Patents.

## II.     FACTUAL BACKGROUND

### A.     Centripetal Networks Is a Pioneer of Packet Network Security Technology

Centripetal is a pioneer in the field of packet network security for developing innovative security platform technologies to protect against the latest malware threats that can jeopardize the security of computer networks.  Since its founding in 2009, Centripetal developed a portfolio of security platform products, including the RuleGATE™ product, which uses novel approaches to analyze network traffic based on millions of network-threat indicators.  Centripetal's diligent research and development efforts resulted in many novel and valuable technologies that are patented, including the inventions of the Asserted Patents.  On February 4, 2018, Centripetal filed its complaint in this litigation, asserting Defendants have infringed and continue to infringe: U.S. Patent Nos. 9,686,193 ("the '193 Patent"), 9,560,176 ("the '176 Patent"), 9,917,856 ("the '856 Patent"), the '806 Patent and the '205 Patent (collectively, the "Asserted Patents").  Dkt. Nos. 1, 29.  Cisco's Motion primarily relates to the '806 Patent and the '205 Patent.

The '806 Patent describes technology for swapping rules because "[a]s rule sets increase in complexity, the time required for switching between them presents obstacles for effective implementation."  Dkt. No. 156-7, Cisco Ex. 4 (" '806 Patent") at 1:13-20.  The '806 Patent provides processors configured to "cease processing packets and [that] may cache any unprocessed packets," while the network protection device is being reconfigured from the first rule set to the second rule set.  *Id.* at Abstract, 1:41-2:34, Figs. 2, 3A, 4.  As a result, the packets will be subject to either the first rule set or the second rule set and the packets will not be dropped (due to it being cached).

The '205 Patent relates to proactive security systems applying dynamic security policies on data packets traversing a network.  Dkt. No. 256-15, Cisco Ex. 12 (" '205 Patent") at 1:15-27; 10:47-58.  In this manner, the '205 Patent addresses the problem of old reactive approaches to

network security lacking the ability to respond to new threats fast enough.  *Id*. at 1:15-19.  The

'205 Patent describes a security policy management server which provides dynamic security

policies to network devices.  *See, e.g.*, *id*. at 13:33-62.  The network devices can perform a

packet transformation function based on information in the dynamic security policy; thus

allowing the network devices to quickly respond to new threats.  *Id*. at 5:18-23, 6:59-61, 9:63–

10:6, 10:36–46.  The '193, 176, and '856 Patents are all also related to providing different

aspects of novel network security functionality.

### B.    Cisco's History with Centripetal

Cisco and Centripetal had multiple discussions about Centripetal's patented technology

and a potential partnership or investment, including starting in 2015.  Ex. 1,[1] Cole Rpt. at ¶¶ 66-

77.  Starting in June 2015, Cisco's Director of Customer Solutions, Pavan Reddy, had several

meetings with Centripetal employees including Centripetal's CEO Steve Rodgers, where he

received information regarding Centripetal's technology.  Ex. 2, Reddy Tr. at 77:9-21, 110:25-

111:22; Ex. 3, CENTRIPETAL-CSCO 196708; Ex. 4, CENTRIPETAL-CSCO 019067-87.  ███

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 5, CENTRIPETAL-CSCO

019383-97; Ex. 6, CENTRIPETAL-CSCO 019378-82; Ex. 7, Jonathan Rogers Tr. at 15:19-16:8.

███████████████████████████████████████████████████████████

███████████████████████████ Ex. 8, Cisco-Centripetal_00095290.

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Lisa Kobialka in Support of Centripetal's Memorandum in Opposition to Cisco's Motion for Summary Judgment.

## C.     Cisco's Accused Products

For Claims 63 and 77 of the '205 Patent and Claims 9 and 17 of the '806 Patent

(collectively the "Asserted Claims"), Centripetal asserts that the following Cisco products

(collectively "the Accused Products[2]") infringe each of these claims:

- **Routers With DNA**: certain Cisco Routers, which are branded as Aggregation Services Router ("ASR") or Integration Services Router ("ISR"), with Cisco's Digital Network Architecture, which includes Cisco's DNA Center Appliance and/or DNA services, both of which use SD-Access software ("DNA");

- **Switches With DNA**: certain Cisco Switches, which are branded as Catalyst ("Catalyst") in combination with Cisco's DNA; and

- **ASA/Firepower Appliance**: certain Adaptive Security Appliance ("ASA") with Firepower services with Cisco's Firepower Management Center ("FMC") and Firepower appliance (collectively "ASA/FP").

Cisco began releasing these Cisco's Accused Products in 2017 and later.  *See* Ex. 9.

## III.    ARGUMENT FOR THE '806 PATENT

Cisco's Accused Products infringe Claims 9 and 17 of the '806 Patent because they

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[2]  Cisco's products that are specifically at issue are:
- Cisco's ASA 5500 series with Firepower services that runs ASA software version 9.4 and subsequent releases, and Cisco's Firepower appliance series 1000, 2100, 4100 and 9300, which run Firepower Threat Defense or "FTD" software version 6.0 and subsequent releases. Cisco's FMC that supports Firepower Services software and FMC software version 6.0 and subsequent releases, and hosts Cisco Threat Intelligence Director ("TID").  *See* Dkt. No. 290 at 4, Dkt. No. 183-4 (showing ASA and Firepower Appliances support similar software).
- Cisco's ASR 1000 series routers which run software IOS-XE 16.5 and subsequent releases.  *See* Dkt. No. 290 at 9-10.
- Cisco's Catalyst 9000 series switches, and specifically Catalyst 9300 series, Catalyst 9400 series, Catalyst 9500 series, and Catalyst 9800 series wireless controller, the switches which run software IOS-XE 16.5 and subsequent releases, and the controller that runs IOS-XE 16.10 and subsequent releases.  *See id.*
- Cisco's ISR 1000 and 4000 series routers, all of which run software IOS-XE 16.5 and subsequent releases.  *See id.*

██████████████████████████████████████████████. Dkt. No. 290 at 16-29.  Cisco

ignored this evidence and makes unsupported attorney arguments by taking the word "outdated"

from the background section of the '806 Patent with no context to spin a claim of non-

infringement out of whole cloth.  *See e.g.*, Motion at 2, 5.  At the very least, there are triable

issues of material fact that preclude Cisco's Motion based on the way the Accused Products

work.  Further, Cisco seeks to change the rules of the game by attempting to rewrite the claims to

require "re-processing" packets and reading words from the specification in a vacuum.

However, as discussed below, neither the specification nor the claims require "re-processing" of

packets, such that Cisco's attempts to rewrite the claims is unsupported.

**A.      There are Disputed Issues of Material Fact for the '806 Patent**

There are genuine material issues of fact precluding Cisco's Motion with respect to the

'806 Patent.  First, contrary to Cisco's "UF2" argument that the Accused Products ████████



Dkt. No. 291-1, Lee Ex. 1, Mitzenmacher ("Mitz.") Rpt. at ¶¶368-370 (████████████████

██████████████), 425-427 (same); Ex. 10, Mitz. Reply Rpt. at ¶¶235-236 (████████████

████████████████████████████████████████████████████████████████),

260-265 (same).  Moreover, Cisco's engineers testified that the Accused Products ████████

████████████████████████████  *See e.g.*, Ex. 11, Jones Tr. at 65:13-20 (████████

████████████████████████████████████████████); Ex. 12,

Hughes Tr. at 25:19-26:5 (████████████████████████████); *see also* Ex. 13,

Cisco-Centripetal_00063623 at 28-29 (████████████████████████).  As

such, Cisco's assertion of UF2 as "undisputed" is incorrect.

Centripetal also disputes Cisco's "UF3" argument that the functionality between the

"Hitless ACL Updates" and "Transaction Commit Model" are "substantively identical."  Motion

at 5.  These technologies operate differently █████████████████████████████████████████

████████████████████████████████████████████  *See e.g.*, Dkt. No. 291-16, Lee Ex. 16,

Cisco-Centripetal_00004135.0003-04 (███████████████████████████████yst); Ex.

13, Cisco-Centripetal_00063623 at 90 (██████████████████████████████████████████

█████████); Dkt. No. 291-13, Lee Ex. 13, Cisco-Centripetal_00008406 (███████████

██████████████████████████████████████████████████████); *see also* Dkt.

No. 291-1, Lee Ex. 1, Mitz. Rpt. at ¶¶332-333, 340, 366, 458-459 ████████████████████

██████████████████████████████████████).

## B. Cisco's Accused Products Infringe the Asserted Claims of the '806 Patent

As demonstrated in Centripetal's Motion for Summary Judgment (Dkt. No. 290), Cisco's

Accused Products meet every element of the '806 Asserted Claims.  They, *inter alia*, ████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████  Dkt. No. 291-16, Lee Ex. 16, Cisco-Centripetal

_00004135.0003-04 (████████████████████████████████████████████████████████

███████████████████);  Dkt. No. 291-13, Lee Ex. 13, Cisco-Centripetal_00008406.0005

(██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████  Dkt. No. 291-

13, Lee Ex. 13, Cisco-Centripetal _00008406.0005 █████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████  Dkt. No. 291-1, Lee Ex.

1, Mitz. Rpt. at ¶¶368-370, 425-427; Ex. 10, Mitz. Reply at ¶¶235-236, 260-265; Ex. 13, Cisco-



Centripetal_00063623 at 28-29 (⬛). Cisco's

engineers testified that a ⬛

⬛ *See e.g.*, Ex. 11, Jones Tr. at 65:13-20 (⬛

⬛); Ex. 12, Hughes Tr. at 25:19-26:5

⬛). To the extent Cisco disputes how its

Accused Products work, as set forth in Centripetal's Motion, there are triable issues of fact.

### C. Cisco Has No Support for Its Arguments About the '806 Patent

The entirety of Cisco's arguments for the '806 Patent are non-sequitur claims that amount to nothing more than attorney argument without citation to any law and reference to a few employee declarations, neither of which support summary judgment of non-infringement because they are contradicted by the great weight of evidence. Motion at 1-12. For example, while Cisco admits that the Accused Products ⬛ ⬛, Cisco makes the conclusory claim that Cisco cannot infringe because it was allegedly a prior art technique. *Id.* at 9. Undermining and factually disputing Cisco's claim is the fact that ⬛ ⬛ Dkt. No. 291-16, Lee Ex. 16, Cisco-Centripetal_00004135.03-04; Dkt. No. 291-13, Lee Ex. 13, Cisco-Centripetal_00008406.0005.

Furthermore, this conclusory argument (which is not one of infringement) raises material issues of fact to the extent the parties' respective expert dispute this claim. *Crown Packaging Tech., Inc. v. Ball Metal Bev. Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011)(summary judgment is usually inappropriate where there is a material dispute as to the credibility and weight afforded to conflicting expert reports). Also, the deposition testimony of Cisco's engineers, Messrs. Shankar, Jones, and Hughes, confirmed that Cisco's Accused Products have a ⬛. Dkt. No. 260-3 at ¶6 (⬛

██████████████████████████████████████████████); Dkt. No. 260-2 at ¶6 (same); Dkt. No. 260-1 at ¶10 (same). ████████████████████████ *See e.g.*, Ex. 11, Jones Tr. at 65:13-20 (████████████████████████████ ████████████████████████████████); Ex. 12, Hughes Tr. at 25:19-26:5 (████████ ████████████████████████████); *compare* Ex. 14, Shankar Tr. at 55:24-56:1 ████████████████████████████████████) with Dkt. No. 260-3 at ¶¶5-6 (████████████████████████████████). Thus, their declarations contradicting their testimony do not support summary disposition. *See Arch Specialty Ins. Co. v. Balzebre*, No. 10-23775-CIV-COOKE/TURNOFF, 2013 WL 12065532, at *3 (S.D. Fla. Jan. 9, 2013) (disregarding affidavit solely related to summary judgment briefing when "affidavit is directly contradicted by deposition testimony.") (citing *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240-41 (11th Cir. 2003)). These declarations raise genuine material issues of fact, including credibility issues to be judged by the factfinder.

### 1. The Claims Do Not Require for "Re-processing" Packets or Not Using "Outdated" Rule Sets, As Such a Requirement Defies Common Sense

Cisco seeks to rewrite the Asserted Claim's language, arguing that the claims require the same packets to be processed by the first rule set and then by the second rule set because to do so otherwise would rely on "outdated" rule sets. Motion at 1-3, 5-12. The claims, however, do not require the same packet to be "re-processed" with a second rule set, and this convoluted argument is based on Cisco's attempts to redefine the disclosure of the '806 Patent.

*First*, Cisco's attempts to rewrite the claims defy common sense, as such a process would be incredibly inefficient to put already processed packets back into the buffer. As Dr. Sean Moore, the one of the inventors of the '806 Patent, testified it is "not a smart thing to do." Ex. 15, Moore Tr. at 165:4-168:13 ████████████████████████████████████

████████████████████████████████████████████████).  Thus, Cisco

is raising a material triable issue of fact regarding the '806 Patent given this inventor testimony.

*Second*, there is no "re-processing" of packets requirements in Claims 9 and 17.  Cisco's

claims are based on only reading a portion of the claims in a vacuum.  Read in context, these

claims do not support Cisco's position.  While Cisco points to Claim 17, it does not identify

where Claim 17 recites "re-processing" the same packets with a second rule set because such

language does not exist in the claims.  Motion at 6-8.  Rather, Claim 17 states to "process, in

accordance with the first rule set, a portion of the plurality of packets," showing that only some

("a portion") of the packets are processed with the first rule set.  *Id.* at 6-7.  As only a *portion* of

packets are the processed by the first rule set, then the rest are processed by the second rule set.

Cisco ignores this claim language, and instead only points to a small portion of the claim without

addressing that any reference to "processing" of the packets in the claim relates only to a

"portion" of the packets.  *Id.*

Cisco essentially repeats this same faulty argument later with respect to the alleged prior

art techniques.  *See* Motion at 9-10 ("…overcoming the problems with that prior art technique").

Again, Cisco fails to recognize that the claims recite processing only *a portion* of the packets

with the first rule set, then ceasing processing of the packets, and caching the remaining packets.

'806 Patent at claims 9 and 17; Figs. 2 (at step 214), 4 (at step 412), 5:25-31, 9:24-35.  Cisco

makes the related argument that it cannot infringe because its Accused Products use "outdated"

rule sets.  Motion at 1-12.  This yet again is a made up requirement not in the claims and is a red

herring that should be disregarded.

### 2.     The Intrinsic Record Contradicts Cisco's Position

The '806 Patent specification includes embodiments where a portion of the incoming

packets are processed by either the first rule set *or* the second rule set.  For example, the patent

discloses where a portion of the incoming packets are processed by a first rule set, a second portion of the incoming packets are cached (i.e., "unprocessed packets") of packets, and this second portion of the packets are processed by a second rule set. *See e.g.*, '806 Patent at Figs. 2 (step 214 describing "process[ing] second portion of packets in accordance with the second rule set"), 4 (step 412 describing "process[ing] the cached *unprocessed* packets in accordance with the second rule set") (emphasis added), 5:25-31 (describing an embodiment that processes a second portion of packets using a second rule set), 9:24-35 (describing a cache that stores unprocessed packets (*i.e.*, have not been processed by the first rule set) and processes those unprocessed packets with second rule set), claims 9 and 17 (neither of which mention "re-processing"). Thus, this embodiment demonstrates that the same packet does not need to be processed by the first rule set *and* the second rule set. These disclosures in addition to the claim language highlight the infirmities of Cisco's arguments for the '806 Patent.

Cisco relies upon portions of the specification that do not support its position. For example, Cisco points to Figure 4 of as allegedly supporting its "re-processing" requirement and argues that the cache includes "packets it has already begun processing with the first rule set (*i.e.*, packets for which processing started but is not yet complete)." Motion at 6. Figure 4, however, shows that the second rule set processes "unprocessed packets," and does *not* describe "re-processing" packets that have already been processed. '806 Patent at step 412 in Fig. 4, 9:24-35. In fact, Figure 4 and the specification show that the cache includes "any unprocessed packets" and not already processed packets. *Id.* at 9:9-13; step 412 at Fig. 4. Thus, the '806 Patent specification does not describe how the same packets already processed by the first rule set *must* be reprocessed by a second rule set. Rather, the intrinsic evidence show that unprocessed packets in the cache are processed with the second rule after switching to the second

rule set.

The remainder of Cisco's arguments are premised on taking the word "outdated" from the background section of the '806 Patent specification and ignoring the context of how the word was used. '806 Patent at 1:25-31; Motion at 5. This portion of the specification describes how it prevents the use of "outdated" rules by allowing the system to quickly swap one set of rules with another set. *See, e.g.*, '806 Patent at Abstract, Figs. 2, 4. Therefore, when referring to "outdated" rule set, the patent is referring to the concept of not switching to a second rule set, even though it may be available for implementation because the system needs additional time to "switch between rule sets" due the increased "complexity." *Id.* at 1:19-31; *see also* Ex. 16, S. Rogers Tr. at 191:17-192:19 (inventor explaining that the term "outdated" as used in the background refers to delay in implementing a second rule set). As the '806 Patent notes, the additional "time required for switching between [the rule sets] presents obstacles for effective implementation." '806 Patent at 4:4-8. Because of the additional time required, the network protection devices are "unable to process network traffic [*i.e.*, drop packets] while switching between rule sets due the utilization of resources for implementing the new rule set." *Id.* at 1:19-31. As a result of the additional time required, packets may be processed for a longer period of time with the outdated rule set instead of the second, newer, rule set. *Id.* at 1:19-31. In contrast, an advantage of the '806 Patent is that it allows for the faster switch to the newer rule set due the "preprocess[ing]" the rule set. *Id.* at Abstract. Thus, Cisco's non-infringement argument about using outdated rule sets is based on a misinterpretation of the '806 Patent.

Similarly, the prosecution history Cisco cited does not support Cisco's argument. Motion at 7; Dkt. No. 256-8 at 13-14. However, nowhere does Centripetal argue that the claim requires "re-processing" as Cisco claims. Dkt. No. 256-8 at 13-14. Thus, the prosecution history does

not support any "re-processing" claim that Cisco is alleging.

### 3.      Centripetal's Experts Do Not Support Cisco

Cisco's arguments regarding Centripetal's experts, Drs. Mitzenmacher and Orso, are wholly invented.  Motion at 8-12.  None of Cisco's citations to their testimony support their claim that the claims require "re-processing" packets.  First, Cisco cites Dr. Mitzenmacher's testimony at 212:4-213:1 and at 172:25-174:6, but neither citation supports Cisco's arguments. *Id.* at 8-11.  In particular, the questions to Dr. Mitzenmacher were in the context of the claims requirement of processing only *a portion of the plurality of packets*.  Dkt. No. 260-4, Cisco Ex. 1, Mitz. Tr. at 172:25-173:4.  Thus, when the claim describes ceasing to process one or more packets, this refers to the ***portion*** of packets that have not been processed by the first rule set, which as discussed above, is what is recited in the claims.  '806 Patent at Claims 9 and 17; Figs. 2 (at step 214), 4 (at step 412), 5:25-31, 9:24-35.  Similarly, the context of Dr. Orso's testimony was in regards to a specific embodiment in the specification, and not to what was required in any particular claim.  Dkt. No. 256-10, Cisco Ex. 7, Orso Tr. at 211:17-18 (directing Dr. Orso to opine about the '806 Patent at 7:18-31); *see also id.* at 212:20-213:9.

## IV.    ARGUMENT FOR '205 PATENT

### A.      There are Disputed Issues of Material Fact for the '205 Patent

There are numerous genuine issues of disputed material fact that preclude Cisco's Motion with respect to Claims 63 and 77 of the '205 Patent.  Centripetal disputes Cisco's UF4 which Cisco claims a SIP URI (which stands for Session Initiate Protocol Uniform Resource Identifier) requires an indication of the scheme which is identified as "sip(s)."  Motion at 12 (showing examples where SIP URI as sip: user@domain.com). In other words, Cisco is claiming that there must be a "sip identifier," which simply means that the words "sip(s)" must appear in a SIP URI. *Id.*  This is plainly incorrect, as the specification has examples of a SIP URI that does not require

a "sip identifier." '205 Patent at 14:2-15 (describe SIP URI as

"exampleuser@exampledomain.com" without requiring the "sip" identifier).

Cisco only relies on a document named RFC 3261 to support its UF4 allegation.  RFC

3261, however, is just an exemplary way to implement SIP URIs and it only identifies examples

of SIP URIs.  To the extent Cisco disagrees, this is a triable issue of fact.  Further, ███

████████████████████████████████████████████████████████████████████████

████████    *See* Motion at 13 citing Dkt. No. 260-6, Cisco Ex. 6 at ¶238 ████████████████

████████████); Dkt. No. 260-4, Cisco Ex. 1, Mitz. Tr. at 154:1-23 ████████████████

████████████████████████████████████████████████████████████████████████

███████████).  Particularly telling is that Cisco's expert, Dr. Jeffay, ████████████████

████████████████████████████████████████████    *See* Ex. 10, Mitz. Reply Rpt. at ¶123,

*citing* Jeffay Rpt. at ¶¶ 86-101.  This alone raises genuine issues of triable fact, as well as hits at

the credibility of Cisco's arguments.

The fundamental premise of Cisco's purported UF5-7 allegations is that Centripetal's

infringement allegations is that a ***user or customer*** configures the devices for the "configured to"

limitation of the Asserted Claims.  *See e.g.*, Motion at 14 ("configured by a customer"), at 15

("must all be configured by users"), at 16 ("under Centripetal's theories, the user must …

configure their own policies and rules").  Because Centripetal is asserting that the devices

(instead of users) are "configured to" perform the functions of the claim, Cisco's claim is wrong

and its entire basis for its Motion for the "configured to" element fails.

In the context of the claims, "configured to" relates to "one or more packet security

gateways comprises computer hardware and logic configured to cause the packet security

gateway to" perform the recited functions (Claim 63) and "encapsulate at least one packet of the

packets …. with a header containing a network address … that corresponds to a network device configured to …" (Claims 63, 77).  As set forth in Centripetal's Motion, the devices have software code to automatically satisfy the "configured to" element.



Dkt. No. 290 at 5-9.

*Id.* at 10-13.

*See id.* at 2-4 (Centripetal's UF 1-12).  Thus, Centripetal disputes Cisco's "UF5-7" allegations, which do not address Centripetal's infringement claims against Cisco.

Centripetal disputes the entirety of Cisco's UF5 allegation, which is entirely misleading. ***First***, Cisco takes a small snippet of a quote from a FMC user manual, which is not about the devices that Centripetal has alleged infringes the "configured to" portion of the Asserted Claims. The entire sentence for Cisco's UF5 states "You must configure access control policies to publish TID data from the Firepower Management Center to your managed devices (elements)." Dkt. No. 256-12, Cisco's Ex. 9, Cisco-Centripetal_00006310 at 1502.  Thus, this sentence is regarding the configuration for the FMC to provide TID data, which does not reflect Centripetal's claims against Cisco because Centripetal

*See e.g.*, Dkt. No. 290

at 5; Ex. 17, CENTRIPETAL-CSCO 041237 at 41246 (█████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████). Ex. 11, Jones

Tr. at 48:10-15 █████████████████████████████████████████████████████);

Ex. 18, Cisco-Centripetal_00009616 (█████████████████████████████████████

███████████████████████); *see also, e.g.*, Ex. 19, Mitz. Rpt. at ¶¶142-143, 221-

225. The "network devices" are, █████████████████████████████████████████

██████████  *See, e.g.*, Ex. 19, Mitz. Rpt. at ¶¶160, 257-260.  Thus, this reference to

configuring access control policies has no bearing on Centripetal's infringement claims.

      *Second*, these configurations described in the FMC manual simply do not alter the

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████  Dkt. No. 256-12, Cisco's Ex. 9,

Cisco-Centripetal_00006310 at 1503.  ***Third***, the manual describes 6 steps, which is hardly "a

lengthy series of steps necessary for configuration."  With respect to Cisco's UF6 claims, the

sentence Cisco cited is regarding using TID.  Specifically, the same page also states:

> Step 1 Verify that the Enable Threat Intelligence Director check box is
> checked in the Advanced Settings tab of the access control policy. This
> option is enabled by default…
> …
> Step 2 Add rules to the access control policy if they are not already present.
> TID requires that the access control policy specify at least one rule.

*Id.* at 1503.  Cisco's UF6 allegations suffers the same issue as Cisco's UF5 claim, ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Centripetal disputes Cisco's UF7 claims because Cisco, again, is mischaracterizing the over 2000 page manual.  Cisco only cites sections of the manual, all of which are about TID, not a customer.  Motion at 13.  ███████████████████████████████████████

███████████████████████████████████████████████████

████.  *See, e.g.*, Dkt. No. 256-12, Cisco's Ex. 9, Cisco-Centripetal_00006310 at 1510-1511. Thus, Cisco's UF4-7 allegations are disputed to the extent it argues all rules or policies are configured and programmed by customers or users.

**B.      Cisco's Motion Only Addresses Some of Centripetal's Infringement Claims for the '205 Patent**

Cisco's Motion does not address all the infringement scenarios that Centripetal has alleged for the '205 Patent.  For example, Centripetal has set forth how the Accused Products

█████████████████████████████████████████████████████████████

███████████████████      *See* Motion at 12-18.  Thus, Cisco's Motion does not address all infringement claims for the '205 Patent.  Further, Cisco's Motion is limited to the following elements: (1) "configured to" and (2) "at least one rule specifying a set of network addresses and a Session Initiation Protocol (SIP) Uniform Resource Identifier (URI)."  *Id.* at 1, 13-23.  Neither issue supports Cisco's Motion with respect to the '205 Patent, as there genuine material factual disputes regarding the differences in the parties' understanding of the Accused Products and how they satisfy the Asserted Claims.

**C.      Cisco's Accused Products Meet the "Configured to" Requirement**

"Configured to" appears twice in the Claim 63 of the '205 Patent, which provides:

> … each packet security gateway of the one or more packet security gateways comprises computer hardware and logic ***configured to***

16

> cause the packet security gateway to:
> …
> encapsulate at least one packet of the packets that falls within the set
> of network addresses and matches the SIP URI with a header … and
> that corresponds to a network device **configured to** copy
> information contained in the at least one packet and to forward the
> at least one packet to the destination network address;

'205 Patent, Claim 63 (emphasis added).  In Claim 77, the "configured to" appears only once in

the encapsulation element.  The Court construed "configured to" as "plain and ordinary meaning,

which requires being actually configured, not merely being capable of being configured" and that

the phrase "requires that the action actually do the function automatically."  Dkt. No. 202 at 13,

22.  Applying this construction, ████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████   *See, e.g.*, Ex. 10, Mitz. Reply Rpt. at ¶¶83, 165.  Thus, Cisco's Accused

Products are "configured to" ████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████████████████   And to the extent Cisco disputes these facts,

then there are material issues of disputed fact.

    Cisco's arguments regarding a declaration of Dr. Medvidovic submitted during the claim

construction phase of the case is a red herring.  Motion at 14-15.  Dr. Medvidovic is not an

infringement expert and was not opining on how Cisco's Accused Products operate or are sold.

Motion at 14 *citing* Dkt. No. 163, Medvidovic Decl. at 7.  It was Dr. Mitzenmacher who opined

that Cisco's Accused Products ████████████████████████████████████████████

Moreover, Cisco's arguments miss the mark, as loading software (which Dr. Medvidovic's

declaration addressed) does not necessarily mean that a system is "configured to do it

automatically."  Ex. 20, Claim Construction Hearing Tr. at 39:13-15, 40:9-12 ("…I think it

means that it does it, not just is capable of doing it … it has to be configured to do it

automatically, not simply capable of doing it, and sometimes it will and sometimes it won't.").

Further, while Centripetal's construction "capable of performing a function" was broader than

actually configured, the two constructions overlap in part, as "capable of performing a function"

can include systems that are "actually configured" to perform that function. ████████████

████████████████████████████████████████████████████████████████

████████████████████

       Cisco attempts to claim that the Accused Products do not always actually ***perform*** the

function.  The Court's construction, however, requires that the accused product be actually

***configured*** to perform the function, not that they always "perform" the function.  This

construction makes sense in the context of Claims 63 and 77, which are system claims, as

opposed to method claims.  The infringing systems need to be already configured to perform the

function recited in these claims under the Court's construction.  Moreover, for infringement of a

system claim, there is no requirement that there is ***actual performance*** of a function in a system

claim.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010) (finding

infringement where the software for performing the claimed functions existed in the products,

and any user actions were to allow a user of that software utilize the function without having to

modify the code); *VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796, 808 (Fed. Cir. 2019) ("We have

held … that an accused device may be found to infringe if it is reasonably capable of satisfying

the claim limitations," and a device "sold in a noninfringing mode of operation may still be

found to infringe if the mode that infringes can be enabled without significant alterations")

(internal citations omitted).  Thus, Cisco's Accused Products satisfy the "configure to" element.

       Finally, ████████████████████████████████████████████████

18

███████████████████████████████████████████████ *See* Motion at 13 (Cisco's UF 5-

7).  If anything, this manual establishes that Cisco infringes ███████████████████

██████████████████████████████████████████ *VirnetX*, 792 F. App'x

at 808 (citations omitted).

### D.   The '205 Accused Products Meet the "Encapsulation" Element

Cisco challenges the "encapsulation" element, but it fails for the same reasons set forth

above.  Motion at 16-18.  First, Dr. Mitzenmacher opined in both his opening and rebuttal report

that, based on all the evidence, the Accused Products ████████████████████████████

██████████████████████████████ *Id.* at 17; Ex. 19, Mitz. Rpt. at ¶¶160,

162,169, 226, 256-260; Ex. 10, Mitz. Reply Rpt. at ¶¶89, 158-159, 165, 190-191.  ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ (Motion at 16) is thus irrelevant.  *VirnetX*, 792 F. App'x at

809, *citing Finjan*, 626 F.3d at 1205 ("the fact that users needed to activate the functions

programmed by purchasing keys does not detract from or somehow nullify the existence of the

claimed structure in the accused software.").

Cisco's argument about a network device actually performing the copy and forward steps

is irrelevant because the Asserted Claims do not require a network device to actually perform the

copying or forwarding functions under every configuration.  Rather, ████████████████████

██████████████████████████████████ '205 Patent, Claims 63, 77

("encapsulate … with a header containing a network address … and that corresponds to a

network device ***configured to*** copy information … [and] to forward … to the destination

network address").  Centripetal has shown that the Accused Products ████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████ *See, e.g.*, Ex. 10, Mitz. Reply Rpt. at ¶¶89, 158-159, 165, 190-191.

Cisco has not identified any contradictory evidence.  Motion at 17-18.

Further, Centripetal has shown the remainder of the element, namely "encapsulate at least

one packet of the packets that falls within the set of network addresses and matches the SIP

URI," is met.  '205 Patent, Claims 63, 77; Motion at 16-17.  Specifically, Dr. Mitzenmacher

████████████████████████████████████████████████████████████████████

██████████████████████ *See* Ex. 19, Mitz. Rpt. at ¶¶145-147, 228-232.  The Accused Products

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* at ¶255 (███████████████████

██████████████████████████████████████████████); Ex. 21,

Venkatraman Tr. at 10:14-11:6 (███████████████████████████████

██████████████████████████████████████████████); Ex. 11,

Jones Tr. at 50:17-21 (██████████████████████████████████████

██████████████████████████████████████████████), 32:22-35:19

(██████████████████████████████████████); *see also*, *e.g.*, Ex.

19, Mitz. Rpt. at ¶281 (███████████████████████████████████████████████

███); *id.* at ¶¶159-167, 254-265; Ex. 10, Mitz. Reply Rpt. at ¶¶164-166, 189-191. ████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████ Dkt. No. 256-12, Cisco Ex. 9, Cisco-Centripetal_00006310 at 1510-11

(██████████████████████████████████████); *see also* Ex. 22, Cisco-Centripetal_00081855

at 5, 9 (███████████████████████████████).

The rest of Cisco's arguments (Motion at 16-17) are incorrect because the claims or the Court's constructions do not require a rule specifying "encapsulation."  The IPR does not help Cisco because the excerpt Cisco cited describes a dynamic security policy specifying ***packet transformation functions***, which is a different element from "rules."  *See id.* at 16.

### E.    Cisco's Accused Products Meet the "SIP URI" Element

Centripetal identified how the Accused Products automatically use "a dynamic security policy comprising at least one rule specifying a set of network addresses and a session initiation protocol (SIP) uniform resource identifier (URI)," as well as the encapsulation element reproduced in the section above.  '205 Patent, Claims 63, 77; *see also, e.g.*, Ex. 19, Mitz. Rpt. at ¶¶145-152, 228-241.  Contrary to Cisco's Motion, Centripetal identified ██████████████████ ████  Motion at 16; *see also, e.g.*, Ex. 19, Mitz Rpt. at ¶¶281-282 (█████████████████ ██████████████████████████); *see also id.* at ¶¶279-280; *id.* at 145-152 (████████████ ████████████████████████████████); Ex. 10, Mitz. Reply Rpt. at ¶¶148-150.  Dr. Mitzenmacher showed that the Accused Products ████████████████ ███████████████████████████  Ex. 10, Mitz. Reply Rpt. at ¶¶141-143, 178-181. Further, Cisco's argument is unfounded, as Cisco does not dispute that the Accused Products ██████████████████████████████████████████████████████ ████████████ ████████████████████████████████████████████  *See, e.g.*, Ex. 23, Cisco-Centripetal_00116086.0019 (████████████████████████████████ █████████████████████); Ex. 18, Cisco-Centripetal_00009616.0034 (████████████ ████████████████████████); Ex. 24, CENTRIPETAL-CSCO 482167-255 at 482204 (██████████████████████████████); Ex. 25, CENTRIPETAL-CSCO 039973-88 at 39976 (██████████████████████████); *see also* Ex. 19, Mitz. Rpt.

at ¶¶145, 147, 178 (████████████████████████); *id.*, ¶¶255, 259 (███████████
████████████████████████).  Additionally, Cisco does not dispute SIP URI includes a

domain name and that filtering the domain name portion of a SIP URI filters out the entire string

of "sip: exampleuser@exampledomain.com."  *See* Motion at 19-20; Ex. 10, Mitz. Reply Rpt. at

¶142.  Thus, Cisco's position that it does not have a rule that includes a SIP URI is untenable.

Further, the Court should deny Cisco's Motion also because the Asserted Claims do not

require a SIP URI to include the scheme "sip."  First, as noted above, the specification of the

'205 Patent identifies a SIP URI that does not require the phrase(s) "sip(s)."  '205 Patent at 14:5-

14 (describe SIP URI as "exampleuser@exampledomain.com" without requiring the words

"sip(s)").  Motion at 19.  Second, Cisco's excerpt of Dr. Mitzenmacher's testimony is incomplete

and misleading.  *Id.* at 19.  Indeed, his complete answer shows that he ████████████████

████████████████████████████ Ex. 26, Mitz. Tr. at 154:1-23 ████████████████

████████████████████████████████████████████████████

████████).  Further, Cisco's expert did not dispute that ████████████████████ *See*

Ex. 27, Jeffay Non-Infringement Rpt. at ¶¶86-101.

Similarly, Cisco's argument requiring a processing SIP URI to be more than a domain

name is wrong.  In Cisco's example, it alleges that a SIP URI includes a sip scheme indicator,

user portion, and a domain name portion.  Motion at 18-20.  As described in the specification,

SIP URI does not have to have this specific scheme identifier "sip."  While the '205 Patent's

specification describes an example of a SIP URI as exampleuser@exampledomain.com which

includes a user portion ("exampleuser") and a domain name portion ("exampledomain.com"), it

is well known that the example standard for SIP (RFC 3261) shows that the "userinfo part of a

URI is optional and MAY be absent."  Ex. 28, CENTRIPETAL-CSCO 519436-705 at 519583-

84 (RFC 3261).  This shows that the user portion is not required for a SIP URI either.  Based on

this evidence, processes or rules based on the domain name portion meets the SIP URI elements.

Even under Cisco's interpretation of SIP URI, Centripetal has shown that the accused

Catalyst and routers ███████████████████████████ *See, e.g.,* Ex. 19, Mitz. Rpt.

at ¶¶145-150, 255-259, 281-282 (███████████████████████████████);

*see also id.* at ¶¶ 279-280; Ex. 10, Mitz. Reply Rpt. at ¶¶148-150. Thus, at a minimum, to the

extent Cisco disagrees with Centripetal's evidence, there is a genuine dispute of material facts

with respect whether the Accused Products use SIP URI.

### F.    Cisco's Accused Products Meet "at least one rule…" Element

Cisco's non-infringement argument that ████████████████████████████

██████████████████████ is incorrect for a number of reasons.  Motion at 1,

21-22. ***First***, the claims are not so limited.  They recite "a dynamic security policy comprising ***at***

***least one rule*** specifying a set of network addresses and a session initiation protocol (SIP)

uniform resource identifier (URI)."  '205 Patent at Claims 63, 77 (emphasis added).  Thus, there

can be multiple rules that collectively cover both network addresses and a SIP URI because the

plain language of the claims recites "at least one rule," not a single rule.  And, while one rule

among the "at least one rule" can include both a set of network addresses and a SIP URI, there

are also situations where the network addresses and SIP URI can be in more than one rule.  Thus,

the claims do not require a single rule for both SIP URI ***and*** for network addresses.

***Second***, dependent Claim 67, which Cisco identified (Motion at 22), proves Centripetal's

position.  It recites "the at least one rule specifying the set of network addresses" without

mentioning SIP URIs.  '205 Patent at Claim 67.  Thus, there are claims that make a delineation

when SIP URIs may be required, as this shows that the "at least one rule" can have one rule

specifying a set of network addresses and another rule specifying a SIP URI.

*Third*, nothing in the specification supports a disclaimer of limiting to a single rule, as Cisco's alleges.  Motion at 22; '205 Patent at 13:37-41, 16:53-55 (illustrating examples where one or more rules specify network addresses and do not require one  rule for both the SIP URI and network addresses).  Even the portion of the specification that Cisco relied upon does not support its position.  Motion at 22 *citing* '205 Patent at 10:24-28.  That cited portion not only explicitly uses the phrase "For example" which is not a disclaimer, but also states that "***one or more rules*** that specify …." '205 Patent at 10:24-28 (emphasis added).  The specification also describes a collection of rules implement a functions, such as a routing function for a monitoring service.  '205 Patent at 10:18-25.  This further shows criteria can be specified via a combination of rules.  *Fourth*, Cisco's argument based on prosecution history similarly fails because Centripetal did not limit the claim to a single rule that has both network addresses and a SIP URI.  *See* Motion at 22-23 (where Cisco's citations to IPRs, refer to "any rules" and "at least one rule specifying …", instead of a single rule specifying both criteria).

Cisco's excerpt of Dr. Mitzenmacher's deposition testimony on SIP URIs is misleading (Motion at 21) because Dr. Mitzenmacher was testifying about ████████████████████ ████████████████████████████████████ Ex. 26, Mitz. Tr. at 166:11-20 ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████ ); *see also id.* at 165:10-16.  Since the claim language recites "a dynamic security policy comprising at least one rule specifying a set of network addresses and a session initiation protocol (SIP) uniform resource identifier (URI)", Dr. Mitzenmacher testified that the dynamic security policy needs to include SIP URIs and network addresses, which are specified via "at least one rule."  Cisco's attack on Dr. Mitzenmacher simply raises material issues of fact that, as

it is a disagreement on genuine material facts.  *Id.* at 164:20-165:14.  And Cisco's arguments

built on ignoring the claim language should be rejected.

Further, even under Cisco's interpretation, Cisco's Accused Products satisfy the claim

element because ███████████████████████████████████████████████  *See,*

*e.g.,* Mitz. Rpt. at ¶¶145-147 (██████████████████████████████████████████

████████████████████████████████████████████████████), 303, 304-

305 (███████████████████████████████████████), 306 (█████████████

████████████████████████████████████████████).  Thus, Cisco's

Motion regarding the '205 Patent should be denied.

## V.      ARGUMENT REGARDING THE DOCTRINE OF EQUIVALENTS

Cisco's Motion regarding DOE is limited to identifying amendments and concluding

without any argument that prosecution history estoppel ("PHE") applies to Centripetal's DOE

claims.  Cisco, however, has no argument about (i) Centripetal's DOE claims, (ii) how any

purported amendment relates to a DOE claim or (iii) what alleged disclaimers were made related

to a DOE claim.  Thus, Cisco's PHE defense is utterly unsupported and should be rejected.

As shown below, PHE is inapplicable because Centripetal did not narrow its claims, such

that are genuine issues of disputed fact, and is not applying DOE in a manner to recapture subject

matter that was surrendered during prosecution.  *Festo Corp. v. Shoketsu Kinzoku Kogyo*

*Kabushiki Co.*, 344 F.3d 1359, 1365-66 (Fed. Cir. 2003).  Centripetal's amendments explained

more explicitly the invention.  *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177-78

(Fed. Cir. 2008) (finding PHE does not apply when the patentee "merely explained, in more

explicit terms, what the claims already covered").  Nowhere did Centripetal surrender

equivalents because the rationale underlying those amendments are not related to any equivalents

at issue.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002)

(PHE does not apply when the "the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question").

### A.      PHE Does Not Apply to the '806 Patent

PHE does not apply to the "preprocess the first rule set and the second rule set" element of the '806 Patent because the amendment made to this element were part of the original claim language, such that Centripetal could not have surrendered any equivalents.  Ex. 10, Mitz. Reply Rpt. at ¶226; Dkt. No. 256-20, Cisco Ex. 17 at 3 (showing claim 1 including "preprocessing" and "the first rule set and the second rule set" as part of the original claims with no modification). While other parts of the claim element was amended, the equivalents that Centripetal seeks were not modified substantively nor did it disclaim equivalents, such that Cisco's UF9 claims are disputed.  Rather, the amendment reorganized other previous existing claim elements for grammatical purposes and inserted "to optimize performance of the network protection device for processing packets in accordance with at least one of the first rule set or the second rule set." Dkt. No. 256-20, Cisco Ex. 17 at 3.  This addition, however, was not made to overcome an issue of patentability, but rather for clarity of the claim.  Indeed, the Patent Examiner noted in the Notice of Allowance that he did not issue the patent based on the "preprocess" claim element. Ex. 29, '806 File History, October 16, 2015 Notice of Allowability at 2.  Thus, the amendment clarified the structure and grammar of the claim, not to address patentability.  Thus, PHE does not apply and certainly not to Centripetal's DOE allegations.

### B.      PHE Does Not Apply to the '176 Patent

PHE does not apply to the "responsive to" claim element for Claims 11 and 21 of the '176 Patent because Centripetal does not recapture any alleged surrender of claim scope.  Dkt. No. 260-10, Cisco Ex. 19, at ¶¶365, 425; *see also* Ex. 30 at ¶¶59-67.  Contrary to Cisco's UF11 claim, Centripetal did not "narrow" the claim scope for this element, and the prosecution history

shows that Centripetal only amended to clarify the language from "generate data identifying the host located in the first network" to "generate, based on the correlating, one or more rules configured to identify packets received from the host located in the first network". Dkt. No. 265-24, Cisco Ex. 21 at 5-6. Thus, PHE does not apply and nothing in Centripetal's DOE analysis seeks to recapture what was originally claimed, ███████████████ which was never rejected by the examiner. Dkt. No. 260-10, Cisco Ex. 19, Cole Rpt. at ¶¶365, 425.

### C. PHE Does Not Apply to the '193 Patent

Centripetal never surrendered equivalents to "first operator," as it only made clarifying amendments to the issued claims 18 and 19 of the '193 Patent. *See* Motion at 25-26; *see also* Ex. 10, Mitz. Reply Rpt. at ¶¶303-306. Contrary to Cisco's UF13 claims, Centripetal did not narrow any claim scope. In fact, the term "operator" was already in the original claims, and therefore there was no change in the claim scope. Dkt. No. 256-28, Cisco Ex. 25 at 8-10. As Centripetal told the Patent Examiner, the amendments made to pending Claims 39 and 40 (issued now as Claims 18 and 19) were based on the Examiner's allowance of pending dependent claim 22 as it was originally applied for in the initial application. *Id.* at 12 ("amended independent claims 21, 39, and 40 include features related to those indicated as allowable in previously pending claim 22"). Thus, the amendments in Claims 18 and 19 were based on matter and scope already present in the pending application. The pending claim 22 included the language "an operator configured to forward the packet toward the third network," which would be the second operator referred to in the claim. Ex. 32. 193 Patent Application at 2-3 (claim 22). As part of merging the pending claim 22 into the pending claims 39 and 40, Centripetal only added the word "first" and "second" to the recited operator in the claims to provide clarity and proper grammatical structure. Dkt. No. 256-28, Cisco Ex. 25 at 8-10. Thus, PHE does not apply as there was no disclaimer or narrowing of these claims.

### D.      PHE Does Not Apply to the '856 Patent

PHE does not apply because Centripetal's DOE analysis for the "filter" and "route" claim

elements for Claims 24 and 25 of the '856 Patent does not attempt to recapture any alleged

surrender of claim scope.  Dkt. No. 260-10, Cisco Ex. 19, Cole Rpt. at ¶¶200, 210, 284-285, 295;

*see also* Ex. 30, Cole Reply Rpt. at ¶¶51-57.  Centripetal's amendment was to clarify the

invention in more explicit terms.  Dkt. No. 256-31, Cisco Ex. 28 at 9-11.  Further, neither the

"filter" element nor "route" element received a patentability rejection.  Thus, Centripetal did not

surrender any relevant claim scope.

Further, the "filter" element was not discussed in connection with overcoming

patentability when the amendment was made.  Centripetal's discussion of the amendments

focused on the "determining" element in regards to patentability.  *Id.* at 12-17 (arguing that

Sorensen with Spies does not teach the "determining" element).  At no point was the "filter"

element discussed as a condition of patentability.  After the amendment was made, but prior to

any Examiner response, Centripetal added the "based on" and "route" language in the "filter"

element without any rejection from the examiner.  Dkt. No. 256-32, Cisco Ex. 29 at 13-14.

Thus, there was no surrender or narrowing of any claim scope, contrary to Cisco's UF 15 claims,

as Centripetal only clarified the invention with no patentability rejections.  Centripetal also does

not seek to recapture claim scope with its DOE claims.  Dr. Cole's DOE analysis was based on

filtering packets while receiving encrypted and unencrypted packets, and routing the filtered

packets, which is the subject of the clarifying amendment where no claim scope was surrendered.

### E.      PHE Does Not Apply to the '205 Patent

No amendments were made to Claims 63 and 77 of the '205 Patent, such that Cisco has

no argument for the "SIP URI" and "encapsulation" elements.  *See e.g.*, Ex. 31, ''205 FH April

8, 2015 Notice of Allowance (allowing the Claims 63 and 77 with minor corrections and no

rejections on those claim elements); *see also* Ex. 10, Mitz. Reply Rpt. at ¶¶176-177, 187-188.
Centripetal added Claims 63 and 77 during its February 19, 2015 amendment as new claims.
Dkt. No. 256-35, Cisco Ex. 32 at 19-20, 23 (pending claims 67 and 81 correspond to issued
Claims 63 and 77).  The examiner made no rejections based on those claims.  Thus, Centripetal
did not surrender any equivalents and Cisco's UF17-19 claims are misleading and disputed.

Rather than address the issued claims, Cisco attempts to argue that changes were made to
pending Claim 10.  Motion at 28.  However, besides being a different claim than those at issue
here, Cisco's argument is wrong, as the examiner did not reject the patentability of pending
Claim 10.  He asked Centripetal to rewrite it as an independent claim covering the same claim
scope.  Dkt. No. 256-33, Cisco Ex. 30 at 38 ("Claims 7 and 10 are objected to be as being
dependent upon a rejected base claim, but would be allowable if rewritten in independent
form…").  Thus, Centripetal could not have surrendered any equivalents, as Claim 10 was never
rejected for patentability, just a formatting issue.  Similarly, the Cisco's reliance on the Notice of
Allowability is misplaced, as it confirms Centripetal's position that there were no patentability
rejections as it related to issued Claims 63 and 77 and pending Claim 10 or their scope.  Dkt. No.
256-36, Cisco Ex. 33 at 13-17.  Finally, since there was no narrow or surrender, Centripetal's
DOE analysis does not attempt to capture any alleged claim scope.  Dkt. No. 260-6, Cisco Ex. 6,
Mitz. Rpt. at ¶¶149-151, 163-166.

## VI.   CONCLUSION

For the reasons set forth herein, Cisco's Motion for Summary Judgment should be denied
in its entirety.

 Dated:  March 25, 2020                              Respectfully submitted,

                                                  By: */s/ Stephen E. Noona*
                                                      Stephen Edward Noona
                                                      Virginia State Bar No. 25367

KAUFMAN & CANOLES, P.C.
150 W Main St., Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com

Paul J. Andre
Lisa Kobialka
James Hannah
Hannah Lee
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
hlee@kramerlevin.com

**ATTORNEYS FOR PLAINTIFF
CENTRIPETAL NETWORKS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com