**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: No. 2:18-cv -00094-HCM-LRL |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF CENTRIPETAL NETWORKS, INC.'S
MEMORANDUM IN OPPOSITION TO DEFENDANT CISCO SYSTEMS, INC.'S
MOTION OPPOSING TRIAL BY VIDEOCONFERENCE**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND & CISCO'S CONTINUED ATTEMPTS TO DELAY ................................... 2

ARGUMENT ..................................................................................................... 5

I.     Cisco's Motion to Preclude Trial by Videoconference Seeks to Further Delay Trial Indefinitely and is Unavailing............................................................................... 5

     A.     Cisco's Motion Misapplies the Rules .................................................. 6

     B.     There is Good Cause in Compelling Circumstances to Conduct Trial by Videoconference ........................................................................ 7

     C.     Cisco's Argument that Videoconference is Prejudicial is Unavailing................. 11

     D.     Appropriate Safeguards Are Easily Fashioned .................................... 14

II.     Cisco Identifies No Real Security Risk Posed By Zoom for Government ....................... 15

CONCLUSION.................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Actos (Pioglitazone) Prods. Liability Litig.*,
   MDL No. 6:11-md-2299, 2014 WL 107153 (W.D. La. Jan. 8, 2014)...................................6, 9

*Aoki v. Gilbert*,
   No. 2:11-cv-02797-TLN-CKD, 2019 WL 1243719 (E.D. Cal. Mar. 18, 2019)...............12, 13

*Edwards v. Logan*,
   38 F. Supp. 2d 463 (W.D. Va. 1999) ...................................................................................13

*Eller v. Trans Union LLC*,
   739 F.3d 467 (10th Cir. 2013) .............................................................................................7

*Niemeyer v. Ford Motor Co.*,
   No. 2:09-cv-2091 JCM (PAL), 2012 WL 5199145 (D. Nev. Oct. 18, 2012)..........................7

*In re RFC & ResCap Liquidating Trust Action*,
   No. 0:13-cv-3451 (SRW/HB), 2020 WL 1280931 (D. Minn. Mar. 13, 2020)............... *passim*

*Rusu v. U.S. I.N.S.*,
   296 F.3d 316 (4th Cir. 2002) ...............................................................................................13

*Teller v. Helbrans*,
   No. 19-cv-3172-SJB, 2019 WL 3975555 (E.D.N.Y. Aug. 21, 2019).....................................7

*Thornton v. Snyder*,
   428 F.3d 690 (7th Cir. 2005) ...............................................................................................13

*United States v. Cornell*,
   780 F.3d 616 (4th Cir. 2015) ...............................................................................................16

*United States v. Davis*,
   No. ELH-20-09, 2020 WL 1529158 (D. Md. Mar. 30, 2020) ..................................................8

*United States v. Lawrence*,
   248 F.3d 300 (4th Cir. 2001) .................................................................................................8

*United States v. Macauley*,
   No. 1:11CR199 (JCC), 2011 WL 4853366 (E.D. Va. Oct. 13, 2011).....................................7

*In re Vioxx*,
   439 F. Supp. 2d 640 (E.D. La. 2006).....................................................................................13

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014).........................................................................................10

**Court Rules**

Federal Rules of Civil Procedure Rule 1 ..........................................................................................9

Federal Rules of Civil Procedure Rule 16(b).................................................................................9

Federal Rules of Civil Procedure Rule 26(f) ...............................................................................2

Federal Rules of Civil Procedure Rule 43 ..................................................................... *passim*

Federal Rules of Evidence Rule 611(a) ..........................................................................................9

Federal Rules of Evidence Rule 615.................................................................................15, 16

Local Civil Rule 7(G) ...................................................................................................................7

Plaintiff Centripetal Networks, Inc. ("Centripetal") respectfully submits this memorandum opposing Cisco Networks, Inc.'s ("Cisco") Expedited Motion Opposing Trial by Videoconference.

## **INTRODUCTION**

From the beginning, Cisco delayed this case to continue infringing on and prevent Centripetal from profiting from its patented technologies. Cisco's instant Motion seeking to further delay trial indefinitely until all can "safely" appear in court is simply another attempt to delay resolution of this case and prejudice Centripetal, and should be denied.

Cisco's Motion is predicated on misrepresentations and irreconcilable positions. Cisco's Motion centers on supposed shortcomings of videoconference technology that Cisco itself touts as a "digital solution" for business continuity during the COVID-19 pandemic. Cisco repeatedly misrepresents that Centripetal requested a trial date in September 2020, but the very page of the transcript on which Cisco relies shows that Centripetal requested trial begin in Spring 2020. And Cisco's argument about Zoom's "security issues" is based on versions of Zoom that will not be used in this case.

Cisco also misapprehends the Rules. The COVID-19 pandemic is an unforeseen and exceptional circumstance that prevents in-person proceedings, which is the "most persuasive" showing of good cause for videoconference proceedings under Rule 43(a) of the Federal Rules of Civil Procedure. And in arguing that there are no "appropriate safeguards," Cisco likewise ignores that the very safeguards intended by Rule 43(a) are easily fashioned. Cisco also repeats its concerns about potential difficulties of assessing video testimony in a complex case, which this Court considered and rejected in its broad discretion to permit video proceedings and to control the trial date.

In short, Cisco's attempt to leverage a global pandemic to further delay trial is rife with distortions of the law and facts and should be denied.

1

**BACKGROUND & CISCO'S CONTINUED ATTEMPTS TO DELAY**

From the outset of this case, Cisco engineered protracted delay such that by the time this Court typically resolves patent cases through trial—over one and a half years after the commencement of the action—Cisco merely answered the complaint. Dkt. No. 73.

Indeed shortly after Centripetal filed its amended complaint in March 2018, Cisco stalled this case by refusing Centripetal's requests to convene a Rule 26(f) initial conference. Ex. 1.[1] Cisco thereafter filed a partial motion to dismiss—which it ultimately withdrew (Dkt. No. 188)—but in the interim leveraged as a *de facto* stay of the entire case, claiming that "its obligation to respond to the remaining claims . . . is deferred pending resolution" of its motion. Dkt. No. 38 at 2 n.1.

Cisco then filed three staggered waves of *inter partes* review ("IPR") beginning in July 2018—five months after the complaint was filed—to maximize the IPR resolution timeline. *See* Dkt. No. 57. In September 2018, Cisco moved to stay this action pending resolution of the IPRs, which the Court granted. Dkt. Nos. 45, 58. In June 2019, Centripetal moved to lift the stay. Dkt. No. 59. Cisco opposed lifting the stay, observing that it had managed to keep the case "in its earliest stages," without even a case schedule. Dkt. No. 61 at 7.

On September 11, 2019, the Court heard argument on and granted in part Centripetal's motion to lift the stay. Cisco repeatedly misrepresents in the instant Motion that during those proceedings, Centripetal "requested" a trial date in September 2020. Dkt. No. 388 ("Cisco Br.") at 3, 8. Cisco knows this is a misrepresentation. Counsel for Centripetal stated that *if* all eleven originally-asserted patents would be tried together, trial within a year (in September 2020) was

---

[1]  Unless otherwise noted, all exhibits are attached to the Declaration of Hannah Lee in Support of Centripetal's Memorandum in Opposition to Cisco's Motion Opposing Trial by Videoconference.

feasible.  Ex. 2, 9/11/19 Tr. at 5:2-13.  However, Cisco misleadingly omits—from that very same page of the transcript—that Centripetal requested a jury trial date in Spring 2020 if trial involved only the five patents that were not subject to IPR.  *Id.* at 5:22-25.  The Court directed the parties to "proceed full speed ahead" on those five patents, and to submit a proposed schedule contemplating trial in March 2020.  *Id.* at 20:8-12, 20:18-20.  During these proceedings the Court recognized the impact of further delay, which applies with even greater force now:

> Whether the defendant filed these [IPR] requests in a staggered fashion on purpose or not, the result of filing them in such fashion is that it delays the whole procedure. This Court normally resolves patent cases within a year of when they're filed. The case has already been pending for a year and a half. If we hear it in March, that means it's been pending for 25 months. And of course, we can't finish cases the year when they're submitted for review with the Patent Office. That makes it impossible, but particularly this form of patent -- that is, computer programs -- has a shelf life, a very short shelf life. And I always tell the attorneys who are fighting over these cases, that by the time they finish litigating it, it may well be obsolete, and that's the problem I'm facing here. Obviously, security in this area is very much at the forefront of what people are seeking to develop at this time. So this area is bound to be extremely competitive, thus making the shelf life of the patents that much less. And I don't agree that you can necessarily resolve the plaintiff's problems by money damages. When you're trying to enter a field so competitive as this, when you're delayed from being able to do it by alleged infringement, that's going to hamper the efforts for a new entity trying to enter the field, which is apparently what the plaintiff is; they are relatively new in the field. It's a very important field. And it's certainly the policy of this Court to encourage people to enter this field because it's a very important field. It has to do with the security of this country. So the Court should do everything it can do to encourage people to enter this field and to resolve disputes of this nature in as timely a manner as possible.

*Id.* at 18:4-19:11.  Thereafter, the parties proposed a trial date in April 2020, and trial was set accordingly.  Dkt No. 74.

On March 10, 2020, the Court asked the parties by e-mail whether, in view of the fact that jury trials may be postponed due to COVID-19, the parties would agree to a bench trial in order to uphold the April 2020 trial date.  Ex. 3.  On March 12, Centripetal notified the Court that only "if the trial of this matter starts as scheduled on April 7, 2020, Centripetal will waive a jury and

proceed with a bench trial." *Id*. Cisco agreed to a bench trial, but requested a continuance "until the health issues related to Covid19 have passed." Ex. 4. That day, the Court convened a conference and, responding to Cisco's request, delayed the start of the bench trial until May 6, 2020. Ex. 5, 3/12/19 Tr. at 3:2-12. During that conference, the Court made clear that it is "concerned about the length of the postponement" (*id*. at 2:22-25), and further observed:

> We can't just keep postponing indefinitely. The Court has previously expressed its views on the importance of this case being tried as soon as possible, and I won't go into the reasons again, but the Court still believes that. So I think we should take all the steps that are necessary to be prepared for the new trial date.

*Id*. at 5:4-9. On April 3, 2020, the Court notified the parties that it was investigating the feasibility of conducting the trial by videoconference. Ex. 6. On April 6, 2020, this District issued a General Order 2020-11 approving of the use of videoconference for trials as a result of the COVID-19 pandemic. On April 8, 2020, the Court held a teleconference and informed the parties that after consultation with and approval by the Chief Judge of this District, and after "extensive" testing and training in Zoom videoconference technology, the Court decided to conduct trial by Zoom videoconference. Ex. 7, 4/8/20 Tr. at 2:14-25, 11:18-24, 19:24-20:13.

On April 10, 2020, Cisco filed the instant Motion seeking expedited relief. On April 13, the Court's clerk convened a practice session using the Zoom for Government technology that will be used at trial, which worked without significant issues—including the ability to display exhibits in real-time. During that session, the Court's clerk reiterated that she had attended multiple trainings on the Zoom technology. And on April 16, the Court convened a mock trial using Zoom

where the parties practiced questioning mock witnesses using exhibits, and the video technology worked seamlessly.[2]

## ARGUMENT

**I.**     **Cisco's Motion to Preclude Trial by Videoconference Seeks to Further Delay Trial Indefinitely and is Unavailing**

"Courts are not like ordinary business, as they must continue operating to maintain the rule of law and ensure an orderly society under any circumstances."[3]  Courts across the country are adapting to the unprecedented disruptions caused by COVID-19 so they can continue their vital work.  The U.S. Supreme Court—which is "not known for its technical prowess"—will begin holding oral arguments via telephone next month.[4]  At least one state court promulgated a "COVID-19 Protocol" whereby trials scheduled through April 30, 2020 will be conducted via Zoom videoconference.  Ex. 8.  And this District issued a General Order approving of the use of videoconference for trials.  *Supra* at 4.

Cisco delayed this case for years, and trial has already been postponed.  *Id.*  Cisco's Motion to preclude trial by videoconference seeks to further delay trial indefinitely, under the guise of Federal Rule of Civil Procedure 43(a).  That Rule provides:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise.  For good cause in compelling circumstances

---

[2]  During this session, the Court indicated that it would refrain from reviewing the *Keysight* trial transcripts on account of Cisco's objection.  For that reason, Centripetal does not separately address Cisco's arguments in that regard. Centripetal notes, however, that Cisco has relied upon the *Keysight* record to support its other arguments in this very Motion and others. *See* Cisco Br. at 9; Cisco's Motion *in Limine* (Dkt. No. 218) at 2, 4 (citing the *Keysight* Trial Transcript).

[3]  American University & United States Department of Justice, Bureau of Justice Assistance, *Guidelines for Pandemic Emergency Preparedness Planning: A Road Map for Courts* (2007), *available at* https://biotech.law.lsu.edu/blaw/flu/bja-courts-roadmap-2007.pdf.

[4]  Jimmy Hoover, *Supreme Court to Hold Arguments by Teleconference*, Law360 (Apr. 13, 2020), *available at* https://www.law360.com/ip/articles/1262483.

and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a).  The decision to permit testimony by videoconference rests in the sound discretion of the trial judge.  *See, e.g., In re RFC & ResCap Liquidating Trust Action*, No. 0:13-cv-3451 (SRW/HB), 2020 WL 1280931, at *2 (D. Minn. Mar. 13, 2020).

As discussed below and as the Advisory Committee's notes expressly state, where unforeseen events trigger the need for video proceedings, "[c]ontemporaneous transmission may be better than an attempt to reschedule the trial."  Fed. R. Civ. P. 43 Advisory Committee's note (1996 amendment).  The Court should reject Cisco's motion.

### A.    Cisco's Motion Misapplies the Rules

Cisco's Motion misreads Rule 43(a).  Cisco repeatedly argues that a trial by videoconference violates Rule 43(a)'s requirement that testimony be taken in "open court."  *See* Cisco Br. at 4, 8, 9.  But "[a] fair reading of the definition of Rule 43 of an appearance 'in open court' 'at trial,' specifically includes an appearance *via* live transmission."  *See In re Actos (Pioglitazone) Prods. Liability Litig.*, MDL No. 6:11-md-2299, 2014 WL 107153, at *9 (W.D. La. Jan. 8, 2014).  "[C]ontemporaneous transmission is now equally incorporated [in Rule 43] as proper trial procedure and an acceptable means of appearing at court and trial, as were written and video depositions, respectively, in the past."  *Id.*  Indeed as Cisco's own authority observes, when appropriately designed and employed videoconference testimony "'satisfies the goals of live, in-person testimony . . . .'"  *In re RFC*, 2020 WL 1280931, at *2-3.

Cisco's Motion fails for the additional reason that it is, in essence, a motion for a continuance, which requires a showing of good cause that Cisco plainly failed to make.  Cisco side-steps its burden by failing to properly style its Motion as one for a continuance, despite the fact that it expressly seeks to "reset trial for a time when the parties can safely present their

6

witnesses and evidence live and in person."  Cisco Br. at 2.  Local Civil Rule 7(G) states that "[n]o

continuance shall be granted other than for good cause . . . ."  And as set forth more fully herein,

Cisco does not come close to meeting this standard.  Cisco's Motion boils down to the truism that

in-person proceedings are preferable and advances a set of arguments this Court has already

considered and found does not warrant further, indefinite delay.  *See United States v. Macauley*,

No. 1:11CR199 (JCC), 2011 WL 4853366, at *2 (E.D. Va. Oct. 13, 2011) (denying Local Rule

7(G) motion for continuance to secure trial witness testimony because "the government cannot

assure the appearance of the [] defendants at any particular point in time").

### B.   There is Good Cause in Compelling Circumstances to Conduct Trial by Videoconference

Cisco wrongly contends that there are no compelling circumstances warranting trial by

videoconference in this case under Rule 43(a).

First, "the most persuasive showing of good cause and compelling circumstances"

envisioned by Rule 43(a)—namely, "unexpected reasons" for being unable to attend trial—is

indisputably present here.  Fed. R. Civ. P. 43 Advisory Committee's note (1996 amendment).[5]

The Advisory Committee's notes also make clear that video testimony is unwarranted for mere

"inconvenience" or in cases of "foresee[n]" unavailability (*id.*), and Cisco's cases are

distinguishable for this reason.  *Eller v. Trans Union LLC*, 739 F.3d 467, 478 (10th Cir. 2013) and

*Niemeyer v. Ford Motor Co.*, No. 2:09-cv-2091 JCM (PAL), 2012 WL 5199145, at *1-2 (D. Nev.

Oct. 18, 2012) both sought contemporaneous transmission of testimony of witnesses who refused

to attend trial because it was inconvenient.  And in *Teller v. Helbrans*, No. 19-cv-3172-SJB, 2019

---

[5]  Neither Cisco, the Advisory Committee Notes, nor the cases construing Rule 43 differentiate
between "good cause" and "compelling circumstances."  *See, e.g.*, Fed. R. Civ. P. 43 Advisory
Committee's note (1996 amendment)

WL 3975555, at *2 (E.D.N.Y. Aug. 21, 2019), the movant "provide[d] no reason why [videoconferencing testimony] [was] appropriate."[6]

By contrast here, it is undisputed that the COVID-19 pandemic was unforeseeable and renders appearance in court at trial unworkable.  Indeed, at least one federal court has held that COVID-19 constituted good cause in compelling circumstances under Rule 43(a), and further held that contemporaneous transmission was preferable over rescheduling trial.  *In re RFC*, 2020 WL 1280931, at *3-4 ("Under the circumstances, COVID-19's unexpected nature, rapid spread, and potential risk establish good cause for remote testimony.").

Second, this action implicates one of the most important issues in national security today; namely, network security.  Ex. 7, 4/8/20 Tr. at 19:4-12.  Cisco's observation that it sells network security products to the U.S. government does not advance its argument, because such Cisco products use Centripetal's patented technologies.  Furthermore, Cisco misleadingly observes that Centripetal does not have a direct "Department of Defense" contract, but ignores that Centripetal contracts with other national, state and local government agencies, including the U.S. Department of Homeland Security.  *See* Ex. 9, Jonathan Rogers Depo. Tr. at 56:1-16, 108:11-111:2, 113:2-119:15.  As this Court observed and Cisco does not dispute, "this technology ha[s] at least the potential impact on cyber security, which, in turn, could impact national security. . . It may be the

---

[6] Cisco's other cited cases are equally inapt.  *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001) examined the wholly irrelevant Federal Rule of Criminal Procedure 43, which requires a criminal defendant's appearance at most criminal proceedings absent an applicable exception. Similarly, in *United States v. Davis*, No. ELH-20-09, 2020 WL 1529158, at *7 (D. Md. Mar. 30, 2020), the court noted (in dicta) in analyzing whether pre-trial release was warranted under the Bail Reform Act that COVID-19 had disrupted access to counsel for incarcerated individuals, who do not have access to videoconferencing platforms, which the court felt was not a substitute for face-to-face interaction between detained defendants and their counsel.

problems only deal with the security of intellectual property, but that's a very important issue." Ex. 7, 4/8/20 Tr. at 19:6-12.

Third, maintaining the trial schedule is an independently compelling reason for the Court to proceed with a trial by videoconference.  Rule 1 of the Federal Rules of Civil Procedure states that the federal rules should be "construed, administered, and employed by the court and the parties to secure the *just, speedy, and inexpensive determination of every action* and proceeding."  Fed. R. Civ. P. 1 (emphasis added).  In addition, Rule 16(b) empowers the Court to manage the case calendar and set a trial date.  And Federal Rule of Evidence 611(a) gives the court "wide latitude in determining the manner in which evidence is to be presented."  *In re RFC*, 2020 WL 1280931, at *2 (citation omitted).  Thus, "application of Rule 43 [in this case] … will … aid in securing the just, speedy and less expensive determination of this proceeding."  *In re Actos*, 2014 WL 107153, at *10.

Cisco repeatedly asserts, without any support whatsoever, that "all indications are that the in-person trial . . . will be possible a few months hence" in September.  Cisco Br. at 3, 4, 8.  That is simply untrue.  Setting aside Cisco's regrettable misrepresentation that Centripetal "proposed" a trial date in September 2020—Centripetal in fact proposed Spring 2020 (*supra* at 1, 3)—this Court observed that "if we wait until we can have a normal in-court trial, there is no predicting when that might happen."  Ex. 7, 4/8/20 Tr. at 2:22-24.[7]  Indeed, as Cisco recognized just one month ago, "I have no idea what the next [couple of months] are going to have in store for us by

---

[7] Even if public health concerns abate in the coming months, it will likely take much longer before courthouses fully reopen for normal operations and the public regains comfort and confidence with the domestic travel required to conduct this trial in person. In addition, several public health entities are predicting a potential fall wave of COVID-19 infections, which could imperil any fall trial date. *See, e.g.*, Sayuri Gavaskar, *COVID-19 is Here. Now How Long Will it Last?* Yale School of Medicine (Mar. 27, 2020), *available at* https://medicine.yale.edu/news-article/23446/.

way of developments with COVID-19.  And obviously none of us know that."  Ex. 5, 3/12/20 Tr. at 6:17-20.  And as the District of Minnesota recently observed, "postponing the trial . . . could merely postpone the possibility of [COVID-19] infection at a later date, which itself might require additional delays."  *In re RFC*, 2020 WL 1280931, at *4.

Finally, Cisco conclusorily asserts that Centripetal will not "suffer any cognizable prejudice by waiting until a trial may be safely held in person" (Cisco Br. at 3, 10-11), but the opposite is true.  As this Court previously held in its Order partially lifting the stay of this case:

> As the stay of this case continues, the prejudice to Plaintiff grows.  "[P]otential loss of market share and an erosion of goodwill" are an ever-present concern, especially when delay in a final resolution of the patent infringement action is continued. *See Davol, Inc. v. Atrium Medical Corp.*, Civil Action No. 12958, 2013 WL 3013343, at *3 (D. Del. June 17, 2013). In a highly competitive and innovative industry, such as the technology industry implicated here, delay causes particular problems, because by the time protracted proceedings come to a close, the value of the invention may not justify the costs of the litigation.

Dkt No. 68 at 6.  Cisco competes directly with Centripetal, and Cisco's successful attempts to delay this case already caused incalculable prejudice to Centripetal's ability to fairly compete as Cisco's continued infringement prevents Centripetal from profiting from its patents. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) ("[C]ompetition between parties can weigh in favor of finding undue prejudice [from delay].").  And Cisco's request to delay trial to some uncertain date in the future during an economic downturn compounds this prejudice and irreparable harm; by the time this case is finally resolved, Cisco—a much larger player—will have been able to steal an entire market segment from Centripetal, a small business less-equipped to weather a recession.  Indeed, just this week, Cisco announced a financing program that will allow customers impacted by COVID-19 to defer 95% of their payments for new products

until 2021.[8] Cisco can afford to offer programs to keep winning deals in a disrupted market which a small start-up company like Centripetal cannot match.

This prejudice is even further compounded by the fact that Centripetal has not only been forced to compete against its own technologies employed in Cisco products, but also against other competitors (e.g., Palo Alto Networks) that have followed Cisco's lead in infringing on Centripetal's patented technologies.  Ex. 10, Malackowski Rpt. at 40, 42.  Indeed, the longer that Cisco infringes Centripetal's patents without repercussion, Centripetal's ability to enforce its patents against copy-cat infringers is hindered.

In short, "[c]ontemporaneous transmission [is] better than an attempt to reschedule the trial" because further delay inures to Cisco's benefit and continues to materially prejudice Centripetal.  Fed. R. Civ. P. 43(a) Advisory Committee note (1996 amendment).

## C.    Cisco's Argument that Videoconference is Prejudicial is Unavailing

Cisco argues that it will be prejudiced because this case is too large and complex for a trial by videoconference in light of (i) supposed challenges in evaluating the credibility of witnesses and conducting cross-examination; and (ii) technological issues and potential glitches that may impact trial.  This Court has already considered and rejected these arguments.  Ex. 7, 4/8/20 Tr. at 15-22.

Most fundamentally, this Court observed that both of these purported "challenges" will impact both parties—a fact Cisco tellingly ignores.  *Id*. at 18:7-9.  Both parties will conduct examination of witnesses via videoconference and confront potential technological issues.  Both parties will prepare their witnesses remotely, and communicate with their legal teams—both sets of which are scattered across the country—by remote means during trial.  *Id*. at 17-18.  Indeed, all

---

[8]  https://www.cnbc.com/2020/04/14/cisco-allocating-2point5-billion-to-let-customers-defer-payments-to-2021.html.

of Cisco's cases are distinguishable for this additional reason; none of Cisco's cases involved a situation where both parties would be conducting examinations by videoconference.

Cisco also ignores that modern technology "minimize[s] the[] concerns" of examining and assessing the credibility of witnesses by video. *In re RFC*, 2020 WL 1280931, at *2. "The near-instantaneous transmission of video testimony through current technology permits 'the [trier of fact] to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, [and] his calmness or consideration[.]'" *Id.* (citation omitted); *Aoki v. Gilbert*, No. 2:11-cv-02797-TLN-CKD, 2019 WL 1243719, at *2 (E.D. Cal. Mar. 18, 2019) ("Because a witness testifying by video is observed directly with little, if any, delay in transmission . . . courts have found that video testimony can sufficiently enable cross-examination and credibility determinations, as well as preserve the overall integrity of the proceedings." (citation and internal quotation marks omitted)).  These concerns are further diminished where, as here, video testimony is presented in a bench trial.  This Court explained that it routinely assesses witness credibility over video, and foresees no issues.  Ex. 7, 4/8/20 Tr. at 18:9-14; *see also Aoki*, 2019 WL 1243719, at *2 ("[I]n light of the fact that this is a bench trial, the Court foresees no issues with determining witness credibility, or with the logistics and timing of presenting and cross-examining the various witnesses by video.").  And Cisco cannot dispute that judges and juries alike frequently assess witness credibility and testimony via video depositions in complex patent infringement trials.

Cisco theorizes that technological glitches will impact trial, but its arguments are pure conjecture. Cisco raises concerns about video quality and the "likelihood" of technological failures given the international location of some witnesses and participation of multiple users, but Cisco nowhere asserts that it has actually tested the technology and encountered such problems.  To the

contrary, Zoom worked seamlessly during yesterday's mock-trial session.  And, as counsel for Centripetal previously explained, it has used Zoom to conduct international business in Norway and Israel without issue.  Ex. 7, 4/8/20 Tr. at 10:8-11:8.

Furthermore, Cisco's speculation about likely failures of videoconference technology cannot be reconciled fact that Cisco touts its own videoconference technology as a "digital solution" to "reduce the impact of COVID-19" to enable business continuity for governments and businesses around the world.  Ex. 11.  Nor can Cisco's speculation be reconciled with the fact that courts routinely conduct video proceedings, even in jury trials several years ago when technology was less advanced.  *See, e.g.*, *Thornton v. Snyder*, 428 F.3d 690, 697-99 (7th Cir. 2005) (affirming videoconference trial where only judge and jury were in courthouse, and parties presented 11 witnesses, conducted opening and closing arguments, and cross-examined witnesses by videoconference); *Rusu v. U.S. I.N.S.*, 296 F.3d 316, 324 (4th Cir. 2002) (no violation of due process in immigration hearing conducted by videoconference where the IJ overcame technological issues and "made a sincere effort to understand [ ] testimony, … provid[ing] … numerous opportunities to elaborate and clarify…."); *In re Vioxx*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006) (granting motion for testimony by videoconference in MDL litigation because it "satisfies the goal of live, in-person testimony").[9]

In sum, Cisco's argument fails at its threshold because the "potential problems" it identifies impacts "both sides," and does not warrant further delay of trial.  Ex. 7, 4/8/20 Tr. at 18:5-9.  The

---

[9]   *See also, e.g., Edwards v. Logan*, 38 F. Supp. 2d 463, 467 (W.D. Va. 1999) (granting government's request to conduct prisoner's § 1983 trial by videoconference where court foresaw "no difficulty in the effective presentation of all of the facts and contentions through video conferencing"); *Aoki*, 2019 WL 1243719, at *2 (finding videoconference testimony had appropriate safeguards because "witnesses will provide live testimony by videoconference, will testify under oath, and will be subject to cross-examination").

Court also considered the size and complexity of this case, and in its discretion, determined that trial by videoconference was preferable to rescheduling trial. *Id*. at 19:4-20:13; *see also* Fed. R. Civ. P. 43 Advisory Committee notes (1996 amendment).   Setting aside that Cisco's Motion overstates the complexity of this case, the Court scheduled a tutorial on the technologies before trial to eliminate concerns about the case's complexity.  Ex. 7, 4/8/20 Tr. at 5:1-6, 6:22-7:1.  The Court also directed the parties' counsel to ensure that all counsel and witnesses have the proper equipment and connections to reduce the likelihood of technical problems.  *Id*. at 2:24-3:6; 16:9-13.  Cisco—a large provider of the very technologies required for videoconferencing—does not dispute that it has the resources to ensure that its counsel and witnesses are adequately equipped in accordance with this Court's directive.   Technical difficulties may occur.   But as this Court recognized, if such issues arise, "we will deal with it." *Id*. at 18:2-4.

### D.      Appropriate Safeguards Are Easily Fashioned

Contrary to Cisco's assertion, the Court can easily institute the "appropriate safeguards" required by Rule 43 to permit testimony by contemporaneous transmission from a different location.  Fed. R. Civ. P. 43(a).  Specifically, Rule 43 requires mechanisms to "ensure accurate identification of the witness" and to "protect against influence by persons present with the witness." Fed. R. Civ. P. 43 Advisory Committee's notes (1996 amendment).  Cisco notably fails to address these "safeguards" contemplated by Rule 43, presumably because Cisco recognizes that such safeguards are easily fashioned. For example, requiring that a witness position herself and the camera so that she is fully visible on screen and not consulting her phone or other materials while testifying, presenting identification at the start of testimony, and disabling the "private chat" feature on Zoom.

Cisco advances a number of concerns not contemplated by Rule 43 but are in any event readily addressed.  First, Cisco contends that because the Court may limit the number of Zoom

users at any given time, some "may not have access to trial." But that is untrue, as Cisco elsewhere acknowledges (Cisco Br. at 7) that there is "audio availability to the public." In any event, as the Court explained, only one lawyer is permitted to examine any given witness and the trial teams can communicate by means other than Zoom if necessary. Ex. 7, 4/8/20 Tr. at 4:10-15. Second, Cisco complains that it will not be able to adequately assess witness credibility because video will show "nothing more than a video shot of a person's head" (Cisco Br. at 6), but as noted above, the Court can require witnesses to angle cameras such that their hands and torsos are visible as they would be in a courtroom. Third, Cisco states that it believes a "trial by videoconference would require sending documents to be used on cross to the witness and counsel in advance" (*id*. at 7), but that is not uncommon during in-person trials. And, in consultation with the parties during yesterday's practice Zoom session, the Court outlined a protocol for the exchange of exhibits.

Finally, Cisco argues that the Court will be unable to enforce Federal Rule of Evidence 615, pertaining to sequestration of trial witnesses. But as the Court's clerk noted, Zoom has a "waiting room" feature that permits the host to control who accesses the Zoom session, which could be used to sequester witnesses. Ex. 7, 4/8/20 Tr. at 11:18-24. Further, counsel for the parties' witnesses can swear an oath as officers of the court that they will instruct their witnesses to not use the dial-in number. The Court can order the witnesses upon pain of contempt not to access proceedings until they are called, or striking testimony that violates an order under the rule. *See, e.g.*, *United States v. Cornell*, 780 F.3d 616, 628 n.4 (4th Cir. 2015) (district court can address a Rule 615 violation by, e.g., sanctioning the witness for contempt or excluding the witness' testimony).

## II.    Cisco Identifies No Real Security Risk Posed By Zoom for Government

Cisco argues that Zoom should not be used in favor of Cisco's competing service, WebEx, on account of supposed "security risks" posed by Zoom. But all of the "risks" advanced in the

body of Cisco's brief are supposedly posed by versions of Zoom that will not be used in this case. Cisco Br. at 11-13. Furthermore, Cisco supports its inapt arguments with news articles concerning irrelevant scenarios, *e.g.*, where users failed to utilize available security features or to protect passwords. Even as to those irrelevant versions and scenarios, Cisco offers no support for its conclusory assertion that the supposed security risks "cannot be remedied by any appropriate safeguards." For example, Cisco does not contend that Zoom's "Best Practices for Securing Meetings" are inadequate. Ex. 12. Cisco likewise ignores the FBI's tips to prevent the very risks that Cisco identifies. Ex. 13. Moreover, while Cisco argues that one school system in Virginia "banned" the use of Zoom, Cisco ignores that Zoom is used in 90,000 schools in 20 countries.[10] Cisco's focus on wholly irrelevant scenarios speaks volumes about the *bona fides* of its self-interested argument, which reads as an advertisement for Cisco's competing WebEx service.

Cisco buries in a footnote its speculation that the version of Zoom used here— Zoom for Government—poses similar security risks. Cisco Br. at 14 n.11. Cisco concedes that the chief reasons Cisco advances to prohibit Zoom—namely, "Zoombombing" and a purported encryption flaw (*id*. at 11-12)—are not concerns with Zoom for Government. *Id*. at 14 n.11. And Cisco cites no article or other source identifying any real security risks posed by Zoom for Government. *Id*. To the contrary, Cisco's articles contrast the security concerns of other Zoom versions with the fact that Zoom for Government is used by the Pentagon and other agencies.[11] Indeed, Zoom for

---

[10] https://blog.zoom.us/wordpress/2020/04/01/a-message-to-our-users/.

[11] *See, e.g.*, Rae Hodge, *Zoom: Every Security Issue Uncovered in the Video Chat App*, CNET (Apr. 13, 2020), https://www.cnet.com/news/zoom-every-security-issue-uncovered-in-the-video-chat-app/ (cited by Cisco at 11 n.4) (noting that the Pentagon uses Zoom for Government); Cristiano Lima, *Internal Senate Memo Warns Zoom Poses 'High Risk' to Privacy, Security*, Politico (Apr. 9, 2020), https://www.politico.com/news/2020/04/09/internal-senate-memo-

Government has been authorized by the Federal Risk and Authorization Management Program (FedRAMP), which is a government-wide program that provides a standardized approach to security assessment, authorization, and continuous monitoring for cloud products and services.[12] Zoom for Government was also granted an authority to operate by the U.S. Department of Homeland Security, which presently uses the Zoom For Government service.[13]   Other U.S. agencies using Zoom for Government include the Centers for Disease Control and Prevention, Corporation for National & Community Service (CNCS), Customs and Border Protection, Department of Agriculture, Department of Health and Human Services, and the United States Forest Service.  *Id.*

More fundamentally, Cisco's concern with purported security risks ignores that trial is an open proceeding and courts rarely close the courtroom in patent infringement cases. Ex. 7, 4/8/20 Tr. at 9:18-19.  Cisco's arguments concerning the sensitivity of its source code (Cisco Br. at 14) also ignores that the Court will be able to control who is in the Zoom session at any given time, and can exclude users when highly confidential evidence is presented.  In an abundance of caution, however, Cisco's concern about its source code is easily remedied by distributing hard copies in advance so the source code is not displayed on the screen.

Unsurprisingly, Cisco wants the Court to use its own competing WebEx service instead of Zoom.  Cisco Br. at 15.  The Court noted the concerns, which Centripetal mirrors, about using Cisco's system.  Here, the Court's clerk has thoroughly vetted Zoom for Government after multiple

---

warns-zoom-poses-high-risk-to-privacy-security-177347 (cited by Cisco at 13 n.8) (noting that government agencies are authorized to use Zoom for Government).

[12]  https://zoomgov.com/.

[13]  https://marketplace.fedramp.gov/#/product/zoom-for-government?sort=productName.

training and testing sessions (*supra* at 4), and the parties have now conducted two practice sessions with the Court.  *Supra* at 4-5, 15.  There simply is not enough time before trial—nor is it an efficient use of the Court's resources—to fully vet a different videoconferencing service.   Furthermore, while counsel for Centripetal has used Zoom without issue to conduct confidential business around the world (Ex. 7 at 10:9-18), it has encountered technical difficulties when using WebEx.

## **CONCLUSION**

For at least the foregoing reasons, Cisco's Motion should be denied.

Dated:  April 17, 2020                                        Respectfully submitted,

By:  */s/ Stephen E. Noona*
Stephen Edward Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W Main St., Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com

Paul J. Andre
Lisa Kobialka
James Hannah
Hannah Lee
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
hlee@kramerlevin.com

Cristina L. Martinez (pro hac vice)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036

18

Telephone:  (212) 715-9000
Facsimile:  (212) 715-8000
cmartinez@kramerlevin.com

**ATTORNEYS FOR PLAINTIFF
CENTRIPETAL NETWORKS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to counsel of record.

/s/ Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com