FILED

APR 2 7 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CENTRIPETAL NETWORKS, INC.,       )
                                  )
    **Plaintiff,**               )
**v.**                            )        **Civil Action No. 2:18cv94**
                                  )
CISCO SYSTEMS, INC.,              )
                                  )
    **Defendants.**              )

## ORDER

These matters are before the Court on cross motions for summary judgment. Defendant Cisco Systems, Inc, ("Cisco") filed the first Motion for Summary Judgment on March 4, 2020. Doc. 255. Shortly after, Plaintiff Centripetal Networks, Inc. ("Centripetal") filed its Motion for Summary Judgment on March 11, 2020. Doc. 287. For the following reasons herein, the Court **DENIES** both Motions regarding the issue of infringement. Additionally, the Court **RESERVES RULING** on the application of prosecution history estoppel.

### I. LEGAL STANDARD

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986); Terry's Floor Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings but must instead set forth specific facts illustrating genuine issues for trial. Celotex,

477 U.S. at 322–24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure to rebut the motion with such evidence will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. A mere scintilla of evidence is insufficient to withstand a motion for summary judgment. Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252.

## II. ANALYSIS

### A. Infringement

The Federal Circuit has repeatedly stated that the "determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact." Dorel Juvenile Group, Inc. v. Graco Children's Prods., 429 F.3d 1043, 1047 (Fed. Cir. 2005). Therefore, in the case of infringement, the issue is only "properly decided upon summary judgment when no genuine issue of material fact exists." Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998). Based on the parties' briefing, the Court has determined that there are genuine issues of material fact regarding Cisco's alleged infringement of the '205 and '806 patents. Accordingly, summary judgment is not warranted for either party on the issue of infringement. In so far as the Cisco and Centripetal's motions seek summary judgment on infringement, both motions are **DENIED**.

### B. Prosecution History Estoppel

The scope of the legal monopoly of a patent "is not limited to its literal terms but instead embraces all equivalents to the claims described." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 732 (2002) (citing Winans v. Denmead, 56 U.S. (15 How.)

330, 347 (1854)).   The Supreme Court has repeatedly affirmed equivalents as "a firmly entrenched part of the settled rights protected by the patent." Id. at 733.  Therefore, the doctrine of equivalents permits protection for the "patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." Id.  However, the expanded patent rights granted by the doctrine of equivalents are limited by the proceedings that previously occurred during the Patent and Trademark Office's ("PTO") application process. See id.  Accordingly, when "the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." Id. at 733-34.  Thus, prosecution history estoppel serves to ensure that the patent's claims are interpreted by "reference to those 'that have been cancelled or rejected.'" Id.  at 733.  Prosecution history estoppel prevents "a patentee from regaining, through litigation, coverage of subject matter relinquished during the prosecution of the application for the patent." Id. at 734 (quoting Wang Laboratories, Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571, 1577–78 (Fed. Cir. 1997)).

The application of prosecution history estoppel is to be determined by the Court as a matter of law. See Intervet Inc. v. Merial Ltd., 617 F.3d 1282, 1290-91 (Fed. Cir. 2010) (citing Bai, 160 F.3d at 1354). Generally, a narrowing amendment to a patent carries a presumption that the patentee is professing "abandonment of all that is embraced in that difference." Festo Corp, 535 U.S. at 740 (quoting Ex. Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136 (1942)). The burden of proof is on the patentee to provide evidence that the patent amendment "does not surrender the particular equivalent in question." Id.  Therefore, prosecution history estoppel presumptively bars the application of the doctrine of equivalents if claim amendments are "made

3

to secure the patent and the amendment narrows the patent's scope." Id. at 736-37. Accordingly, based on this guidance, the proper focus of inquiry for the Court is "whether the amendment narrows the overall scope of the claimed subject matter." Honeywell Intern. Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1141 (Fed. Cir. 2004) (citing Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 736-37 (2002)). The patent's scope may be narrowed when either "(1) a preexisting claim limitation is narrowed by amendment or (2) a new claim limitation is added by amendment." Honeywell Intern. Inc., 370 F.3d at 1140 ("Either amendment will give rise to a presumptive estoppel if made for a reason related to patentability.").

The Supreme Court has made clear that "[t]here some cases, however, where the amendment cannot reasonably be viewed as surrendering a particular equivalent." Festo Corp, 535 U.S. at 736-77. The Court has specifically identified three ways in which a patentee can rebut the estoppel presumption:

(1) the equivalent may have been unforeseeable at the time of the application;

(2) the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or

(3) there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question.

Festo Corp, 535 U.S. at 740-41. Therefore, even if prosecution history estoppel presumptive applies, it "does not completely bar the benefit of the doctrine of equivalents from all litigation related to the amended claim." Intervet Inc. v. Merial Ltd., 617 F.3d 1282, 1291 (Fed. Cir. 2010). Plainly worded, [t]he scope of the estoppel must fit the nature of the narrowing amendment." Id. The Federal Circuit has highlighted that "[a] district court must look to the specifics of the

4

amendment and the rejection that provoked the amendment to determine whether estoppel precludes the particular doctrine of equivalents argument being made." Id. Consequently, the Court must compare the narrowing amendment made during the application process and the equivalent in question to determine wether that particular equivalent has been surrendered by the patentee. See Festo Corp, 535 U.S. at 737-38.

In the present case, the Court **FINDS** that there are underlying factual disputes that should be determined before issuing a ruling on the application of prosecution history estoppel. On remand from the Supreme Court in Festo, the Federal Circuit emphasized that while questions surrounding "the application and scope of prosecution history estoppel . . .  are questions of law for the court", the rebuttal of the presumption "may be subject to underlying facts" which require the "resolution of factual issues". Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 344 F.3d 1359, 1368 n. 3 (Fed. Cir. 2003). Like a ruling on claim construction, the factual issues underlying a legal claim may be properly decided by the court. Id. Therefore, determining the application of prosecution history estoppel, like claim construction, can benefit from the use of extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises . . . to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history." See Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996) (in the context of claim construction). Since this case is now proceeding as a bench trial, the parties will have an opportunity to present the disputed facts to the Court at trial. The Court will, then, come to an informed ruling now aided by additional documentary and testimonial evidence. Accordingly, the Court **RESERVES RULING** on summary judgment regarding the application of prosecution history estoppel.

### III. CONCLUSION

For the reasons stated, the Court **DENIES** both Motions regarding the issue of infringement. Moreover. the Court **RESERVES RULING** on the issue of prosecution history estoppel. The Clerk is **REQUESTED** to electronically deliver a copy of this Order to all counsel of record.

It is **SO ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

April 24, 2020
Norfolk, Virginia