IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

OCT - 2 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

CENTRIPETAL NETWORKS, INC., )
)
   Plaintiff, )
)
v. )   Civil Action No. 2:18cv94
)
CISCO SYSTEMS, INC., )
)
   Defendant. )

## OPINION AND ORDER

This matter is before the Court on Cisco Systems, Inc.'s, ("Cisco") Motion for Miscellaneous Relief. In its motion, Cisco argues that recusal is mandatory under 28 U.S.C § 455(a) and (b)(4).

## I. BACKGROUND

While presiding over this case, the Court has made Cisco and Centripetal's counsel aware of any possible conflict. The first disclosure came on March 2, 2020, where the Court's former law clerk, Neil McBride, entered the case on behalf of Cisco. The Court promptly notified the parties and disclosed that the Court had "visited Neil's home and he has visited mine and we have had family dinners together many times over the years." Counsel for both parties responded that recusal was not necessary as a result of Mr. McBride's representation of Cisco. Next, during the pre-trial conference, the Court disclosed that it had purchased 200 shares of Zoom stock based on a recommendation by a service over the internet. At that time, neither party objected to the ownership of Zoom stock. Thereafter, the Court conducted a bench trial "spanning nearly eight weeks over Zoom, producing a 3,507-page record with twenty-six witnesses and over 300

exhibits." Doc. 564 at 2. As a result of an enormous variation in damages calculations by the opposing damages experts, the Court request additional data relevant to damages and after receipt of this information the Court heard final arguments on June 25, 2020.

On August 11, 2020, the Court's administrative assistant discovered during preparation of the Court's judicial financial disclosure reporting that the Court's spouse owned 100 shares of Cisco stock valued at $4,687.99 and advised the Court. The Court promptly investigated the issue and confirmed that the shares were purchased as a result of her brokers recommendation. The Court's spouse had no independent recollection of approving the transaction. The next day, August 12, 2020, the Court disclosed the existence of the shares to the parties. See Court's Email to Counsel [Attached as Ex. One]. The Court detailed that "full draft of my opinion had been prepared before I received this information yesterday. Virtually every issue was decided prior thereto." Id. Also explaining that the shares "did not and could not have influenced my opinion on any of the issues in this case." Id. Centripetal quickly notified the Court that it had no objection based on the representations by the Court. Cisco responded, nine days later, by filing the instant motion for recusal. The Court ordered a response by Centripetal, if they be so advised. Centripetal responded by objecting to Cisco's motion and Cisco filed a rebuttal brief. The Court conducted a hearing on the motion and heard oral argument on September 9, 2020. At the hearing, the Court informed the parties that he had discussed the issue with his spouse and, as a result, the Court contacted their personal attorney to request the creation of a blind trust to divest the shares. The Court provided the completed trust documents to the parties at the hearing

Moreover, at the hearing on Cisco's current motion, the Court disclosed a previous purchase by the Court and his spouse of 100 shares each of Crowdstrike stock. Similar, to Zoom, Crowdstrike was purchased on the basis of a recommendation of an internet service. The Court

later discovered that Crowdstrike primarily engaged in the business of developing cybersecurity technology and had a previous intelligence sharing agreement with Centripetal. See PTX-1600. After learning of this information, the Court and his spouse divested their shares in Crowdstrike. Due to the indirect nature of Crowdstrike as a potential competitor of both parties, the Court did not disclose this transaction until the hearing date.

## II. LEGAL STANDARD AND ANALYSIS

28 U.S.C § 455(a) requires that a judge of the United States "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The next section of the statute, 455(b) lays out specific circumstances where recusal is required. Section 455(b)(4) lays out one of these circumstances at issue here where:

> He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding

28 U.S.C § 455(b)(4) (emphasis added). In its rebuttal brief, Cisco argues that the Court should have immediately recused itself and it should not have been required to file its initial motion to recuse.

Under section 455, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." Muchnick v. Thomson Corp. (In re Literary Works in Elec. Databases Copyright Litig.), 509 F.3d 136, 140 (2d Cir. 2007). Therefore, in deciding a motion for recusal under section 455, judges "must balance our duty to appear impartial against several practical considerations, including the availability of other judges, the cost in judicial resources of recusal and reassignment of the case to different judges, and the interest of the parties and the public in a swift resolution of the dispute." Id. (citation omitted).

3

In analyzing section 455, the Supreme Court in Liljeberg v. Health Services Acquisition Corp., held that scienter is not a requirement of 455(a), but is a requirement of 455(b)(4). Liljeberg v. Health Services Acq. Corp., 486 U.S. 847, 859 (1988). Therefore, recusal under section 455(b)(4) imposes "actual knowledge" of the disqualifying financial interest. C. Tel. Co. of Virginia v. Sprint Commun. Co. of Virginia, Inc., No. 3:09CV720, 2011 WL 6178652, at *5 (E.D. Va. Dec. 12, 2011) (collecting cases imposing the "actual knowledge" test), aff'd, 715 F.3d 501 (4th Cir. 2013) (on other grounds). However, the test for recusal under section 455(a), is "when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality." Id. at *7 (quoting Liljeberg, 486 U.S. at 850). Therefore, for section 455(a), "recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge." Liljeberg, 486 U.S. at 860-61. The Court will first address recusal under 455(a) and then turn to 455(b)(4).

**i. Section 455(a)**

The Second Circuit, in Chase Manhattan explained that disqualification is required when "(i) a reasonable person, knowing all the facts, would conclude that the judge has a disqualifying interest in a party under Section 455(b)(4), and (ii) such a person would also conclude that the judge knew of that interest yet heard the case." Chase Manhattan Bank, 343 F.3d at 128. Accordingly, recusal under section 455(a) is an objective test looking at "what a reasonable person knowing all the facts would conclude." C. Tel. Co. of Virginia, 2011 WL 6178652, at *7 (quoting Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 127 (2d Cir. 2003)).

Cisco, in its motion for recusal, contends that in light of "the Court's decision to order it to trial in unusual circumstances, and its featuring as a topic of marital conversation, a reasonable observer is likely to conclude that, at the very least, the Court 'should have known' of the ownership of Cisco stock when the purchase occurred in October 2019 . . . ." Doc. 557 at 8. Moreover, Cisco avers that the requirement of a judge to take "reasonable efforts inform himself about the personal financial interests of his spouse" under section 455(c) would have allowed the Court to uncover this interest back in October of 2019. See id. at 7. Cisco's contention is that a reasonable inquiry would have revealed the stock interest before trial of the case. It specifically suggests that "any such process—whether it involved preclearing stock purchases before they happen; monitoring purchase confirmation documents as they are issued; or reviewing brokerage statements showing stock holdings—would have revealed the Cisco stock holding shortly after the purchase." Doc. 557 at 7. Cisco argues that a reasonable person would conclude that the Court <u>should have been known</u> because the "purchase confirmation was addressed to the Court's spouse at home" and "the Court has 'frequently' mentioned Cisco and Centripetal to the Court's spouse." Id. at 7. Accordingly, Cisco argues "[a] reasonable observer would believe that— pursuant to a 'reasonable effort' to ascertain investments by the Court's spouse—the Court would have done more than simply complete its annual disclosure." Doc. 569 at 6.

Centripetal, in opposition, responds that the facts presented would not lead a reasonable person to conclude that the Court knew of this interest but proceeded despite that interest. Centripetal notes the "touchstone of the inquiry is reasonableness, not exhaustive and constant vigilance to the point of reviewing mail separately addressed to judges' spouses, as Cisco proposes." Doc. 564 at 8. Centripetal argues that the inquiry is judged on a reasonableness standard and reasonableness is confirmed by the legislative history of the section 455

5

highlighting that "the judge need not know what they are [his spouse's investments], but must merely make a <u>reasonable effort to inform himself of their investments</u>." Id. (quoting H.R. Rep. No. 93–1453 (1974), 1974 U.S.C.C.A.N. 6351, 6356) (emphasis added).[1] Accordingly, Centripetal concludes "[e]ither way, Cisco's unsupported insinuations do not establish an appearance of bias under Section 455(a)." Id. The Court agrees with Centripetal. The Court **FINDS** that a reasonable person would not conclude that the Court knew of his spouse's ownership and proceeded to hear the case nonetheless, where the Court avers he was notified about the stock during the preparation of his annual financial disclosures and immediately notified counsel.

The factually similar case of <u>Central Telephone Co. of Virginia v. Sprint Commun. Co. of Virginia, Inc.</u>, 3:09CV720, 2011 WL 6178652, at *5 (E.D. Va. Dec. 12, 2011) is particularly persuasive. In <u>Central Telephone</u>, "at a time when the preparation of the opinion on Sprint's counterclaim was underway and when the presiding judge was preparing the annual financial disclosure statement required of federal judges, the presiding judge became aware that, at all times during which he had presided over this action, he owned stock in CenturyLink [Plaintiffs]." <u>C. Tel. Co. of Virginia</u>, 2011 WL 6178652, at *1. "As soon as the presiding judge realized that he owned the CenturyLink stock, he informed the parties of the situation during a conference call." Id. at *2. Therefore, the Court promptly notified that parties that "he was unaware" of the share's ownership during the proceedings at issue. Id. at *8. The court determined there that "a reasonable person would understand that it would be unlikely for a

---

[1] Specifically, Centripetal states:
> what about the importance of this case or the Court's mentioning of Cisco during discussions with his wife should have put the Court on notice of his wife's forgotten financial transaction facilitated by her separate broker? Cisco does not say. Surely Cisco is not arguing that a reasonable observer would believe that the Court's wife does remember her interest and disclosed it to the Court during these conversations and the Court is now lying.

Doc. 564 at 9.

judge, who has all along known about his ownership of disqualifying stock, to suddenly bring that ownership to the parties' attention after devoting many weeks of his time to deciding a complex jurisdictional motion, to resolving summary judgment motions, to presiding over two trial sessions, and to preparing findings of fact and conclusions of law." Id.

These facts are directly analogous to the situation presented here. After learning of his spouse's financial interest while preparing annual financial disclosures, the Court promptly notified counsel that he was unaware that his spouse had purchased shares of Cisco stock. A reasonable person would find it unlikely that a judge would now disclosure his spouse's ownership of disqualifying stock after devoting months of his time engaging in ruling of pre-trial motions, holding a Markman hearing, and conducting an almost six-week bench trial while drafting findings of fact and conclusions of law that total over 150 pages. Like Central Telephone, the circumstances presented here make it difficult to believe that a reasonable person viewing these facts would conclude that the Court "knew of that interest yet heard the case." See Chase Manhattan Bank, 343 F.3d at 128. Cisco, both in their reply brief and on oral argument, noted that Central Telephone is inapplicable because the Fourth Circuit affirmed Central Telephone on the grounds that the stock interest fell under the mutual fund exception outlined in section 455(d)(4)(i). See C. Tel. Co. of Virginia v. Sprint Commun. Co. of Virginia, Inc., 715 F.3d 501, 516 (4th Cir. 2013). The fact that the Fourth Circuit found that the interest fell under a safe harbor provision of the statute, which is not applicable here, does not distract from the persuasiveness of a decision that found recusal, under similar facts, was unwarranted. See C. Tel. Co. of Virginia, 2011 WL 6178652, at *8.

Furthermore, Cisco argues that the factual situation presented here is more akin to that in other cases where recusal was warranted. Specifically, Cisco argues that the reasoning in Central

7

Telephone "cannot be reconciled with either Chase Manhattan or Shell Oil ; each judge in those cases also 'brought [the] financial interest to the parties' attention, just after [they] discovered the ownership,' and would have been no more likely to 'run the risk of impeachment or perhaps prosecution for knowingly deciding a case from which he knew he should have recused himself.'" However, the factual circumstances in both Chase Manhattan and Shell Oil are quite different than presented in this case.

In Chase Manhattan, the Second Circuit found that the objective observer would have concluded that the presiding judge knew of his ownership in stock where as a result of a merger the stock was not held in the name of the party to the case but was purchased in the name of the previous company. There, "the merger was widely publicized, the judge received letters from officials from the new company (in which he held the stock) on that company's letterhead during litigation, witnesses at trial discussed the merger, and the judge's opinion containing his findings of fact referred to the newly merged company as a party." C. Tel. Co. of Virginia, 2011 WL 6178652, at *9 (discussing Chase Manhattan). None of those circumstances are present here. Therefore, there was no indication the Court at any point in this case knew that his spouse had purchased Cisco before review of his financial reports. Accordingly, this case is factually distinct from Chase Manhattan.

Turning to Shell Oil, the Federal Circuit found that the presiding judge had actual knowledge of his wife's stock ownership in a party for purposes of determining a section 455(b)(4) violation. In that case, the weight of prompt disclosure of an interest under the reasonable observer standard was never discussed because the court was not analyzing the motion under the standard for 455(a) but instead was dealing with 455(b)(4). See Shell Oil Co. v. U.S., 672 F.3d 1283, 1289 (Fed. Cir. 2012) (noting "the subsection at issue here" is 455(b)(4)).

8

Additionally, in Shell Oil, the record reflects knowledge of his wife's financial interest in Chevron at least as early as May 15, 2009 when he completed his certified Financial Disclosure Report disclosing an interest in "Chevron Texaco Stock.'" Id. at 1291. This "May 15, 2009 disclosure date post-dates the trial judge's February 2, 2008 and March 31, 2009 opinions addressing the oil companies' motions for summary judgment as to liability and damages, it pre-dates his September 28, 2009 decision denying the government's motion for reconsideration with respect to damages, as well as his October 30, 2009 entry of final judgment." Id. The presiding judge in Shell Oil, notified the parties of his knowledge of the interest on November 16, 2009, six-months after completing his disclosure report. Shell Oil involved a six-month period without disclosure and during that period the presiding judge continually made decisions in the interim after actual knowledge of the interest. This is factually distinct that the situation presented here where the Court made immediate disclosure to the parties and had already decided virtually all issues in the bench trial.

Finally, Cisco frequently cites Liljeberg v. Health Services Acq. Corp., 486 U.S. 847 (1988) as support that recusal is warranted. This is another case where the factual circumstances are drastically different. Centripetal highlights these differences in their opposition motion noting the judge there:

> (1) sat on the Board of Trustees of an interested party, yet somehow forgot about its interest in land that was purchased for over $6 million dollars and stood to increase its value by 60% when the litigation arose;
> (2) attended a meeting discussing negotiations relevant to this interest days before the case was filed, which showed he had actual knowledge of the interest even if he later forgot;
> (3) despite ten years of regular Board meeting attendance, missed the one meeting at which his trial was discussed, and the other trustees remarkably chose not to "call to the judge's attention the obvious conflict of interest" of a University trustee presiding over this particular trial; and
> (4) failed to review the minutes mailed to him for that missed meeting, which would have revealed that the trial had been discussed.

9

Doc. 564 at 10 n. 5 (citing Liljeberg, 486 U.S. at 857, 865-67). The totality of the circumstances present in Liljeberg are fundamentally different than present before the Court. In Liljeberg, the plurality of facts point that the presiding judge had complete awareness of the conflicting interest by sitting on the board of trustees and sitting in on meetings where the interest was discussed. This is drastically different than the Court's spouses independent purchase of stock on the advice of an independent broker without providing any information to the Court.

Moreover, a reasonable observer would consider the Court's candor and history of disclosing possible conflicts in this case. As discussed supra, the Court has continually disclosed potential conflictual issues to counsel including Mr. McBride's representation of Cisco and ownership of Zoom stock. It is unreasonable to assume that this Court would be so forthcoming regarding possible conflicts and at the same time conceal a more direct conflict of stock ownership of a named party. Therefore, a reasonable observer would weigh the Court's repeated candor in favor of a finding that it had no knowledge of its spouse's Cisco stock ownership. Furthermore, the Court evidenced its pattern of dealing with potential stock ownership conflicts by the manner in which it dealt with the Crowdstrike purchase. When the Court discovered that Crowdstrike may be a competitor in the similar cybersecurity technology with Cisco and Centripetal, the Court and the Court's spouse promptly sold their shares. Accordingly, it would an unreasonable presumption that a reasonable person viewing the facts would conclude that the Court would act any differently with knowledge of his spouse's ownership of Cisco.

For all the reasons stated, the Court **FINDS** that a reasonable person would not conclude that the Court knew of that interest and yet heard the case. Therefore, section 455(a) does not warrant recusal.

**ii. Section 455(b)(4)**

Turning to section 455(b), as stated supra, recusal under this section requires "actual knowledge" of the disqualifying financial interest. C. Tel. Co. of Virginia, 2011 WL 6178652, at *5 (collecting cases imposing the "actual knowledge" test). Here, the case of Central Telephone is again persuasive in the Court's analysis.

In Central Telephone, the presiding judge found section 455(b)(4) to not apply to the facts because there was "no actual knowledge of the conflict." The conflict was discovered by the presiding judge "at a time when the preparation of the opinion on Sprint's counterclaim was underway and when the presiding judge was preparing the annual financial disclosure statement required of federal judges . . ." C. Tel. Co. of Virginia, 2011 WL 6178652, at *1. Similarly, the Court only discovered the ownership during preparation of an annual financial disclosure report. However, here, the Court represented that every issue was "virtually" decided in this case before there was actual knowledge of the Cisco stock. Thus, in Central Telephone, the drafting of the presiding judge's decision was "underway," which is comparable to this Court's mostly drafted opinion. Moreover, this Court rests on the persuasive logic illustrated by the Ninth Circuit in Davis v. Xerox, 811 F.2d 1293, 1296 (9th Cir. 1987). There, the court noted that the right course under section 455(b) is:

> to proceed on a case by case basis, determining the existence of disqualifying knowledge at the time the judge sat, in the way that a state of mind is normally determined, from inspection of all the circumstances. If a reasonable person would conclude from all the circumstances are such that a reasonable person would conclude that the judge had not forgotten but continued to know, his rulings must be vacated.

Davis v. Xerox, 811 F.2d 1293, 1296 (9th Cir. 1987).

11

### iii. Divestment under 455(f)

Based on the findings above, the Court **FINDS** that section 455(a) or 455(b)(4) do not apply to the facts before the Court. The Court still recognizes that any section 455(b)(4) conflict can be cured by the divestment provision of Section 455(f). Section 455(f) states that

> Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

28 U.S.C. § 455(f). Therefore, the requirements for divestiture are met when "(i) the district judge devoted 'substantial judicial time' to the matter before 'appearance or discovery' of the conflict; (ii) his financial interest cannot be substantially affected by the outcome of the case; and (iii) he divested himself of the interest once he discovered it." Chase Manhattan Bank, 343 F.3d at 131. The Second Circuit has explained that this section "is meant to help judges strike a balance between the duty to recuse when their impartiality might reasonably be questioned and the need to resolve cases expeditiously and without undue collateral litigation." Muchnick v. Thomson Corp. (In re Literary Works in Elec. Databases Copyright Litig.), 509 F.3d 136, 142 (2d Cir. 2007). It is undisputed in this case that there is substantial judicial time invested. The Court had devoted months of time into this matter engaging in ruling of pre-trial motions, holding a Markman hearing, conducting an almost six-week bench trial and drafting extensive findings of fact and conclusions of law in a 150-plus page opinion.

Cisco argues that section 455(f) is unavailable under these circumstances because the Court has not and cannot promptly divest the stock at issue and the financial interest would be substantially affected by the outcome. See Doc. 557 at 5. The Court disagrees with Cisco on both grounds. Cisco avers divestiture is unavailable because "prompt" disclosure is required by section 455(f). A reading of the statute indicates no mention "as to the timing of the divestiture." Doc. 564 at 12. Centripetal avers Cisco's argument fails because the idea "that divesture is no longer available because the Court's spouse did not divest her shares within Cisco's arbitrary window of undefined 'promptness.'" Upon receipt of the Court's notification, Cisco did not request that the Court's wife immediately divest if she had not done so already. See Doc. 564 at 13 (Centripetal noting that "Cisco's argument that divestiture cannot happen because divestiture has not yet happened is simply wrong."

Additionally, Cisco notes that the interest held by the Court's spouse cannot fall under the divestiture provisions of section 455(f) because the interest would be substantially affected by the account where Centripetal has requested such a high amount of damages. The Court finds the case of Key Pharm., Inc. v. Mylan Laboratories Inc., 24 F. Supp. 2d 480, 483 (W.D. Pa. 1998) as persuasive on this issue. In that case, the judge found divesting 151 shares with a value of $10,185.18 "was an effective cure for the discovery of the interest, particularly where the investment had been in a 'large, publicly held corporation with diverse interests and revenues in the billions.'" Doc. 564 at 14 (quoting Key Pharm., Inc. v. Mylan Laboratories Inc., 24 F. Supp. 2d 480, 483 (W.D. Pa. 1998)). Here, the Court's spouse owned 100 shares of Cisco stock valued at $4,687.99. Cisco, similar to the company in Key Pharm is a large, publicly held corporation with billions in revenue. Therefore, the Court finds that divesture is appropriate under the circumstances. Cisco points to the previously discussed case of Chase Manhattan as an example

that divestiture is unavailable in this case. As noted supra, that case has substantially different facts. In Chase Manhattan, the "disqualifying circumstances here appeared in 1997, [as such] they cannot be cured by a divestiture in 2000, long after the district judge's conduct of the bench trial, findings of fact, and issuance of judgment." Chase Manhattan Bank, 343 F.3d at 132. A three-year gap between identification of conflicting ownership and divestiture is drastically different than the less than a month gap presented in this case.

In light of this guidance, the Court's spouse has proceeded to divest the Cisco shares into a blind trust. Divestment to a blind trust is the proper remedy as the Court finds that an outright sale of the stock would undermine the purpose of section 455. Generally, section 455 "is designed to promote public confidence in the impartiality of the judicial process . . . ." Muchnick v. Thomson Corp. (In re Literary Works in Elec. Databases Copyright Litig.), 509 F.3d 136, 140 (2d Cir. 2007) (citing H.R. Rep. No. 93-1453, reprinted in 1974 U.S.C.C.A.N. 6351, 6355). Section 455(f) was incorporated for exactly the type of situations where the Court discovers an interest after substantial time and resources have been devoted to the case. See Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 561 (2d Cir. 1991) ("We think that section 455(f) directly applies to this situation. Nearly three years of the litigants' time and resources and substantial judicial efforts have been devoted to the litigation.")

If the Court were to decide in Centripetal's favor then that decision may be seen to benefit the Court if his spouse's stock is sold. In arguments on liability and damages, the Court noted the enormous discrepancy in the damages amounts of the parties' respective damages experts and asked for further financial data. A reasonable attorney might conclude that the Court intended to award damages and apparently both sides did so.

Centripetal promptly waived any objection while Cisco filed a motion to recuse nine days later. Under the circumstances, the Court **FINDS** nine days to be a reasonable time within which Cisco may act.

The situation is somewhat of a reverse bias allegation as it is Cisco, in which the stock is owned, seeking recusal. Cisco's theory is that the Court would change its opinion to one less favorable to it in order to shore up its appearance of propriety. Such an allegation makes it difficult for the Court to consider the outright sale of this stock. During the interim period between notification of counsel regarding the stock and the issuance of this opinion, the Court has performed no further work on its draft opinion on the merits. An outright sale of the stock would be inappropriate as the Court may appear to benefit itself in order to comply with the provisions of 455(f). Accordingly, the Court's spouse has divested her shares of Cisco stock by placing them in a blind trust to remove control from the Court and his spouse. This solution intends to abide by the statutory purposes of impartiality required by section 455 as well as the timely divestiture required by 455(f).

### III. CONCLUSION

In conclusion, the Court **DENIES** Cisco's Motion for Miscellaneous Relief. The Clerk is **REQUESTED** to distribute a copy of this Opinion and Order to counsel of record.

It is **SO ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNTIED STATES DISTRICT JUDGE

Norfolk, Virginia
October 2, 2020