# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: No. 2:18-cv -00094-EWH-LRL ) |
| CISCO SYSTEMS, INC., | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF CENTRIPETAL NETWORKS, INC.'S
MEMORANDUM IN OPPOSITION TO
<u>DEFENDANT CISCO SYSTEMS, INC.'S MOTION FOR A PARTIAL STAY</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND AND CISCO'S CONTINUED ATTEMPTS TO DELAY .............................. 2

ARGUMENT .............................................................................................................................. 5

    I.    Cisco Makes No Showing of Pressing Need or Hardship ...................................... 6

    II.    The Advanced Stage of this Case—Trial is Complete—Weighs Heavily Against a Stay ........................................................................................................ 6

    III.    A Stay of Proceedings on the '856 Patent Will Not Simplify the Case ................. 8

    IV.    Centripetal Would Be Unduly Prejudiced by the Stay ......................................... 11

    V.    The Totality of the Circumstances Militates Against a Stay ............................... 13

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Audio MPEG, Inc. v. Hewlett-Packard Co.*,
  No. 2:15cv73, 2015 WL 5567085 (E.D. Va. Sept. 21, 2015)......................................................7

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017)....................................................................................................8

*Bos. Sci. Corp. v. Edwards Lifesciences Corp.*,
  No. 16-275-JFB-SRF, 2018 WL 1891403 (D. Del. Apr. 20, 2018) .........................................12

*Carl Zeiss A.G. v. Nikon Corp.*,
  No. 2:17-cv-07083-RGK-MRW, 2018 WL 5081479 (C.D. Cal. Oct. 16, 2018) ............7, 9, 13

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
  No. 6:16-cv-475-KNM, 2018 WL 4261194 (E.D. Tex. May 8, 2018)......................................9

*Cherokee Nation of Okla. v. United States*,
  124 F.3d 1413 (Fed. Cir. 1997)....................................................................................................5

*Davol, Inc. v. Atrium Med. Corp.*,
  No. 12-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013) ....................................9, 11, 12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)......................................................................................................................6

*NTP, Inc. v. T-Mobile USA, Inc.*,
  No. 3:07-cv-548, 2007 WL 3254796 (E.D. Va. Nov. 2, 2007) .................................................7

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
  No. 5:13-cv-01356-EJD, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014) ...............................8, 12

*Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*,
  No. 08-309-JJF-LPS, 2008 WL 5335400 (D. Del. Dec. 19, 2008) .........................................12

*Procter & Gamble Co. v. Team Techs., Inc.*,
  No. 1:12-cv-552, 2013 WL 4830950 (S.D. Ohio Sept. 10, 2013)...........................................12

*Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*,
  No. W-20-cv-00969-ADA, 2022 WL 4240937 (W.D. Tex. Aug. 16, 2022) ......................7, 12

*Rensselaer Polytechnic Inst. v. Apple Inc.*,
  No. 1:13-cv-0633 (DEP), 2014 WL 201965 (N.D.N.Y. Jan. 15, 2014) ....................................6

*RFCyber Corp. v. Google LLC*,
 No. 2:20-cv-274-JRG, Dkt. No. 201, Slip. Op. (E.D. Tex. Jan. 4, 2022) ............................... 7, 9

*Segin Sys., Inc. v. Stewart Title Guar. Co.*,
 30 F. Supp. 3d 476 (E.D. Va. 2014) ............................................................................................ 11

*Sharpe Innovations, Inc. v. T-Mobile USA, Inc.*,
 No. 2:17-cv-351-RGD-DEM, Dkt. No. 41 (E.D. Va. Jan. 10, 2018) ........................................ 8

*Staton Techiya, LLC v. Samsung Elecs. Co.*,
 No. 2:21-cv-00413-JRG-RSP, 2022 WL 4084421 (E.D. Tex. Sept. 6, 2022) .......................... 9

*Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*,
 No. 3:09cv791, 2010 WL 1946262 (E.D. Va. May 10, 2010) ......................................... 5, 6, 7

*In re TLI Commc'ns LLC*,
 No. 1:14md2534, 2014 WL 12615711 (E.D. Va. Aug. 11, 2014) ....................................... 7, 12

*TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*,
 No. 13-cv-02218-JST, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013) ...................................... 8

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
 No. 13-cv-00346 (BBC), 2013 WL 6044407 (W.D. Wis. Nov. 14, 2013) .............................. 12

*Univ. of Virginia Pat. Found. v. Hamilton Co.*,
 No. 3:13-cv-00033, 2014 WL 4792941 (W.D. Va. Sept. 25, 2014) .................................... 7, 12

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
 943 F. Supp. 2d 1028 (C.D. Cal. 2013) ............................................................................... 5, 13

*Va. Innovation Sci., Inc. v. Samsung Elecs. Co.*,
 No. 2:14-cv-217, Dkt. No. 59, Slip Op. (E.D. Va. Nov. 18, 2014) .................................... 7, 12

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
 759 F.3d 1307 (Fed. Cir. 2014) ..................................................................................................... 7

*Williford v. Armstrong World Indus., Inc.*,
 715 F.2d 124 (4th Cir. 1983) ......................................................................................................... 6

*XR Comms., LLC v. D-Link Sys., Inc.*,
 No. 8:17-cv-00596-DOC-JDE, Dkt. No. 548, Slip Op. (C.D. Cal. Oct. 26,
 2022) ............................................................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 1 ................................................................................................................................ 13

Plaintiff Centripetal Networks, Inc. ("Centripetal") respectfully submits this memorandum opposing Cisco Networks, Inc.'s ("Cisco") Motion for a Partial Stay of the Case as to U.S. Patent No. 9,917,856 (the '"856 Patent") Pending Resolution of *Inter Partes* Review Proceeding ("IPR").

## **INTRODUCTION**

Cisco fails to carry its burden of showing clear and convincing circumstances warranting its unprecedented late-stage stay request. Trial is complete. To avoid the fact that the advanced stage of this case weighs heavily against a stay, Cisco urges the Court to ignore the massive resources expended to get to and complete trial, and instead focus on the early stage of remand proceedings—without any support. Cisco cites no case granting a stay during or after trial or on remand proceedings, and Centripetal is aware of none. This is unsurprising, as the enormous expenditure of resources and passage of time undeniably militates against a stay.

Nor does Cisco show that a stay will simplify the case; in fact, it will not. Cisco attempts to meet its burden merely by pointing to facts that are true in any motion seeking a stay pending IPR proceeding. Cisco ignores the fact that—as courts regularly find—a partial stay essentially severs the case and will create significant inefficiencies that cancel any simplification gained through the IPR process. This is particularly true here, given the substantial overlap in accused products and evidence across all four patents.

Centripetal filed this lawsuit over four years ago. From the beginning, Cisco delayed this case to prevent Centripetal from profiting from its patented technologies. After finally securing relief from a prior stay, Centripetal expended significant resources to an 8-week trial only to have the final judgment overturned on a technicality. As the Court previously recognized, delays in this case have and continue to unduly prejudice Centripetal—a small start-up company unable to fairly compete while larger players like Cisco are infringing Centripetal's patents and destroying its

1

goodwill.  Cisco's instant Motion seeks to even further delay resolution of this case and prejudice Centripetal, and should be denied.

## BACKGROUND AND CISCO'S CONTINUED ATTEMPTS TO DELAY

From the outset of this case, Cisco engineered protracted delay such that, by the time this Court typically resolves patent cases through trial—over one and a half years after the commencement of the action—Cisco merely answered the complaint.  Dkt. No. 73.  Shortly after Centripetal filed its amended complaint in March 2018, Cisco stalled this case by refusing Centripetal's requests to convene a Rule 26(f) initial conference.  Dkt. No. 402-1, Ex. 1.  Cisco thereafter filed a partial motion to dismiss—which it ultimately withdrew (Dkt. No. 188)—but in the interim leveraged as a *de facto* stay of the entire case, claiming that "its obligation to respond to the remaining claims . . . is deferred pending resolution" of its motion.  Dkt. No. 38 at 2 n.1.

Cisco then filed three staggered waves of *inter partes* review ("IPR") beginning in July 2018—five months after the complaint was filed—to maximize the IPR resolution timeline.  *See* Dkt. No. 57.  In September 2018, Cisco moved to stay this action pending resolution of the IPRs, which the Court granted.  Dkt. Nos. 45, 58.  In September 2019, the Court heard argument on and granted in part Centripetal's motion to lift the stay.  During these proceedings the Court recognized the impact of further delay, which applies with even greater force now:

> This Court normally resolves patent cases within a year of when they're filed. The case has already been pending for a year and a half.  . . . . ***particularly this form of patent -- that is, computer programs -- has a shelf life, a very short shelf life. And I always tell the attorneys who are fighting over these cases, that by the time they finish litigating it, it may well be obsolete, and that's the problem I'm facing here. Obviously, security in this area is very much at the forefront of what people are seeking to develop at this time. So this area is bound to be extremely competitive, thus making the shelf life of the patents that much less***. ***And I don't agree that you can necessarily resolve the plaintiff's problems by money damages***. When you're trying to enter a field so competitive as this, when you're delayed from being able to do it by alleged infringement, that's going to hamper the efforts for a new entity trying to enter the field . . . the Court

> should do everything it can do to encourage people to enter this field and to resolve disputes of this nature in as timely a manner as possible.

Dkt. No. 67 (9/11/19 Hearing Tr.) at 18:4-19:11 (emphasis added).  Trial was then set for April 2020.  Dkt. No. 74.

In March 2020, the Court asked the parties whether, in view of the fact that jury trials may be postponed due to COVID-19, the parties would agree to a bench trial in order to uphold the April 2020 trial date.  Dkt. No. 402-3, Ex. 3 at 1-2.  Centripetal notified the Court that only "if the trial of this matter starts as scheduled on April 7, 2020, Centripetal will waive a jury and proceed with a bench trial."  *Id*. at 1.  Cisco agreed to a bench trial, but requested a continuance "until the health issues related to Covid19 have passed."  Dkt. No. 402-4, Ex. 4 at 2.  The Court convened a conference and, responding to Cisco's request, delayed the start of trial to May 2020.  Dkt. No. 402-5, Ex. 5 (3/12/20 Hearing Tr.) at 3:2-12.  During that conference, the Court made clear that it is "concerned about the length of the postponement" (*id*. at 2:22-25), and further observed "[w]e can't just keep postponing indefinitely.  The Court has previously expressed its views on the importance of this case being tried as soon as possible, and I won't go into the reasons again, but the Court still believes that."  *Id*. at 5:4-9.  Cisco then filed a motion seeking *yet again* to delay trial indefinitely until all can "safely" appear in court and opposing trial by Zoom.  In denying Cisco's motion, the Court again stressed the importance of "resolv[ing] the matter with a sense of urgency" and "proceed[ing] expeditiously with the resolution of this case."  Dkt. No. 406 at 2.

The parties and the Court expended substantial resources to get to trial.  The parties produced approximately 175,000 documents, deposed 45 fact witnesses, and their 15 experts prepared a total of 38 reports before their depositions.  The Court held a hearing and issued a written order on an expedited motion to compel (Dkt. Nos. 108, 127), held a *Markman* hearing and issued a claim construction order addressing 8 disputed terms (Dkt. Nos. 189, 202), and heard

competing summary judgment motions, three *Daubert* motions, and 13 motions *in limine*. Dkt. Nos. 229, 242, 255, 270, 287.

The Court and parties then expended enormous resources to conduct a nearly 8-week bench trial–presiding over a 3,507-page record with dozens of witnesses and over 300 exhibits—which went poorly for Cisco. At the end of trial, the Court acknowledged the "blatant" contradictions in Cisco's defense and its willful behavior:

> THE COURT: Well, your technical documents say, and your own witnesses, if I accept their view, contradict your own experts; I mean, blatantly, if I accept their viewpoint. And I don't think, given the history of this case and the DNA -- what was it? -- NDA, the nondisclosure agreement -- there's so many initials in this case, I can't keep them all straight -- that anybody would ever say that, if you did infringe these products, that you did it accidentally. The relationship between the parties is such that, if the Court found that you infringed, given the conducts and meetings and the similarity of the technology, to say that you infringed accidentally would be a very unlikely outcome.

Dkt. No. 550 (6/25/2020 Trial Tr.) at 3503:25-3504:12. Months after trial, and after deciding "virtually every issue" in the case, the Court discovered his wife's Cisco stock which culminated into the present remand mandate. Dkt. No. 577, Dkt. No. 645 (9/9/20 Hearing Tr.) at 7-8.

Cisco never filed an IPR challenging the '856 Patent, and is time-barred from doing so. Cisco recently requested to join the '856 IPR filed by its and Centripetal's competitor, Palo Alto Networks, Inc. ("PAN"), an IPR request that PAN filed abusing the IPR process, as PAN has no interest in the '856 Patent and is not accused of infringing the '856 Patent. Indeed, the PTAB is considering dismissing the petition for reasons of harassment. Cisco relies heavily on the PTAB's

4

institution decision, but ignores that PTAB is considering dismissing the petition on account of a key error it made in that decision.[1]

By its current Motion, Cisco seeks yet again to delay resolution of the case to some indefinite date in the future. Cisco asks for a stay of proceedings regarding the '856 Patent until a final written decision (expected by May 25, 2023, but could be extended for an additional 6 months) and through appeal if PTAB invalidates the asserted claims—an event Cisco believes is likely. *See* Motion at 3. Additional delay would result from any remand proceedings. Yet as set forth below, Cisco fails to carry its burden of showing that clear and convincing circumstances warrant further delaying resolution of this case.

## **ARGUMENT**

In exercising its discretion to grant a stay, "a trial court must first identify a pressing need for the stay" before balancing the competing interests. *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). "Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely[.]" *Id.* "In patent cases, courts have found the following factors particularly relevant to consideration of a stay: (1) whether discovery is complete and a trial date is scheduled; (2) whether a stay would simplify the matters at issue; (3) whether a stay would unduly prejudice or clearly disadvantage the non-moving party." *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, No. 3:09cv791, 2010 WL 1946262, at *2 (E.D. Va. May 10, 2010). However, the decision should be based upon the totality of the circumstances. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013). "Ultimately, the party seeking a stay must make out a 'clear case of hardship or inequity in being required to

---

[1] PTAB overlooked that the cited prior art requires decryption of encrypted data, before any policies were applied to that data. This is precisely the problem that the '856 Patent solves. *See infra* n.3.

5

go forward.' If hardship or inequity cannot be shown, a stay is not merited." *Sunbeam Prods.*, 2010 WL 1946262, at *2, *citing Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (further citation omitted).

As set forth below, Cisco makes no showing whatsoever of a pressing need for a stay, nor any showing of hardship or inequity – let alone the "*clear case* of hardship or inequity" required to merit a stay. *Sunbeam Prods.*, 2010 WL 1946262, at *2 (emphasis added) (citation omitted). Nor has Cisco made the requisite "clear and convincing" showing under the above three factors or the totality of the circumstances; to the contrary, each weighs heavily against a stay. *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

## I. Cisco Makes No Showing of Pressing Need or Hardship

Cisco, in effect, asks for an indefinite stay of approximately two years, given the time remaining before the decision and the subsequent time on appeal. *Supra* p. 4-5. The process could extend even longer if there is a remand for further proceedings, which Cisco ignores. *See Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 1:13-cv-0633 (DEP), 2014 WL 201965, at *2 (N.D.N.Y. Jan. 15, 2014) (denying stay and noting that "IPR can take [up to] two years before the PTO, and an appeal to the Federal Circuit can extend that timeline further.").

However, Cisco makes no effort to show "pressing need" for the indefinite stay it seeks, nor showing whatsoever of "hardship or inequity." *Landis*, 299 U.S. at 255. For this reason alone, the Motion should be denied. *Sunbeam Prods.*, 2010 WL 1946262, at *2 ("If hardship or inequity cannot be shown, a stay is not merited.") (citation omitted).

## II. The Advanced Stage of this Case—Trial is Complete—Weighs Heavily Against a Stay

There can be no credible dispute that this factor—which militates against a stay where "discovery is complete" and a "trial date is scheduled"—weighs heavily against a stay here, as

trial is complete. *Id.* at *2-3 ("advanced nature of a case approaching trial" weighs "heavily" against a stay) (citation omitted).

Courts routinely deny stays after the parties and court expend significant resources to progress toward trial. *See, e.g., RFCyber Corp. v. Google LLC*, No. 2:20-cv-274-JRG, Dkt. No. 201, Slip. Op. at 3 (E.D. Tex. Jan. 4, 2022) (denying motion for partial stay after institution of IPRs where trial was two months away) (Declaration of Lisa Kobialka in Support of Centripetal's Opposition ("Kobialka Decl.") filed herewith, Ex. 2); *Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*, No. W-20-cv-00969-ADA, 2022 WL 4240937, at *2-3 (W.D. Tex. Aug. 16, 2022) (denying stay after institution of IPRs because pretrial conference was two weeks away and parties had completed "20 depositions," "11 expert reports," and "deposed 7 expert witnesses"); *Carl Zeiss A.G. v. Nikon Corp.*, No. 2:17-cv-07083-RGK-MRW, 2018 WL 5081479, at *3-4 (C.D. Cal. Oct. 16, 2018) (denying stay after institution of IPRs where trial was less than one month away; as the court "expended considerable resources on this case[,] this factor weighs strongly against a stay").

This case is much further along (and the Court expended much more resources) than other cases denying stays on account of the advanced stage of the proceedings. To avoid this fact, Cisco improperly focuses only on the "early stage" of "remand proceedings," yet not one of its cases are in the context of remand proceedings.[2] Cisco's argument completely ignores the years of litigation

---

[2] Cisco's cases only highlight the advanced stage of these proceedings, and do not support the extraordinary late-stage stay it seeks. *See Audio MPEG, Inc. v. Hewlett-Packard Co.*, No. 2:15cv73, 2015 WL 5567085, at *4 (E.D. Va. Sept. 21, 2015) (scheduling conference had not occurred); *NTP, Inc. v. T-Mobile USA, Inc.*, No. 3:07-cv-548, 2007 WL 3254796, at *2 (E.D. Va. Nov. 2, 2007) (responsive pleadings had not been filed); *Univ. of Virginia Pat. Found. v. Hamilton Co.*, No. 3:13-cv-00033, 2014 WL 4792941, at *2 (W.D. Va. Sept. 25, 2014) ("minimal discovery" had taken place); *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014) (case was "at its infancy" and "less than four months old"); *Va. Innovation Sci., Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-217, Dkt. No. 59, Slip Op. at 4-6 (E.D. Va. Nov. 18, 2014) (discovery had "barely begun"); *In re TLI Commc'ns LLC*, No. 1:14md2534, 2014 WL 12615711, at *1-2 (E.D.

7

and enormous resources expended to get to and complete trial to amass what Cisco acknowledges is a "huge trial record." Dkt. No. 663 (10/18/22 Hearing Tr.) at 11. *See supra* pp. 3-4. In other words, Cisco's argument ignores the very realities that this factor is intended to address.

### III. A Stay of Proceedings on the '856 Patent Will Not Simplify the Case

Cisco has not made the requisite clear and convincing showing that a stay will simplify the case, because it merely cites two facts that are true in every case. Namely, that if there is a decision by PTAB invalidating the '856 Patent, it will narrow the infringement case, and that statements made by a patentee during IPR proceedings can be binding in litigation. Setting aside the fact that Cisco's reliance on PTAB's institution decision is misplaced (*supra* p. 4-5) and that Centripetal has not made (and Cisco has not shown) a "clear and unmistakable" disclaimer of claim scope (*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) (citation omitted)),[3] Cisco cannot meet its burden by pointing to facts inherent to any IPR proceeding, particularly given the advanced stage of this case. *Cf. TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*,

---

Va. Aug. 11, 2014) ("very early stage of this proceeding"); *Sharpe Innovations, Inc. v. T-Mobile USA, Inc.*, No. 2:17-cv-351-RGD-DEM, Dkt. No. 41 at 4-5 (E.D. Va. Jan. 10, 2018) (factor was neutral at best because trial was still 8 months away and claim construction was incomplete); *XR Comms., LLC v. D-Link Sys., Inc.*, No. 8:17-cv-00596-DOC-JDE, Dkt. No. 548, Slip Op. at 2-3 (C.D. Cal. Oct. 26, 2022) (dispositive briefing filed, but not decided) (Kobialka Decl., Ex. 3); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-cv-01356-EJD, 2014 WL 116340, at *1, 4 (N.D. Cal. Jan. 13, 2014) (pretrial conference was 6 months away and the parties had not yet had "to engage in the significant and costly work of conducting expert discovery and preparing summary judgment motions.").

[3] Cisco attempts to distract from the merits of the Motion by advancing incorrect conclusory arguments regarding the technology, which are nothing more than a red herring. (Motion at 4 n. 2). At trial (and now at PTAB), Centripetal demonstrated that the patented technology of the '856 Patent solved a problem that the industry believed was unsolvable, namely that nothing could filter packets with encrypted data without first having to decrypt the data. After Centripetal disclosed this solution to Cisco under a Non-Disclosure Agreement, Cisco announced Centripetal's innovation as its own, while noting the long felt need in the industry for such a solution. *See* Kobialka Decl., Ex. 1 at 1 (PTX-452) (Cisco press release announcing products that detect threats "even in encrypted traffic" which "solve[d] a network security challenge previously thought to be unsolvable").

No. 13-cv-02218-JST, 2013 WL 6021324, at *2 (N.D. Cal. Nov. 13, 2013) ("[T]here is no *per se* rule that patent cases should be stayed pending reexaminations, because such a rule would invite parties to unilaterally derail litigation.") (citations and internal quotations omitted); *Carl Zeiss A.G.*, 2018 WL 5081479, at *4 ("Litigation cannot be stayed every time a claim undergoes reexamination – federal court calendars should not be hijacked in this manner.") (citation and internal quotations omitted).

In fact, a stay of proceedings on the '856 Patent would not simplify the case. Courts regularly find that a stay will not simplify the issues where, as here, PTAB has not granted review on all asserted patents. *See Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:16-cv-475-KNM, 2018 WL 4261194, at *3 (E.D. Tex. May 8, 2018) (collecting cases). As one court recently observed, a partial stay would in effect require separate trials and "would create significant inefficiencies that would more than offset any simplification gained through the IPR process." *RFCyber*, No. 2:20-cv-274-JRG, Dkt. No. 201, Slip. Op. at 3 (denying stay after IPRs were instituted on only some asserted patents); *see also Staton Techiya, LLC v. Samsung Elecs. Co.*, No. 2:21-cv-00413-JRG-RSP, 2022 WL 4084421, at *2 (E.D. Tex. Sept. 6, 2022) (denying stay after IPRs were instituted on some (not all) asserted patents); *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958-GMS, 2013 WL 3013343, at *5-6 (D. Del. June 17, 2013) ("allowing litigation to proceed solely with respect to [un-instituted] patent while the parties await a PTO decision on the other two patents-in-suit would invite substantial inefficiency").

Cisco's requested stay as to the '856 Patent creates such significant inefficiencies here. Cisco requests that the Court familiarize itself with the extensive record in this case twice—parsing out the '856 Patent during the first review. This would be extremely inefficient, given the considerable overlap between accused products and infringement evidence across all four patents.

9

For example, in the first phase of the case under Cisco's proposal, the Court would learn about Switches and Routers as they relate to infringement of the '193 Patent, '176 Patent, and '806 Patent. It would also consider evidence relating to how Stealthwatch infringes the '176 Patent with the Switches and Routers. After the '856 Patent IPR, the Court would again have to revisit evidence relating to the Switches and Routers *and* relating to Stealthwatch.

Further, Cisco indicated that it would seek to recall witnesses. Dkt. No. 663 (10/18/22 Hearing Tr.) at 18. Setting aside Centripetal's vehement opposition to Cisco's improper attempt to retry this case if the Court entertained Cisco's request to recall witnesses, it would have to recall many witnesses twice.[4] Additionally, much of the same evidence showing Cisco's willful infringement would need to be reconsidered.[5] Indeed, Cisco's request that the Court parse the record in a disjointed and inefficient manner risks prejudicing Centripetal's ability to effectively present its case as it did before Judge Morgan. *See supra* p. 4; Dkt. No. 550 (6/25/2020 Trial Tr.) at 3503:25-3504:12 (the Court observing at the end of trial the "blatant[]" contradictions in Cisco's liability defenses and that "[t]he relationship between the parties is such that, if the Court found

---

[4] For example, Centripetal's technical expert Dr. Cole opined on infringement for both the '856 Patent and the '176 Patent. Dkt. No. 509 (5/13/2020 Trial Tr.) at 881:23-882:3. One of Centripetal's technical experts on validity, Dr. Jaeger, also opined on both the '856 Patent and the '176 Patent. Dkt. No. 545 (6/9/2020 Trial Tr.) at 3102:14-17. Centripetal's Chief Technology Officer, Sean Moore, is an inventor on each asserted patent, including the '856 Patent. Dkt. No. 29-2 ('193 Patent) at 1; Dkt. No. 29-3 ('176 Patent) at 1; Dkt. No. 29-6 ('806 Patent) at 1; Dkt. No. 32-17 ('856 Patent) at 1.

[5] For example, in addition to the testimony of Centripetal's Chief Operating Officer describing his disclosure of the patented technology to Cisco (Dkt. No. 514 (5/18/2020 Trial Tr.) at 1225:8-1228:23; Dkt. No. 516 (5/19/2020 Trial Tr.) at 1237:4-1239:1, 1241:8-23, 1242:11-1244:23), Cisco's subsequent press releases announcing Centripetal's technology as its own, would have to be reintroduced. *See, e.g.*, Kobialka Decl., Ex. 1 (PTX-452) (Cisco's press release announcing technologies that infringe the '856 Patent (Encrypted Traffic Analytics), '193 Patent (the rebuilt Catalyst 9000 Switches with new operating system), and '806 Patent (the Digital Network Architecture ("DNA")).

10

that you infringed, given the conducts and meetings and the similarity of the technology, to say that you infringed accidentally would be a very unlikely outcome.").

### IV. Centripetal Would Be Unduly Prejudiced by the Stay

Over three years ago, this Court held the following in partially lifting a stay:

> As the stay of this case continues, the prejudice to Plaintiff grows. "[P]otential loss of market share and an erosion of goodwill" are an ever-present concern, especially when delay in a final resolution of the patent infringement action is continued. *See Davol, Inc. v. Atrium Medical Corp.*, Civil Action No. 12958, 2013 WL 3013343, at *3 (D. Del. June 17, 2013). In a highly competitive and innovative industry, such as the technology industry implicated here, delay causes particular problems, because by the time protracted proceedings come to a close, the value of the invention may not justify the costs of the litigation.

Dkt. No. 68 at 6. The Court's concerns apply with even greater force now.

Cisco competes directly with Centripetal. *See, e.g.*, Dkt. No. 514 (5/18/2020 Trial Tr.) at 1209:12-1210:20; Dkt. No. 516 (5/19/2020 Trial Tr.) at 1246:19-1247:19; Dkt. No. 517 (5/19/2020 Trial Tr.) at 1331:15-1332:2; Dkt. No. 519 (5/20/2020 Trial Tr.) at 1490:7-16, 1559:17-1560:9. Cisco's successful attempts to delay this case already caused incalculable prejudice to Centripetal's ability to fairly compete, as Cisco's continued infringement prevents Centripetal from profiting from its patents. Indeed, Centripetal's revenues doubled year-over-year—before flat-lining when Cisco entered the market with its infringing products. *See* Dkt. No. 514 (5/18/2020 Trial Tr.) at 1209:12-1211:10. And Cisco's request to further delay resolution compounds this prejudice and irreparable harm; by the time this case is finally resolved, Cisco—a much larger player—will have been able to steal an entire market segment from Centripetal, a small start-up business.

When, as here, parties are direct competitors, courts "frequently" find undue prejudice from a stay. *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 481-82 (E.D. Va. 2014). As one court put it, "[t]he longer that the other prominent players in the market, such as [Cisco],

11

continue to benefit from [Centripetal's] inventions without attribution, the more customers and recognition [Centripetal] will lose. Such harms constitute 'permanent loss of market share and goodwill.'" *Ravgen*, 2022 WL 4240937, at *2 (citations and internal quotations omitted); *see also, e.g.*, *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2013 WL 4830950, at *2 (S.D. Ohio Sept. 10, 2013) (denying motion to stay pending IPR where the parties were direct competitors); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.,* No. 13-cv-00346 (BBC), 2013 WL 6044407, at *4 (W.D. Wis. Nov. 14, 2013) (denying stay requested by competitor); *Davol*, 2013 WL 3013343, at *3-5 (same).

Cisco's cited case law again underscores the impropriety of the stay it seeks. Cisco's cases relied on the fact that the patentee had not requested injunctive relief or provided evidence of direct competition—neither is true here.[6] Furthermore, Cisco incorrectly states that no court has denied a stay while an IPR decision invalidating a patent is on appeal. *See Bos. Sci. Corp. v. Edwards Lifesciences Corp.*, No. 16-275-JFB-SRF, 2018 WL 1891403, at *2 (D. Del. Apr. 20, 2018) (declining to partially stay case on eve of trial as to patent that PTAB invalidated in a final written decision, because the patentee indicated it would appeal); *see also Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*, No. 08-309-JJF-LPS, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008) (denying stay even though PTO issued a final rejection of several asserted claims, because they "will likely be the subject of further proceedings, before some or all of the PTO . . . and the Federal Circuit. No one can predict the outcome or the timing of these proceedings").

---

[6] *In re TLI Commc'ns LLC*, 2014 WL 12615711, at *1-2 (no request for injunction and no evidence of competition); *Univ. of Virginia Pat. Found.*, 2014 WL 4792941, at *3 (same); *Va. Innovation Sci.*, Dkt. No. 59, Slip Op. at 4-6 (no evidence of competition); *PersonalWeb Techs.*, 2014 WL 116340, at *5 (no evidence of competition).

12

## V. The Totality of the Circumstances Militates Against a Stay

In addition to the foregoing factors, "[a]nother consideration is the Court's ability to control its docket to ensure that cases are managed in the interest of justice." *Universal Elecs., Inc.*, 943 F. Supp. 2d at 1035. One important consideration is that the federal rules should be "construed, administered, and employed by the court and the parties to secure the *just, speedy, and inexpensive determination* of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). Cisco ignores these considerations, as "[i]t would not be in the interest of justice to partially stay this case [well after] trial pending IPR, and it would not secure the speedy or inexpensive determination of this action to sever this case in two." *Carl Zeiss A.G.*, 2018 WL 5081479, at *4.

## CONCLUSION

For at least the foregoing reasons, Cisco's Motion should be denied.

Respectfully submitted,

Dated: November 8, 2022

By: */s/ Stephen E. Noona*
Stephen Edward Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W Main St., Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com

Paul J. Andre (*pro hac vice*)
Lisa Kobialka (*pro hac vice*)
James Hannah (*pro hac vice*)
Hannah Lee (*pro hac vice*)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

13

hlee@kramerlevin.com

Cristina L. Martinez (*pro hac vice*)
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
Telephone: (212) 715-9000
Facsimile: (212) 715-8000
cmartinez@kramerlevin.com

**ATTORNEYS FOR PLAINTIFF
CENTRIPETAL NETWORKS, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to counsel of record.

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com
