**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-00094-EWH-LRL |
| | ) |
| CISCO SYSTEMS, INC. | **)** |
| | **)** |
| Defendant. | **)** |

**MEMORANDUM OF LAW IN SUPPORT OF CISCO SYSTEMS, INC.'S
MOTION TO SEVER AND STAY THE CASE AS TO U.S. PATENT NO. 9,917,856**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.............................................................3

III. LEGAL STANDARDS FOR SEVERANCE AND STAY ....................................................4

IV. THE FACTORS SUPPORT A SEVERANCE AND STAY OF THE '856 PATENT ..........................................................................................................................5

    A. Stay and Severance of the '856 Patent Would Simplify the Proceedings .............. 5

        1. The '856 Patent FWD Has Invalidated the '856 Patent, Absent a "Speculative" and Statistically Unlikely Reversal by the Federal Circuit .................................................................................................. 5

        2. The Patent Issues Are Different From One Another, and the '856 Patent Requires Different Witnesses and Different Proof.................. 7

    B. Centripetal Will Not Be Unduly Prejudiced or Clearly Disadvantaged if the '856 Patent is Severed and Stayed .................................................................... 9

    C. The Stage of Proceedings Does Not Overcome The Advantage of Simplification............................................................................................................ 10

        1. The Clear Simplification Created By a FWD Cancelling The Asserted Claims Outweighs The Advanced Status of the Case................ 10

V. CONCLUSION......................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584
 (E.D. Va. 2005) ................................................................................................................... 5

*AgroFresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2019 U.S. Dist. LEXIS 91035
 (D. Del. May 31, 2019) ................................................................................................. 6-7, 10

*Equal Rights Center v. Equity Residential,* 483 F. Supp. 2d 482 (D. Md. 2007) ........................ 8

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ................................................................ 4

*Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878-RWS-JDL,
 2015 U.S. Dist. LEXIS 180358 (E.D. Tex. June 5, 2015) .............................................. 6, 9-10

*NTP, Inc. v. T-Mobile USA, Inc.*, No. 3:07-CV-548, 2007 WL 3254796
 (E.D. Va. Nov. 2, 2007) ..................................................................................................... 10

*RAI Strategic Holdings, Inc. v. Altria Client Servs. LLC*, No. 1:20-cv-393,
 2020 WL 6882646 (E.D. Va. Sept. 3, 2020) ................................................................... 5, 8-9

*Reddy v. Lowe's Cos.*, No. 13-cv-13016-IT, 2016 U.S. Dist. LEXIS 182847
 (D. Mass. Apr. 22, 2016) ................................................................................................ 6, 10

*Saval v. BL, Ltd.,* 710 F.2d 1027 (4th Cir. 1983) ......................................................................... 5

*Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-cv-551-RC-JDL, 2017 U.S.
 Dist. LEXIS 47405 (E.D. Tex. Jan. 24, 2017) ........................................................... 2-3, 6, 10

*In re: TLI Commc'ns Inc. Patent Litig.*, No. 1:14-cv- 02534, 2014 WL 12615711
 (E.D. Va. Aug. 11, 2014) .................................................................................................... 4

*Va. Innovation Sciences Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 713
 (E.D. Va. 2014) ............................................................................................................... 1, 5

*XY, LLC v. Trans Ova Genetics,* 890 F.3d 1282 (Fed. Cir. 2018) ............................................ 1, 5

**Other Authorities**

*Changes to Implement Inter Partes Review Proceedings*,
 77 Fed. Reg. 157 (Aug. 14, 2012) ....................................................................................... 4

FED. R. CIV. P. 21 ........................................................................................................................ 5

I.  **INTRODUCTION**

The Patent Trial and Appeal Board ("PTAB") has issued a Final Written Decision ("the '856 Patent FWD") invalidating all of the asserted claims of U.S. Patent No. 9,917,856 ("the '856 Patent"). Dkt. 686-1. This decision fundamentally changes the landscape since the Court's denial of Cisco's motion to stay as to the '856 Patent earlier this year. Dkt. 675 at 10. Even Centripetal acknowledged the impact of the issuance of an FWD in its motion to lift the stay in the *Palo Alto Networks* case, No. 2:21-cv-137-EWH-RJK (E.D. Va.) (hereinafter, "*PAN*"), offering to dismiss from that case the patents that were the subject of FWDs invalidating the asserted claims. The outcome of the '856 Patent FWD is no longer speculative, the '856 Patent stands invalidated, and proceedings as to that patent should be severed and stayed for three reasons.[1]

First, the issuance of the '856 Patent FWD means that the patent is invalid unless and until Centripetal successfully appeals that decision to the Federal Circuit or the Supreme Court. Chief Judge Davis has found that *all* preclusive effects attach immediately upon the issuance of an FWD. *Va. Innovation Sciences Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 713, 753 (E.D. Va. 2014) ("[T]he preclusive effect of a PTAB final determination is triggered when the PTAB issues its final written decision—regardless of whether an appeal is taken to the Federal Circuit"), *vacated on other grounds by* 614 F. App'x 503 (Fed. Cir. 2015). At the very least, collateral estoppel formally attaches no later than when a Federal Circuit panel affirms the '856 Patent FWD. *XY, LLC v. Trans Ova Genetics,* 890 F.3d 1282, 1294 (Fed. Cir. 2018) ("[W]e find that affirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect on all pending or co-pending actions"). Such an affirmance is highly likely. Indeed, Centripetal itself

---

[1] Counsel for Cisco contacted counsel for Centripetal and asked if Centripetal would consent to this motion in light of the Patent Office's decision, and Centripetal responded that it would oppose the motion.

1

has stated as much, arguing to the Court in seeking to lift the stay in *PAN* that the "Federal Circuit issues a full affirmance in more than 75% of appeals from the PTAB," and any other outcome is "speculative." *PAN*, Dkt. 330 at 3. Consistent with this, the Court granted Centripetal its requested relief, rather than awaiting the results of PAN's appeal of the FWDs in which the subject patents were not invalidated. *See, e.g., PAN*, Dkt. 336 at 1 (May 17, 2023). In fact, the Federal Circuit has affirmed *all* prior FWDs invalidating Centripetal's patents in IPRs filed by Cisco.

Based on the foregoing, any proceedings on the '856 merits issues, including the issuance of a decision and the adjudication of post-decision motions, would all become a nullity in the statistical likelihood that the Federal Circuit affirms the FWD invalidating the patent. In the statistically unlikely event that the Federal Circuit were to reverse the FWD, this Court likely would have to redo any proceedings on the '856 merits issues to reflect (i) any estoppels arising from appellate arguments Centripetal makes to resuscitate the '856 Patent; and (ii) the Federal Circuit's decision itself, which could impact the scope of the asserted claims. In any of these circumstances, the work now would be wasted.

Second, and consistent with the first point, Courts have routinely recognized that even late in a case, the issuance of an FWD invalidating the asserted claims changes the calculus for granting stays, and declined to proceed. For example, in *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-cv-551-RC-JDL, 2017 U.S. Dist. LEXIS 47405, at *7-8 (E.D. Tex. Jan. 24, 2017), the court granted a stay pending the appeal of a post-grant review final written decision that had found all asserted claims of the only patent-in-suit to be unpatentable, despite the late stage of the proceeding (discovery was complete and trial was less than three months away):

> The advanced stage of the case, with trial less than three months away, weighs against staying the case. . . . However, given the PTAB's Final Written Decision, there is uncertainty over whether there are even claims left to litigate. . . . Even if this court were to forge on and force the parties to expend resources trying the case,

>   the likelihood that all will be wasted if the PTAB decision is affirmed weighs heavily in favor of a stay. No matter how advanced the parties may be in the Scheduling Order, this consideration outweighs the fact that vindication of the patent holders will have been delayed if the PTAB decision is overturned.

*Id.* at *7-8.

Third, the '856 Patent issues can be efficiently severed from these proceedings and stayed, reducing the workload of the parties and the Court. Now that the procedures for the Rule 63 hearing have been set (in contrast to the status at the time the Court denied the prior motion to stay), it is clear that the potential for overlapping witnesses actually does not exist. Centripetal is not recalling any fact witnesses or expert witnesses at the hearing. If the '856 Patent is severed and stayed, Cisco will only have to recall one of its two fact witnesses (Michael Scheck) at the upcoming hearing, as the testimony of the other fact witness (David McGrew) is relevant only to the products accused on the '856 Patent (and no other patent). Further, both the trial record and the parties' presentations at the upcoming hearing are divided into discrete modules for each of the patents. Severing and granting a stay as to the '856 Patent will not unduly prejudice Centripetal, particularly since the trial record as to the '856 Patent is preserved, and it allows the Rule 63 proceedings involving the other three patents to proceed in this Court and through any appeal.

Based on the foregoing, Cisco respectfully requests that the Court sever only the '856 Patent from this matter, and then stay the severed litigation pending any appeal, while proceeding on the remaining three patents in the Rule 63 proceedings.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In the prior trial of this matter, Centripetal asserted two claims from each of five patents. Four of those patents remain in this case (the '205 Patent having been dismissed already, Dkt. 633), and of those four remaining patents, only the asserted claims of the '856 Patent are the subject

3

of this motion to sever and stay. During the trial, the parties' presentation of evidence was divided into modules for each patent, clearly delineating specific testimony and exhibits for each patent, even if there were overlapping witnesses and other evidence. Dkt 544 at 3018; Dkt 547 at 3185. Likewise, at the upcoming hearing, the parties will divide closing arguments by patent. Dkt. 681-1 at 6.

On November 1, 2022, Cisco moved to stay the case as to the '856 Patent, pending issuance of the '856 Patent FWD. Dkt. 664. On January 25, 2023, the Court held a hearing on Cisco's motion and issued an oral order denying the motion. Dkt. 675 at 10.

On May 23, 2023, the PTAB issued the '856 Patent FWD, holding that the asserted claims of the '856 Patent are unpatentable.

## III. LEGAL STANDARDS FOR SEVERANCE AND STAY

Congress established the IPR procedure in order to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." *Changes to Implement Inter Partes Review Proceedings*, 77 Fed. Reg. 157 (Aug. 14, 2012). To achieve this end, courts can employ their inherent power to sever and stay district court litigation. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to enter a stay pending conclusion of a PTO reexamination." (citations omitted)).

In evaluating a possible stay, the Court analyzes the totality of the circumstances, including weighing three non-exclusive factors: (1) whether a stay would simplify the matters at issue, (2) whether a stay would unduly prejudice or clearly disadvantage the non-moving party, and (3) the stage of the litigation, including whether discovery is complete and a trial date is scheduled. *See In re: TLI Commc'ns Inc. Patent Litig.*, No. 1:14-cv- 02534, 2014 WL 12615711, *1 (E.D. Va. Aug. 11, 2014).

Also, the Court may "sever any claim against a party," "even where the parties are appropriately joined and venue is proper." FED. R. CIV. P. 21; *RAI Strategic Holdings, Inc. v. Altria Client Servs. LLC*, No. 1:20-cv-393, 2020 WL 6882646, at *2 (E.D. Va. Sept. 3, 2020). "A district court possesses broad discretion in ruling on a requested severance under Rule 21." *Saval v. BL, Ltd.,* 710 F.2d 1027, 1031-32 (4th Cir. 1983). "Under that Rule, a court has virtually unfettered discretion in determining whether or not severance is appropriate." *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 598 n.9 (E.D. Va. 2005) (internal quotation marks omitted). The Court can weigh factors, such as, (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed. *RAI Strategic Holdings*, 2020 WL 6882646, at *2.

Based on the '856 Patent FWD finding the claims unpatentable, Cisco requests that the Court exercise its discretion to sever and then stay the proceedings as to the '856 Patent.

## IV.   THE FACTORS SUPPORT A SEVERANCE AND STAY OF THE '856 PATENT

### A.   Stay and Severance of the '856 Patent Would Simplify the Proceedings

#### 1.   The '856 Patent FWD Has Invalidated the '856 Patent, Absent a "Speculative" and Statistically Unlikely Reversal by the Federal Circuit

The Patent Office has found the '856 Patent invalid. Collateral estoppel will attach no later than the Federal Circuit panel's (likely) affirmance of the '856 Patent FWD; Centripetal's claims under that patent will then be estopped as a legal matter, not merely as a matter of discretion. *XY,* 890 F.3d at 1294. Indeed, Chief Judge Davis found that *all* preclusive effects are effective even before then, immediately upon issuance of the FWD. *Va. Innovation*, 983 F. Supp. 2d at 753.

5

An affirmance that indisputably triggers collateral estoppel is highly likely. Just a few weeks ago, in connection with Centripetal's request to lift a stay in *PAN* in light of the Patent Office's determinations, Centripetal argued that the case should go forward only on the patents for which claims survived the IPRs at the PTAB level even while PAN (the petitioner) appealed those results, and that Centripetal would dismiss the patents invalidated in IPR FWDs. No. 2:21-cv-137-EWH-RJK (hereinafter, "*PAN*"), Dkt. 326 at 4 (E.D. Va. Mar. 15, 2023); *see also PAN*, Dkt. 336 1 (May 17, 2023). Centripetal represented to the Court in *PAN* that there is a 75% chance that the Federal Circuit will affirm any given FWD from the PTAB. *PAN*, Dkt. 330 at 3-4 (Apr. 4, 2023). To date, the Federal Circuit has affirmed *every* PTAB Final Written Decision of an IPR filed by Cisco against a Centripetal patent, all of which found the challenged patents invalid. And the PTAB commented at the outset of this specific IPR that the merits of Cisco's challenge seemed "particularly strong." Dkt. 671-1 at 14.

For these reasons, immediately staying Rule 63 proceedings as to a patent found unpatentable in an FWD, pending any subsequent appeal of the FWD, is a common form of relief. *See, e.g., AgroFresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2019 U.S. Dist. LEXIS 91035 (D. Del. May 31, 2019); *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-cv-551-RC-JDL, 2017 U.S. Dist. LEXIS 47405, at *7-8 (E.D. Tex. Jan. 24, 2017); *Reddy v. Lowe's Cos.*, No. 13-cv-13016-IT, 2016 U.S. Dist. LEXIS 182847 (D. Mass. Apr. 22, 2016); *Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878-RWS-JDL, 2015 U.S. Dist. LEXIS 180358 (E.D. Tex. June 5, 2015). In addition to the *Tinnus* case cited above, in *AgroFresh*, the PTAB held unpatentable all claims of one of the three patents asserted in the district court action. 2019 U.S. Dist. LEXIS 91035, at *1. As a result, the district court stayed the proceedings as to that patent but continued with the rest of the case. 2019 U.S. Dist. LEXIS 91035, at *3. The court granted the stay despite

the late stage of the proceeding—where fact and expert discovery were complete, summary judgment motions had already been filed, and there were several months until trial. It explained:

> First, the potential for simplification of the issues in this case is substantial. All of the claims of the '216 patent have been found unpatentable. A stay will simplify the case because the Federal Circuit's review of the PTAB decision will reduce or at least clarify issues the Court would otherwise address, including in connection with dispositive motions and trial. If the Federal Circuit upholds the PTAB decision, there will be no valid claims of the '216 patent and the Court will not have to address that patent in connection with summary judgment or at trial. Thus, it would be potentially wasteful to litigate the '216 patent while the Federal Circuit also is addressing it. Moreover, if the Federal Circuit reverses all or part of the PTAB decision, there will be estoppel of defenses that could otherwise be litigated in this court.

*Id.* at *4-5. The court concluded that although "the simplification applies only to one part of the case, it is not an insubstantial part and substantial simplification is almost certain." *Id.* at *5.

Given the significant amount of time and resources the parties and this Court can expect to expend in preparation for the upcoming hearing and any post-hearing work, whether by the Court or the parties, this factor favors heavily in severing and staying the proceedings as to the '856 Patent, even at this advanced stage of the proceedings.

### 2. The Patent Issues Are Different From One Another, and the '856 Patent Requires Different Witnesses and Different Proof

In the January 25 hearing, the Court expressed concern that staying the '856 Patent proceedings would not simplify the issues given the overlapping technologies and overlapping witnesses. Dkt. 675 at 10-12. At that point, it was not clear how many witnesses might be recalled, and Cisco had broadly reserved the right to recall its experts as well.

Fast-forward to today, and Centripetal is not recalling any witnesses at all. Dkt. 682 at 2. Cisco is only recalling two fact witnesses (David McGrew and Michael Scheck) and no experts. Dkt. 682 at 2. As to the two fact witnesses Cisco is recalling, there is no overlap or potential inefficiency. Dr. McGrew is only relevant to the '856 Patent, and so Cisco will not recall him at

7

the June hearing if the '856 Patent is stayed and severed. *See* Dkt. 681-1 at 4-5 (describing anticipated witness testimony). Mr. Scheck's testimony at the June hearing will obviate the need to recall him in the unlikely event the '856 Patent case is resurrected on appeal.

As for the technologies, the '856 Patent is the only patent that relates to the issue of encryption, and it is the only patent for which Centripetal accuses Cisco's Encrypted Traffic Analytics. This is also why it is the only patent for which Cisco would recall Dr. McGrew to testify. While the other three patents may relate generally to the field of network security, the issues and proof are different for each patent. Courts have held that one issue is significantly different from another when the issue is "so 'distinct and separable' from . . . others [in the case] that a trial of that issue alone may proceed without injustice." *RAI Strategic Holdings, Inc.*, 2020 WL 6882646, at *3 (citing *Equal Rights Center v. Equity Residential,* 483 F. Supp. 2d 482, 489 (D. Md. 2007)).

Here, each patent covers discrete network security functionality and thus is directed to different issues of novelty and different inventions. To date (including throughout the trial and at the upcoming hearing), the parties have presented their positions and evidence in modules, on a patent-by-patent basis. The distinct nature of the issues between each patent is also apparent when looking at the separate testimony for the '856 Patent from witnesses, both fact and expert, as compared to the other patents. For example, Cisco had technical expert witnesses who testified only as to the '856 Patent, and although the same Centripetal experts handled both the '856 and '176 Patents, they testified in different modules as to the patents. *See* Dkt. No. 509 (5/13/2020 Trial Tr.) at 884:22-885:2; Dkt. No. 511 (5/14/2020 Trial Tr.) at 937:4-18; Dkt. No. 545 (6/9/2020 Trial Tr.) at 3099:8-11; Dkt. No. 547 (6/9/2020 Trial Tr.) at 3145:10-20. Thus, the proceedings as to the '856 Patent FWD are "distinct and separable," and the Court can separately move forward

with the proceedings to the other three patents "without injustice." *RAI Strategic Holdings*, 2020 WL 6882646, at *3. Given the distinct nature of the issues and evidence related to the '856 Patent and the high likelihood the '856 Patent FWD invalidating the patent will be affirmed, a severance and stay as to the '856 Patent will simplify the case for the Court and the parties.

> B. **Centripetal Will Not Be Unduly Prejudiced or Clearly Disadvantaged if the '856 Patent is Severed and Stayed**

The timing of this Motion—immediately after the issuance of the '856 Patent FWD—limits the prejudice to Centripetal. As another court explained, "there comes a point at which any prejudice to the Plaintiff in staying the litigation is significantly outweighed by a determination that patent claims are invalid by the 'expert agency' in the field. Typically, at that point, any further expenditure of party or judicial resources on invalid claims is unwise." *Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878-RWS-JDL, 2015 U.S. Dist. LEXIS 180358, at *7 (E.D. Tex. June 5, 2015). The proceedings as to the '856 Patent are at that point. While the procedural posture of this case is unique (*i.e.*, a remand for Rule 63 proceedings before the Court), the overarching principle at issue is not: once a patent is found invalid by the PTAB, as the '856 Patent has been, the Court and parties need not spend time and resources litigating and determining infringement and validity of that patent.

As this Court noted when addressing Cisco's prior motion to stay, the issue of prejudice is contested, and the Court found it is neutral. Dkt. 675 at 13. Based on the current posture of this case, Centripetal will not suffer undue prejudice or a disadvantage from a severance and stay as to the '856 Patent at this point. First, under Cisco's proposal, (1) the other three patents will be addressed through the Rule 63 proceedings, including any appeals, and (2) Centripetal incurs no further costs in this Court related to the '856 Patent if it is severed and stayed, nor does the Court expend resources dealing with issues relating to a patent that has been found invalid. If Centripetal

9

has claims to pursue relating to the '856 Patent after its appeals of the '856 Patent FWD are resolved, the severance and stay will not limit Centripetal's ability to present its case. The record as to the '856 Patent is preserved, and Centripetal will not suffer undue prejudice or a disadvantage if the proceedings as to the '856 Patent are severed and stayed.

### C. The Stage of Proceedings Does Not Overcome The Advantage of Simplification

#### 1. The Clear Simplification Created By a FWD Cancelling The Asserted Claims Outweighs The Advanced Status of the Case

The procedural posture of this case is unusual, but much work remains to be done. The Rule 63 hearing has not yet occurred, the Court has not yet issued Findings of Fact and Conclusions of Law, and no judgment has been entered or post-judgment motions filed. Courts have repeatedly stayed cases at similar stages based on the issuance of a FWD cancelling the asserted claims. *See, e.g., AgroFresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2019 U.S. Dist. LEXIS 91035 (D. Del. May 31, 2019); *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-cv-551-RC-JDL, 2017 U.S. Dist. LEXIS 47405, at *7-8 (E.D. Tex. Jan. 24, 2017); *Reddy v. Lowe's Cos.*, No. 13-cv-13016-IT, 2016 U.S. Dist. LEXIS 182847 (D. Mass. Apr. 22, 2016); *Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878-RWS-JDL, 2015 U.S. Dist. LEXIS 180358 (E.D. Tex. June 5, 2015).

Indeed, the posture of this case eliminates any potential prejudice to Centripetal: the '856 Patent proceedings were not stayed during the pendency of the IPR proceeding; the trial has been had and the record is preserved as to that patent; and Centripetal indicated it is not recalling any additional fact witnesses at the upcoming hearing. Dkt. 681-1 at 3. And on May 15, 2023, the parties indicated that they likely not need to recall the damages experts. Dkt. 683 at 2. Nor would severance and stay limit Centripetal's ability to recover damages in the likely event that the '856 Patent is revived on appeal, provided it can show infringement of the '856 Patent. *See NTP, Inc. v. T-Mobile USA, Inc.*, No. 3:07-CV-548, 2007 WL 3254796, at *3 (E.D. Va. Nov. 2, 2007) ("By

filing these suits, [plaintiff] is eligible to recover damages for any infringement of the patents-at-issue that occurs while reexamination is proceeding."). In fact, at the October 18, 2022 hearing, Centripetal stated that "at this point, we think the record below is complete," and updating the damages was "really just a math issue more than anything else." Dkt. 663 at 7-8.

## V. CONCLUSION

The totality of circumstances favors granting a severance and stay of the '856 Patent. Doing so will simplify and streamline the preparation for and presentation at the upcoming hearing and reduce the evidence the Court needs to consider in issuing its final order. The severance and stay will also allow appeal of any judgment as to the remaining patents to proceed. Cisco respectfully requests that the Court grant this Motion and issue an order to sever and stay the proceedings regarding the '856 Patent.

Dated: May 24, 2023                                CISCO SYSTEMS, INC.


By:_____/s/_____
    Of Counsel

Dabney J. Carr, IV, VSB No. 28679
**TROUTMAN PEPPER**
 **HAMILTON SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutman.com

Charles K. Seyfarth, VSB No. 44530
**O'HAGAN MEYER**
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7137
Facsimile: (804) 237-0250
cseyfarth@ohaganmeyer.com

Louis N. Jameson (admitted pro hac vice)
Matthew C. Gaudet (admitted pro hac vice)
John R. Gibson, VSB No. 72968
Alice E. Snedeker (admitted pro hac vice)
**DUANE MORRIS, LLP**
1075 Peachtree Street, N.E., Suite 1700
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900
Facsimile: (404) 253-6901
wjameson@duanemorris.com
mcgaudet@duanemorris.com
jrgibson@duanemorris.com
jhforte@duanemorris.com

Joseph A. Powers (admitted pro hac vice)
**DUANE MORRIS, LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 689-3797
japowers@duanemorris.com

John M. Baird, VSB No. 77827
Christopher J. Tyson, VSB No. 81553
**DUANE MORRIS, LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
cjtyson@duanemorris.com

*Attorneys for Defendant*
*Cisco Systems, Inc.*