IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>                Defendant. | Case No. 2:18-cv-00094-EWH-LRL |

**CISCO SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR LEAVE TO SUPPLEMENT THE RECORD**

Defendant Cisco Systems, Inc. ("Cisco") respectfully submits this memorandum of law in support of its motion for leave to supplement the record to ensure that the Court has at its disposal (1) documents that came into existence after the close of the prior trial that contain statements Centripetal made in proceedings before the United States Patent and Trademark Office regarding certain of the asserted patents, which legally estop Centripetal from making contrary arguments regarding the scope of the asserted claims; and (2) the full versions of certain trial exhibits made available to the Court and the witnesses during the prior trial proceedings, and which the Court may and should now make part of the record.

Copies of the supplemental material are attached to the Declaration of Matthew Gaudet, filed contemporaneously herewith. The following three categories of documents from reexamination proceedings all came into existence after the close of the trial:

- The sworn declaration of Centripetal's Chief Technology Officer, Dr. Sean Moore, submitted as Exhibit 2028 to Centripetal's January 25, 2021 Response to Non-Final Office Action in the '193 Patent *Ex Parte* Reexamination (No. 90/014,476), which was not filed until January 25, 2021 (Gaudet Declaration ("Gaudet Dec.") Ex. 1);

- The relevant papers from an *inter partes* review (IPR) filed by another defendant, Palo Alto Networks (PAN), against the '176 Patent, namely PAN's Petition, Centripetal's Preliminary Response (Gaudet Dec. Ex. 3), and the Board's Institution Decision in that proceeding (IPR2021-01521), the earliest of which was not filed until September 15, 2021 (Gaudet Dec. Ex. 4); and

- The relevant papers from an IPR filed by PAN (and later joined by Cisco) against the '856 Patent, namely Centripetal's Patent Owner Preliminary Response, Centripetal's Patent Owner Response, Centripetal's Sur-Reply, the transcript of the Oral Hearing in that proceeding (IPR2022-0182), and the Patent Office's Final Written Decision invalidating all challenged claims (including the two claims asserted in this case), the earliest of which was not filed until August 26, 2022 (Gaudet Dec. Exs. 5-9).

Additionally, Cisco seeks to supplement the record with a complete copy of Centripetal's Patent Owner Preliminary Response in IPR2018-01559 (challenging the validity of the '193 Patent), which will render DTX-369 complete. (Gaudet Dec. Ex. 2). Due to Judge Morgan's instructions to limit the amount of paper formally admitted as exhibits, DTX-369 currently includes only 3 excepted pages from the document (pages 7, 18, and 21), even though the entire exhibit was available to the Court during the prior trial and is relevant to the remand proceedings.

As part of the meet-and-confer process regarding stipulations, as directed by the Court's March 7, 2023 Order, Dkt. 682 at 1, Centripetal declined to stipulate to these supplementations. Cisco therefore files this motion.

As shown below, these materials are relevant to Centripetal's claims and will assist the Court in its review of the record.

## I. LEGAL STANDARD

In these Rule 63 proceedings, the Court has discretion to supplement the record. "The judge to whom the case is assigned on remand may be able to make new findings of facts and conclusions of law on the existing record. The record may be supplemented at [the Court's] discretion." *Golf City Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 438 n. 20 (5th Cir. 1977); *see also In re Karten*, 293 F. App'x 734, 736 (11th Cir. 2008) ("[A] successor judge hearing a case

on remand, after the original judge has stepped down, may make findings of fact and conclusions of law on the existing record or the record as supplemented, or may choose to grant a new trial, at his discretion."); *Rewis v. United States*, 445 F.2d 1303, 1306 (5th Cir. 1971) (the district court is permitted to make findings "upon the record of evidence now before the court, or the district court in its discretion, may reopen the case for the development of further evidence").

## II. ARGUMENT

### A. The Court Should Admit Into Evidence Documents Created After the Prior Trial That Contain Relevant Statements by Centripetal in Reexamination and IPR Proceedings

#### 1. Centripetal's Statements to the Patent Office Legally Estop Centripetal From Making Contrary Arguments In This Proceeding

Centripetal's statements to the Patent Office are highly relevant, as they can estop Centripetal from making contrary arguments as to the scope of the claims. "Prosecution disclaimer 'precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution.'" *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)). "Ultimately, the doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.'" *Id.* at 1360 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995)). "This doctrine is deeply rooted in Supreme Court precedent" and "has become 'a fundamental precept in our claim construction jurisprudence,' which 'promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution.'" *Id.* (quoting *Omega Eng'g*, 334 F.3d at 1323-24).

The doctrine of prosecution disclaimer has been extended to "reexamination proceedings" and to "IPR proceedings before the PTO." *Aylus*, 856 F.3d at 1360. "Extending the prosecution

disclaimer doctrine to IPR proceedings … ensure[s] that claims are not argued one way in order to maintain their patentability and in a different way against accused infringers." *Id.* This doctrine equally applies to statements made by the patentee to the Patent Office (including the Patent Trial and Appeal Board ("Board")), whether made before or after an institution decision. *Id.* ("Aylus next argues that its statements were not part of an IPR proceeding because they were made in a preliminary response before the Board issued its institution decision. We disagree.").

The question of claim scope – i.e., the legal scope of the claims of Centripetal's patents – was one of the contested points throughout the trial. Cisco contended that Centripetal's infringement positions were based on interpretations of the claims that far exceeded their proper legal scope, which is a question for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) ("the construction of a patent claim is a matter of law exclusively for the court"); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.") Accordingly, both sides presented arguments to the Court about the scope of the claims, as described below.

In resolving these disputes, the Court should have the full benefit of Centripetal's post-trial statements to the Patent Office. This will ensure that Centripetal does not argue one way in an attempt to maintain the patentability of the claims, but a different way when asserting its infringement case against Cisco. *See also Centripetal Networks, Inc. v. Keysight Techs., Inc.*, 2:22-cv-00002-EWH-DEM, Dkt. 57, at 9 (granting motion to stay pending ITC action; the ITC "record will assist the Court with claim construction regarding any common terms and will potentially inform this Court's analysis regarding invalidity or non-infringement defenses for the two non-instituted but related patents."). The Court has already noted the potential relevance of

4

reexamination materials during the hearing on Cisco's Motion for Partial Stay of the Case, stating that "if the PTAB does issue its final written decision by [May 25th], then the parties would have the benefit of that decision before they proceed before me."  Tr. of Jan. 25, 2023 Hearing, at 12-13; *see also* Dkt. 665 at 4 & n. 2.

### 2. The Three Sets of Documents From Reexamination and IPR Proceedings

The record should be supplemented with specific documents from three agency proceedings, all of which were filed after the prior trial in this case, as set forth below.

#### a. '193 Patent Reexamination

The first category of documents relates to post-trial statements made by Centripetal's CTO, Dr. Sean Moore, in a sworn declaration that Centripetal submitted during the *ex parte* reexamination of U.S. Patent No. 9,686,193 ("the '193 Patent") after the prior trial.  *See* Gaudet Dec. Ex. 1.  On March 19, 2020, Cisco filed an *ex parte* reexamination of claims 18-19 of the '193 Patent.  On May 1, 2020, the Patent Office issued an Ex Parte Reexamination Order Pursuant to 35 U.S.C. 257 (the "August 2020 Order"), which ordered reexamination of all claims, *i.e.*, claims 1-20.  All claims of Centripetal's '193 Patent were rejected in an initial office action on September 23, 2020.

Centripetal filed a 34-page Response to the Patent Office's non-final office action on January 25, 2021, and concurrently filed several exhibits, including Ex. 2028, which is the sworn declaration of Dr. Moore, who is also one of the named inventors for the '193 Patent.  Gaudet Dec. Ex. 1.  In this declaration, Dr. Moore distinguished prior art exfiltration solutions in a manner that directly contradicts how Centripetal attempts to apply the '193 Patent claims to the accused Cisco products.  *Id.* at ¶ 11.  The Federal Circuit has found that statements made in a witness declaration in support of a patentee's reexamination arguments are part of the intrinsic record just like any

5

other statements by the patentee to the Patent Office. *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266-1267 (Fed. Cir. 2012) (cited in the *Aylus* case). Here, Dr. Moore distinguished the prior art from the patent in the same way that Cisco distinguishes its accused products from the patent. Dr. Moore swore that "prior attempts by others to prevent data exfiltration were often too coarse or overbroad because they would simply block *all* traffic *to/from a given network*, regardless of the actual threat, resulting in negative impact to the subject computer network and ultimately to business operations." Gaudet Dec. Ex. 1 at ¶ 11. As Cisco has shown, this limitation on claim scope is also the reason that Cisco's accused quarantine rules are not covered by the '193 Patent claims. Trial Transcript ("Tr.") 2377:2-10, 2356:19-2357:20, 2398:7-2400:10, 2385:21-2387:13 and 2423:17-2424:15.

### b. PAN's IPR Regarding The '176 Patent

After the prior trial in this case, PAN filed an IPR challenging the '176 Patent, among other patents. In opposing institution of the IPR, Centripetal made detailed arguments regarding the scope of the '176 Patent to oppose the institution of the IPR. *See* Gaudet Dec. Ex. 3, Prelim. Resp. IPR2021-01521, pp. 42-47. Centripetal focused on the "correlation" requirements of the claims and argued that, while the prior art ("Paxton" and "Sutton") would correlate packet communications across a network device to identify the true source of malicious communications, the prior art system took corrective actions ***only*** in response to detecting malicious activity, not in response to packet correlation:

> Paxton discloses identifying "the true source of packet transmission through a boundary" and "utiliz[ing its] technique to attribute malicious activity sensed at the edge of a network back to its original source." *Id*. . . . This technique does not involve generating rules to identify packets received from a host and provisioning the rules "responsive to the correlating."

Gaudet Dec. Ex. 3 at 45-46.

> [PAN's] reliance on Sutton fares no better. Sutton does not mention whatsoever correlating packets, much less taking remedial steps responsive to the correlating. Rather, Sutton takes remedial steps, e.g., taking corrective actions, based upon determining that a device is potentially infected with malicious software code. . . .

*Id.* at 46.

In response to these arguments, the Board denied institution of the IPR and held that PAN did not establish that the prior art's

> **rules would be based on the correlation and not on the detection of malicious activity**. *See, e.g.*, Ex. 1007, 3:1–23 (discussing taking corrective actions **based on threat classifications** such as violating, nonviolating, neutral, and unknown).

Gaudet Dec. Ex. 4, Denial of Institution (IPR2021-01521), March 24, 2022, at p. 18.

Centripetal's successful argument limiting the '176 Patent's claim scope again tracks a key non-infringement argument Cisco presented during the prior trial. Tr. 2248:1-4, 2260:10-2268:19, 2269:4-22, 2271:6-19. Just as the lack of "rules . . . based on the correlation" was fatal to PAN's invalidity case in the IPR, it is also fatal to Centripetal's infringement case against Cisco.

        **c.**    **PAN's IPR Regarding The '856 Patent**

After the prior trial in this case, PAN also filed an IPR petition challenging claims 1, 24 and 25 of the '856 Patent. *See* IPR2022-00182, Paper 2. On May 23, 2023, the Patent Office issued a Final Written Decision invalidating all challenged claims, which includes the two claims asserted in this case. Dkt. 686 at Ex. 1; also attached to Gaudet Dec., Ex. 9.

In attempting to save its patent in the IPR, Centripetal made several arguments regarding the meaning and scope of the '856 Patent claims, both when unsuccessfully opposing institution of the IPR and then in responding to PAN's IPR petition and the Board's institution decision. These arguments appear in Centripetal's August 26, 2022 Patent Owner Response (Gaudet Dec. Ex. 6), its October 7, 2022 Patent Owner Preliminary Response (Gaudet Dec. Ex. 5), its December 30, 2022 Patent Owner Sur-Reply (Gaudet Dec. Ex. 7), and at the February 15, 2023, Oral Hearing

(Gaudet Dec. Ex. 8). Specifically, Centripetal's arguments opposing the IPR confirm that the *same* encrypted packets that are determined to correspond to network threats must also be the ones that are the subject of the "filtering" step. *See* Gaudet Dec. Ex. 6 (8-22-2022 POR) at p. 43; *see also* Gaudet Dec. Ex. 5 (10-7-2022 POPR) at p. 43. This is a key point on which Cisco relied at trial to establish non-infringement. Tr. 1914:24-1918:5, 1906:5-1907:22 (discussing PTX-989 at 033), 1909:1-1910:24, 1066:2-6, 1078:7-18, 1672:19-1673:5, 1685:24-1686:23, 1688:16-25, 2207:5-24, 2202:20-2203:7. Centripetal is estopped from taking a contrary position in this case.

Additionally, Centripetal argued to the Patent Office that the "filtering" requirement in the claims is not met by filtering based on "5-tuple" information in packet headers, nor by simply filtering every packet in the same encrypted session in the same way. Gaudet Dec. Ex. 5 (10-7-2022 POPR) at p. 34, 44; *see also* Gaudet Dec. Ex. 6 (8-22-2022 POR) at p. 32; Gaudet Dec. Ex. 7 (12-30-2022 Sur-Reply) at pp. 2, 5, 7-8; Gaudet Dec. Ex. 8 (Transcript to of 2-15-2023 Oral Hearing) at 58:24-62:2. If Centripetal's arguments succeed in distinguishing the prior art, then this Court should adopt, as a matter of claim construction, this same requirement to prove infringement, in which case Centripetal must show how Cisco's products satisfy it.[1]

**B. The Court Should Have The Benefit Of The Entire '193 Patent Owner Preliminary Response Document—Not Just The Admitted Excerpts—Just As Judge Morgan Did**

At the final pre-trial conference, Judge Morgan noted that, in the case of lengthy exhibits, the parties were to only admit those pages that were specifically discussed during the testimony,

---

[1] In the prior trial, Centripetal never showed that the accused system "filters" the *same* encrypted packets that it previously determined to correspond to network threats, nor did Centripetal ever show "filtering" of *any packets* by the accused combination of products based on anything other than packet header information.

8

and opposing counsel would then have the opportunity to add additional pages if necessary for completeness.  Transcript of April 23, 2020 Hearing, at 16-17.

Pursuant to the agreed protocols set forth in the Final Pretrial Order, two calendar days before the start of the trial day on which an exhibit was to be offered, the parties identified the exhibits to be used on direct examination with the live witnesses.  Dkt. 411, at 7.  Following any necessary meet and confers, the parties delivered exhibits to the Court that they anticipated using on direct examination the morning of the direct examination in the form of a witness binder.  *Id.*  Similarly, the parties delivered to the Court that same morning those exhibits that they anticipated using on cross-examination.  *Id.* at 7-8.

The witness binders provided by the parties to the Court included the full versions of the documents exchanged and identified on the parties' trial exhibit list, not just the excerpts that were ultimately admitted into evidence.  *See* Tr. at 366:22-367:2 (noting that the witness binder had "I don't know how many pages …"), 412:3-9 ("I think the idea was — some of that is the background information that's provided in there, and it may be we need to excerpt out of some of the exhibits.  Because what's included in your binder is the complete exhibit that was referenced during the deposition testimony, but we could excerpt that for you and reduce down the size.").  The Court, however, only admitted into evidence the pages specifically discussed by a witness at trial.  *See*, *e.g.*, Tr. at 1830:12-1832:10 (admitting only two pages of prosecution history for DTX-3).

Because of this procedure, there are certain documents for which only small excerpts were provided, but for which the full document provides important context for issues in dispute and that will aid the Court in its review of the proceedings and ultimately its decision-making.

One such exhibit is DTX-369, which is Centripetal's Patent Owner Preliminary Response in IPR2018-01559 (regarding the validity of the '193 Patent).  Gaudet Dec. Ex. 2.  During the

9

original trial the Court admitted pages 7, 18, and 21 from DTX-369, which were the specific ages referenced by number by Cisco's expert Dr. Crovella.  Tr. 2375:2-2377:10, 2386:12-2387:13, and 2424:21-2426:21.  As set forth in the Trial Brief and Findings of Fact & Conclusions of Law, these three pages are sufficient to be dispositive in this case, but other pages confirm that Centripetal repeatedly made arguments to the Patent Office as to what the asserted claims of the '193 Patent require, and those arguments are directly at odds with what Centripetal tried to prove at trial.  The Court should admit this entire exhibit now, so that the Court may review Centripetal's arguments to the Patent Office regarding the scope of its own patent, in full context.

Dated:  May 25, 2023                                      CISCO SYSTEMS, INC.


By:_____/s/_____
         Of Counsel

Dabney J. Carr, IV, VSB No. 28679
**TROUTMAN PEPPER**
  **HAMILTON SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutman.com

Charles K. Seyfarth, VSB No. 44530
**O'HAGAN MEYER**
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7137
Facsimile: (804) 237-0250
cseyfarth@ohaganmeyer.com

Louis N. Jameson (admitted pro hac vice)
Matthew C. Gaudet (admitted pro hac vice)
John R. Gibson, VSB No. 72968
Alice E. Snedeker (admitted pro hac vice)
**DUANE MORRIS, LLP**
1075 Peachtree Street, N.E., Suite 1700
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900

Facsimile: (404) 253-6901
wjameson@duanemorris.com
mcgaudet@duanemorris.com
jrgibson@duanemorris.com
aesnedeker@duanemorris.com

Joseph A. Powers (admitted pro hac vice)
**DUANE MORRIS, LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 689-3797
japowers@duanemorris.com

John M. Baird, VSB No. 77827
Christopher J. Tyson, VSB No. 81553
**DUANE MORRIS, LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620
cjtyson@duanemorris.com

*Attorneys for Defendant*
*Cisco Systems, Inc.*