```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                        Norfolk Division

 3   - - - - - - - - - - - - - - - - - -
                                        )
 4     CENTRIPETAL NETWORKS, INC.,       )
                                        )
 5            Plaintiff,                 )    CIVIL ACTION NO.
                                        )    2:18cv94
 6     v.                                )
                                        )
 7     CISCO SYSTEMS, INC.,              )
                                        )
 8            Defendant.                 )
     - - - - - - - - - - - - - - - - - -
 9
                     TRANSCRIPT OF PROCEEDINGS (Via Zoom)
10
                           Norfolk, Virginia
11
                            June 7, 2023
12

13   BEFORE:  THE HONORABLE ELIZABETH W. HANES
              United States District Judge
14

15   APPEARANCES:

16              KAUFMAN & CANOLES, P.C.
                By:  Stephen E. Noona
17                        And
                KRAMER LEVIN NAFTALIS & FRANKEL LLP
18              By:  Paul J. Andre
                     Lisa Kobialka
19                   James R. Hannah
                     Counsel for the Plaintiff
20
                TROUTMAN SANDERS LLP
21              By:  Dabney J. Carr, IV
                          And
22              DUANE MORRIS, LLP
                By:  Louis N. Jameson
23                   Alice E. Snedeker
                     Matthew C. Gaudet
24                        And
                O'HAGAN MEYER PLLC
25              By:  Charles K. Seyfarth
                     Counsel for the Defendant
```

```
 1              (Hearing commenced at 3:34 p.m.)

 2              THE COURT:  Good afternoon, everyone.  I can see

 3     everybody.

 4              Madam clerk, will your call our next matter.

 5              THE CLERK:  Civil action number 2:18cv94,

 6     Centripetal Networks, Inc., versus Cisco Systems, Inc.

 7              Ms. Kobialka, is the plaintiff ready to proceed?

 8              MS. KOBIALKA:  Yes, Your Honor.  And I wanted to

 9     note that our local counsel hasn't shown up yet.  It looks

10     like he's just logged on.  Never mind.  So I think we are

11     all set and ready to go.  Thank you.

12              THE COURT:  All right.  Thank you.  Good afternoon

13     to you all.

14              THE CLERK:  Mr. Jameson, is the defendant ready to

15     proceed?

16              MR. JAMESON:  Yes, Your Honor.

17              THE COURT:  All right.  Good afternoon,

18     Mr. Jameson.

19              MR. JAMESON:  Good afternoon.

20              THE COURT:  Let me first ask, who will be speaking

21     for Centripetal?

22              MS. KOBIALKA:  Lisa Kobialka.  I will be.

23              THE COURT:  Kobialka is how you say your last name?

24     All right.

25              MS. KOBIALKA:  That's correct.
```

1          THE COURT:  Mr. Andre is here.  I was going to have
2    you tell him that I missed him today, but I see that he's on
3    the call.
4          Then for Cisco?
5          MR. JAMESON:  Your Honor, Woody Jameson is speaking
6    on behalf of Cisco.
7          THE COURT:  All right.  Then I understand, I think
8    Centripetal, you indicated that you may have some initial
9    issues that you want to address.
10          MS. KOBIALKA:  It's actually towards the end, just
11    a procedural matter, and if you like, I can just address
12    that briefly right now.
13          THE COURT:  That's okay.  There are some other
14    procedural matters that I think we will need to take up at
15    the end of this call, so we will handle that then.
16          So we are here today on Cisco's motion to sever and
17    stay the case as to the '856 patent that was filed at
18    ECF 687.  I considered and denied a similar partial stay
19    motion in January, and really, effectively, Cisco's renewing
20    their motion but is also seeking severance because of the
21    recent final written decision issued by the Patent Trial and
22    Appeal Board, finding that all the '856 patent claims are
23    unpatentable, and this does include Claims 24 and 25, which
24    were both asserted by Centripetal in their trial held before
25    Judge Morgan.

1          I did grant expedited briefing on this motion given

2     the limited time between now and our Rule 63 hearing.  I do

3     want to try to rule orally on the motion this afternoon for

4     that same reason.

5          I have received your briefing, read it, as well as

6     the cases that you cite, and your exhibits.  I'm happy to

7     hear from you if there is some additional argument you want

8     to make.  So I'll do that now.

9          Mr. Jameson.

10         MR. JAMESON:  Yeah, Your Honor.  I'm not going to

11    repeat all the arguments in our briefing.  I think our

12    position is pretty well laid out.  I would just like to make

13    maybe a couple of big-picture observations.  The landscape

14    has obviously changed dramatically since we filed our

15    original motion to stay.

16         The argument against that motion was it was

17    speculative as to what might happen in front of the patent

18    office.  Now we know that the agency that actually issued

19    the patent has now said that that patent is invalid, and we

20    think that that is obviously a substantial factor in

21    evaluating whether to sever and stay the case.

22         The other observation I would make, and it's

23    related to the first point, and it really goes to in

24    evaluating whether to stay the case, it's the deference that

25    the Court may give to the patent office's specialized

1    expertise in this field.  That is not played up in the

2    briefing, but it was noted by Judge Schroeder in the *Motion*

3    *Games* case out of the Eastern District of Texas, which we

4    cited in the briefing.  It was quoted in our opening brief

5    that, "There comes a point at which any prejudice to the

6    plaintiff in staying the litigation is significantly

7    outweighed by a determination that patent claims are invalid

8    by the 'expert agency' in the field.  Typically, at that

9    point, any further expenditure of party or judicial

10    resources on invalid claims is unwise," and that's basically

11    our position in this case.

12         I would also note that in the *Virginia Innovation*

13    case, Judge Davis actually has a section in his opinion that

14    discusses the deference of the PTAB decisions, and that's at

15    983 F.Supp.2d 764, and he basically makes the same point

16    that Judge Schroeder did.  He talks about only the patent

17    office can issue patents.  District courts can't issue

18    patents.  And as a result of that, he states, "The Court

19    therefore generally gives deference to final PTO decisions,

20    based in part on the PTO's specialized knowledge and

21    expertise."

22         Against that backdrop, I want to briefly just talk

23    about prejudice.  The parties can fight about who has been

24    prejudiced in this case.  I would argue that we have been

25    prejudiced by having to defend against 11 patents, eight of

1    which have now been found invalid.  Centripetal argued that

2    they were being prejudiced by the possible stay when we

3    didn't know what the patent office was going to do several

4    months ago.

5          But now we have a different situation, and we have

6    been fighting and expending resources litigating against a

7    patent, the '856 patent, for a long time.  That patent is

8    now invalid, and the idea that we have continued litigating

9    against a patent that is now invalid, to me, is about as big

10   a prejudice as you could find on the scale of that issue.  I

11   just wanted to point that out.

12         Otherwise, you know, absent questions from you,

13   again, I think the briefing lays out our position fairly

14   well.

15         THE COURT:  Thank you, Mr. Jameson.  I agree it is

16   laid out pretty well.

17         Ms. Kobialka.  I'm sorry.  I didn't get it right

18   this time, but I will try.

19         MS. KOBIALKA:  No, it's very close.  It's very

20   good.  Yeah, I'd like to just take on head-on the law issue.

21   There is no law where we have this particular situation,

22   where we actually have a complete trial already done, right.

23   At this point all we are really talking about is a Rule 63

24   hearing with very limited parameters around it.  And so, you

25   know, this is very different from all the cases that were

1  cited, because it just doesn't exist.  There is nothing else

2  in the law there.  So I really think that that is an

3  important point to make because they cite to a lot of cases,

4  they distinguish it, but in reality, we don't have anything

5  that squarely fits where we are.  As much as you want to

6  talk about that PTAB has made certain determinations and

7  certain claims, the entire patent '856 is not invalid.

8  There are certain claims based on the written final decision

9  that's out there.  The law stands that there is no

10  collateral estoppel effect until this is all confirmed on

11  appeal, it is not done yet.  The law is not in Cisco's favor

12  on that particular point.

13         I do think it's very important to address the

14  prejudice, because this delay is significant to Centripetal,

15  and when you have a situation where justice has been denied

16  and justice is delayed, you've effectively given Centripetal

17  no ability to have its complete day in court and remedy for

18  all that has occurred.  This case was filed on February

19  20th, 2018, so that is over five years ago.

20         The idea that, you know, Centripetal had brought

21  this case that many years ago, faced numerous hurdles with

22  respect to the various patents, went through an entire

23  costly and very time-consuming trial and an appeal, and it

24  was brought down on a conflict issue, somehow means now we

25  get to piecemeal this one additional patent, and there is

 1   that risk.  There is a risk that it's not going to be

 2   confirmed on appeal by the Federal Circuit because this

 3   particular IPR, unlike really all the other ones and all the

 4   statistics that we have looked at, is very different.

 5         You know, the history behind the IPRs, and this --

 6   in particular this '856 IPR, is a significant one because

 7   here we had Cisco, who had a chance to file an IPR, and they

 8   didn't for the '856 when the litigation was ongoing.

 9         Only after there was the Cisco judgment by Judge

10   Morgan was there an IPR filed on the patent, but that was

11   filed by *Palo Alto Networks*.  Now, *Palo Alto Networks* has no

12   interest in this patent, so the only beneficiary to making

13   some sort of a determination regarding validity on the '856

14   is Cisco.  Cisco moved to join that IPR because it was now

15   time barred by statute, so it didn't have the ability to

16   pursue an IPR.  And around the same time Centripetal learned

17   that one of the law judges owned stocked of up to $15,000.

18   If it owned more than $15,000, by the way, it would be a

19   crime.  It's actually a criminal penalty that's applied to

20   it.

21         So here we have a situation, sort of unlike any

22   others, where we have Centripetal, who's judgment was wiped

23   out due to Judge Morgan's wife's ownership of stock and the

24   blind trust not being sufficient, and the judgment was

25   contrary to his own ownership interest where you have an

1 APJ, so an Administrative Patent Judge, who knowingly had

2 the stock, was issuing determinations in favor of his own

3 interest before he recused himself and did all this while

4 the motion to recuse was on file.

5     I don't think that that set of facts fits squarely

6 within any of the cases or the statistics, and if there was

7 ever a party who had a right to raise this particular issue

8 of a conflict, it's Centripetal, given what has happened.

9     So I think it's important to keep all of that in

10 perspective, and so the idea of the deference to the PTAB

11 and things like that, I don't think really apply here given

12 what we have going, which is we are going to go and complete

13 the Rule 63 hearing on at least three patents.  There isn't

14 that much more to do.

15     I don't want to minimize the Court's work in having

16 to write, you know, an opinion regarding the '856 patent.  I

17 recognize that, but there is real benefits to trying to do

18 that all at one time, wrap it up and hand the case over to

19 the Federal Circuit so it goes from your docket onto the

20 Federal Circuit's docket because, as you can tell, this will

21 probably get appealed again.

22     THE COURT:  That, I'm certain of.  Well, thank you

23 for your argument.  Let me first just discuss the motion to

24 stay.  We've talked about this more than once, and you all

25 know that there are three factors that I need to consider,

1   and I'll go through each of those.  As to the stage of the

2   litigation, I said this in January, and I think it's true,

3   that the stage of litigation here has advanced given that a

4   trial has already been conducted.  The '856 patent claims at

5   issue were litigated in that trial, and I would find, as I

6   did then, that factor does weigh against granting the stay

7   that's requested by Cisco.

8          I also have to consider the simplification of the

9   issue, and I do agree with Centripetal on this point, which

10  is, I think it is difficult to compare this case to any

11  other case that either of the parties cited because the

12  facts of this case, the posture of this case are so unique

13  that it's difficult to look at other cases and use that as a

14  guide for what should happen in this, especially as it

15  relates to simplification of the issues.  But I will find

16  that because the '856 patent claims have been invalidated by

17  the patent office, that the simplification factor does weigh

18  in favor of granting the stay at this point, given the facts

19  of this case specifically.

20         Centripetal has argued before me in other cases

21  that the affirmance rate by the Federal Circuit of decisions

22  of the PTAB is above 75 percent, and I think that is

23  relevant here.  I have read some of the arguments that

24  Centripetal's made before the Federal Circuit regarding

25  their appeal and their objections and the conflict that they

1    allege relating to the PTAB proceedings, but I think the

2    fact that it is a 75 affirmance rate is very important.

3           If it is affirmed on appeal, then the '856 patent

4    claims drop out of this case completely, and that is a

5    different degree of simplification than what I had to

6    consider in January.  If I do not stay as it relates to the

7    '856 patent, there is a significant risk that the parties

8    and the Court will expend significant resources deciding

9    issues that later become moot.

10          Certainly, I think Cisco tried to point out the

11   multiple legal issues that may arise if this isn't stayed,

12   and I suspect Centripetal disagrees that I would need to

13   decide some of those issues.  But even considering just the

14   issues that I would need to decide at the Rule 53 hearing,

15   certainly there is significant simplification if I don't

16   have to consider the '856 patent claims.

17          I have recognized in the past that this case does

18   involve overlapping technologies, and I think that's

19   accurate, but, nevertheless, I find that the potential

20   streamlining to be outweighed by the risk of additional work

21   on the '856 patent, that simply just goes out the door if

22   the PTAB decision is affirmed.  So I do find that

23   simplification weighs in favor of granting the stay.

24          I do have to also consider prejudice, and I find

25   this is fairly neutral, and, frankly, I think Centripetal

 1   thinks of this in somewhat of kind of the wrong way, because

 2   at this point an expert body, being the PTAB, has found that

 3   the asserted '856 patent claims are unpatentable, and so

 4   there is some chance that that could be reversed on appeal.

 5   But I don't see how the failure to move forward on

 6   adjudicating the '856 patent prejudices Centripetal.  The

 7   delay really is the delay caused by the PTAB decision and

 8   the appeal, and that would create delay regardless of what I

 9   do here.

10           So the delay relates to that, not so much anything

11   that I do here.  I also would recognize that if the appeal

12   is successful, I wouldn't need to then hold another Rule 63

13   hearing, and certainly that would entail some costs, but I

14   have to look at also how the parties have presented the

15   upcoming Rule 63 hearing, the fact that it currently would

16   only involve one witness, the speed at which we were able to

17   set the upcoming Rule 63 hearing.

18           So I don't find that there would be significant

19   prejudice at that stage.  I also think I would be proceeding

20   with the benefit of having already conducted the upcoming

21   Rule 63 hearing, having considered the arguments of the

22   parties, and, therefore, could deal with any remanded claim

23   fairly quickly.  So based on all of that, I find that the

24   totality of the circumstances weigh in favor of granting the

25   partial stay requested by Cisco, and so to the degree that

1    your motion requests that, it will be granted.

2           You did also request severance, and I'll just touch

3    on that very briefly.  I do not think severance is

4    appropriate.  There is a presumption against severance.

5    There was already a trial in this case, and the '856 patent

6    claims were tried alongside the other patents.

7           Cisco has not requested severance prior to this

8    date, and really I don't see that there is a sufficient

9    differentiation between the issues, the witnesses.  You look

10   at each of the elements that are related to severance.  One,

11   I don't really think that the argument was presented, but

12   even if I considered the argument that was presented, I

13   don't think there is a basis to sever in this case, and so

14   to the extent that that was requested, I'll deny that

15   portion of Cisco's motion.

16          I do need to talk to you all about some other

17   things, and so let me first, I've reviewed a substantial

18   portion of the transcripts as well as some of the exhibits.

19   Based on my review, we requested of Centripetal, through

20   your local counsel, copies of the trial transcripts, a copy

21   of the exhibits, and two copies of the witness-specific

22   binders.  I have not yet received those, and I'm

23   definitely going to order to have them by Friday.  Let me

24   just flag for you in part why.

25          There are some exhibits, and I'm not a hundred

1    percent confident that the exhibits that the Court has is

2    complete, and so I think there may be exhibits that are

3    missing or instances where, for example, I only have a cover

4    page of an exhibit and not the subsequent pages.  So, for

5    example, Exhibit PTX231, the copy that I have is only a

6    cover page and not anything else as part of the document.

7            I know in part Cisco has asked to supplement.

8    Setting that issue aside just momentarily, this is different

9    than that, and so my concern is I want to be 100 percent

10   confident that I have a complete and accurate copy of the

11   exhibits, and I cannot say with certainty that that is what

12   I have right now.  So I do need a complete copy of that.

13           There is separately numerous instances in which

14   there were references within the transcript to things that I

15   also don't have, which were not exhibits.  So, for example,

16   five presentations, demonstrative exhibits.  There were

17   videos of depositions, for example, relating to PTX1910.  So

18   we have the transcript, but also the videos were played.  I

19   would prefer to look at the videos, and I don't have those.

20           So I know that those are not in the record, but

21   Judge Morgan reviewed those, and they are also referenced

22   fairly significantly in some of the witness testimonies, and

23   so I think it would be preferable that I have those

24   available to me so I can go back and check them.

25           Then a separate issue would be there were, I

1   believe, deposition binders and exhibit binders by a witness

2   and then also summaries of points of law that each side

3   intended to present through each witness that were presented

4   to Judge Morgan at the beginning of each morning.  I don't

5   have those either, and so, frankly, that's something I

6   would have thought you guys would have given me already, but

7   I don't have it.

8           Let me just ask, I don't know who really would be

9   the person to answer this, but what I'm going to do is order

10  that I get them by Friday, but if you anticipate that there

11  is some issue, I guess let's talk about that.

12          Mr. Noona, you took yourself off mute, so looks

13  like you might be the person.

14          MR. NOONA:  I did, because I'm not sure.  You

15  indicated that I'd been asked to provide certain specific

16  things.  I know that the lead counsel has asked if certain

17  things existed, and we checked with chambers to see if they

18  had it, but I'm going to have to go back.  I apologize.  I

19  don't specifically have a request, and I was trying to look

20  at my e-mails for this stuff, but we will definitely get

21  what we have to you.

22          I know there was a question as to whether

23  demonstratives still existed because they were tendered each

24  morning, and, of course, Lori is no longer with the Court,

25  and we checked with your clerk on that as well to see, you

1    know, if those things were available and around.  I

2    understood that the exhibits were present, the transcript

3    was present, and this is the first I'm hearing of the video

4    depositions and some of the other things that you may be

5    missing.

6              But we will go to work, and if we have them, we

7    will certainly provide them to you.

8              THE COURT:  So I just want to say one more time, so

9    there is no miscommunication, what I understood we had asked

10   for were two copies of the trial transcript, preferably

11   double-sided, probably, frankly, at this point two copies of

12   the exhibits.  We had asked for that.  Then I think there is

13   a category of non-court records, meaning non-exhibits and

14   non-transcripts that I think the Court likely would have

15   never retained, like demonstratives or slide presentations

16   and the videos of the depositions.  That, I think, we will

17   also need.

18             I neglected to say this previously, there is a

19   couple of instances where the deposition excerpts were not

20   read into the record, and so clearly Judge Morgan had a copy

21   of the deposition, he turned to it, and at some point he

22   read that for impeachment purposes, but it wasn't read into

23   the record, and so I don't have that available to me either.

24   Then that separate category would be the things that you

25   provided to Judge Morgan close in time to the trial to

1    assist him as witnesses testified.

2          MR. JAMESON:  Your Honor, Woody Jameson.  On that

3    last category, do you want two copies of all of that as well

4    or just one copy?

5          THE COURT:  Of the demonstratives and the slide

6    presentations, those things?

7          MR. JAMESON:  Right.

8          THE COURT:  I'd say two.

9          MS. KOBIALKA:  May I ask a few questions?  So in

10   terms of things that were provided to Judge Morgan, those

11   included witness summaries.  He had requested that those be

12   provided before the witness went up.  So we can pull

13   together, I think, what we have on the demonstratives.  The

14   parties didn't necessarily exchange them, so I don't have

15   Cisco's demonstratives, and they don't have ours, if I'm

16   recalling correctly.  So would you like us to separately

17   submit those, or do it all at one time so you have a

18   complete set of the demonstratives?

19         THE COURT:  I think at this point I just want to

20   make sure I get them as soon as possible, and so I expect

21   that it will be simpler for you to separately submit them,

22   and that's fine.

23         MS. KOBIALKA:  And then on the exhibits, do you

24   want the complete exhibits, not just what was entered into

25   evidence?  I want to make sure because some of them were 500

1   pages along, so...

2         THE COURT:  Let me address that.  I understand that

3   this is partially addressed in Cisco's motion to supplement.

4   What I think would be simpler at this stage is that I get

5   one copy in a separate binder of the completed document, and

6   I know I'll need to rule on Cisco's motion, but that way

7   I'll have it, and it actually, I think, will assist me in

8   ruling in that motion so I'll understand what the

9   disagreement is, if any.  That's the one thing I do not need

10  two copies of.

11        MS. KOBIALKA:  All of the exhibits, right?

12        THE COURT:  The complete exhibit.

13        MS. KOBIALKA:  Okay.  So we will send one copy of

14  the exhibits.  I think that was all the questions that I

15  had.  We should be able to get that to you.  For the video

16  depositions, it's fine to put them on some sort of a drive

17  and submit those to the Court in that manner?  I think,

18  likewise, demonstratives may have had some animations in

19  them as well, so we can provide all of that at the same

20  time.

21        THE COURT:  Yes.  That would be fine.

22        MR. JAMESON:  Your Honor, I know we are doing this

23  real-time, but I was going to make a suggestion that Cisco

24  be responsible for all of its exhibits that it admitted, and

25  Centripetal be responsible for all of its exhibits that it

1    had admitted so that we don't inundate you with more than

2    you need, and that we will be responsible for our witness

3    statements, our demonstratives, any video that we entered

4    into the record, and I think that would probably be the most

5    efficient way of getting that to you.

6              THE COURT:  All right.  Centripetal, do you have

7    any objection to that?

8              MS. KOBIALKA:  On the exhibits, I think we've

9    already prepared all of the exhibits, so I can double-check

10   on that.  The other matters, though, is fine.  We will just

11   need to make sure that we do an exchange so we know what the

12   Court is getting, and likewise, but that's not a problem.

13             MR. JAMESON:  Sure.

14             THE COURT:  All right.  Do either of you have any

15   concern that you may not know, for example, what copies or

16   version was used at trial?  Is that a concern that you think

17   we will need to address?

18             MS. KOBIALKA:  Not for Centripetal.  That should

19   not be a concern for us.  We have double checked that issue.

20             MR. JAMESON:  Your Honor, I don't think that is

21   going to be an issue as well.

22             THE COURT:  All right.  Okay.  Were there other

23   housekeeping matters that you all needed to address?

24             MS. KOBIALKA:  The one other thing I wanted to

25   raise was, in Cisco's trial briefs that they filed last

1    Friday, they had mentioned a number of materials that were

2    not in the record and that are also not subject to their

3    motion to supplement the records, and so we wanted some

4    guidance on the best way to address that particular issue.

5         They made some references to different parts of

6    their prosecution history that are not part of the record,

7    for example, among some other things.  So we didn't know --

8    there is no real formal mechanism, as I understand it, to do

9    an objection.  I didn't know if you wanted us to go through

10   the whole motion to strike process or if there was some

11   other way just to alert you to that issue.

12        THE COURT:  Can you just give me an example?  You

13   mentioned one, but just state that again.

14        MS. KOBIALKA:  Sure.  So, for example, they have

15   cited to portions of their prosecution history in their

16   trial brief that are not part of the record.  They cited to,

17   you know, four or five pages that were not admitted in the

18   record.  In PTX1, for example, Pages 24 through 26 was

19   admitted, but they included it all the way through 30.

20   Those are the types of examples.  We have identified, you

21   know, at least, I think, three or four different documents

22   that they referenced in their trial brief.

23        THE COURT:  All right.  Mr. Jameson.

24        MR. JAMESON:  Your Honor, this is the first I'm

25   hearing of this, and so it's lacking context for me.  What I

1   don't know is whether we inadvertently included some

2   additional pages or we have a typo in by way of a cite.  I

3   really, this is lacking context, so I don't really know how

4   to respond.

5           THE COURT:  All right.  Let me ask this.  The

6   motion to supplement your response, is it due on Friday?

7           MS. KOBIALKA:  I believe Thursday, if I'm not

8   mistaken.  Yeah.

9           THE COURT:  I don't want to presume that.  It's

10  hard to answer your question.  I think what you need to do

11  is meet and confer.  Frankly, I mean, it may be that Cisco

12  then would move to supplement, and, frankly, I'd try to

13  streamline it and say, let's try to deal with any

14  supplementation at one time, it would be my goal, and maybe

15  it is inadvertent, we don't need to deal with it.

16          So I would say talk about it.  I'm going to have to

17  look at the motion to supplement regardless, and so I think

18  it would seem to me that it may be best to try to

19  incorporate it as it relates to that.  I understand you're

20  just a couple of days away from your response.

21          Frankly, I just ask you all to talk about it and

22  see if there is some resolution that can be reached before I

23  need to make a decision.

24          MS. KOBIALKA:  Okay.  And would it be possible if

25  we are not able to reach some sort of resolution that then

1    we work through the briefing schedule for that particular

2    motion, if we were to deal with it at one time?  So, you

3    know, I just raise that as a possibility as well.  I wanted

4    to make sure that that would be one of the ways to

5    appropriately deal with it.

6          THE COURT:  Would be through the briefing?  Is your

7    question, can you deal with it through the briefing or to

8    have additional briefing?

9          MS. KOBIALKA:  Correct, to deal with additional

10    briefing, and then we would have a little more time to

11    respond if, in fact, they did intend to try and supplement

12    the record with additional documents.  So you do it one

13    time, basically.

14          THE COURT:  I'd prefer it be handled at one time

15    because I suspect that the arguments are fairly similar, and

16    so it would seem to me that if you needed an extra day or so

17    to respond, that would be preferable from my standpoint than

18    doing a whole fresh set of briefing on a similar issue.

19          MS. KOBIALKA:  Thank you.  I understand.

20          THE COURT:  Okay.  Anything else?

21          MS. KOBIALKA:  Centripetal doesn't have anything

22    else.

23          THE COURT:  Mr. Jameson.

24          MR. JAMESON:  Your Honor, I didn't know, were you

25    going to turn to the hearing next or are you done from your

1    perspective?

2          THE COURT:  I am fairly done from my perspective.

3    Are there things really in the hearing you want to ask

4    about?

5          MR. JAMESON:  Well, just put an issue on the table.

6    The hearing is currently scheduled to begin on Thursday,

7    Thursday, Friday and then carry over to Monday, Tuesday.  I

8    didn't know if you had any thoughts at this point what a

9    given day may look like, and part of the reason why I'm

10   asking that relates to when we are going to call what is now

11   going to be our only witness at this point, Mike Scheck,

12   whether there were logical stopping points where you take

13   any information you want to think about before we go to the

14   next stopping points on these various patents, and what I

15   mean by that is, we could hypothetically do the tech

16   tutorials on Thursday, we could do witnesses on Friday, we

17   might do a Q&A on a given patent on Friday as well, take a

18   break, and then do more of it the following week.  We could

19   also just motor through non-stop from whatever your hours

20   are, and I just didn't know whether you had any thoughts on

21   that at this point.

22         THE COURT:  How long do you anticipate your

23   tutorial to be?

24         MR. JAMESON:  In light of your ruling, it's not

25   going to be nearly as long as what we thought it was going

1    to be because we are not going to be teaching encryption.

2    I'm going to actually turn this one over to Mr. Gaudet to

3    see if he is willing to make an educated guess at this

4    point.

5              MR. GAUDET:  Your Honor, good afternoon.  This is

6    Matt Gaudet.  I was the person at the podium guiding our

7    tutorialist last time, and I was on my feet for about two

8    and a half hours, I think, last time around.  So that's

9    probably somewhere in the ballpark.

10             THE COURT:  All right.  Centripetal, would you say

11   the same?

12             MS. KOBIALKA:  I think it would be, yeah, at least

13   that.  I need to double-check.  I think Paul Andre is on the

14   line.  He might know better.  So just as it got passed off

15   to Mr. Gaudet, I might pass it off to Mr. Andre.  He may

16   have --

17             MR. ANDRE:  Your Honor, this is Paul Andre.  I'm

18   sorry I'm not on camera; I'm not addressed appropriately.

19   I'm traveling today, so I'm in a Cracker Barrell parking

20   lot, of all places.

21             Anyway, that being said, I think two to three hours

22   would be appropriate as well.

23             THE COURT:  All right.  So typically given that,

24   what I likely would do is, we can plan to do the tutorials

25   on Thursday, and I suspect they would take up most of the

1    day.  So we will start at 10:00 on Thursday.  The only

2    caveat is if you all file a bunch of things I'm going to

3    have to deal with on Thursday, I might need you here a

4    little earlier than that.  Because I do want to do the

5    tutorials in their total on Thursday -- so that's my only

6    hesitation with that -- and then proceed to witness

7    testimony on Friday.

8         I suspect you all will want to make -- maybe this

9    isn't the case, but Mr. Jameson, I mean, kind of anticipated

10   that there would be some opening-like arguments,

11   closing-like arguments that we will need to work in.  But

12   generally I think the goal would be to take the rest of the

13   evidence on Friday.

14        In my mind, given that you only had one witness, I

15   had thought we probably could do everything we needed to do

16   on Friday.  Typically, I'd start at 9:30, go to about noon,

17   maybe take a quick morning break, take a one-hour lunch

18   break, start back up pretty quickly, and then take an

19   afternoon break and go until 5:00.  So that was my plan, and

20   certainly we have Monday and Tuesday available if necessary.

21   But I suspected that you all might not need Monday and

22   Tuesday given what you wanted to present thus far.

23        MR. JAMESON:  Your Honor, based on what we have

24   been preparing, and we are going to have to be -- I'm

25   totally going to be guided by you because our goal is to be

1    in a position to respond to the questions that you have on

2    Friday and Monday about these patents, and where we are

3    joining issue and those kinds of issues.

4          I actually could see that each module for our

5    patent could take some time to really walk through what the

6    evidence shows and what our positions are and really develop

7    those arguments for you, whether you call it a closing or

8    Q&A, or whatever it is.

9          So I think we are going to need Monday, in our

10   perfect world.  What we did last time, and I was thinking

11   that we were going to do again, is that after we put up the

12   witness testimony, that likely each side would take a few

13   minutes to kind of try to set the lay of the land as to

14   where we are and some big-picture dramatics, and then each

15   side would go back and forth and dive into the various

16   patents and present their arguments on the patents with

17   whatever questions Your Honor has.  Then at some point we

18   are going to get to the issues of willfulness and damages,

19   and those would be additional modules that we would have to

20   address.

21         So that's the approach we used last time.  If we

22   use that approach this time, I believe that we would be

23   working our way into Monday for sure.

24         THE COURT:  All right.  That's fine.  I've got

25   Monday and Tuesday.  It's blocked.  Frankly, I'm not trying

1    to rush you through.  You all are experts in your field, and

2    this is very complicated.  I don't have any problem with,

3    and I can see some benefit of, taking it patent by patent.

4           Let me ask you, Mr. Gaudet, sounds like this would

5    be your area.  Do you have any disagreement with that?

6           MR. GAUDET:  Since Mr. Jameson and are on the same

7    team, I would agree with him.

8           MR. JAMESON:  It's the first time he's ever agreed

9    with me, Your Honor.

10          MR. GAUDET:  The good thing is this is on the

11   record.  I will just add this one thing.  When he said the

12   parties actually proposed that, we proposed exactly going

13   patent by patent and then having final modules, so at least

14   that's what I think we all had in mind.

15          Okay.  Mr. Andre, do you agree?

16          MR. ANDRE:  Yes, Your Honor, we agree.  We agree

17   that the Thursday session -- not necessarily do opening

18   statements but tutorials.  Each witness -- give the

19   tutorial, and there's no cross-examination of the

20   tutorialist, and then on Friday I guess our single witness.

21   I'm not sure how long that would take.  I wouldn't imagine

22   in his original testimony, well, less than an hour,

23   cross-examination and redirect, probably re-cross.  Then we

24   are going to do a kind of a quasi-closing argument on a

25   patent-by-patent basis and issue-by-issue basis.  So we

1 would start with the '193 patent first, and the '176, and do
2 one at a time.  We would do our closing; they would do
3 theirs.  So I agree with Mr. Jameson that it would probably
4 go into Monday.  Might not be full day on Monday but a half
5 a day on Monday as well.
6        THE COURT:  All right.  I generally will try to
7 start, you know, 9:30 or 10:00, generally try to go until
8 5:00.  But certainly, especially if we know we are going to
9 need Monday, we get to a point on Friday that we've finished
10 one and not starting the other one at 4:00, we are going to
11 end then and take it back up on Monday so we can keep
12 everyone focused on one patent at a time.
13        So that's kind of how I expect to proceed.  Does
14 that answer your question, Mr. Jameson?
15        MR. JAMESON:  It does.  Thank you, Your Honor.
16        THE COURT:  All right.  Anything else from you?
17        MR. JAMESON:  No, Your Honor.
18        THE COURT:  Mr. Andre, anything else that you think
19 we need to address?
20        MR. ANDRE:  I don't think so, Your Honor.  We are
21 good to go and look forward to seeing you in a week and a
22 half.
23        THE COURT:  Okay.  Well, sounds good.  Thank you
24 all very much.  We appreciate it.
25        MR. ANDRE:  Thank you, Your Honor.

```
 1              MR. NOONA:  Thank you, Your Honor.
 2              MS. KOBIALKA:  Thank you.
 3              (Hearing adjourned at 4:17 p.m.)
 4                         CERTIFICATION
 5
 6         I certify that the foregoing is a correct transcript
 7    from the record of proceedings in the above-entitled matter.
 8
 9
10              X_____/s/_____x
11                         Jody A. Stewart
12                         X_____6-7-2023 _____x
13                              Date
14
15
16
17
18
19
20
21
22
23
24
25
```

JODY A. STEWART, Official Court Reporter